**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| | |
| DEFENDANT | TYPE OF PROCESS |
| | |

SERVE AT {

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | |
|---|---|
| | Number of process to be served with this Form 285 |
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service)*:

| Signature of Attorney other Originator requesting service on behalf of: ☐ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|
| *Susie F. Barrera* | | |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | | | | | |

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above on the on the individual, company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | Date | Time | ☐ am ☐ pm |
|---|---|---|---|
| | | | |

| Address *(complete only different than shown above)* | Signature of U.S. Marshal or Deputy |
|---|---|
| | |

*Costs shown on attached USMS Cost Sheet >>*

REMARKS

Form USM-285
Rev. 03/21

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| | |
| DEFENDANT | TYPE OF PROCESS |
| | |

SERVE AT {

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | Number of process to be served with this Form 285 | |
|---|---|---|
| | Number of parties to be served in this case | |
| | Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

| Signature of Attorney other Originator requesting service on behalf of: | ☐ PLAINTIFF | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| *Susie F. Barrera* | ☐ DEFENDANT | | |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | | | | | |

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above on the on the individual, company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | Date | Time | ☐ am ☐ pm |
|---|---|---|---|
| | | | |

| Address *(complete only different than shown above)* | Signature of U.S. Marshal or Deputy |
|---|---|
| | |

*Costs shown on attached USMS Cost Sheet >>*

REMARKS

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| | |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| | |

**SERVE AT** {

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

ADDRESS *(Street or RFD, Apartment No., City, State and ZIP Code)*

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | Number of process to be served with this Form 285 |
|---|---|
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE *(Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service):*

| Signature of Attorney other Originator requesting service on behalf of: ☐ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|
| *Susie F. Barrera* | | |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. *(Sign only for USM 285 if more than one USM 285 is submitted)* | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | | | | | |

I hereby certify and return that I ☐ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above on the on the individual, company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above *(See remarks below)*

| Name and title of individual served *(if not shown above)* | Date | Time | ☐ am ☐ pm |
|---|---|---|---|
| | | | |

| Address *(complete only different than shown above)* | Signature of U.S. Marshal or Deputy |
|---|---|
| | |

*Costs shown on attached USMS Cost Sheet >>*

REMARKS

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

|  |  |
|---|---|
| DAVID A. STEBBINS | ) |
| *Plaintiff(s)* | ) |
| v. | ) Case No.  21-cv-04184-JSW |
| KARL POLANO, et al. | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
   **Frederick Allison**
   **2057 Knob Lane**
   **Hiawassee, GA 30546**

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
   **David A. Stebbins**
   **123 W. Ridge Ave.,**
   **APT D**
   **Harrison, AR 72601**

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
*Susan Y. Soong*

Date:        9/22/2021

*Susie F. Barrera*

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Case No. 21-cv-04184-JSW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

( )  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

( )  I left the summons at the individual's residence or usual place of abode with
*(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

( )  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

( )  I returned the summons unexecuted because _____ ; or

( )  Other
*(specify):* _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID A. STEBBINS,

        Plaintiff,

     v.

KARL POLANO, et al.,

        Defendants.

Case No. 4:21-cv-04184-JSW

**CLERK'S NOTICE CONTINUING INITIAL CASE MANAGEMENT CONFERENCE**

Re: Dkt. No. 22

     YOU ARE HEREBY NOTIFIED that on **November 19, 2021 at 11:00 a.m.**, via AT&T Teleconference, the HONORABLE JEFFREY S. WHITE will conduct the **Initial Case Management Conference** previously scheduled for October 15, 2021, in this matter. The parties shall file their case management statements on or before November 12, 2021. The parties can find the call information on the Court's website:

www.cand.uscourts.gov/jsw.

Dated: September 13, 2021

Susan Y. Soong
Clerk, United States District Court

By: _____
Jennifer Ottolini, Deputy Clerk to the
Honorable JEFFREY S. WHITE
jswcrd@cand.uscourts.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS, | Case No. 21-cv-04184-JSW |
| Plaintiff, | |
| v. | **ORDER DIRECTING SERVICE REGARDING SECOND AMENDED COMPLAINT** |
| KARL POLANO, et al., | Re: Dkt. No. 55 |
| Defendants. | |

On September 17, 2021, Plaintiff David Stebbins ("Plaintiff"), proceeding *pro se*, filed the second amended complaint ("SAC"). (*See* Dkt. No. 55.) The SAC designated the identities of two defendants, Frederick Allison, and Raul Mateas, who were previously identified as "Doe" defendants. The SAC also added Amazon.com, Inc., as a defendant. It is ORDERED that the Clerk issue summons for these defendants. It is FURTHER ORDERED that the U.S. Marshal for the Northern District of California serve, without prepayment of fees, the summons and a copy of the complaint, any amendments, scheduling orders, attachments, and this Order upon Amazon and Allison. Plaintiff alleges that Mateas resides in the United Kingdom. Because the U.S. Marshal is unable to serve process in foreign countries, Plaintiff is ORDERED to serve Mateas in compliance with the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: September 22, 2021

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                          PLAINTIFF

VS.                              Case 3:21-cv-04184-JSC

KARL POLANO, d.b.a. SOFIANNP,
ALPHABET INC.,
DISCORD INC.,
FACEBOOK INC.,                                           DEFENDANTS
AMAZON.COM, INC.,
FREDERICK ALLISON, d.b.a. INITIATIVEKOOKIE, and
RAUL MATEAS, d.b.a. TGP482,

## SECOND AMENDED COMPLAINT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Amended Complaint as ordered by the Court on June 30, 2021 (See Doc. 10). In this complaint, I allege at least fifteen (15) counts of copyright infringement (and possibly more, once discovery in this case gets underway), one count of ongoing intentional infliction of emotional distress[1], one count of misrepresentation in violation of 17 USC § 512(f)(1), and one count of misrepresentation in violation of 17 USC § 512(f)(2).

## I: NAMES & LOCATIONS OF PARTIES

**1.**     I am a Youtuber and a Twitch Streamer, who goes by the alias Acerthorn. This is also the Alias I use on Discord, as well as Reddit. My YouTube channel can be found by going to the URL of **www.youtube.com/acerthorn**. My Twitch channel can be found by going ot the Url of **www.twitch.tv/acerthorn**. My Reddit account can be found by going to the URL of **www.reddit.com/user/acerthorn**. My Discord server can be found by going to the URL of **www.discord.com/invite/8EkdSvWV9P**.

**2.**     Karl Polano is also a Youtuber and a Twitch Streamer. On YouTube, Twitch, and Discord, he goes by the alias SofiannP. However, on the websites of Reddit and Urban Dictionary, he goes by the alias SomeGuyFromLosSantos. His YouTube channel can be found by going to the URL of **www.youtube.com/sofiannp**. His Twitch channel can be found by going to the URL of **www.twitch.tv/sofiannp**. His Discord Server "Great Six" can be found by going to the URL of **https://discord.gg/yjA7bwE**. His reddit account can be found by going to the URL of **www.reddit.com/user/someguyfromlossantos**. His Urban Dictionary account can be found by going to the URL of **www.urbandictionary.com/author.php? author=SomeGuyFromLosSantos**. I currently believe that he can be served with process at the following name and address:

---

[1] Although this court has dismissed this claim *sua sponte*, I will still preserve these claims in the complaint so that the dismissal may still be appealed.

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

3.     Alphabet Inc. is the current parent company of Google, LLC, which is in turn the current parent company of YouTube, which is currently the largest video-sharing website in the world. It can be served with process at the following name and address:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

4.     Discord Inc. is a corporation which owns and operates the "Discord" app, a free-to-use chatting and socializing app available for android, IOS, and Windows operating systems. Individuals and businesses can set up groups of chat rooms known as "servers." Karl Polano has a Discord server which goes by the name "Great Six." I also have a Discord server simply called "Acerthorn." Discord Inc. can be served with process at the following name and address:

Ruth Chang
444 De Haro St,
Suite 200
San Francisco, CA 94107

5.     Facebook Inc. is a corporation which owns and operates the website of Instagram. Facebook can be served with process at the following name addresss:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

6.     Amazon.com, Inc. is the parent company of the website of Twitch.tv. It can be served at the following namea nd address:

Amazon.com, Inc.
Corporation Service Company
Attn: Legal Department – Legal Process
300 Deschutes Way SW,
Suite 208 MC-CSC1
Tumwater, WA 98501

7.     Frederick Allison goes predominately by the online alias "InitiativeKookie" or some variation thereof (e.g. 6. InitaitiveKookie7767, InitiativeKookie353, etc). However, he has also interacted with me under various other aliases, including Jonathan Allison, T.K Baha[HM], and

numerous variations of the phrases "Patient Pea," "Old Zuccini," "Cap Spirited," "Incognito Pelican," "Spinning Monkeys," "We Lei Xiao Yung," and "Sigmi Nultz." He can be served with process at the following name and address:

Frederick Allison
2057 Knob Lane
Hiawassee, GA 30546

**8.**     Raul Mateas is a YouTuber who goes by the alias "TGP482." You can find his YouTube channel by going to the URL **www.youtube.com/tgp482**. While he does not have his own Discord server or Twitch channel, he does have accounts which both which he uses to watch streams (which includes Polano's "SofiannP" Twitch channel) and chat in various Discord servers (including Polano's "Great Six" server). His accounts with both sites can be found by going to the URL of **www.twitch.tv/tgp482** and by searching for the Discord account of TGP482#7412[2]. He can be served with process at the following name and address:

Raul Mateas
12th Shelton Avenue
Newark on Trent, Nottinghamshire
NG24 4NX
United Kingdom

## II: PERSONAL AND SUBJECT-MATTER JURISDICTION

9.     This Court has federal question jurisdiction over the counts of copyright infringement and the violations of 17 USC § 512(f). This Court has supplemental jurisdiction over the tort of intentional infliction of emotional distress.

10.     This Court has personal jurisdiction over Alphabet, Discord, and Facebook because the three corporations are headquartered in the cities of Mountain View, San Francisco, and Menlo Park, respectively, all of which are in the Northern District of California. This Court has long-arm jurisdiction over Amazon.com, Inc. because the sixteenth count of copyright infringement is being included as part of this case.

11.     This Court has personal jurisdiction over Karl Polano and Raul Mateas because, on May 25, 2021 and September 16, 2021, respectively, they filled out DMCA Counter Notifications with Youtube. While submitting these Counter Notifications, they consented in writing to the jurisdiction of whichever federal district court YouTube was located in (which is the Northern District of California). This Court has personal jurisdiction over Frederick Allison because he and Mateas are accomplices in Polano's efforts to harass me, dox me, ruin my career, and infringe on my copyright. These are not merely three Internet trolls acting concurrently but independently of one another. It is one singular, collaborative effort.

---

2     There is no URL you can enter into your browser that will take you to a person's Discord profile. Instead, in order to message a person on Discord, you must add them as a friend (and they must accept the friend request), or you must share at least one Discord server in common. To add John Doe #2 as a friend on Discord, you should enter, not just the name "TGP482," but also the user number of #7412.

### III: FACTS OF THE CASE

12.     The following facts are necessary to understand the case:

### III-1: Allison's harassment

13.     This all started on February 27, 2021, when Allison, acting under the pseudonym "InitiativeKookie," posted a comment on my YouTube channel where he admitted that he was deliberately and in bad faith attempting to sabotage my YouTube channel with what is known as "low-retention views."

14.     See, YouTube uses an algorithm and machine learning to decide which channels to promote to the exclusion of others. It is no secret that the two most important factors that the algorithm looks at when deciding which videos and channels to promote are views and audience retention. In order to have high audience retention, a viewer must not only click on a video and begin to watch it, but actually watch a large portion of the video. Then, ideally, the viewer should watch *another* video from the same channel. Doing so will indicate to the algorithm that the viewer was enthralled enough by the first video that they want to see what else the channel has to offer, which in turn means that the channel should be promoted to the user more often, as well as to other users who have similar tastes. However, if a viewer clicks on a video and then immediately clicks away after only a few seconds, the algorithm will assume that the video is undeserving of more exposure and bury the video accordingly.

15.     With this in mind, Allison admitted that he was intentionally exploiting the latter portion of the algorithm in a deliberate and bad faith attempt to sabotage my channel and keep it from growing.

16.     If Allison's actions had ended there, I would not have taken significant action. I have dealt with trolls before. I usually just block them and move on with life. However, on March 1, 2021, Allison also contacted me on Reddit. I had posted a question about about starting a livestreaming channel on Twitch, and I wanted to know how to use a certain feature of my streaming software. On March 1, 2021, Allison – acting under the alias InitiativeKookie7767 – posted in that thread, stating "idk but your videos are pretty shitty lol, hope you're enjoying the death of your channel."

17.     Again, this alone would not have been a big deal. Under normal circumstances, I would have simply blocked him, reported him to the Reddit moderators and administrators for a potential ban from the site, and then moved on. The problem here is that he is harassing me *across multiple websites*. It isn't enough that he makes it known that he does not enjoy my content and believes that I am a terrible YouTuber. He is monitoring my social media presence like a vulture, looking for any opportunity he can find to swoop in and harass me.

18.     On March 2, 2021, Allison posted not one, but two videos to his own YouTube account. One of them was called "RIP Acerthorn (2018-2021)." The other was called "Acerthorn EXPOSED as being … pretentious!" Both videos used content from my YouTube channel, and so I issued DMCA Takedowns on them.

19.     On March 14, 2021, Allison deleted his accounts on YouTube and Reddit and replaced them with accounts going by the aliases PatientPea9364 and PatientPea42. In these accounts, he stated that he was InitiativeKookie under a new name, and that any time I reported him to any mods or issued any DMCA Takedowns against him, he would simply create a new account to get around any bans or blocks. He also reposted the video "RIP Acerthorn (2018-2021)" and contacted me on Reddit to give me a link to that video. In other words, it was not enough that he simply was harassing me. He wanted me to *know* that he was harassing me. The administrators of Reddit eventually swooped in and issued a sanction against PatientPea, but he merely deleted that account and created a new one, also called PatientPea but with a new number at the end. He then contacted me using Reddit's "private chat" function and proceeded to level various cuss-filled insults at me. This continued for several weeks, with me reporting him to the Reddit administrators, him getting sanctioned, him deleting the account, creating a new account under a different name, and then proceeding to harass me again. And again. And again. This pattern continued for several weeks.

20.     On March 18, 2021, Allison, acting under the psuedonym "InitiativeKookie," joined my Discord server. His first message said "I brought you a present." This "present" was in fact a slew of unsolicited pornographic images. I believe this should constitute sexual harassment. Perhaps the most shocking and appalling of these images was an image of a man attempting to cut his own penis off with a steak knife.

21.     In late March of 2021, Allison created a new Discord account with a different name that I did not recognize. He spent several weeks in my Discord, being civil and courteous, and participating in chat in a non-disruptive manner. On or around April 13, 2021, he asked to be a moderator for my Discord server. I questioned him about the job and he gave exemplary responses to the interview, so I appointed him to the position. I woke up the next day (April 14, 2021) to find nearly everyone banned from my Discord server, and with the new moderator having changed his name to InitiativeKookie in order to show his true colors.

### III-2: Accidental Livestream on April 10, 2021.

22.     On April 10, 2021, my livestream software turned on of its own accord without me realizing it. It stayed on for nearly two hours before I realized it was on and closed it down. During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities such as walking around my apartment, eating some hot dogs, and watching some YouTube videos for my own personal amusement.

23.     However, at one point in the video, some strange noises could be heard. I do not know what these strange noises were (the best description I can give is that it sounded like a dog barking, but I do not have a dog), and I did not cause them. However, whatever they were, these strange noises constituted the only interesting and memorable part of this otherwise boring and contentless livestream. As such, it constitutes the "heart" of this livestream.

24.     I have registered this accidental livestream with the U.S. Copyright Office. I have also uploaded the archive of this accidental livestream to my YouTube channel. However, access to that video is limited only to those who pay me at least $20 per month.

25.     So far, nobody has paid me the $20 per month to view this video. Meanwhile, there no way to download directly from Twitch. This means that any person who has acquired any copy of this livestream has necessarily done so by illegally downloading the stream using third party software.

### III-3: Allison's continued harassment and copyright infringements

26.     On April 10, 2021, a few hours after my accidental livestream, Allison uploaded a video to his YouTube channel. This video a clip from my accidental livestream. Specifically, it contained the only interesting part of that livestream, and contained the entirety of that only interesting part. Allison made no modifications or alterations to the clip in any way, let alone any modifications that could be considered transformative. This video almost completely usurps the market for Plaintiffs own accidental livestream. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'"). At 4:11PM (central time zone) on April 10, 2021, I issued a DMCA Takedown notice and it was removed by YouTube at 5:25PM (central time zone) that same day.

27.     On April 11, 2021, Allison created an account on the video-sharing site of Vimeo, where he posted the same video as mentioned above, again with no alterations whatsoever. Again, this video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another website for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

28.     I also had this video taken down via a DMCA Counter-Notification. However, unlike YouTube, when I issued this takedown on Vimeo, it displayed my real name (David Stebbins) as opposed to my alias Acerthorn.

29.     On April 12, 2021, Allison created a new YouTube channel (also called InitiativeKookie, but different from the first one), where he posted a short video consisting entirely of a clip from the aforementioned accidental livestream. This short video showed the only interesting part of that accidental livestream, and showed the entirety of that only interesting part. There was no alteration to the clip whatsoever. This video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying

all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'"). I promptly issued a DMCA Takedown against this video and YouTube took it down approximately one hour later.

30.     On April 13, 2021, Allison created a new YouTube channel called Incognito Pelican. He then proceeded to upload the same clip as before – again with no alterations – with the video title "Cod Zombies be like (acerthorn moment) #shorts." In addition to that, he also uploaded the same clip in a 5-second video. This time, however, he made a very small, de minimus, non-transformative change to the video: He book-ended the stream clip with some gum commercial clips. He still provided the entirety of the only interesting moment from the accidental livestream. As such, this video almost completely usurps the market for Plaintiffs own accidental livestream. T he existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

31.     Later on April 13, 2021, I received a message on Reddit from Allison, this time going by the alias InitiativeKookie34, informing me that, because the DMCA Takedown I issued against him on Vimeo (see ¶ 28 for details) gave him my real name instead of just my online alias, he was able to use that information in order to find all of my personal information. He made it clear that he was going to share this personal information with everyone he could in an attempt to ruin my career on YouTube and Twitch. This form of harassment – the involuntary sharing of personal information over the Internet – is known in Internet parlance as "doxxing."

32.     Later on April 13, 2021, Allison created a new YouTube channel – this time with the name "Spinning Monkeys" – where he uploaded the same clip from my accidental livestream with the gum commercial clips bookending it. Just like before, this video almost completely usurps the market for Plaintiffs own accidental livestream. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

33.     Over the next few weeks, Allison kept his promise to dox me. He sent my personal information to everyone he could find who was a member of my Discord server, a commenter on my YouTube channel, or one of my followers on Twitch.

34.     On June 2, 20221, I received a message on Discord by a person going by the alias VoreNeko777. He claimed that the video game review and news website IGN.com had posted a rather inflammatory and libelous article about me, and that while it had been taken down, he had

kept an archived copy of the article in case I wanted to show it to any attorneys for potential litigation. However, when I went to download the attached file that purported to be an archived copy of the IGN article, my browser did not download it because it contained a computer virus. On or around June 7, 2021 (the precise date is unknown), Allison had created a new account on Reddit – this time under the alias InitaitiveKookie 353 – and contacted me on that site, claiming to be the one who attempted to infect me with the computer virus. At this point, this goes beyond mere harassment. Now, he has crossed the line and attempted to commit an actual, real, concrete and tangible injury against me. Not only that, but he also committed a cyber crime and should go to jail for it.

### III-4: Polano's harassment

35.     On March 24, 2021, Polano replied to one of my posts on Reddit, under the username SomeGuyFromLosSantos. In this post, he demanded that I give up my aspirations to make a full-time career out of YouTube and/or Twitch, threatening to make my life "a descent into hell" if I did not give in to his demands. Just like with InitiativeKookie, if this were the end of my interactions with him, I would not be suing today. I have dealt with one-off trolls in the past. I usually just block them, report them to the site's administrators, and then move on. However, just like with InitiativeKookie, he did not just harass me once and then move on.

36.     In mid-April 2021, Karl Polano was posting on my Discord server (under the alias "SofiannP"), explaining that he really enjoyed my content on Youtube. At this point in time, I did not realize that he was the same guy from March 24, threatening to make my life a descent into hell if I did not abandon my aspirations for a full-time career on YouTube and/or Twitch. After all, he had a different name and a completely different personality from that person. Because he seemed, at the time, like a swell guy, I checked out his Twitch channel. I noticed that he had a Twitch channel with over 300 followers, and since I had just started streaming on Twitch myself, I asked him if we could do a collaborative stream (or "collab" for short) together. He agreed, and we had the collab on April 18, 2021.

37.     Much like with the events of ¶ 21 of this Complaint, at first, everything went well. At first, he seemed genuinely excited to be doing a collab with me. However, much like with the events of ¶ 21 of this Complaint, his affability turned out to be a mere ruse to lull me into a false sense of security before removing his fake sheep's wool and bearing his wolf's teeth. Approximately 90 minutes into the stream, he revealed that he had been working with Allison all along, and that now that he was on my channel, broadcasting live, he proceeded to air my personal information to all of my viewers before I cut off the stream. He then proceeded to spend about 15 additional minutes on his own Twitch channel continuing to dox me, once my viewers from my channel had converted over to his channel.

38.     I spent about a week trying to move on from that experience. However, on April 25, 2021, I received notice that my copyrighted livestreams and YouTube videos were being shared on the Great Six Discord, which is owned by Polano. To investigate, I went to that Discord server. I was only able to access the "applications" chat room, a chat room where newcomers to the server are to request access to the main chat room (where the copyright infringements were actually taking place). So I asked to be allowed there in order to inspect for copyright

infringements. The levels of sheer hostility, toxicity, and vulgarity that came from Polano in response to this simple request was absolutely mind-boggling. Not only did he not allow me into the main chat room to look for instances of infringement, but he responded with excessively vulgar and line-crossing personal attacks including, but not limited to, the following:

     (a)     "Go teach yourself about law you <expletive> moronic fat pig."

     (b)     "I'm losing my <expletive> patience with your single digit American pig brain."

     (c)     "Why make yourself public, PIG <EXPLETIVE>? Answer, PIG <EXPLETIVE>!"

     (d)     "Read that carefully and get that in your thick <expletive> skull, you numbnut."

     (e)     "Wow a channel that shows clips of another channel without getting DMCA'd? HOW?! Well fair use you <expletive> <expletive>, it's not entirety of your <expletive> content stream we've uploaded did we?"

     (f)     "I swear this 32 ball of fat manchild is incredible."

39.     Needless to say, I was not granted access to the main chat room. Because of this, Polano should be held liable, not just for the instances of copyright infringement I expressly mention in this Complaint, but for the potentially dozens of copyright infringements I can find in his Discord server once I get access to it during the discovery of this case. He should even be liable for the instances of copyright infringement he did not personally upload, since he has completely and utterly failed to comply with the DMCA's requirements for safe harbor.

40.     Mateas should also be liable for the copyright infringements. He is a moderator in the Great Six Discord. As such, he had the power to remove the infringing content and even ban the users who uploaded it. I contacted him on Discord and asked him to remove the infringing content, but he never did. Therefore, he has also lost his safe harbor.

41.     In addition to this, both Polano and Mateas have continued Allison's efforts to reach out to every single member of my YouTube, Twitch, and Discord communities and dox me by sharing my personal information. Two instances where I know for a fact this happened (and that Polano did it, as opposed to Allison) were on May 10, 2021 and May 26, 2021. Bear in mind that those are not the only two instances period. They are just the only two instances where I know for a fact that Polano is the one who personally did the doxxing.

### III-5: Polano's Copyright infringements

42.     Because I was not given access to the main chat room of the Great Six discord, I have had to rely on third party informants to scour that Discord server for me, and report instances of copyright infringement to me. These informants obviously cannot catch every instances of infringement. However, with their help, I was able to find about a half a dozen unauthorized uses of clips from my accidental livestream. Each of them copied the only interesting part of the livestream verbatim. I issue DMCA Takedown Notices were April 25, April 27, April 28, May 5,

May 8, and May 22. The existence of these videos means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

43.     Bear in mind that these are only the infringements I was able to find thanks to informants providing me with the links. On May 19, 2021, I received a screenshot from one of these informants where Polano stated that there are numerous other infringements on the server that had not yet been "ratted out" by the informants. I wish to hold the individual defendants (Polano, Allison, and Mateas) liable for *all* of these infringements, and I hope to be able to prove all of them once I get a discovery in this case. I just don't know how many of them there are.

44.     Of the infringements my informants told me about, they were taken down by Discord. However, on May 8, 2021, a representative of the Great Six Discord server, going by the alias DeFranko, contacted me on Discord and informed me that issuing these DMCA Takedowns was a complete waste of time, because even if I had any infringing videos removed from the server, they would just repost the videos again. He stated that me taking down the entire Great Six discord server was the only way I could possibly cause the copyright infringement to stop.

45.     On May 20, 2021, Karl Polano posted a video to his YouTube channel. This was an identical copy of the video mentioned in ¶¶ 30 & 32, where he copied the entirety of the only interesting part of the accidental livestream, bookended by gum commercial clips. If the video were to ever be reinstated, it could be viewed by going to the following URL: http://www.youtube.com/watch?v=-xL0xoU2cJA The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

46.     I issued a DMCA Takedown against this video, and YouTube removed it slightly over one hour later. On May 21, 2021, I received notice from one of my copyright informants that the members of the Great Six discord server were conspiring to create multiple fake accounts and attempt to take my channel down with false copyright strikes in retaliation for me issuing this DMCA Takedown against Polano. Members of the Great Six Discord server made comments including, but not limited to "SofiannP is gonna reclaim that and gift the strike back to acerthorn" and "We should just make loads of accounts and report him for the same reason."

### III-6: Fraudulent DMCA Counter-Notification

47.     On May 25, 2021, I received an email from YouTube stating that Karl Polano had issued a DMCA Counter-Notification in response to the Takedown I issued against him as described in

¶ 45 of this Complaint. While filing this Counter-Notification, Polano checked a box that stated "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant," thereby consenting to the jurisdiction of the United States Court of Appeals for the Northern District of California. When filing this DMCA Counter Notification, Polano stated, in pertinent part, the following:

> "I've created the video as a parody of it's original content which was a 2 hour livestream, this parody is meant to be a meme and nothing like Acerthorns' original content. This is Fair Use as his material has been altered to create new content and has also not been monetized."

48.    This statement has at least four different bald-faced lies that constitute knowing material misrepresentation by Polano in violation of 17 USC § 512(f)(2). First, it is not a parody. He merely copied my livestream while while adding no transformative value whatsoever (the gum commercial clips are not transformative). Second, he lied when he said it was "nothing like Acerthorn's original content." It is indeed "like" my accidental livestream, to the point where it completely usurps the market for my livestream and completely removes the incentive for anyone to pay me the $20 per month to view that stream on my own YouTube channel. No reasonable person could juxtapose his 50-second infringing video and corresponding sections of my livestream, and think that the two are nothing alike. It is nothing but a bald faced lie. Third, he is lying when he says that my material was altered to create new content. Aside from the gum commercial clips (which provide no transformative value whatsoever), he did not alter the clips from the accidental livestream in any way, shape, or form. For him to say that he altered it in any way (let alone altered it in such a way that it creates new content) is knowing material misrepresentation. Fourth, he is lying when he says that the video has not been monetized. This was indeed a commercial reuse of my accidental livestream.

49.    In addition to all the lies he told, there was another factor that also causes his DMCA Counter Notification to be fraudulent: He did not perform the Four Factor's Test as outlined by 17 USC § 107(1)-(4). This means he did not consider fair use when issuing his Counter-Notification, even if the four above lies were actually true.

50.    However, of all the lies he told in this DMCA Counter-Notification, there was one thing he said that was quite enlightening: He said that he created this clip. He didn't just borrow it from Allison. He created it himself. This will come in handy in a little bit, when I discuss the evidence of collaboration between the three individual defendants.

### III-7: Fraudulent DMCA Takedown

51.    On or around May 23, 2021, I qualified to become a Twitch Affiliate, meaning that I am now eligible to run ads on my streams and receive "subscriptions" (or paid followers). To qualify to be an affiliate, I must meet four criteria, one of which is that I must have at least 50 followers on my Twitch Channel. I finally met that qualification on May 23, 2021. However, immediately after I met it, Mateas, acting in his capacity as a moderator of the Great Six Discord server, told everyone that it was "not allowed" that I have 50 followers, and that everyone who was

following me on Twitch needed to immediately unfollow. Many people did, and my follower count proceeded to drop.

52.     Despite this attempt to sabotage my career, I was nonethleess able to get approved for Affiliate status, and I am now a Twitch Affiliate as of the time of this writing. To celebrate this achievement, I created a video called "Woot! I'm a Twitch Affiliate!" and uploaded it to my YouTube channel. You can view the video by going to the following URL:

www.youtube.com/watch?v=FZenOvX1XHg

53.     In this video, I explained that several people were attempting to undermine my growth by demanding that people unfollow me from Twitch, and I provided a screenshot to prove it.

54.     On May 25, 2021, Mateas issued a fraudulent DMCA Takedown against that video. He claimed that I used a "picture of [his] chicken." By that, I assume he means that I used his Discord icon, which is a picture of a rooster. However, this was a fraudulent DMCA Takedown. He does not own the copyright to that picture. He probably just pulled it off the Internet somewhere and used that picture instead. It is common sense that you cannot lawfully issue a DMCA Takedown over a copyright when you are not the copyright holder!

55.     But even if he could show some proof that he was the original author or otherwise the copyright holder of that image of that rooster, his takedown was still fraudulent because he did not consider fair use. My use of that screenshot (which included the image of the rooster) met all four factors in the Four Factors Test outlined in 17 USC § 107(1)-(4). I was reporting on a news event[3], so it was transformative. I was discussing an event that really happened in real life, not a work of fiction, so the second factor weighs in favor of fair use. I only showed the screenshot for a few seconds before removing it from the video, so the third factor weighs in favor of fair use. Lastly, my use of the screenshot in a YouTube video does not in any way, shape, or form usurp Mateas's market to license the image (assuming he even is the original copyright holder in the first place, which he isn't) for its original intended purpose of being a comment icon in Discord. So the fourth factors weighs in favor of fair use. This means that literally all four factors weigh in favor of fair use; it is a clean sweep. Therefore, Mateas almost certainly did not consider fair use before issuing his DMCA Takedown. No reasonable person could possibly have considered the Four Factors Test in this case and somehow reasonably determined that my use of the screenshot was not fair use. Rather, it seems that Mateas was merely attempting to retaliate against me for issuing the DMCA Takedown against Karl Polano, which the Great Six discord server conspired to do against me as described in ¶ 46 of this Complaint.

56.     I issued a DMCA Counter-Notification to YouTube, and the video was eventually reinstated on June 13, 2021. However, I still spent 19 days with the video taken down. Because it was taken down for that long, that means it was not getting views and thus not generating ad revenue.

---

3     While it might only be newsworthy to a very niche audience (namely, those who were already fans of my content), it was nonetheless news reporting. The fact that only a niche audience would be interested in a news story is not a bar to fair use.

### III-8: More Copyright Infringement

57.     On or around June 7, 2021, the three individual defendants (along with a few others) started a page on Facebook's website "Instagram," called AcerthornFanClub. Mateas and Karl Polano were two of the creators of this so-called fan club. Despite calling itself a fan club, its actual intended purpose was to publicly dox me and infringe on my copyright. Among other things, the Defendants uploaded a clip from my accidental livestream. This clip depicted the only interesting part of the accidental livestream, and showed the entirety of that only interesting part. Also, there were no modifications whatsoever, not even the aforementioned gum commercial clips. The existence of this video means that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free? See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("In fact, by copying all or substantially all of the copyrighted work, 'the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work as well as that of the defendant's'").

58.     I issued a DMCA Takedown against this page. However, on June 9, 2021, I received an email from Facebook stating that they would not remove the infringing material. Therefore, Facebook has forfeited its safe harbor for this count of copyright infringement.

59.     On June 9, 2021, I received a message on Instagram from AcerthornFanClub. It was a picture of Karl Polano, with the phrase "admin reveal" at the top (thus informing me that Karl Polano was the one in charge of this Instagram page), while also stating "You 's a bitch" and "You ain't stoppin' us!"

60.     On or around July 6, 2021, Polano uploaded a stream to his Twitch channel. In this stream, he, among other things, played a clip of my accidental livestream where the strange noises occurred. If this stream were still available, it could be viewed at the following url: https://www.twitch.tv/videos/1102055994. On August 28, 2021, I issued a DMCA Takedown Notice with Twitch, and it was removed less than 2 hours later. However, on August 31, 2021, I received a notification from Twitch stating that Karl Polano had issued a DMCA Counter-Notification.

61.     On August 18, 2021, Frederick Allison, now acting under the psuedonym "Sügmi Nuitz," posted a 4 minute 19 second clip from my accidental livestream to Youtube, which included the strange noises. On August 28, 2021, I issued a DMCA Takedown against that video, and Youtube promptly removed it. As of the time of this writing, no Counter Notification has been filed, but I still wish for Allison to be held liable nonetheless.

### III-9: Stress caused

62.     The stress that I have suffered as a result of the Defendants' harassment and doxxing is quite palpable. I have become reluctant to appoint any new moderators to my Discord. I have become hesitant to open any messages on Reddit for fear that it might be Allison under a new name harassing me some more. I have been extremely reluctant to schedule additional

collaborations with other streamers for fear that I might be doxxed again.

63.     In addition to those symptoms of paranoia and anxiety, I would like to ask the Court to consider the persuasive precedent of Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), which states, in pertinent part, the following:

> "It may be, as defendant in essence argues, that Mrs. Mitchell does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence and viewing the Sun issue in question, that Nellie Mitchell's experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

64.     In other words, I believe the conduct committed by the individual defendants (and certainly Karl Polano and Allison) are so outrageous that I should not have to prove damages. Their conduct should be considered tortuous per se.

### III-10: Evidence of Collaboration

65.     As I mentioned earlier in this Complaint, the three individual defendants (Polano, Allison, and Mateas) are all working together in an attempt to maliciously sabotage my career. These are not merely three individuals acting concurrently but independently of one another. It is one singular, collaborative effort on their part. For this reason, I believe that all three individual defendants should share equally in the liability in this case. Karl Polano and Mateas should be liable for all of Allison's harassment (including attempting to infect me with a computer virus) and copyright infringements. Allison and Mateas should be liable for all of Polano's harassment and copyright infringements. Polano and Allison should be liable for Mateas's fraudulent DMCA Takedown. So on and so forth.

66.     So what evidence do I have that they are all working together? Well, the connection between Polano and Mateas is the easiest to prove. As I mentioned earlier, Mateas is a moderator in Polano's "Great Six" discord server. As such, he has an incredible amount of authority in the Great Six community. He has the power to remove material which infringes on my copyright, remove any material that harasses or doxxes me on that server, and to ban any person (with the exception of Polano himself) who engages in any such conduct. Despite having the power to do so, he not only has refused to do so, but has repeatedly and consistently engaged in the harassment, doxxing, and copyright infringement himself. He is clearly working alongside Polano.

67.     Granted, if he had refused to be party to this harassment, doxxing, and copyright infringement, Polano most likely would have relieved him of his moderator position. However, at least hten, Mateas would not have been a co-defendant in the instant case. Apparently, his loyalty to Polano supercedes his fidelity to the law.

68.     With Allison, there is also evidence that he is working with Polano and Mateas. The most incriminating piece of evidence I have so far is the fact that (A) Polano created the video he uploaded to his YouTube channel on May 20, 2021 (see ¶ 50 of this Complaint), and (B) that video was originally uploaded by Allison on April 13, 2021 (see ¶ 30 of this Complaint). In other words, Polano created that video and then gave it to InitiativeKookie so he could upload it to his YouTube channel. However, because Allison did not wish to file a DMCA Counter Notification, Polano took his video back and uploaded it himself.

69.     Perhaps that is not entirely how it happened. Maybe Allison is the original creator of the video, and when Polano stated in his Counter-Notification that he was the creator, that was yet another lie he told YouTube. But even if that were the case, that still does not help the Defendants. Regardless of who played which part, the bottom line is that one of them created the infringing video and then gave it to the other so he could use it to harass me, dox me, and infringe on my copyright. Regardless of which one was the initiator and which one was the accomplice, the bottom line is that there is clear evidence of collusion, cooperation, and partnership between them.

70.     So because there is clear evidence that Allison and Polano are working together to sabotage my career on YouTube and Twitch, and because there is clear evidence that Polano and Mateas are working together to do the same, common sense dictates that ALlison and Mateas are also working together to accomplish this same goal.

## IV: LEGAL ANALYSIS

71.     For the following reasons, the law entitles me to relief on each tort that I am suing over.

### IV-1: Intentional Infliction of Emotional Distress

72.     To state a claim for intentional infliction of emotional distress, the plaintiff must allege facts that plausibly show: (1) extreme and outrageous conduct by the defendant(s) with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009).

#### IV-1-A: Extreme and Outrageous Conduct

73.     The allegations of ¶¶ 13-21, ¶¶ 26-41, ¶¶ 51-56, and ¶ 59 of this Complaint should be sufficient to establish the first essential element of this tort. The Defendants have engaged in a months-long campaign to inflict as much emotional pain (and even property damage) on me as possible, engaging in such acts as repeatedly creating new accounts in order to circumvent bans or blocks, bombarding my Discord server with unsolicited pornographic imagery, sabotaging my Discord server by tricking me into appointing them as mods, attempting to infect me with a computer virus (hence the property damage), and illegally obtaining my private information so they can share it with the world without my consent.

74.     In the case of *Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009), the Ninth Circuit held that conduct is considered extreme or outrageous if it is done with the specific, actual intent to inflict emotional distress or suffering. See *id* at 572 ("Plaintiffs cite examples of ostensibly similar behavior that was found to be extreme and outrageous. But these cases are inapplicable, as each relied on the defendant's intent to harm the threatened party"). In the instant case, the fact that the Defendants' actions were done with the specific intent to inflict emotional distress is axiomatic.

75.     Remember that the Defendants' attempts to harass me include doxxing me. "Doxxing is short for 'dropping documents.' The practice involves 'using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online.' The 'goal of doxxing is typically retribution, harassment or humiliation.'" See Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 858-59 (E.D. Mich. 2019). Because it is designed with the goal of harassment and humiliation, it fits the criteria set forth in *Corales* to automatically be considered extreme or outrageous to the exclusion of all other factors.

<u>IV-1-B: Damages Suffered by Plaintiff</u>

76.     The factual allegations of ¶¶ 62-64 should be sufficient to establish the second essential element. The stress that I have suffered as a result of the Defendants' harassment and doxxing is quite palpable. I have become reluctant to appoint any new moderators to my Discord. I have become hesitant to open any messages on Reddit for fear that it might be Allison under a new name harassing me some more. I have been extremely reluctant to schedule additional collaborations with other streamers for fear that I might be doxxed again.

77.     In addition to those symptoms of paranoia and anxiety, I would like to ask the Court to consider the persuasive precedent of Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), which states, in pertinent part, the following:

> "It may be, as defendant in essence argues, that Mrs. Mitchell does not show a great deal of obvious injury, but a reasonable juror might conclude, after hearing the evidence and viewing the Sun issue in question, that Nellie Mitchell's experience could be likened to that of a person who had been dragged slowly through a pile of untreated sewage. After that person had showered and a few weeks have passed, there would be little remaining visible evidence of the ordeal which the person had endured and the resulting damages incurred, but few would doubt that substantial damage had been inflicted by the one doing the dragging."

78.     In other words, I believe the conduct committed by the individual defendants (and certainly Karl Polano and Allison) are so outrageous that I should not have to prove damages. Their conduct should be considered tortuous per se.

79.     In addition to the emotional distress, I also believe the individual defendants should be liable for all damages suffered, both as a direct and indirect result of their harassment and doxxing. This includes, but is not limited to, my loss in popularity on the YouTube and Twitch platforms because of the doxxing, as well as a result of my refusal to respond publicly to the

accusations leveled against me.[4] These damages are virtually impossible to place an exact dollar value on, but I am hopeful that the Court will adequately compensate me, as well as award punitive damages.

80.     Meanwhile, I believe (and I pray the Court will agree with me) that the third essential element should be obvious to any reasonable person who has read the Complaint from beginning up to this point, so I hopefully should not have to allege specific facts for that third essential element.

### IV-2: Copyright Infringement

81.     To show a prima facie case of copyright infringement, I need only show two essential elements: Ownership of a copyright by the Plaintiff and copying by the Defendant. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986) ("[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant").

### IV-2-A: Ownership of Copyright by Plaintiff

82.     The allegations of ¶¶ 22-25 of this Complaint should satisfy the first essential element. A livestream on Twitch is copyrightable, even if it is done by accident. As the owner of the channel and the sole author of the livestream, I have default sole ownership of the copyright to this stream, unless I sign away the rights to it (which I have not done).

### IV-2-B: Copying of Copyrighted Content by Defendant

83.     The first count of copyright infringement is based on the fact that the at least one of the Defendants (either Karl Polano or Allison) illegally downloaded the livestream using third-party software. Think about it: How else could they possibly have gotten the raw footage to make their infringing videos in the first place? The stream was originally broadcast on Twitch, but there is no way to download directly form Twitch. While YouTube offers a limited means of downloading videos for offline viewing[5], none of the Defendants could possibly have gotten the stream from YouTube, since that video is restricted only to those who pay my channel $20 per month. I know for a fact that none of the Defendants have paid me that money, so how did they get the raw footage of the stream in order to make their infringing videos in the first place? The only explanation is that at least one of them must have illegally downloaded the stream using some unauthorized third-party software. This is blatant copyright infringement, just like how it is illegal to use a torrent app to download entire movies and/or video games without paying for them.

84.     Once one of the individual defendants (either Polano or Allison) had illegally downloaded the stream, he then necessarily shared it with the other so that they could work

---

4    After all, if the Defendants never doxxed me, there would never have been any accusations for me to publicly address.

5    See https://www.youtube.com/premium ("Downloads: Save videos for when you really need them – like when you're on a plane or commuting.")

together to infringe on my copyright. As I said earlier, one of the Defendants necessarily created the infringing video with the gum commercial clips in it, and then gave that infringing video to the other person to upload. Regardless of which one did the giving, the bottom line is that an unauthorized sharing occurred. Since they are all working together, they are all liable for both anyway (see ¶¶ 65-70 of this Complaint). This unauthorized sharing constitutes a second count of copyright infringement.

85.　　Then we have the thirteen instances where the Defendants shared my copyrighted content publicly on either Discord, YouTube, Vimeo, or Instagram. The counts of copyright infringement I currently allege are as follows:

- COUNT NO. 3: The uploading that occurred on April 10, 2021, which I describe in ¶ 26 of this Complaint.

- COUNT NO. 4: The uploading that occurred on April 11, 2021, which I describe in ¶ 27 of this Complaint.

- COUNT NO. 5: The uploading that occurred on April 12, 2021, which I describe in ¶ 29 of this Complaint.

- COUNT NO. 6: The uploading that occurred on April 13, 2021, which I describe in ¶ 30 of this Complaint.

- COUNT NO. 7: The uploading that occurred on April 13, 2021, which I describe in ¶ 32 of this Complaint.

- COUNT NO. 8: The uploading that occurred on April 25, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 9: The uploading that occurred on April 27, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 10: The uploading that occurred on April 28, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 11: The uploading that occurred on May 5, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 12: The uploading that occurred on May 8, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 13: The uploading that occurred on May 22, 2021, which I describe in ¶ 42 of this Complaint.

- COUNT NO. 14: The uploading that occurred on May 20, 2021, which I describe in ¶ 45 of this Complaint.

- COUNT NO. 15: The uploading that occurred on June 7, 2021, which I describe in ¶ 57

of this Complaint.

- COUNT NO. 16: The stream that occurred on or around July 6, 2021, which I describe in ¶ 60 of this Complaint.

- COUNT NO. 17: The uploading that occurred on August 18, 2021, which I describe in ¶ 61 of this Complaint.

86.     Last but not least, we also have the innumerable instances of copyright infringement that Karl Polano allowed, and even actively encouraged, on his Discord server that I was unable to have taken down because he would not let me see the main chat room in that server. While I do not know how many instances of copyright infringement there are, I wish to recover statutory damages and obtain injunctive relief on each and every one of them.

### IV-3: Misrepresentation Under 17 USC § 512(f)(2)

87.     To recover for a violation of 17 USC § 512(f)(2), I must show (A) that the Defendant issued knowingly false (or at least knowingly misleading) material statements when issuing a DMCA Counter-Notification, (B) that the service provider (in this case, YouTube) relied on these misrepresentations, and (C) that I suffered damages as a result of the service's reliance thereof.

#### IV-3-A: Knowingly False Material Statements

88.     The allegations of ¶ 48 of this Complaint should sufficiently show that Karl Polano issued numerous, knowingly-false statements in his DMCA Counter-Notification. He lied about the video being a parody. He lied about the video being altered. He lied about the video being nothing like my original content. He lied about the video being noncommercial. These are all material statements that he knowingly lied about.

#### IV-3-B: Reliance by ISP

89.     The allegations of ¶ 47 of this Complaint should show any reasonable finder of fact that YouTube relief on these allegations. After all, if they did not rely on these allegations, why else would they process the Counter-Notification and notify me of same?

#### IV-3-C: Damages

90.     The damages I suffered are the fact that I had to file this lawsuit in order to keep the video from being reinstated. This lawsuit will undoubtedly cost a lot of money (even if I am proceeding *in forma pauperis*) and will cause me a great deal of stress.

#### IV-4-D: Failure to Consider Fair Use

91.     In addition to the knowingly false material statements he made in his Counter-Notification, there is also the fact that Karl Polano did not consider fair use. In the case of Lenz v. Universal Music Corp., 801 F. 3d 1126 (9th Cir. 2015), the Ninth Circuit held a copyright

holder must consider fair use before issuing a DMCA Takedown. Common sense dictates that alleged infringers should also be required to consider fair use before issuing a Counter-Notification.

92.     More importantly, the Defendant should be required to consider the *actual* law of fair use. If he attempts to simply make up his own standard for fair use and then consider that standard, that should not be allowed. If that were allowed, that would completely undermine one of the most fundamental principles of our jurisprudence: That ignorance of the law is no excuse. If we start making exceptions to that principle in all but the most exceptional of cases, then the rule of law in its entirety crumbles at its foundation.

93.     In order to consider fair use (provided you are considering the *actual* law of fair use and not just your own, custom version of fair use), you must consider the Four Factors Test. The Supreme Court and Ninth Circuit has made it exceptionally clear that there is no such thing as presumptive fair use. Every noteworthy published opinion regarding fair use in the past fifty years has used the Four Factors Test. Every. Single. One.

- Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148 (9th Cir. 1986) used the Four Factors Test. See id at 1152-1156.

- DR. Seuss Enterprises, LP v. Comicmix LLC, 983 F. 3d 443 (9th Cir. 2020) used the Four Factors Test. See id at 451-461.

- Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1984) used the Four Factors Test. See id at 561-569.

- Campbell v. Acuff-Rose Music, Inc., 510 US 569 (1994) used the Four Factors Test. See id at 578-594.

- Sony Corp. of America v. Universal City Studios, Inc., 464 US 417 (1984) used the Four Factors Test. See id at 496-498.

- Fisher v. Dees, 794 F. 2d 432 (9th Cir. 1986) used the Four Factors Test. See id at 437-439.

- Dr. Seuss Enterprises, LP v. Penguin Books, 109 F. 3d 1394 (9th Cir. 1997) used the Four Factors Test. See id at 1399-1403.

- Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9th Cir. 2012) used the Four Factors Test. See id at 1173-1183.

- Hosseinzadeh v. Klein, 276 F.Supp.3d 34 (S.D. NY 2017) used the Four Factors Test. See id at  45-47.

94.     Therefore, if the Defendants do not consider the Four Factors Test, they do not consider fair use and thus commit misrepresentation under 17 USC § 512(f). Period. No exceptions.

95.     The infringing video that Polano uploaded on May 20, 2021 (the only one that is the subject of a DMCA Counter-Notice) is so overwhelmingly lacking in the Four Factors Test that the odds that Polano actually considered that test is astronomical. No reasonable person could apply the Four Factors Test and conclude that the Defendants' video is fair use. Rather, Polano seems to believe that his video is fair use simply because it is a parody of my original livestream. Furthermore, he believes it is a parody simply because he has decided it is a parody. This is evidenced by his statements in the DMCA Counter-Notification (see ¶ 47 of this Complaint) as well as the excessively toxic and vulgar personal attacks he leveled against me on April 25 (see ¶ 38 of this Complaint).

96.     Put simply, the mere fact that he calls it a parody does not make it a parody. To hold otherwise would completely undermine yet another one of our most core and most fundamental legal principles: That nobody should be allowed to be the judge of his own case.

97.     But even if his video could be considered parody by the Court (as opposed to the Defendant), he appears to believe that, as long as it is classified as a parody, it is automatically fair use to the exclusion of all other factors. Put simply, that is not how this works. In fact, the Supreme Court has explicitly and unequivocally rejected the idea that parody is automatically - or even presumptively - fair use:

> "The fact that parody can claim legitimacy for some appropriation does not . . . tell either parodist or judge much about where to draw the line. Like a book review quoting the copyrighted material criticized, parody may or may not be fair use, and petitioners' suggestion that any parodic use is presumptively fair has no more justification in law or fact than the equally hopeful claim that any use for news reporting should be presumed fair. The [Copyright] Act has no hint of an evidentiary preference for parodists over their victims, and no workable presumption for parody could take account of the fact that parody often shades into satire when society is lampooned through its creative artifacts, or that a work may contain both parodic and nonparodic elements. Accordingly, parody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law." See Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 58 1 ( 1994) (citations omitted).

98.     Even ignoring that, the Defendant still contradicts himself. First, he says that his video was a parody. Then, literally one sentence later, he says that his video is not like my original content. However, if it is not like my content, then it is not a parody. The Supreme Court has held that "[p]arody needs to mimic an original to make its point." See Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 580-8 1 ( 1994). Therefore, if it is not like the my content, then it cannot be a parody. More to the point, if his resulting video is not like my original content, then that begs the question ... how can the Defendants possibly be commenting on or criticizing my content?!

99.     That transitions to the next point: The Defendant has not even attempted any sort of transformative effect in his work. He bookends the clip from my accidental livestream with some clips from a gum commercial, but other than that, he just copies from my livestream verbatim with absolutely no alterations. There is no commentary, no criticism, no analysis, no evaluation,

nothing that could even arguably be considered transformative whatsoever. The addition of the gum commercial clips is a completely superfluous addition that provides absolutely no commentary on my livestream clip. Even if the Court were to determine that the gum commercial clips provided some de minimus transformative value, the value added would be so minimal that it alone should not be able to overcome the other three factors of the Four Factors Test.

100.    The second factor of fair use also weighs against the Defendant. While it is true that facts are given less copyright protection than fiction, and the fact that the accidental livestream showed a day in my life (which could be considered nonfiction), it is important to note that, when lawmakers and copyright law scholars say "facts," they typically mean things such as history, science, or politics, aka things of public importance. Simply peaking into one person's personal life on some random day, when he is alone in his own home, minding his own business and hurting no one, is, quite simply, not consistent with the public policy interests fair use was designed to protect. By contrast, it absolutely serves the Defendant's personal agenda of harassing and doxxing me, but such malevolent motives, at best, do not help Defendants in their case for fair use, and at worst, actively hinder their case for fair use.

101.    The third factor of fair use is neutral at best and weighs against the Defendants at worst. While it is true that Defendant's video was only 50 seconds long whereas my accidental livestream was nearly 2 hours long, the Defendants used the most substantial portion of my accidental livestream. He used the "heart" of the accidental livestream, and therefore, this factor should be construed in the Defendants' disfavor.

102.    The fourth and final fair use factor - effect on the potential market - is egregiously and laughably in the Defendants' disfavor. The 3rd through 15th counts of copyright infringement contain the only interesting part about my accidental livestream, and contained the entirety of that only interesting part. As such, this video almost completely usurps the market for my own accidental livestream. The existence of these videos mean that people are unlikely to pay me the $20 per month fee to see the livestream and strange noises the legitimate way. Why would they, when they can get the same thing from another Youtube channel for free?

103.    As you can see, once we start to actually consider the Four Factors Test, no reasonable trier of fact could possibly find fair use in this case. Therefore, the overwhelming odds are that Karl Polano never considered the Four Factors Test. Because he did not consider the Four Factors Test, that means he did not consider fair use. See *Lenz*, supra at 1135 ("A [party] who pays lip service to the consideration of fair use by claiming it formed a good faith belief when there is evidence to the contrary is still subject to § 512(f) liability").

104.    In addition to the aforementioned four factors test, it is also established law that, when an infringer acts in bad faith, their infringement is automatically not fair use, even if that same video could be considered fair use in otherwise identical circumstances. See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 562 (1985) ("Also relevant to the character of the use is the propriety of the defendant's conduct. Fair use presupposes good faith and fair dealing"). See also Fisher v. Dees, 794 F. 2d 432, 437-38 (9th Cir. 1986) ("One theme running through the composers' briefs is that Dees's alleged bad conduct should bar his use of the equitable defense

of fair use. The principle invoked is sound. Because fair use presupposes good faith and fair dealing, courts may weigh the propriety of the defendant's conduct in the equitable balance of a fair use determination") (citations and quotations omitted). Because the Defendants have engaged in a months-long campaign to harass and dox me, it is clear that their copyright infringement is likewise done solely to harass and dox me, rather than provide criticism or commentary for its own sake. See Fed.R.Evid 404 (b)(2) (evidence of other bad acts may be admissible to prove, among other things, "motive" and "intent"). This weighs heavily against fair use (if it does not bar the claim of fair use altogether), and Polano's failure to consider this factor means he is in violation of 17 USC § 512(f)(2).

105.    Last but not least, because the Defendants necessarily obtained the raw footage by illegal means (see ¶¶ 83-84 of this Complaint), that means the videos are automatically not fair use, even if that same video could be considered fair use in otherwise identical circumstances. See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985), where the Supreme Court disagreed with the *factual* finding of the lower court that the Defendants *in that particular case* had "knowingly exploited a purloined manuscript," but left intact the conclusion of law that, if the Defendants had done so, that would have been an automatic bar to fair use. Because Polano clearly did not consider this when he issued his DMCA Counter-Notification, he violated 17 USC § 512(f)(2).

### IV-5: Misrepresentation Under 17 USC § 512(f)(1)

106.    To recover for a violation of 17 USC § 512(f)(1), I must show (A) that Mateas issued a DMCA Counter-Notification, (B) that this counter-notification consisted of knowing material misrepresentations about the alleged infringement in the video, and (C) that I suffered damages as a result of this knowing material misrepresentation. A person commits a knowing material misrepresentation if he fails to consider fair use before issuing the takedown. See Lenz v. Universal Music Corp., 801 F. 3d 1126 (9th Cir. 2015).

### IV-5-A: DMCA Takedown

107.    On or around May 25, 2021, Mateas issued a DMCA Takedown against me. See ¶ 54.

### IV-5-B: Knowingly False Material Statements

108.    The allegations of ¶ 54 also show that he committed at least one knowing material misrepresentation when issuing this takedown, namely that he lied about owning the copyright to that image.

### IV-5-C: Failure to Consider Fair Use

109.    The allegations of ¶ 55 should sufficiently allege that he failed to consider fair use before issuing the takedown. My use of that screenshot (which included the image of the rooster) met all four factors in the Four Factors Test outlined in 17 USC § 107(1)-(4). I was reporting on a news event (a very niche news event, but a news event nonetheless), so it was transformative. I was discussing an event that really happened in real life, not a work of fiction, so the second

factor weighs in favor of fair use. I only showed the screenshot for a few seconds before removing it from the video, so the third factor weighs in favor of fair use. Lastly, my use of the screenshot in a YouTube video does not in any way, shape, or form usurp Mateas's market to license the image (assuming he even is the original copyright holder in the first place, which he isn't) for its original intended purpose of being a comment icon in Discord. So the fourth factors weighs in favor of fair use. This means that literally all four factors weigh in favor of fair use; it is a clean sweep. Therefore, Mateas almost certainly did not consider fair use before issuing his DMCA Takedown. No reasonable person could possibly have considered the Four Factors Test in this case and somehow reasonably determined that my use of the screenshot was not fair use.

110.    Also, the allegations of ¶ 46 create a very high likelihood that Mateas not only failed to consider fair use, but that he had actual knowledge that his takedown was fraudulent, and that he acted, not in a good faith attempt to protect his intellectual property, but in furtherance of a conspiracy the Great Six Discord server entered into against me.

111.    In addition, the fact that Mateas never filed suit against me, and my video was eventually reinstated for want of prosecution, is circumstantial evidence that he did not actually believe that my video infringed on his copyright. See Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal 2004) ("The fact that Diebold never actually brought suit against any alleged infringer suggests strongly that Diebold sought to use the DMCA's safe harbor provisions — which were designed to protect ISPs, not copyright holders — as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property").

IV-5-E: Damages

112.    Meanwhile, the allegations of ¶ 56 should sufficiently allege an injury that was caused because of this act of fraud. I spent over two weeks with the video taken down, and therefore not gaining views or generating ad revenue.

## V: RELIEF REQUESTED

113.    For all of the reasons already stated, I should be entitled to prospective and retrospective injunctive relief, statutory damages for the copyright infringement, and compensatory and punitive damages for the intentional infliction of emotional distress. The only question is … exactly what relief should I get, and against whom?

### V-1: Injunctive Relief against Karl Polano, Frederick Allison, and Raul Mateas

114.    First, I would like the Court to order Karl Polano, Frederick Allison, and Raul Mateas to cease and desist having any further contact with me. This includes over YouTube, Reddit, Discord, Twitch, or any other form of online or offline communication. An exception can be made if the communication is supervised by American police or an American court of competent jurisdiction.

115.    This Court has already expressed its opinion that I have not stated a claim upon which relief can be granted for the tort of intentional infliction of emotional distress. I am still repeating

these torts in this Second Amended Complaint so they may be preserved for appeal. However, even if this Court refuses to grant me any relief pursuant to that tort, there is an independent grounds upon which I believe I am entitled to this injunctive relief: Because as the owner of my YouTube channel, Twitch channel, and Discord server, I still have the absolute right to decide who does and doesn't get to come onto any of the aforementioned properties and post messages, and the Courts have a duty to enforce that right of mine.

116.    Think about how this would work in a situation that didn't involve the Internet. Imagine if I owned a brick and mortar business, such as a bar. Frederick Allison came into that bar and started harassing me and/or my customers, so I kick him out. Then, he dons a disguise so he can get back in through the front door (or perhaps enters via some alternative entrance that is not as heavily guarded), before proceeding to take off the disguise so he can resume harassing me and/or my customers. Then he does it again. And again.

117.    In that scenario, even if the behavior he engages in while on the premises is not independently actionable as a crime or tort, his repeated unauthorized entry – after he has been repeatedly and unambiguously told that he is not welcome there – still is. It's my property, so it's my right. As such, a court of competent jurisdiction in that case would absolutely issue a prospective injunction ordering the defendant to cease and desist his unauthorized entry into the plaintiff's personal or business property, and would absolutely hold the defendant in contempt of court (complete with coercive confinement) if the defendant persisted.

118.    In the instant case, the fact that it occurrs on the Internet may make it *physically* easier for the Defendants to get new disguises (in the form of alternate accounts), but that does not adversely affect my substantive property rights. In copyright law, it is long established that the mere fact that something happens on the Internet does not adversely affect the rights of the copyright holder; I see no reason why it should adversely affect my right to dictate who does and does not get to come onto my business properties and raise hell.

119.    So I believe I am absolutely entitled to a prospective injunctive relief ordering the individual defendants to stop attempting to break into my property, even if that property only exists in the digital realm. As such, I still request a prospective injunctive relief ordering the individual defendants to have no further contact with me on any website for any reason.

120.    This injunction should also include ordering all three Defendants to never again issue any DMCA Takedowns against me. If they believe any of my videos or streams infringe on their copyright, they should be required to go straight to suing me in court without issuing a DMCA Takedown and forcing me to issue a DMCA Counter-Notification first. This way, they can still enforce their rights if I am violating them, but I would be entitled to full due process before they can have any of my content removed.

121.    The Defendants should also be enjoined from having any communications with any person they know, or have reason to know, to be a member of my Discord server, or a regular audience member in my YouTube or Twitch channels. An exception can be made if the communication is entirely unrelated to me. This is to prevent them from ever doxxing me again.

122.     I also would like the Court to enjoin the Defendants from ever infringing on my copyright ever again. This injunction should hold, even if they reasonably believe their infringing content qualifies for fair use. It is clear, at this point, that the Defendants are incapable of acting in good faith when it comes to fair use. They will not consider fair use, but still insult, harass, and dox me because they feel that they do qualify for fair use. It is clear they will not act in good faith, so they should forever lose the right to make fair use of my copyrighted content. It is a harsh penalty, but it is one that is necessary.

123.     Last but not least, the Defendants should be ordered to require similar compliance with all aforementioned injunctions with any person who is a member of their Discord communities, their YouTube or Twitch channels, or any other online communities in which they have any moderator or administrator authority. They should be ordered to immediately remove any material that harasses me, doxxes me, or infringes on my copyright, and to issue immediate, permanent, and irrevocable bans to the users who post it, and to continue to do the same in all future cases in perpetuity. They should be ordered to provide me with the ability to view any communities they create or maintain, and any messages posted in those communities, so I may monitor those communities for violations of this injunction.

### V-2: Injunctive Relief against Alphabet, Discord, Facebook, and Amazon

124.     For the most part, Alphabet Inc., Discord Inc., and Amazon.com Inc. have complied with the DMCA's safe harbor provisions. However, 17 USC § 512(j) provides for a limited form of prospective injunctive relief against ISPs, even if they have safe harbor for everything else. It is upon this limited grounds for relief that I seek to enjoin Alphabet Inc, Discord Inc., and Amazon.com Inc. I also request prospective injunctive relief against Facebook Inc. under 17 USC § 512(j), although they are also being sued for damages.

125.     The trio of individual defendants are, without a doubt, repeat infringers. Their collective infringements on YouTube, Discord, and Instagram undoubtedly qualify as repeat infringements. While the DMCA does not provide a bright line definition for the term "repeat infringer," the fact that the individual defendants have infringed on my copyright a minimum of *seventeen times* (possibly more, once I get the chance to inspect their Discord server) would suffice any reasonable definition of the term. No reasonable trier of fact would argue that fifteen infringements does not make you a repeat infringer.

126.     For this reason, I ask the Court to enjoin Alphabet Inc., Discord Inc., Amazon.com Inc. and Facebook Inc., pursuant to 17 USC § 512(j)(1)(B)(i), to permanently terminate the individual Defendants' accounts and all associated channels, servers, and pages. The corporate defendants should also be ordered to not permit (either expressly or tacitly) the three individual defendants to create any new accounts for any reason.

### V-3: Statutory Damages Against Karl Polano, Frederick Allison,

**Raul Mateas, & Facebook**

127.    The trio of Karl Polano, Frederick Allison, and Raul Mateas collectively infringed on my copyright a minimum of seventeen (17) times. I request statutory damages of up to $150,000 for each count of copyright infringement. This means that, so far, the trio should be held liable for up to $2,550,000 in statutory damages. However, I also ask the Court to award me statutory damages up to $150,000 for every additional instance of copyright infringement I can find when I have the chance to peruse the Defendants' Discord server.

128.    Facebook has lost its safe harbor regarding the fifteenth count of copyright infringement (see ¶ 58 of this Complaint). As such, I ask that Facebook Inc. be held jointly liable for the fifteenth count of copyright infringement alongside the trio of individual defendants, and should also be held liable for statutory damages up to $150,000.

### V-4: Emotional Distress & Punitive Damages against Polano, Allison, & Mateas

129.    To compensate me for the intentional infliction of emotional distress, and to punish the three individual defendants and discourage all other persons similarly situated from engaging in similar conduct in the future, I ask the Court to award me a combination of compensatory, emotional distress, and punitive damages up to and including one million ($1,000,000) dollars against the three individual defendants. Combined with the statutory damages, and that brings the total damages package up to $3,550,000.

### V-5: Other Appropriate Relief

130.    Last but not least, I ask the Court to award whatever other relief, at law or in equity, that the Court, in its discretion, deems appropriate to make me whole and to ensure this does not happen again.

### VI: CONCLUSION

131.    Wherefore, premises considered, I respectfully request that the Court enjoin the Defendants to cease and desist the harassment, doxxing, and copyright infringement, award me damages up to and including $3,550,000 in a combination of statutory, emotional distress, and punitive damages, award costs incurred, any other relief to which I may be entitled.

So requested on this, the 10th day of September, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com