UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                              PLAINTIFF

VS.                         Case 3:21-cv-04184-JSW

KARL POLANO, et al                                            DEFENDANTS

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AS TO FACEBOOK INC.

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion for Default Judgment as to Facebook, Inc.

### STATEMENT OF ISSUES

1. Since Facebook is listed in default, the only issue to be litigated is how much in statutory damages they should be held liable for.

### FACTS

2. On October 4, 2021, the Clerk entered Facebook Inc in default in this case. See **Doc. 72**.

3. This means that all factual allegations in the Complaint that pertain to Facebook except the extent of damages are deemed admitted by them[1]. These facts include all of the following:

   (a) On April 10, 2021, the Plaintiff (under the alias "Acerthorn") accidentally livestreamed on Twitch without realizing it, allowing his viewers to see him in his daily activities.

   (b) At one point during this livestream, some strange noises could be heard.

   (c) These strange noises are the most interesting part of an otherwise banal video, thus constituting the "heart" of that video for purposes of fair use.

   (d) I have a valid copyright on this livestream, which is registered with the U.S. Copyright Office.[2]

   (e) The individual defendants acquired copies of this stream by illegally downloading it via third party software.

---

1  Although the individual defendants are free to contest these facts if they make timely appearances in the case. I concede that it would be unfair to impose res judicata on the individual defendants just because Facebook didn't show up for the case.
2  The Registration Number is PA0002305616, if the Court would like to check it.

(f) On or around June 7, 2021, the individual defendants posted an Instagram account, calling themselves "AcerthornFanClub."[3]

(g) This instagram page contained a verbatim, unaltered clip from Acerthorn's accidental livestream, depicting the strange noises.

(h) No alterations whatsoever were made to this clip.

(i) The clip was posted on Instagram, not to review or parody the content, but solely to harass and dox me for its own sake. There was no legitimate motive by the individual defendants; just pure hatred, pure malice, pure spite.

(j) On June 7, 2021, I issued a DMCA Takedown with Instagram. See **Exhibit A**.

(k) On June 9, 2021, the defendant responded and refused to take the content down. See **Exhibit B**.

## Additional Facts

4. In addition to all of those facts that were listed in the Complaint, I also would like to point out a few more facts for the Court. Although the law states that courts cannot award any additional *relief* in a default judgment than what was originally requested in the Complaint, there is nothing in the law to my knowledge that prohibits the court, in a default judgment, from *finding facts* beyond what was alleged in the Complaint. Although only facts alleged in the complaint are *admitted* because of the default, I should still be allowed to present additional facts as long as I show evidence of them. With that said, here are some more facts to assist the Court in its ruling:

5. Before Facebook refused to act on the DMCA Takedown, they suggested to me that it would be more appropriate as a complaint for invasion of privacy. See **Exhibit C**. In other words, by their own admission, they had actual knowledge that the infringing content was designed primarily to harass and dox me, but they still refused to take the content down.

6. After their initial refusal to take the content down, I offered to explain to them why this content is not fair use. See **Exhibit D**. Despite my attempts to communicate in good faith, the defendant doubled down and reaffirmed its decision not to take action on the DMCA Takedown. See **Exhibit E**. This means that, even if Facebook may not have known previously that these infringements were just done to harass and dox me for its own sake, or that the individual defendants only got this footage in the first place by illegally downloading the stream using third party funds, they should be presumed to have actual knowledge of it now, since I was prepared to tell them these things, and show proof thereof. They have no excuse for refusing to entertain the evidence I have.

7. In other words, Facebook should be considered to have acted just as maliciously, and just

---

[3] Even to this day, the video is still up, so you don't even have to rely on the default admission. You can see the video by going to the following url: https://www.instagram.com/p/CP0oj9RFEae/

as much in bad faith, as the individual defendants, since they should be considered to now have actual knowledge of the individual defendants' malice and bad faith, as well as their illegal acquisition of the footage, and proceeded to side with them nonetheless. Even if their failure to take the content down was not willful and malicious at first, it has now become such.

8.      On or around June 8, 2021, the individual defendants send me a direct message (or DM for short) admitting that they "do not simply give a [F-word]" about my rights. See **Exhibit F**. Also, on or around June 9, 2021, Polano sent a DM on Instagram, calling me a bitch for my attempts to have them taken down. See **Exhibit G**. These message only further cement the bad faith and malice that the individual defendants are acting with (and which Facebook is also acting with, for the reasons already explained in ¶¶ 4-6).

9.      As of the second quarter of 2021 (the most recent quarter for which Facebook has provided a quarterly earnings statement), Facebook reported a quarterly net income of approximately $10.394 billion (that's *ten billion* dollars … with a B). See **Exhibit H**, which you can also see by going to the url of https://investor.fb.com/investor-news/press-release-details/2021/Facebook-Reports-Second-Quarter-2021-Results/.

## RELIEF REQUESTED

10.     Because of the aforementioned facts, I am entitled to injunctive relief and statutory damages.

## Injunctive Relief

11.     When a party is listed in default, all allegations except the amount of damages are admitted by default. See Fed. R. Civ. P. 8(b)(6). While damages are exempt from this default admission, injunctive relief is not exempt. Therefore, my entitlement to the injunctive relief requested in ¶¶ 124-126 of the Second & Third Amended Complaints is admitted by Facebook.

12.     As such, I ask that the Court issue an injunction ordering Facebook to do all of the following:

   (a)   Permanently remove the infringing content which forms the basis of the fifteenth count of copyright infringement.

   (b)   Permanently terminate the accounts of the individual defendants, including the Acerthornfanclub page, as well as the individual defendants' personal instagram and Facebook accounts, as well as any accounts with any websites or apps owned by Facebook, including but not limited to, WhatsApp, Oculus VR, LiveRail, Threadsy, CRTL-labs, Onavo, Redkix, Parse, and/or Atlas Solutions.

   (c)   To never again permit (either expressly or tacitly) the individual defendants to create any new accounts with any of Facebook's websites, or any websites owned by any subsidiary of Facebook, including but not limited to, Instagram, WhatsApp, Oculus VR, LiveRail, Threadsy, CRTL-labs, Onavo, Redkix, Parse, and/or Atlas Solutions. Any attempts by any of

the individual defendants to create new accounts must be blocked by Facebook before they even get the chance to use it to commit further copyright infringement.

13. This injunctive relief is reasonable and necessary to stop the individual defendants from harassing and doxxing me, as well as infringing on my copyright.

### Statutory Damages

14. The accidental livestream occurred on April 10, 2021. I registered the copyright on May 26, 2021, which is within three months of the date of publication. Also, the registration pre-dates the fifteenth count of copyright infringement (the only infringement relevant to this motion), which occurred on or around June 7, 2021. Therefore, I am entitled to statutory damages in this case.

15. Statutory damages can range from $750 to $150,000 for acts of intentional infringement. See 17 USC § 504(c)(2). Sometimes, the statutory damages can be reduced to as low as $200, but that requires that "the infringer sustains the burden of proving ... that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." See *id*. This makes such a reduction in damages effectively impossible in a motion for default judgment.

16. The infringement was absolutely willful. As I have demonstrated multiple times throughout this entire case, the individual defendants are acting with nothing but pure malice and hatred towards me. They have infringed on my copyright with wanton abandon, out of a desire to ruin my career as a Youtube content creator and Twitch streamer, simply because they have decided that I deserve to have my career ruined. The individual defendants have not even pretended like they are acting out of anything other than pure malice and hatred towards me. Therefore, the Court absolutely has the discretion to award me statutory damages in excess of $30,000, all the way up to $150,000. The only questions … what exactly *should* my statutory damages be?

17. Because statutory damages serve both compensatory and punitive purposes, plaintiff can recover statutory damages whether or not there is adequate evidence of the actual damage suffered by plaintiff or the profits reaped by the defendant. See L.A. News Serv., 149 F.3d at 996; Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1337 (9th Cir.1990); Harris, 734 F.2d at 1335. "Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. F.W. Woolworth Co. v. Contemporary Arts, Inc., 334 U.S. 228, 233 (1952).

18. Here, the individual defendants (and, by proxy, Facebook) acted with one of the worst motives possible: Malice for its own sake. But even barring that, Facebook still deserves to have the maximum statutory damages award entered against them. Why, you ask? Because they acted with exceptional levels of incompetence when handling the DMCA Takedown.

19. The Defendant's reason for refusing to take the content down is because it was being

done "for the purpose of commentary, criticism or parody." See **Exhibit B**. However, no reasonable person could possibly come to the conclusion that this infringement is fair use. There is nothing – absolutely nothing whatsoever – that could even arguably be considered transformative about this upload. At least with the fourteenth count of infringement (the one that occurred on Polano's Youtube channel on May 20, 2021), Polano at least attached some gum commercial clips. It is not enough to justify fair use, but at least it gives the individual defendants *something* they can point to and say "this is transformative." Then I can disagree that it's transformative, and we can proceed to litigate that issue. But for the Instagram post? You can't even point to anything and say "this is transformative," because there is literally nothing to point to! The Instagram post is literally just a verbatim copying of the "heart" of the accidental livestream, with no alterations or modifications whatsoever.

20.     The mere fact that an infringement is being done "for the purpose of criticism, commentary, or parody" does not, by itself, automatically qualify the infringement as fair use. First of all, the subjective intent of the infringer is irrelevant. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986) ("whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work"). Even if it were relevant, the mere fact that something is done for a fair use purpose does not, by itself, create fair use. See Campbell v. Acuff-Rose Music, Inc., 510 US 569, 581 (1994)

> "[P]etitioners' suggestion that any parodic use is presumptively fair has no more justification in law or fact than the equally hopeful claim that any use for news reporting should be presumed fair. The [Copyright] Act has no hint of an evidentiary preference for parodists … parody, like any other use, has to work its way through the relevant factors, and be judged case by case, in light of the ends of the copyright law." (citations omitted)

21.     Put simply, no reasonable person in Facebook's shoes could possibly look at that Instagram post and reasonably believe that there is the slightest basis for fair use.

22.     But even if literally any modification at all were provided, Facebook still has no excuse for its refusal to take the content down. Why? Because they suggested that my complaint would be more appropriate if I reported it as an invasion of privacy, rather than an infringement of copyright. See **Exhibit C**. This means that Facebook, by its own admission, knew that the infringements were being done in bad faith. This isn't even Facebook being held vicariously liable for the actions of the individual defendants. Facebook themselves had *actual knowledge* of the bad faith and malice of the individual defendants, and they *still* refused to take action!

23.     But even barring that, Facebook is still especially culpable in this case, because when I offered to explain to them why the infringements are not fair use (see **Exhibit D**) because the individual defendants stole the footage and are just looking to harass and dox me, they refused to listen to me. See **Exhibit E**. At this point, any plausible claim Facebook might have previously had to good faith in this case goes out the window. Put simply, if you are offered evidence and explanation and you respond by burying your head in the sand, that is not good faith.

24.     Last but not least, Facebook's vast financial wealth should justify a massive award of

statutory damages. Remember that statutory damages are meant to serve both a compensatory and punitive effect. To serve a punitive effect, they must be large enough that the defendant feels the blow. This means that wealthier entities must have larger statutory damages awards assessed against them in order for it to truly be a punishment.

25. In the second quarter of 2021 alone, Facebook reported net income (aka profits) of approximately $10,394,000,000. See **Exhibit H**. That's *ten billion* dollars … with a B! An award of $150,000 in statutory damages would amount to only 0.0014% of their profits for just one quarter. To put that in perspective, the salary of a US federal district court judge in the year 2021 is $218,600 per year, or $54,650 per quarter. If a federal district judge had to pay statutory damages of 0.0014% of his quarterly income, he would be paying statutory damages of seventy-nine cents! That's three quarters and four pennies!

26. When you look at it from that perspective, you realize that the maximum statutory damages award of $150,000 is not only just, but necessary if we are to have any hope of this having any deterrent effect at all. It is very likely that Facebook will not even *notice* this much money going missing, let alone learn any lessons from it, since this is equivalent of loose change in the sofa to them! We probably should give Facebook some statutory damages even greater than $150,000 if we really want to teach them a lesson about enabling and giving a platform to people who infringe on copyright out of pure malice and spite. Alas, the statute caps us at $150,000.

27. Facebook's vast wealth alone means they should have the full $150,000 assessed against them, since they will barely feel it even as-is. But when you combine that with the fact that the individual defendants (who Facebook enabled) are acting out of pure malice and hatred, rather than any motive that could even potentially be considered legitimate, and when you also throw in the fact that they acted with gross incompetence and in bad faith when they were responding to the DMCA Takedown, and Facebook's behavior in this case more than justifies the full $150,000 in statutory damages assessed against them.

## CONCLUSION

28. In conclusion, Facebook has defaulted in this case and has not defended itself. This means that their liability for injunctive relief and statutory damages is admitted by default, even if the amount of damages is not. But even on the amount of damages, Facebook more than deserves the full $150,000 in statutory damages, because …

   (a) It is necessary to have any hope of having any punitive effect against Facebook at all,

   (b) Facebook is enabling some uploaders who are infringing on copyright for the sole purpose of harassing and doxxing me for its own sake, entirely out of pure malice,

   (c) If they had simply viewed the infringing video at all, they would have realized that it contains no modifications or edits whatsoever that could even arguably lead to a finding of fair use,

(d)     They knew the infringement was done solely to harass and dox me, rather than criticize my work, yet they refused to take it down anyway, and

(e)     They refused to hear me out when I offered to help them understand that it isn't fair use.

29.     Facebook has done everything wrong in this case, at nearly every turn. It is a textbook example of how *not* to handle DMCA cases.

30.     Wherefore, premises considered, I respectfully request that the Court enter injunctive relief ordering Facebook to take down the infring content, ban the AcerthornFanClub Instagram page as well as all accounts owned by and/or associated with the individual defendants, not allow the individual defendants to create any more accounts with any of Facebook's services, and award me statutory damages of $150,000.

So requested on this, the 4th day of October, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com