UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                                    PLAINTIFF

VS.                             Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                  DEFENDANTS

### RESPONSE IN OPPOSITION TO [076] MOTION TO SET ASIDE ENTRY OF DEFAULT, AND REPLY IN SUPPORT OF [074] MOTION FOR DEFAULT JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response in Opposition to Doc. 76, Facebook Inc.'s Motion to Set Aside Entry of Default, and my Reply in Support of Doc. 74, my Motion for Default Judgment.

### FACTS

1.      This lawsuit was filed *pro se* on June 6, 2021. See **Doc. 1**. At the time, only Karl Polano was listed as a defendant. I was granted leave to proceed *in forma pauperis* on June 8, 2021. See **Doc. 6**. Because I was granted leave to proceed *in forma pauperis*, I am entitled to free service of process on all domestic defendants through the U.S. Marshall's service. See FRCP 4(c)(3).

2.      The First Amended Complaint was filed on July 29, 2021 (see **Doc. 11**), which listed Facebook Inc. as a defendant for the first time. This First Amended Complaint accused Facebook of hosting a fifteenth count of copyright infringement on its website instagram.com, uploaded by Karl Polano and two more individual defendants (who were, at the time, listed as Doe defendants), and that Facebook refused to take the content down when I issued a DMCA Takedown on it. Since I was granted leave to proceed *in forma pauperis*, the Court ordered that all named defendants at the time be served with process by the U.S. Marshall. See **Doc. 21, Page 6, Lines 12-15**. Facebook Inc. was served with process in accordance with that order on September 10, 2021. See **Doc. 59**. Alphabet Inc., who also uses Corporation Services Company as its registered agent for service of process, was served at the same time as Facebook. See **Doc. 58**.

3.      On September 1, 2021, I filed a Motion for Leave to File Second Amended Complaint. See **Doc. 38**. This motion sought to include a more recent count of infringement against Karl Polano, who had since broadcast the "heart" of my copyrighted work on his Twitch channel. The Court granted this leave on September 17, 2021 (see **Doc. 54**), and the Second Amended Complaint was filed later that same day (see **Doc. 55**). This Second Amended Complaint added Polano's infringement on Twitch as a new count of infringement, but also listed Amazon.com Inc (Twitch's parent company) as a new nominal defendant alongside Discord and Alphabet, as well as replacing the two Doe defendants with Frederick Allison and Raul Mateas, as I had since learned their names and addresses. However, the fifteenth count of copyright infringement – the only portion of this case in which Facebook Inc. has any interest – remained entirely unchanged between the First and Second Amended Complaints.

4.      On September 21, 2021, the Clerk's Office finally received from the Marshall the "summons returned executed" for both Alphabet and Facebook, stating that both parties were served eleven days prior. See **Docs. 58 & 59**. Despite knowing that a Second Amended Complaint had been filed in the case, superseding the First, the Clerk nonetheless accepted September 10, 2021 as the effective date of service for Alphabet and Facebook, and listed October 1, 2021 as the date when their responses were due.

5.      Meanwhile, on September 22, 2021, the Court ordered service be conducted on all the newly-named defendants (Amazon.com Inc., Frederick Allison, & Raul Mateas), but did not order the existing defendants (Polano, Alphabet, Discord, and Facebook) to be served anew. See **Doc. 60**.

6.      On October 1, 2021, Alphabet Inc. filed a timely Notice of Appearance and Stipulation to Extension of Time to File Answer. See **Docs. 66-69**. Facebook Inc., however, filed no such appearance. Therefore, early in the morning on October 2, 2021, I filed a Motion for Entry of Default. See **Doc. 70**. Default against Facebook Inc. was entered by the Clerk on the morning of October 4, 2021. See **Doc. 72**. I proceeded to get to work preparing a Motion for Default Judgment. Although the preparation of this motion was greatly hindered by the fact that all of Facebook's websites were suffering from a worldwide, multi-hour-long outage, I was nonetheless able to complete the motion and file it on the evening of October 4, 2021. See **Doc. 74**.

7.      Later that evening, I was contacted for the first time by Joe Peterson, representing Facebook Inc. See **Exhibit A**. This was the first inkling I had received that Facebook had any intention of appearing in the case. During this correspondance, Joe Peterson showed remarkable knowledge of the case's proceedings up to this point, suggesting that he has been following the case on Pacer for quite some time now.

8.      Despite my best attempts at negotiating a settlement with them, Facebook nonetheless proceeded to file their Motion to Set Aside Entry of Default (see **Doc. 76**).

### ARGUMENT

9.      For the reasons set forth below, Facebook has not shown good cause to set aside the entry of default.

**Facebook has not shown that service of process was ineffective or invalid.**

10.     Facebook's entire basis for setting aside the entry of default in this case rests on the assumption that they were not served with the "current operative" complaint. Their argument has no basis in the law.

11.     While Facebook does not explicitly admit this, they appear to concede that they were properly served with a copy of the First Amended Complaint. Rather, their entire basis for setting aside default is that, because an amended complaint replaces the previous complaint(s) in its/their entirety, the previous complaints are therefore treated as entirely non-existent.

12.     So far, Facebook's logic is sound. However, Facebook then takes the rather unprecedented approach that this also applies to the service of process. Facebook's position is that, whenever a complaint is rendered obsolete through amendment, that obsolescence automatically applies to any service of process, even if the service was otherwise perfectly valid. Moreover, they appear to believe that this obsolescence automatically gives them the freedom, without leave of court, to not respond to the summons within the time limit otherwise prescribed.

13.     Put simply, there is no basis in the law to support such a position. Facebook cites the case of Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010), but this case does not help them. That case held that a claim that was presented in an earlier version of the complaint but not preserved in subsequent versions is deemed voluntarily abandoned by the plaintiff and cannot be appealed. I have kept the "intentional infliction of emotional distress" and "§ 512(f)(2) Misrepresentation" claims in all subsequent versions of the Complaint in order to safeguard against that. It did not say anything about the validity of service of process. Facebook also cites an unpublished court order from July 7, 2020 where an Arizona court supposedly vacated an entry of default because of a "clerical error." However, they do not state what exactly this clerical error was. I was unable to find the specific order they refer to. On the website of casetext.com (the best site to find copies of unpublished court orders), the case of Stoica v. McDonnell has only two orders viewable on the site: on on June 30, 2020 and one on January 27, 2021, but not one dated July 7, 2020. See **Exhibit B**. But even if the clerical error in that case really was identical to this case (where an amended complaint automatically invalidated a past service of process), it still would not be binding on this Court.

14.     In fact, to the best of my knowledge, no court anywhere in the country – state or federal court alike – appears to have held that the filing of an amended complaint automatically invalidates past service of process and requires all parties to be served anew. Nowhere in the entirety of my legal research have I found any court that has even hinted that they believe such a thing to be the law.

15.     Even in this very case, the Court clearly felt that redundant service is unnecessary. The Judge felt no need to order re-service on past defendants when it issued its order directing service on the second amended complaint. The Clerk decided that the September 10 service was still valid and proceeded to calculate Alphabet's and Facebook's response deadline accordingly. I trust the Court to know what it's doing, especially on a matter as routine and commonplace as this. Complaints get amended all the time, especially when the plaintiff is proceeding pro se. By now, the Court should have the procedure of how to handle amended complaints down to a science. If Court did not feel it was necessary to re-serve the past defendants anew, it is most likely because it was not necessary to re-serve the past defendants anew.

16.     Even as an issue of first impression, Facebook offers no argument as to why the Court *should* adopt this wholly unprecedented policy. Why should the Court find this to be the law? What public policy benefit is served by such a policy? How is this equitable to the parties? What does this policy do, besides lead to pointless delay in cases? How is this the lesser of two evils compared to expecting parties to reply to amended complaints without having to be served with process more than once?

17.     If the Court were to adopt this policy, it would create a dangerous slippery slope, as this would cause many subsequent cases to slow to a crawl, all because of a technicality in the rules of procedure. Rather, it seems that Facebook simply made a blunder by failing to timely respond to this lawsuit, and rather than own to the fact that they *simply made a mistake* (after all, as the old addage goes, we are only human), they instead will avoid accountability at all costs, even if that means risking the destabilization of federal litigation procedure.

18.     However, for the sake of argument, let's assume that Facebook is correct when it argues that the filing of an amended complaint automatically, and without further input from the Court, invalidates service of process, and requires all defendants past and present to be served anew. Even if we assume that, their motion to set aside default should still be denied because …

**Facebook's claim for setting aside entry of default should fail because of laches.**

19.      The Court has discretion to deny a motion to set aside default or vacate default judgment if the movant is guilty of laches. See Meadows v. Dominican Republic, 817 F. 2d 517, 520-21 (9th Cir. 1987). Here, the default is caused primarily *because* of Facebook's indolence.

20.     As previously stated, both the judge and the clerk acted on the assumption that the first service of process was valid and did not need to be redone. On the night of October 4, 2021, defense counsel Joe Peterson contacted me over email and gave a heavy implication that he has been following the case on Pacer for quite some time now. This means that Peterson would have seen that the judge felt no need to order Facebook Inc to be served with process a second time. He also would have clearly seen the Clerk's notice that Facebook's response was due on October 1, 2021. He must have noticed Alphabet Inc making its timely appearance pursuant to that deadline. He also must have noticed my Motion for Entry of Default, as well as the Clerk's entry of default.

21.     Despite knowing that all parties involved were proceeding under the assumption that Facebook's and Alphabet's appearances were due on October 1, Peterson made no effort to notify the Court that he believed this deadline was erroneous until a couple of days after his client was entered in default.

22.     This is a prime case for laches. It is clearly established law that "equity aids the vigilant, not those who sleep on their rights." If Peterson knew that the parties in this case were acting pursuant to a deadline he believed was erroneous, why did he wait so long to object to the erroneous deadline?

23.     When he actually filed his motion, Peterson issued a statement that *could* be said to explain away his delay in responding. In ¶ 7 of his motion, he stated that "Facebook *recently* engaged undersigned counsel" (emphasis not in original). This would suggest that the delay in response is not the result of Peterson's indolence, but rather, the fact that Facebook did not retain counsel until October 4, 2021.

24.     That, however, does not help Facebook's plight. This just begs the question: Why didn't Facebook retain counsel immediately after being served? Why wait until default is entered

against you before you lawyer up? That is the kind of blunder you would expect from a pro se defendant who lives hand to mouth, not one of the largest and wealthiest social networking businesses in the world. All this excuse does is move blame away from defense counsel and onto the defendant directly. But that does not absolve them of laches. Whether counsel or client, the *party of Facebook Inc.* is indolent in this case in one capacity or another, and should have to suffer the consequences of their own procrastination.

25. Besides, let us not forget that the Second Amended Complaint did not get filed until September 17, 2021, but Facebook was served with process on September 10. Even if they were acting under the good faith belief that the second amended complaint negated the need for them to respond until they were served anew (which, again, has no support in the law), that did not come into play until a full week after they were served. What were they doing during the first week, when they had literally no excuse at all (at least no excuse they have offered) for failing to retain counsel?

26. As such, Facebook's motion to set aside default should fail due to laches.

### Facebook has not shown good cause to set aside default.

27. An entry of default may be set aside "for good cause." To find good cause, the Courts generally look to three factors, known as the "Falk Factors." Those factors are (1) whether the defendant engaged in culpable conduct which lead to the entry of default, (2) whether the defendant has a meritorious defense to the action, and (3) whether setting aside the entry of default would prejudice the plaintiff. See US v. Signed Personal Check No. 730, 615 F. 3d 1085, 1091 (9th Cir. 2010). These factors are disjunctive, meaning that a finding that any one of these factors weighs in favor of the plaintiff is singularly sufficient for the Court to refuse to set aside an entry of default.

28. While the Court does have discretion to set aside default even after finding one of the "good cause" factors to weigh in favor of the plaintiff, a finding that the defendant has failed to meet all three falk factors effectively compels the Court to refuse to set aside the entry of default. While the motion is still technically considered "discretionary" at that point, the Court's effective range of options is reduced so narrowly that it de facto has no discretion. See US v. Signed Personal Check No. 730, 615 F. 3d 1085 (9th Cir. 2010) (reversing a district court's "discretionary" decision upon finding a clean sweep of all three factors in favor of the appellant). I believe that is the case here, that Facebook has failed to meets its burden (low as that burden may be) on all three factors.

### Facebook has not shown that they have not acted culpably in allowing default to be entered against them.

29. To be culpable, a defendant must have been served with process and intentionally failed to respond. See US v. Signed Personal Check No. 730, 615 F. 3d 1085, 1092 (9th Cir. 2010). However, for a legally sophisticated entity, their "intentionality" is presumed. See *id* at 1093 ("When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality"). In the case of

legally sophisticated entities, "[i]f a defendant has received actual or constructive notice of the filing of the action and failed to answer, its conduct is culpable." See Franchise Holding II v. Huntington Rest., 375 F. 3d 922, 926 (9th Cir. 2004).

30. Facebook Inc. is, without a shadow of a doubt, a legally sophisticated entity. They are a publicly-traded company, with their stock routinely trading for hundreds of dollars per share. They own and operate several of the largest and most profitable social networking sites in the world. The "Facebook" brand is a household name. In their most recent quarterly earnings report, they reported a net income of more than ten billion dollars just over three months. If they do not meet the criteria to be considered a "legally sophisticated entity" for purposes of a default judgment, nobody does.

31. Facebook was absolutely served with process on September 10, 2021. While they are attempting to pretend like that service arbitrarily does not count, their position is wholly unsupported by the law, for reasons I have already discussed. Therefore, their failure to answer by October 1 makes them culpable, and there is no two ways about it. Their aforementioned laches only makes them even more culpable.

32. Just on this alone, the Court has the discretion to refuse to set aside the entry of default. See Meadows v. Dominican Republic, 817 F. 2d 517, 521 (9th Cir. 1987) ("If a default judgment is entered as the result of a defendant's culpable conduct, however, we need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the judgment were set aside").

### Facebook has not shown that they have meritorious defenses.

33. Of the three Falk factors, this one appears to be the most important. While the Ninth Circuit has held that an entry of default should only be upheld in "extreme circumstances," it has also held that "[a] complete lack of meritorious defenses itself constitutes an extreme circumstance" and that "If ... the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment." See US v. Aguilar, 782 F. 3d 1101, 1106-07 (9th Cir. 2015). Nowhere in my legal research has either of the remaining two falk factors been endorsed quite as strongly as being singularly sufficient to justify upholding an entry of default. Besides, although public policy usually favors resolving cases on the merits, when the defendant has no meritorious defense, that is, in essence, a resolution on the merits in and of itself, albeit a very expeditious one.

34. Despite this being the most important factor, it is also the one the defendant has failed most egregiously to meet. Facebook's motion spends all of *one sentence* addressing this factor, stating that it "fully intends to ... prosecute its affirmative claims on the merits including issues concerning the validity of Plaintiff's copyright registration and issues concerning fair use." That's it. That is literally all they have to say about their meritorious defenses.

35. Put simply, this is not enough. The burden to set aside default is not very high, but it is higher than this. "All that is necessary to satisfy the `meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." See Aguilar at 1107. This language

suggests that the standard is similar to (and perhaps even directly inspired by) the standard for reviewing a plaintiff's complaint for failure to state a claim upon which relief can be granted, in the sense that "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." See Ashcroft v. Iqbal, 556 US 662, 1949 (2009). This interpretation of Aguilar is further corroborated if you continue reading that case law. Later, when addressing Aguilar's skeleton argument regarding the applicable law, the Aguilar court states "though the burden of alleging a potentially meritorious defense is minimal,we will not manufacture this argument for them." See Aguilar at 1108 (citations and quotations ommitted).

36.   Facebook has done little more than vaguely state a few of the meritorious defenses it plans to make. It has not shown that it actually *has* those meritorious defenses with sufficient factual allegations, which, as I established above, is what is actually required when seeking to set aside an entry of default.

37.   In fact, of the two meritorious defenses they list (but provide no factual allegations to support), only one of them (fair use) even counts as a meritorious defense in the first place. The other one – the vaguely-defined "issues concerning the validity of Plaintiff's copyright registration" – is not even a meritorious defense; at best, it is a general descriptor under which some meritorious defenses may be loosely categorized. Now, if the defendant had alleged that I had knowingly lied about something on my application for copyright registration, and that, if I had told the truth, my registration would have been rejected by the Copyright Office, then that would constitute a potentially meritorious defense that would fall under that descriptor. See 17 USC § 411(b)(1). But Facebook has not alleged that, instead opting to go with some nebulous "issues" with the registration without telling us, or even hinting at, what exactly these "issues" are. Even if they wanted to go with that defense, they would still have to allege *sufficient facts* to constitute that defense (e.g. what exactly did I say on the application that was false, and how do they plan to prove that I *knew*[1] it was false?), which they have not done.

38.   Then the Defendant has alleged (without any factual allegations whatsoever) the defense of fair use. It is astounding that they would continue to push this defense. Not only do they offer literally zero factual allegations to support this defense (which, at the risk of sounding like a broken record, is required on a motion to set aside default), but I have already ripped that potential defense to shreds in the Motion for Default Judgment. As I stated in that motion, "[N]o reasonable person could possibly come to the conclusion that this infringement is fair use. There is nothing – absolutely nothing whatsoever – that could even arguably be considered transformative about this upload … You can't even point to anything and say 'this is transformative,' because there is literally nothing to point to! The Instagram post is literally just a verbatim copying of the 'heart' of the accidental livestream, with no alterations or modifications whatsoever." See **Doc. 74-9, ¶ 19**.

39.   For these reasons, the Defendant has utterly failed to show that it has any meritorious defenses. This alone is justification to refuse to set aside the entry of default.

---

1   Much like with perjury, proving that I knew it was false when I said it is just as essential to this defense as proving the statements to be false in the first instance.

**Facebook has not shown that I am not prejudiced by setting aside the entry of default.**

40.     Next, Facebook holds the burden of showing that I will not suffer prejudice if the entry of default is set aside. They have failed to meet this burden. Their entire case for claiming a lack of prejudice rests on the fact that, because they were never served with the "operative complaint," there never was any delay in the first place. That argument has already been thoroughly rebutted.

41.     Facebook has offered no other evidence or arguments to show that I would not be prejudiced. As such, the Court should find that they have failed to meet this burden for want of evidence. The Court should not manufacture claims for the defense and then pretend like they were the defendant's claims all along.

42.     But even if the Court insists on finding a lack of prejudice, that should not swing its decision on this motion. Plenty of default judgments have been upheld when this is the only factor weighing in favor of vacation. Whereas the "meritorious defense" factor appears to be the most important factor, this one appears to be the least important.

**The arguments in the Motion for Default Judgment for statutory damages remain uncontested.**

43.     It is worth noting that Facebook's Motion to Set Aside Entry of Default also dual-serves as their Response in Opposition to the Motion for Default Judgment:



44.     Despite this dual purpose, Facebook has made no effort to argue for a reduction in statutory damages (damages being the one part of a complaint is not admitted to automatically upon an entry of default). In the motion for default judgment, I made several arguments for why they should be held liable for the full $150,000 in statutory damages, plus injunctive relief. These arguments include the fact that Facebook is so wealthy that they will barely even feel the loss of $150,000, as well as the fact that their handling of the DMCA Takedown request demonstrates exceptional culpability on their end.

45.     As a backup plan, just in case their motion to set aside entry of default gets denied (since it was clearly thrown together in a hurry), any prudent attorney would also attempt to argue for a

reduction in damages. Even if they can't get out of the default, talking the court down to issuing a statutory damages award of only $750 would certainly be a nice consolation. At that point, they may opt to simply pay the judgment rather than continue fighting, like how many working class citizens will opt to simply pay their traffic tickets rather than fight them in court.

46.     And yet, Facebook has simply chosen not to do that. As a result, my assertion that statutory damages of $150,000 is just is now conceded to by the Defendant, pursuant to the doctrine of *qui tacet consentitur videtir*. If the Motion for Default Judgment were heard *ex parte*, like it was originally supposed to be, maybe the Court might have been justified in considering some potential (but unproven) mitigating circumstances to justify a reduction in statutory damages. After all, if the Court didn't have the authority to do that, the provision of the law that states that the amount of damages is not admitted automatically upon entry of default would be rendered toothless. But now, the Defendant has had the opportunity to respond and say its piece on the matter, but has chosen not to. At this point, it would be more unfair towards me if the Court were to manufacture some mitigating circumstances on Facebook's behalf than it would be unfair to Facebook to have to suffer damages for a motion they were never present for … because they *were* present for this one!

47.     Therefore, the Court should award me statutory damages of $150,000, plus injunctive relief.

## CONCLUSION

48.     In conclusion, Facebook has put together a rather sloppy case for setting aside default. They have chosen to put all their eggs in one unprecedented basket by advocating for the slippery slope provision that an amended complaint automatically renders all past service of process invalid. Not only does this position have absolutely no support in the law, but if it were adopted, it would create a dangerous slippery slope, since it would cause many subsequent cases to slow to a crawl. Furthermore, either the defense counsel is at fault for waiting until now to say anything about his belief that the deadline was erroneous, or Facebook is at fault for waiting so long to retain counsel. In the latter case, Facebook cannot even claim that their delay is partially excusable on the grounds that they were relying on the advise of counsel, since they wouldn't even have had counsel yet in that case!

49.     Meanwhile, the Defendant has utterly failed to prove that even one of the criteria for "good cause" to set aside an entry of default exists in this case. They have not shown that they are not culpable, they have not shown that I will not be prejudiced, and most of all, they have not shown that they have a meritorious defense to this case, instead deciding to simply say the words "fair use" and expecting that to suffice (which it does not), while also referencing some vague, nebulous "issues" with the copyright registration.

50.     Last but not least, the Defendant has opted not to contest the amount of damages in the motion for default judgment, meaning the amount of damages should now be conceded due thanks to the Defendant's failure to contest it.

51.     Wherefore, premises considered, I respectfully request that the Court deny the

Defendant's Motion to Set Aside Entry of Default, grant my Motion for Default Judgment, and enter judgment in my favor in the amount of $150,000 in statutory damages, as well as the injunctive relief to terminate the individual defendants' accounts and all content contained therein, while not allowing the individual defendants to create any new accounts on any Facebook-owned websites for any reason.

So requested on this, the 7th day of October, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
