UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                              PLAINTIFF

VS.                            Case 3:21-cv-04184-JSW

KARL POLANO, et al                                              DEFENDANTS

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AS TO FREDERICK ALLISON

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Memorandum of Points and Authorities in Support of my Motion for Default Judgment as to Frederick Allison in the above-styled action.

### FACTS

1. Beginning in February 2021, the individual defendants – which included Frederick Allison – began a hate campaign against me which lasted for months. This campaign included harassment, doxxing, hate speech on the basis of real or perceived disability, and many, many ban evasions. This campaign was done, not out of any legitimate desire to critique my work as a Youtuber or Twitch streamer, nor out of any desire to "expose" any legitimately bad thing I have done. Rather, it was done out of a desire to ruin my career, entirely for its own sake. The individual defendants (including and especially Allison) have made it crystal clear that their actions are motivated by nothing more than pure hatred, pure malice, pure site. See **Exhibit B**, ¶¶ 38-87.

2. On April 10, 2021, I accidentally turned on my streaming software without realizing it, allowing my viewers to see me in my daily activities. At one point in this video, some strange noises could be heard. These strange noises constitute the most interesting part of an otherwise banal video, and therefore constitute the "heart" of that stream. I registered a copyright on this stream[1] and, on April 28, 2021, uploaded it to my Youtube channel, but only made it available to people who paid my channel $20 per month. See **Doc. 55, ¶¶ 22-25** (automatically admitted to as a result of the entry of default).

3. Included among this hate campaign was no fewer than seventeen (17) counts of copyright infringement. See **Doc. 55, ¶ 85** (automatically admitted to as a result of the entry of default). The majority of these infringements amount to nothing more than the individual defendants sharing the "heart" of my accidental livestream, with absolutely no modifications or alterations whatsoever.

4. In addition to distributing this footage without my consent, it is also important to note that, in order to obtain this footage in the first place, he necessarily illegally downloaded it using

---

[1] It is currently on file with the U.S. Copyright Office under the Registration Number PA0002305616, if the Court would like to check it.

third party software. He then proceeded to share the illegal download with the other individual defendants, so they could participate in this hate campaign against me. See **Doc. 55, ¶¶ 83-84** (automatically admitted to as a result of the entry of default).

## ARGUMENT

5.      For the following reasons, the Court should award the maximum $2,550,000 in statutory damages to me, as well as extensive injunctive relief.

### Injunctive Relief Against Frederick Allison

6.      First, I am automatically entitled to all the injunctive relief I requested in the complaint. Because Frederick Allison was entered in default, that means everything in the complaint is automatically admitted to by him, except for the amount of damages. See Fed.R.Civ.P. 8(b)(6). Injunctive relief is not "amount of damages," so it is included in this rule.

7.      This means that I am automatically entitled to all of the injunctive relief I requested in ¶¶ 114-123 of the Second Amended Complaint.

8.      First, the Court should order Frederick Allison to cease and desist having any further contact with me. This includes over YouTube, Reddit, Discord, Twitch, or any other form of online or offline communication. An exception can be made if the communication is supervised by American police or an American court of competent jurisdiction. See **Doc. 55, ¶ 114** (automatically admitted to as a result of the entry of default).

9.      The Court should also order Allison to never again issue any DMCA Takedowns against me. If he believes any of my videos or streams infringe on his copyright, he should be required to go straight to suing me in court without issuing a DMCA Takedown and forcing me to issue a DMCA Counter-Notification first. This way, he can still enforce their rights if I am violating them, but I would be entitled to full due process before they can have any of my content removed. See **Doc. 55, ¶ 120** (automatically admitted to as a result of the entry of default).

10.     Allison should also be enjoined from having any communications with any person they know, or have reason to know, to be a member of my Discord server, or a regular audience member in my YouTube or Twitch channels. An exception can be made if the communication is entirely unrelated to me. This is to prevent them from ever doxxing me again.  See **Doc. 55, ¶ 121** (automatically admitted to as a result of the entry of default).

11.     The Court should also enjoin Allison from ever infringing on my copyright ever again. This injunction should hold, even if he reasonably believes his infringing content qualifies for fair use. It is clear, at this point, that Allison is incapable of acting in good faith when it comes to fair use. They will not consider fair use, but still insult, harass, and dox me because he just wants to. It is clear he will not act in good faith, so he should forever lose the right to make fair use of my copyrighted content. It is a harsh penalty, but it is one that is necessary. See **Doc. 55, ¶ 122** (automatically admitted to as a result of the entry of default).

12. Last but not least, Allison should be ordered to require similar compliance with all aforementioned injunctions with any person who is a member of any online communities in which they have any moderator or administrator authority. He should be ordered to immediately remove any material that harasses me, doxxes me, or infringes on my copyright, and to issue immediate, permanent, and irrevocable bans to the users who post it, and to continue to do the same in all future cases in perpetuity. He should be ordered to provide me with the ability to view any communities he creates or maintains, and any messages posted in those communities, so I may monitor those communities for violations of this injunction. See **Doc. 55, ¶ 123** (automatically admitted to as a result of the entry of default).

13. Remember that all of this was requested in the Second Amended Complaint, and since Frederick Allison is now listed in default, I am automatically entitled to all of this relief, even if I would not have gotten this relief if the case were actually litigated.

### Additional injunctive relief against Frederick Allison

14. Normally, in cases of default judgment, the relief granted by the Court cannot exceed what was requested in the Complaint. See Fed.R.Civ.P. 54(c). However, in ¶ 130 of the SAC, I requested "whatever other relief, at law or in equity, that the Court, in its discretion, deems appropriate to make me whole and to ensure this does not happen again." Because this is technically in the complaint, it is an exception to Rule 54(c). Pursuant to the request contained in this paragraph, there are a few additional injunctions I would like to request. Although I am not automatically entitled to these injunctions under Fed.R.Civ.P. 8(b)(6), I am hopeful that the Court will agree that they are in the interests of justice.

#### Impounding under 17 USC § 503

15. First, I ask that all of Allison's computers and smartphones be seized and impounded pursuant to 17 USC § 503. The custodian of these machines should be tasked with permanently and irreversibly deleting any content found on those hard drives which is copyrighted by me.

16. This injunction is expressly provided for by statute under 17 USC § 503. It is also appropriate to truly ensure that Allison will not be able to resume his copyright infringement after this case.

17. Allison should be ordered to pay for the costs of this impounding and purging. If he does not compensate the custodian of the machines for his services within a reasonable amount of time (say … 30 days), then the custodian should be allowed to take permanent ownership over the machines as an alternative form of compensation.

#### Cease and desist the doxxing

18. Allison should also be ordered to cease and desist sharing my personal information over the Internet. Although this Court has determined that my claim for "intentional infliction of emotional distress" has failed to state a claim, I also believe that this injunctive relief is reasonably necessary to make me whole against the fourth count of copyright infringement.

19.     After all, as I explain in the SAC, but for that count of infringement, he never would have learned of my real name and therefore would never have been able to share my personal information with anyone, even if he wanted to. Therefore, the fourth count of infringement can easily be said to be the proximate cause of the doxxing, which means that undoing the doxxing should be part of the injunctive relief in relation to that infringement.

**Injunctive Relief Against Alphabet, Discord, Amazon,
and Facebook (as well as their respective subsidiaries)**

20.     Although most of the corporate defendants have complied with the DMCA's "safe harbor" provisions, 17 USC § 512(j) provides for a limited form of prospective injunctive relief against internet service provides, even if they have safe harbor for everything else. It is upon this limited theory of liability that I seek injunctive relief against the four corporate defendants in this case.

21.     Pursuant to the court's authority under § 512(j)(1)(A)(ii) and § 512(j)(1)(B)(ii), I ask the Court to order the corporate defendants to permanently terminate all accounts known to be associated with Frederick Allison. This includes all accounts listed in **Exhibit B, ¶¶ 12(a), 12(b), 12(c), and 12(e)**, but also any other accounts known to be or suspected to be owned by Frederick Allison.

22.     However, as demonstrated by Exhibit B, ¶¶ 54-63, simply terminating these accounts alone is not likely to deter him, as there is, at present, nothing stopping him from simply creating new accounts in order to continue this pattern of harassment, doxxing, and copyright infringement. Of the three individual defendants, Allison is hands-down the worst offender in this regard. In fact, as I point out in **Exhibit B, ¶ 57 and ¶ 153**, he has demonstrated the ability to create a new account after his previous account being banned, in as little as three minutes!

23.     Fortunately, 17 USC § 512(j)(1)(A)(iii) grants the court broad power to issue additional injunctive relief when the circumstances require it. Therefore, pursuant to the relief I requested in **Doc. 55, ¶ 126**, I ask that the corporate defendants be ordered to never again allow (either expressly or tacitly) Allison to create any more accounts on their sites, ever again. Internet service providers are required to "reasonably implement" polices which not only terminate repeat infringers, but also to keep them from creating new accounts.

24.     The mere creation of new accounts does not, by itself, demonstrate that the ISP has failed to implement a DMCA-compliant termination policy. See Corbis Corp. v. Amazon. com, Inc., 351 F. Supp. 2D 1090, 1103 (2004). However, in the instant case, Allison has done far more than just create two new accounts over the course of a few months. He has created dozens upon dozens of new accounts, often within mere minutes of each other[2], and has made it perfectly clear that he has no intention of ever stopping for any reason[3]. Clearly, the corporate defendants' existing systems for keeping banned people from re-joining is not working in the slightest.

---

2   See **Exhibit B, ¶¶ 54-63**.
3   See **Exhibit B, Sub-Exhibit 51** ("Guess what, I'm still gonna be doxxing and exposing you to everyone and there's fuck all you can do it about it, ban as many accounts as you want because you're not getting rid of me. Hell even if you sue me I ain't going away") see also **Exhibit B, Sub-Exhibit 74** ("every time you stream im gonna be making accounts one after the other till you end the stream").

Justice and equity require that the corporate defendants be ordered to step up their game and do whatever it takes to keep him out, so I ask the Court to order them to do so, pursuant to its authority under 17 USC § 512(j)(1)(A)(iii).

25.     This is not impossible for the corporate defendants to achieve. At first glance, it seems that Allison could simply use a UTIPA (an "Un-Traceable IP Address") to get around an IP address ban. However, as I explain in **Exhibit B, ¶¶ 152-190**, the corporate defendants have a multitude of options at their disposal to stop people from rejoining after being banned, including but not limited to, putting stopper apps on their devices, not allowing the use of UTIPAs unless they are address-verified, and even (kept in their back pockets as a last resort) using litigation to enjoin people from rejoining. Although that last one may sound like a nuclear option, Allison has certainly proven that it will take a nuclear option to keep him out for good.

26.     And just for the record, I am not asking that the corporate defendants be enjoined to implement these specific measures (stopper apps, address verification, etc.) in this case. All I am asking is that the Court order the corporate defendants to "to not permit (either expressly or tacitly) Allison to create any new accounts for any reason." Like with most other provisions of the DMCA's safe harbor guidelines, how they go about achieving that end result can be left up to their reasonable (but not sole) discretion. As long as the *end result* is that Frederick Allison never again manages to create another account on any of their sites for any reason, I will be satisfied.

27.     If you need one final argument as to why the corporate defendants should be required to do this nuclear option, consider this: I checked Frederick Allison's address in the Georgia land records. You can find his land value records here: https://qpublic.schneidercorp.com/Application.aspx?AppID=846&LayerID=15440&PageTypeID=4&PageID=7010&Q=1100807928&KeyValue=0041C040A. As of 2020 (the most recent year for which records are available), his entire home – improvements and all – were valued at only $46,644.

28.     Think about that for a minute. You're honestly telling me that one man, living in a home valued at less than $50,000, is somehow able to outsmart and outmaneuver the highly-paid cyber security teams of four of the largest corporations in the world, and evade literally their *best efforts* to keep him from re-joining, to the point where they *literally can't stop him*, even if they wanted to? No, that would be ridiculous. If he really is that much of a genius at cyber security, what is he doing still living in a home (a *mobile* home, no less) valued at less than $50,000 in the back ends of nowhere? If he really had that prodigy level of cyber security skill, he in all likelihood would be living like a king on a multi-million dollar annual salary, perhaps even *working for* one of the four corporate defendants and their cyber security teams whose job it is to keep people like him out.

29.     It is infinitely more likely that the corporate defendants are simply … not doing the best they can. If they really wanted to (and I mean … if they *really, really* put their backs into it), they could crush him under their bootheels within a day or two. If they really buckled down and really doubled down, they could have him literally on his knees, literally *begging* for mercy, inside a month.

30.     If they really wanted to.

31.     When you look at it from that perspective, you realize that there are honestly very few measures the corporate defendants could take that would not be considered "reasonable" by their standards. Maybe if these were small sites, staffed by only about a dozen employees, then there are some things that might be considered unreasonable or prohibitively expensive to them. But for four of the largest corporations in the world, almost nothing is prohibitively expensive.

32.     Even if Allison manages to create a new account once or twice a year, I would not ask this Court to hold the corporate defendants in contempt for violating this injunction. As long as they were diligent in removing his accounts and take steps to keep him from rejoining for another year or two, then I would most likely be patient with the corporate defendants. As long as it's clear that they are doing the best they can, I'm willing to work with them, just so long as "the best they can" really does mean *the absolute best they can*.

33.     So in conclusion, I ask that the Court order the corporate defendants, pursuant to 17 USC § 512(j)(1)(A)(iii), to take whatever steps necessary to ensure that Allison never returns to their platforms ever again.

## Statutory Damages

34.     Last but not least, there is the issue of statutory damages. Unlike the injunctive relief, this is not established automatically as a result of Allison's entry of default. However, unlike in nearly every other tort that the law recognizes, statutory damages do not have to be proven. See Los Angeles News Serv. v. Reuters Television Intern., 149 F. 3d 987, 996 (9th Cir. 1998) ("Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant"); see also Peer Intern. Corp. v. Pausa Records, Inc., 909 F. 2d 1332, 1337 (9th Cir. 1990) ("a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant"); see also Harris v. Emus Records Corp., 734 F. 2d 1329, 1335 (9th Cir. 1984) ("Statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant"). So even in a default judgment, I should have a much easier time obtaining damages than in most other types of cases.

35.     To be eligible for statutory damages, I must have registered the copyright with the U.S. Copyright Office either before the infringement occurred, or within three months of the date of publication. See 17 USC § 412. The stream was originally broadcast on April 10, 2021. However, that stream was an accident, and therefore, it should be treated as a leak, rather than a publication, for purposes of copyright law. However, even if the Court insists on treating April 10 as the effective date of publication, the date on which I registered the copyright was May 26, 2021[4], which is still well within the three-month deadline of the publication date.

36.     Because there are seventeen (17) counts of infringement, Allison can be held liable for up to $2,550,000 in statutory damages. I believe he should be held liable for the maximum amount, since, as **Exhibit B** and all of its sub-exhibits clearly demonstrate, Allison (as well as the other

---

4   See Copyright Registration # PA0002305616.

individual defendants) has acted with exceptional malice and vindictiveness. Not only have they proven themselves entirely unscrupulous and single-minded in their desire to harass and dox me, not only have they proven that they entirely unwilling to stop for literally any reason, but by their own admission, they have no legitimate motive for doing so. I have done nothing to deserve being "exposed" over (such as committing some heinous crime), so they cannot even call themselves whistleblowers. I have done nothing to any of the individual defendants prior to them commencing their hate campaign against me, so they cannot even say they are motivated by revenge (not that this would be a valid motive in the eyes of the law anyway). They are doing this for one reason and one reasona lone: Because they can. They are not even *pretending* like there is anything more to it than that.

37.     In short, if this is not a case that justifies the maximum award of statutory damages just for its punitive effect alone, it is hard to imagine a case that would.

## CONCLUSION

38.     In conclusion, I am automatically entitled to the injunctive relief I requested in the complaint. I am also entitled to statutory damages of up to $2,550,000, and I believe that this is a sufficiently extreme case to justify this relief. In addition, I ask that the corporate defendants be ordered, not just to terminate all of Allison's accounts on their sites, but to do whatever it takes to ensure he never returns to those sites in any capacity.

39.     Wherefore, premises considered, I respectfully request that this motion for default judgment be granted.

So requested on this, the 6th day of November, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com