UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, d.b.a. ACERTHORN                                          PLAINTIFF

VS.                                   Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                        DEFENDANTS

## REPLY TO [096] RESPONSE IN OPPOSITION TO [092] MOTION FOR DEFAULT JUDGMENT AS TO FREDERICK ALLISON

    Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Reply to the corporate defendants' Response in Opposition to my Motion for Summary Judgment as to Frederick Allison.

### The corporate defendants are not in default, but Allison is.

1.    First, the corporate defendants allege that, because they are not in default in this case, any relief sought against them is automatically inappropriate in a motion for default judgment. This might be true if they were anything but nominal defendants. Instead. The only reason they are included as defendants in this case is so they can be ordered to terminate the accounts of the individual defendants, should I prevail against them on the merits. The corporate defendants do not dispute that this is their only role.

2.    Because Frederick Allison is in default in this case, I have prevailed on the merits against him. The corporate defendants do not appear to dispute this. Therefore, I am entitled to limited prospective injunctive relief from the corporate defendants.

### I have already moved to correct the error regarding the parent companies.

3.    Alphabet and Amazon insist that they are improperly listed as defendants in this case, and that they cannot be held liable for the acts of their subsidiaries. I would like to remind the court (and the parties) that I have indeed moved to correct this error. See **Docs. 71 & 73**. It was the Court, not me, who decided to defer judgment on that motion. See **Doc. 89**. I should not be punished for that.

### Injunctive relief under § 512(j) pertaining to Allison is still appropriate even though it is Polano who infringed on Twitch

4.    Next, the corporate defendants argue that "Instead, that crux of Mr. Stebbins' grievance as it relates to Amazon appears to be that a different defendant, Mr. Polano, posted allegedly infringing content in a Twitch livestream ... Mr. Stebbins is moving for default judgment against Mr. Allison – not Mr. Polano. Mr. Stebbins cannot use the actions of one defendant ... to justify relief against another, unrelated defendant." See **Doc. 96, Page 4, Lines 5-10**.

5.	The corporate defendants obviously have not read the operative complaint very thoroughly. In that complaint, I very clearly stated that the individual defendants were all working together to harass me, dox me, and ruin my career (and that copyright infringement was part of their hate campaign against me). My exact words in that complaint were "These are not merely three Internet trolls acting concurrently but independently of one another. It is one singular, collaborative effort." Because of this, the individual defendants should be jointly liable for each others' acts in this case. See **Doc. 55, ¶¶ 65-70**.

6.	Frederick Allison has been entered in default in this case. Therefore, the fact that he is jointly liable for the acts of the other two individual defendants is established automatically. See See Fed.R.Civ.P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided"). If a responsive pleading is required and no responsive pleading is filed (as is the case here), then the defendant obviously cannot deny anything. Therefore, when a party is entered in default, everything – absolutely everything in the entire complaint – except the amount of damages is admitted to automatically. This includes the accusation that he is actively conspiring with the other individual defendants and therefore should be held jointly liable for their acts pursuant to this conspiracy.

7.	Neither the corporate defendants nor counsel for the corporate defendants are at liberty to litigate this issue. The three undersigned counsel (Orenstein, Nangia, and Benyamin) are not representing Frederick Allison. Even if they were willing to represent him for free (aka pro bono), that still would require Allison's written consent. It would also require that the undersigned counsel clearly notify the court that they are now representing him by filing a "Notice of Appearance of Counsel" or some equivalent document, and then by filing a "Motion to Set Aside Entry of Default," since a party in default cannot do anything else in the case until his entry of default gets set aside. Until then, the undersigned counsel have no authority to litigate a factual dispute on behalf of the individual defendants.

8.	Nor do the corporate defendants have standing to litigate this factual dispute. It is clearly established, black letter law that, in order to have standing to intervene in a case, you must show that you have suffered some particularized injury in fact. See Lujan v. Defenders of Wildlife, 504 US 555 (1992). This is especially true when you seek to intervene in a case on behalf of another party who has not appeared; see Hollingsworth v. Perry, 133 S. Ct. 2652 (2013) (addressing the standing of intervenor defendants). "This is an essential limit on [the judiciary's power." See id at 2659. None of the corporate defendants have shown – or even implied – that they stand to suffer any kind of injury-in-fact as a result of my accusation (and the Court's subsequent determination) that the individual defendants are colluding with one another to harm me. Therefore, neither the corporate defendants nor the undersigned counsel have any right to dispute the finding that Mr. Allison is a co-conspirator with (and therefore jointly liable for the acts of) the other two individual defendants. For this reason, that finding of fact should go uncontested.

**17 USC § 512(j)(1)(A)(iii) gives the court broad discretion to issue preventive (rather than merely corrective) injunctive relief.**

9.	Next, the corporate defendants argue that the relief I request in the Motion for Default

Judgment is not available under 17 USC § 512(j). They state that this statute "does not allow for broad injunctive relief barring a user from ever opening an account with the site again." However, this interpretation of the law is misguided.

10.     17 USC § 512(j)(1)(A)(iii) says that the court may order "[s]uch other injunctive relief as the court may consider necessary…" This language purports on its face to grant the court broad, discretionary power issue injunctive relief beyond what is explicitly called for in the plain text of the statute. The only requirements for this injunctive relief are (A) that it is "necessary to prevent … infringement of copyrighted material specified" and that (B) that it be "the least burdensome to the service provider among the forms of relief comparably effective for that purpose." As I have already demonstrated (and will reiterate later in this Reply), the relief I request in **Doc 92-1, ¶ 23** meets both of those requirements.

11.     In fact, I consider it not only misguided, but an egregious dereliction of duty, even bordering on a violation of FRCP 11(b)(2), for the counsel of the corporate defendants to not notice this of their own accord. Lest we forget that chanceries and injunctive relief were created at English common law in the first place because actions at law were rigid in their application and ill-equipped to account for the individual circumstances, nuances, and complexities of the human interactions they were meant to govern. Suits in equity were invented precisely to combat this very sort of rigidity, enabling judges to issue tailor-made rulings based on the nuances of each case. Thus, for the corporate defendants to argue that the Court has no authority to grant any relief except that which is explicitly called for in the plain text of the statute not only requires they ignore the plain text of § 512(j)(1)(A)(iii); it also requires they ignore literally centuries of case law.

**There is precedent stating that sites must have a reasonable means of keeping banned users from rejoining.**

12.     Case law on this issue is, admittedly, quite scarce, but it is still out there. I have been able to find at least three cases (two of which are even published) which touch upon this topic. They are …

  (a)     Corbis Corp. v. Amazon. com, Inc., 351 F. Supp. 2D 1090 (2004)

  (b)     Io Group, Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132 (2008)

  (c)     Capitol Records, LLC v. Vimeo, LLC, 972 F. Supp. 2d 500 (2013)

  (d)     There is also an unpublished court ruling in the case of A & M Records v. Napster. Although unpublished, you can read the text of it here:
  https://www.law.uh.edu/faculty/cjoyce/copyright/release10/amrecords.html

13.     While the majority of these cases ultimately held that the sites still had their safe harbor, many of these holdings were based on circumstances not present in the instant case. In Corbis, Amazon was held blameless because (A) Amazon was not *intentionally* allowing the repeat infringer back on, and (B) the plaintiff offered no alternative means of preventing re-joining of

previously banned users that would be more effective than Amazon's then-current processes. Id at 1103-04. Here, I have shown the corporate defendants ample proof that their existing processes are about as effective at keeping out previously banned users as a spaghetti strainer is at holding water, and the corporate defendants are still insisting that they should not be required to update their processes despite being shown irrefutable proof that they don't work. Burying their heads in the sand in the fact of irrefutable proof is often treated by many courts as tantamount to actual intent, and I see no reason why this case should be an exception. Exceptions are usually only made for the most extreme and heinous acts where public policy requires only the most exacting standards for mental culpability, such as premeditated murder (and even then, usually only if the prosecutor is seeking the death penalty).

14. Second, I have indeed offered not one, but *three* alternative methods that the corporate defendants could use to more effectively keep people from rejoining. See Doc. 92, Exhibit B, ¶¶ 152-190.

15. In the case of Io v. Veoh, the plaintiff's case failed in large part because they were unable to point to any specific instance where a repeat infringer actually created any new accounts to get around a DMCA-mandated termination, instead offering up only the hypothetical possibility that it could occur. See *id* at 1144-45 ("Here, Io has presented no evidence that a repeat infringer has, in fact, established a new account under false pretenses, much less that Veoh has intentionally allowed that to happen"). Here, I not only have shown clear evidence that the individual defendants are indeed creating new accounts to evade bans, but are doing so at an alarming rate and frequency. See Doc. 92, Exhibit B, ¶¶ 54-63. The individual defendants (and especially Allison in particular) has demonstrated the ability to create new accounts multiple times per day, sometimes even multiple times *per hour*, and have made it exceptionally clear that he has no intention of ever stopping. This is not hypothetical; it is demonstrably what has happened.

16. While the corporate defendants are not required to affirmatively police their own sites for infringement, they are required to take action when they are made aware of infringement. See Capitol Record v. Vimeo at 514 (referencing an unpublished case where a site lost its safe harbor by regularly refusing to terminate repeat infringers despite being notified of the repeat infringement, even calling this policy "woefully inadequate"). See also the unpublished opinion in A & M Records v. Napster, where the court held that Napster had not reasonably implemented its policy in large part because …

> "Plaintiffs aver that Napster wilfully turns a blind eye to the identity of its users -- that is, their real names and physical addresses -- because their anonymity allows Napster to disclaim responsibility for copyright infringement. Hence, plaintiffs contend, infringers may readily reapply to the Napster system to recommence their infringing downloading and uploading of MP3 music files. Plaintiffs' expert, computer security researcher Daniel Farmer, declared that he conducted tests in which he easily deleted all traces of his former Napster identity, convincing Napster that it had never seen me or my computer before." (quotations and citations ommitted).

17. Here, the corporate defendants necessarily have actual knowledge that Allison (and all

the individual defendants) are repeat infringers, if for no other reason than the fact that they are parties in this case (nominal or otherwise), and therefore have actual knowledge of any facts that are proven in this case! Sure, they may not have had actual knowledge of these facts prior to the filing of this case, but that only matters if I am seeking to hold them liable for statutory damages by arguing that they have forfeited their safe harbor. I am not seeking to do that. Prospective injunctive relief under § 512(j) is plainly allowed against the corporate defendants, even if they have safe harbor for everything else. In this case, I only ask that the corporate defendants *prospectively* (not retrospectively) update their website registration processes to better protect against malicious ban evasions, since it is abundantly clear that their current processes do not work. I am not asking for the corporate defendants to be punished because they have not already done so.

### The relief requested in Doc. 92-1, ¶ 23 is necessary for the DMCA to have any teeth at all.

18.     Before this case was filed, I had a conversation on Discord with a user named DeFranko. In this conversation, he opined that my filing of DMCA Takedowns against the individual defendants was a completely toothless and futile endeavor because, in his words, "they can just repost [the infringing content]." See **Exhibit A**.

19.     Now, this gentlemen is not trained in the law. But this court and the defense counsel are. So you should know full well that the requirements of 17 USC § 512(i)(1)(A) and 17 USC § 512(j)(1)(A)(ii) to *terminate* the accounts of repeat infringers were put into the DMCA precisely in order to safeguard against this very type of incorrigibility. Were it not for those termination requirements, the requirements in § 512(g) and § 512(j)(1)(A)(i) to simply *remove* the content would indeed be just as toothless as DeFranko claims them to be.

20.     Along that same vein, common sense and the legal doctrine of *reductio ad absurdum*[1] dictate that the Court interpret the DMCA to require that users who are terminated pursuant to either § 512(i)(1)(A) or § 512(j)(1)(A)(ii) actually be kept out of the sites they were banned from. Otherwise, the *termination* requirements would be just as toothless as the *removal* requirements would be if there were *termination* requirements at all. At that point, if there is nothing (or, in the instant case, so little as to effectively be nothing) in place to stop those users from simply rejoining, that is tantamount to having no termination policy at all. After all, while the DMCA only requires reasonable, not perfect, implementation, and the law is not very clear on just what "reasonable implementation" means, one thing the courts universally agree upon is that a complete and total failure to enforce their policy whatsoever certainly not a "reasonable implementation." See *id* at 514 (citing numerous cases where safe harbor was lost over substantial failures to implement).

21.     When you look at it that way, you realize that interpreting the DMCA to require compliant websites to "have and reasonably implement" a policy to keep banned users from creating new accounts is the only reasonable interpretation. Any interpretation that does not require this renders the totality of the DMCA completely toothless.

22.     Put simply, while it is true that the corporate defendants are not required to *perfectly*

---

1   Which requires that courts avoid

implement their termination policies, only to *reasonably* terminate them[2], when a person is able to create new accounts with the scale and frequency that Allison has done, no reasonable trier of fact could determine that the sites' termination policies are "reasonably implemented" by any objectively reasonable metric.

23. Now, to be clear, I am not asking that this court impose a blanket theory of liability against any website who allows anyone to create a new account after being banned. To knowledge, there has not yet been any 9th Circuit or Supreme Court case (or any federal appellate case, for that matter) directly addressing this issue, so the Court *could* do that if it wanted. But I am not asking the Court to do that. Just like with fair use, I feel that justice favors a case-by-case analysis on whether a website's termination policies (and subsequent enforcement of those terminations) are "reasonably implemented." But in the instant case, when the individual defendants (and especially Allison) have proven that they can easily bypass a ban within minutes, creating multiple new accounts per day and even multiple new accounts per hour, then it is beyond doubt that the corporate defendants' termination policies are not "reasonably implemented" by any impartial definition of the term.

24. Therefore, I should be entitled to this prospective relief against the corporate defendants.

**I have indeed made a showing that the user was engaged in "infringing activity."**

25. Next, the individual defendants have alleged that "Mr. Stebbins does not allege (nor could he plausibly allege) that Mr. Allison 'engaged in infringing activity' on Amazon or Alphabet's websites." This is a bald-faced lie. I have indeed shown *dozens* of instances of infringing activity. See **Doc. 92, Exhibit B, ¶ 64**. Instead, it seems that the corporate defendants are falling back on their old argument that the parent companies are not liable for the acts of their subsidiaries. To that end, I defer you to ¶ 3 of this Reply.

**I have indeed shown the four factors listed under 17 U.S.C. § 512(j)(2).**

26. Next, the corporate defendants argue that I have not shown how the relief I have requested conforms to the requirements of 17 U.S.C. § 512(j)(2). This is also a bald-faced lie. I have indeed argued for all four of those factors in **Doc. 92, Exhibit B**, and all of its many, many sub-exhibits. If the corporate defendants were too lazy to actually *read that exhibit* before responding to this motion, then I should not be punished for their laziness.

27. The factor mentioned in § 512(j)(2)(A) is discussed in **Doc. 92, Exhibit B, ¶ 175 and ¶¶ 179-88**. The factor mentioned in § 512(j)(2)(B) is discussed in **Doc. 92, Exhibit B, ¶ 79-87** (specifically, that unless measures are taken to prevent the individual defendants from rejoining, rather than simply terminating them when and if they do rejoin, it is clear that the infringement will not stop). The factor mentioned in § 512(j)(2)(C) is discussed in **Doc. 92, Exhibit B, ¶¶ 152-176** (where I address how two of my three suggestions, if properly implemented, would provide only the slightest inconvenience to the vast majority of legitimate users of their sites). Furthermore, the corporate defendants have not alleged (let alone proven) that they would suffer *any* burden by the implementation of these procedures, let alone an undue burden.

---

2   See *Corbis* at 1103 ("An infringement policy need not be perfect; it need only be reasonably implemented").

28.     The factor mentioned in § 512(j)(2)(D) is the closest we come to a factor that I have failed to address. But even then, the corporate defendants have certainly not *offered* any alternative process. They attempt to argue that their existing DMCA takedown procedures are already sufficient, but that is not the case. As I have demonstrated, those procedures are woefully insufficient to stop the infringement for even one day, let alone long enough that the individual defendants will eventually get tired and give up. Lest we forget that § 512(j)(1)(A)(iii) (as opposed to (j)(1)(A)(ii)) authorizes the court to enjoin the corporate defendants to take proactive, preventive measures, not merely reactive, corrective measures. The existing procedures the corporate defendants offer up are only sufficient for the latter purpose and make no effort to serve the former purpose. Therefore, those processes are not "comparably effective" to taking actual preventive measures, and so a prospective injunction ordering the corporate defendants to adopt preventive measures is appropriate.

## Conclusion

29.     For the reasons set forth above, the corporate defendants have not shown that they are entitled to not have to implement any new procedures in order to prevent infringement. They seem wholly opposed to having to take steps to *prevent* the individual defendants from rejoining their sites so they can recommence their infringing activity, yet they offer no compelling arguments for why they should not be required to do so when the DMCA clearly calls for such relief.

30.     The individual defendants (and especially Allison) have demonstrably bypassed their bans at a rate that could charitably be described as "alarming." Because the individual defendants are not only *able* to bypass the bans, but are able to do so *with absurd ease*, the corporate defendants' termination policies cannot be considered "reasonably implemented." For that matter, I am not even asking for the corporate defendants to lose their safe harbor in this case and become jointly liable for the infringement. I am merely asking that they be ordered to prospectively start implementing their termination policies in a reasonable way ("reasonable" meaning they require great effort and/or computer skills to bypass, and cannot be bypassed multiple times per sitting). That is all I ask.

31.     Wherefore, premises considered, I respectfully request that the Motion for Default Judgment be granted in its entirety. So requested on this, the 23rd day of November, 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
