AO 440 (Rev. 06/12) Vorladung in einer Zivilklage

WR210942 0

## GERICHTSHOF DER VEREINIGTEN STAATEN
### für die
### Nördlicher Distrikt von Kalifornien

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| DAVID A. STEBBINS | ) | |
| *Kläger(s)* | ) | |
| v. | ) | Fall Nr. 21-cv-04184-JSW |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| KARL POLANO, et al | ) | |
| *Beklagte(s)* | ) | |

## BESCHWERDE IN EINER ZIVILAKTION

An: *(Name und Anschrift des Beklagten)*

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

Gegen Sie wurde eine Klage eingereicht.

Innerhalb von 21 Tagen nach Zustellung dieser Vorladung an Sie (ohne den Tag, an dem Sie sie erhalten haben) – oder 60 Tage, wenn Sie die Vereinigten Staaten oder eine US-Behörde oder ein Fed. R.Civ. S. 12 (a) (2) oder (3) – Sie müssen dem Kläger eine Antwort auf die beigefügte Beschwerde oder einen Antrag gemäß Regel 12 der Bundeszivilprozessordnung zustellen. Die Antwort oder der Antrag muss dem Kläger oder dem Anwalt des Klägers zugestellt werden, dessen Name und Anschrift lauten:

David A. Stebbins
123 W. Ridge Ave.,
APT D, Harrison, AR 72601

Wenn Sie nicht antworten, wird gegen Sie ein Versäumnisurteil wegen des in der Beschwerde geforderten Rechtsbehelfs erlassen. Sie müssen Ihre Antwort oder Ihren Antrag auch beim Gericht einreichen.

*SCHREIBER DES GERICHTS*

Datum: 8/4/2021

*Susan Y. Soong*

_____

Unterschrift des Sachbearbeiters oder
stellvertretenden Sachbearbeiters

GERICHTSHOF DER VEREINIGTEN STAATEN
NÖRDLICHER BEZIRK VON KALIFORNIEN

DAVID STEBBINS, d.b.a. ACERTHORN                          KLÄGER

VS.                                    Case 3:21-cv-04184-JSC

KARL POLANO, d.b.a. SOFIANNP,
ALPHABET INC.,
DISCORD INC.,
FACEBOOK INC.,                                          ANGEKLAGTE
AMAZON.COM, INC.
JOHN DOE #1, d.b.a. INITIATIVEKOOKIE, und
JOHN DOE #2, d.b.a. TGP482,

## DRITTE GEÄNDERTE BESCHWERDE

Kommt jetzt, Pro-se-Kläger David Stebbins, der hiermit die folgende geänderte Klage, wie vom Gericht am 30. Juni 2021 angeordnet, einreicht (siehe Dok. 10). In dieser Beschwerde behaupte ich mindestens fünfzehn (15) Fälle von Urheberrechtsverletzungen (und möglicherweise mehr, sobald die Entdeckung in diesem Fall beginnt), einen Fall von anhaltender vorsätzlicher Zufügung von emotionalem Stress[1], einen Fall von falscher Darstellung unter Verstoß gegen 17 USC § 512(f)(1) und eine Anklage wegen falscher Darstellung unter Verstoß gegen 17 USC § 512(f)(2).

## I: NAMEN & STANDORTE DER PARTEIEN

1.      Ich bin Youtuber und Twitch Streamer, der unter dem Pseudonym Acerthorn bekannt ist. Dies ist auch der Alias, den ich auf Discord verwende, sowie auf Reddit. Meinen YouTube-Kanal finden Sie unter der URL www.youtube.com/acerthorn. Meinen Twitch-Kanal finden Sie unter der URL von www.twitch.tv/acerthorn. Mein Reddit-Konto kann unter der URL www.reddit.com/user/acerthorn gefunden werden. Meinen Discord-Server finden Sie unter der URL www.discord.com/invite/8EkdSvWV9P.

2.      Karl Polano ist auch Youtuber und Twitch-Streamer. Auf YouTube, Twitch und Discord läuft er unter dem Pseudonym SofiannP. Auf den Websites von Reddit und Urban Dictionary trägt er jedoch den Alias SomeGuyFromLosSantos. Seinen YouTube-Kanal finden Sie unter der URL www.youtube.com/sofiannp. Seinen Twitch-Kanal finden Sie unter der URL www.twitch.tv/sofiannp. Seinen Discord-Server „Great Six" finden Sie unter der URL https://discord.gg/yjA7bwE. Sein Reddit-Konto kann unter der URL www.reddit.com/user/someguyfromlossantos gefunden werden. Seinen Urban Dictionary-Account finden Sie unter der URL www.urbandictionary.com/author.php?author=SomeGuyFromLosSantos. Ich gehe derzeit davon aus, dass er unter folgendem Namen und Adresse mit Prozess zugestellt werden kann:

---

1  Obwohl dieses Gericht diese Klage von Amts wegen abgewiesen hat, werde ich diese Ansprüche dennoch in der Beschwerde beibehalten, damit die Abweisung noch angefochten werden kann.

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

3.      Alphabet Inc. ist die derzeitige Muttergesellschaft von YouTube LLC, die ihrerseits die Website von www.youtube.com besitzt und betreibt, die derzeit die größte Video-Sharing-Website der Welt ist. Alphabet ist in diesem Fall bereits durch ihren Anwalt Jason Wollick aufgetreten. Youtube LLC hat der Zustellung per E-Mail durch Rechtsanwalt Jason Wollick zugestimmt.

4.      Discord Inc. ist ein Unternehmen, das die „Discord"-App besitzt und betreibt, eine kostenlose Chat- und Socializing-App, die für Android-, IOS- und Windows-Betriebssysteme verfügbar ist. Einzelpersonen und Unternehmen können Gruppen von Chatrooms einrichten, die als "Server" bezeichnet werden. Karl Polano hat einen Discord-Server mit dem Namen "Great Six". Ich habe auch einen Discord-Server, der einfach "Acerthorn" heißt. Discord Inc. kann unter folgendem Namen und Adresse prozessual zugestellt werden:

Ruth Chang
444 De Haro St,
Suite 200
San Francisco, CA 94107

5.      Facebook Inc. ist ein Unternehmen, das die Tochtergesellschaft von Instagram LLC besitzt und betreibt, die wiederum instagram.com besitzt und betreibt. Beide Unternehmen können mit Prozess unter den folgenden Namensadressen bedient werden:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

6.      Amazon.com, Inc. ist die Muttergesellschaft von Twitch Interactive, Inc., die die Website von Twitch.tv besitzt und betreibt.

(a)      Amazon kann mit Prozess unter folgendem Namen und Adresse bedient werden:

Amazon.com, Inc.
Corporation Service Company
Attn: Legal Department – Legal Process
300 Deschutes Way SW,
Suite 208 MC-CSC1
Tumwater, WA 98501

(b)      In der Zwischenzeit kann Twitch Interactive Inc. unter folgendem Namen und Adresse bedient werden:

\

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

7.  Frederick Allison verwendet hauptsächlich den Online-Alias "Allison" oder eine
Variation davon (z. B. 6. InitaitiveKookie7767, Allison353 usw.). Er hat jedoch auch unter
verschiedenen anderen Decknamen mit mir interagiert, darunter Jonathan Allison, TK Baha[HM]
und zahlreiche Variationen der Phrasen "Patient Pea", "Old Zuccini", "Cap Spirited", "Incognito
Pelican", " Spinning Monkeys", „We Lei Xiao Yung" und „Sigmi Nultz". Er kann unter
folgendem Namen und Anschrift prozessual zugestellt werden:

Fredarick Allison
2057 Knob Lane
Hiawassee, GA 30546

8.  Raul Mateas ist ein YouTuber mit dem Pseudonym "TGP482". Seinen YouTube-Kanal
finden Sie unter der URL www.youtube.com/tgp482. Obwohl er keinen eigenen Discord-Server
oder Twitch-Kanal hat, hat er Konten, die er verwendet, um Streams anzusehen (einschließlich
Polanos „SofiannP"-Twitch-Kanal) und auf verschiedenen Discord-Servern (einschließlich
Polanos „Great Six"-Server) zu chatten. . Seine Konten bei beiden Sites können gefunden
werden, indem Sie auf die URL von www.twitch.tv/tgp482 gehen und nach dem Discord-Konto
von TGP482#74121 suchen. Er kann unter folgendem Namen und Anschrift prozessual
zugestellt werden:

Raul Mateas
12th Shelton Avenue
Newark on Trent, Nottinghamshire
NG24 4NX
United Kingdom

## II: PERSÖNLICHE UND SACHLICHE GERICHTSBARKEIT

9.  Dieses Gericht ist in Bundesfragen zuständig für die Anklagepunkte von
Urheberrechtsverletzungen und die Verletzungen von 17 USC § 512 (f). Dieses Gericht hat eine
ergänzende Zuständigkeit für die unerlaubte Zufügung von emotionalem Leiden.

10.  Dieses Gericht ist persönlich für Alphabet, Discord und Facebook zuständig, da die drei
Unternehmen ihren Hauptsitz in den Städten Mountain View, San Francisco bzw. Menlo Park
haben, die alle im Northern District von Kalifornien liegen. Dieses Gericht ist für Amazon.com,
Inc. langarmig zuständig, da die sechzehnte Anklage wegen Urheberrechtsverletzungen in diesen
Fall einbezogen wird.

11.  Dieses Gericht ist persönlich für Karl Polano und Raul Mateas zuständig, da sie am 25.
Mai 2021 bzw. 16. September 2021 DMCA-Gegendarstellungen bei Youtube ausgefüllt haben.
Beim Einreichen dieser Gegendarstellungen stimmten sie schriftlich der Zuständigkeit des

Bundesbezirksgerichts zu, in dem YouTube seinen Sitz hatte (das ist der nördliche Bezirk von Kalifornien). Dieses Gericht hat die persönliche Zuständigkeit für Frederick Allison, weil er und Mateas Komplizen bei Polanos Bemühungen sind, mich zu belästigen, zu betäuben, meine Karriere zu ruinieren und mein Urheberrecht zu verletzen. Dabei handelt es sich nicht nur um drei gleichzeitig, sondern unabhängig voneinander agierende Internet-Trolle. Es ist eine einzige, gemeinschaftliche Anstrengung.

### III: FAKTEN DES FALLS

12.     Die folgenden Fakten sind notwendig, um den Fall zu verstehen:

### III-1: Belästigung durch Allison

13.     Dies alles begann am 27. Februar 2021, als Allison unter dem Pseudonym „Allison" einen Kommentar auf meinem YouTube-Kanal veröffentlichte, in dem er zugab, vorsätzlich und in böser Absicht versucht zu haben, meinen YouTube-Kanal mit dem sogenannten „Ansichten mit geringer Retention."

14.     YouTube verwendet einen Algorithmus und maschinelles Lernen, um zu entscheiden, welche Kanäle unter Ausschluss anderer beworben werden sollen. Es ist kein Geheimnis, dass die beiden wichtigsten Faktoren, die der Algorithmus bei der Entscheidung, welche Videos und Kanäle beworben werden sollen, berücksichtigt, Aufrufe und Zuschauerbindung sind. Um eine hohe Zuschauerbindung zu erreichen, muss ein Zuschauer nicht nur auf ein Video klicken und mit der Wiedergabe beginnen, sondern tatsächlich einen großen Teil des Videos ansehen. Im Idealfall sollte sich der Zuschauer dann ein anderes Video desselben Kanals ansehen. Dadurch wird dem Algorithmus angezeigt, dass der Zuschauer vom ersten Video so begeistert war, dass er sehen möchte, was der Kanal sonst noch zu bieten hat, was wiederum bedeutet, dass der Kanal dem Benutzer häufiger beworben werden sollte andere Benutzer, die einen ähnlichen Geschmack haben. Wenn ein Betrachter jedoch auf ein Video klickt und dann nach nur wenigen Sekunden sofort wieder wegklickt, geht der Algorithmus davon aus, dass das Video keine weitere Belichtung verdient und vergräbt das Video entsprechend.

15.     Vor diesem Hintergrund gab Allison zu, dass er den letzten Teil des Algorithmus absichtlich ausnutzte, um meinen Kanal vorsätzlich und in böser Absicht zu sabotieren und ihn am Wachstum zu hindern.

16.     Wenn Allisons Aktionen hier geendet hätten, hätte ich keine nennenswerten Maßnahmen ergriffen. Ich habe schon mit Trollen zu tun gehabt. Normalerweise blockiere ich sie einfach und mache mit dem Leben weiter. Am 1. März 2021 hat mich Allison jedoch auch auf Reddit kontaktiert. Ich hatte eine Frage zum Starten eines Livestreaming-Kanals auf Twitch gepostet und wollte wissen, wie man eine bestimmte Funktion meiner Streaming-Software verwendet. Am 1. März 2021 hat Allison – unter dem Pseudonym InitiativeKookie7767 agierend – in diesem Thread gepostet und erklärt: „Idk, aber deine Videos sind ziemlich beschissen, ich hoffe, du genießt den Tod deines Kanals."

17.     Auch dies allein wäre keine große Sache gewesen. Unter normalen Umständen hätte ich

ihn einfach blockiert, ihn den Reddit-Moderatoren und -Administratoren wegen einer möglichen Sperrung der Site gemeldet und dann weitergezogen. Das Problem hier ist, dass er mich auf mehreren Websites belästigt. Es reicht nicht, dass er sagt, dass er meine Inhalte nicht mag und glaubt, dass ich ein schrecklicher YouTuber bin. Er überwacht meine Social-Media-Präsenz wie ein Geier und sucht nach jeder Gelegenheit, die er finden kann, um mich zu belästigen.

18.    Am 2. März 2021 hat Allison gleich zwei Videos auf seinem eigenen YouTube-Account gepostet. Einer davon hieß „RIP Acerthorn (2018-2021)." Der andere hieß "Acerthorn EXPOSED as Being ... anmaßend!" Beide Videos verwendeten Inhalte von meinem YouTube-Kanal, und daher habe ich DMCA-Takedowns für sie ausgestellt.

19.    Am 14. März 2021 löschte Allison seine Konten auf YouTube und Reddit und ersetzte sie durch Konten mit den Aliasen PatientPea9364 und PatientPea42. In diesen Konten gab er an, dass er InitiativeKookie unter einem neuen Namen sei und dass er jedes Mal, wenn ich ihn bei Mods meldete oder DMCA-Takedowns gegen ihn ausstellte, einfach einen neuen Account erstellen würde, um alle Sperren oder Blockierungen zu umgehen. Er hat auch das Video „RIP Acerthorn (2018-2021)" erneut gepostet und mich auf Reddit kontaktiert, um mir einen Link zu diesem Video zu geben. Mit anderen Worten, es reichte nicht aus, dass er mich einfach nur belästigte. Er wollte, dass ich weiß, dass er mich belästigt. Die Administratoren von Reddit griffen schließlich ein und verhängten eine Sanktion gegen PatientPea, aber er löschte nur dieses Konto und erstellte ein neues, auch PatientPea genannt, aber mit einer neuen Nummer am Ende. Dann kontaktierte er mich über die „Private Chat"-Funktion von Reddit und fuhr fort, verschiedene beschimpfende Beleidigungen gegen mich auszusprechen. Dies dauerte mehrere Wochen, wobei ich ihn den Reddit-Administratoren meldete, er sanktioniert wurde, das Konto löschte, ein neues Konto unter einem anderen Namen erstellte und mich dann wieder belästigte. Und wieder. Und wieder. Dieses Muster hielt mehrere Wochen an.

20.    Am 18. März 2021 trat Allison unter dem Pseudonym „InitiativeKookie" meinem Discord-Server bei. Seine erste Nachricht lautete: "Ich habe dir ein Geschenk mitgebracht." Dieses „Geschenk" war in der Tat eine Menge unerwünschter pornografischer Bilder. Meiner Meinung nach sollte dies eine sexuelle Belästigung darstellen. Das vielleicht schockierendste und entsetzlichste dieser Bilder war das Bild eines Mannes, der versuchte, seinen eigenen Penis mit einem Steakmesser abzuschneiden.

21.    Ende März 2021 hat Allison ein neues Discord-Konto mit einem anderen Namen erstellt, den ich nicht kannte. Er verbrachte mehrere Wochen in meinem Discord, war höflich und höflich und nahm ohne Unterbrechung am Chat teil. Am oder um den 13. April 2021 bat er darum, Moderator für meinen Discord-Server zu sein. Ich habe ihn zu der Stelle befragt und er hat auf das Vorstellungsgespräch vorbildlich reagiert, also habe ich ihn für die Stelle ernannt. Ich wachte am nächsten Tag (14. April 2021) auf und stellte fest, dass fast alle von meinem Discord-Server verbannt waren und der neue Moderator seinen Namen in InitiativeKookie geändert hatte, um sein wahres Gesicht zu zeigen.

### III-2: Versehentlicher Livestream am 10. April 2021

22.    Am 10. April 2021 schaltete sich meine Livestream-Software von selbst ein, ohne dass

ich es merkte. Es blieb fast zwei Stunden an, bevor ich merkte, dass es eingeschaltet war, und es schloss. Während dieses zufälligen Livestreams konnten meine Zuschauer sehen, wie ich alltägliche Aktivitäten ausführte, wie z.

23. An einer Stelle des Videos waren jedoch einige seltsame Geräusche zu hören. Ich weiß nicht, was diese seltsamen Geräusche waren (die beste Beschreibung, die ich geben kann, ist, dass es wie das Bellen eines Hundes klang, aber ich habe keinen Hund), und ich habe sie nicht verursacht. Aber was auch immer sie waren, diese seltsamen Geräusche bildeten den einzigen interessanten und einprägsamen Teil dieses ansonsten langweiligen und inhaltslosen Livestreams. Als solches bildet es das „Herz" dieses Livestreams.

24. Ich habe diesen versehentlichen Livestream beim U.S. Copyright Office registriert. Das Archiv dieses zufälligen Livestreams habe ich auch auf meinen YouTube-Kanal hochgeladen. Der Zugriff auf dieses Video ist jedoch nur auf diejenigen beschränkt, die mir mindestens 20 US-Dollar pro Monat zahlen.

25. Bisher hat mir noch niemand die $20 pro Monat bezahlt, um dieses Video anzusehen. Inzwischen gibt es keine Möglichkeit, direkt von Twitch herunterzuladen. Dies bedeutet, dass jede Person, die eine Kopie dieses Livestreams erworben hat, dies notwendigerweise durch illegales Herunterladen des Streams mit Software von Drittanbietern getan hat.

### III-3: Die anhaltenden Belästigungen und Urheberrechtsverletzungen von Allison

26. Am 10. April 2021, ein paar Stunden nach meinem versehentlichen Livestream, hat Allison ein Video auf seinen YouTube-Kanal hochgeladen. Dieses Video ist ein Clip aus meinem zufälligen Livestream. Insbesondere enthielt es den einzigen interessanten Teil dieses Livestreams und die Gesamtheit dieses einzigen interessanten Teils. Allison hat keinerlei Modifikationen oder Veränderungen am Clip vorgenommen, geschweige denn irgendwelche Modifikationen, die als transformativ angesehen werden könnten. Dieses Video usurpiert fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. Die Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten"). Am 10. April 2021 um 16:11 Uhr (zentrale Zeitzone) habe ich eine DMCA-Deaktivierungsmitteilung herausgegeben, die am selben Tag um 17:25 Uhr (zentrale Zeitzone) von YouTube entfernt wurde.

27. Am 11. April 2021 erstellte Allison einen Account auf der Video-Sharing-Site von Vimeo, wo er das gleiche Video wie oben erwähnt veröffentlichte, wiederum ohne jegliche Änderungen. Auch dieses Video usurpiert den Markt für den eigenen versehentlichen Livestream der Kläger fast vollständig. D ie Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die

Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie das, wenn sie dasselbe kostenlos von einer anderen Website erhalten können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

28.    Ich habe dieses Video auch über eine DMCA-Gegendarstellung entfernen lassen. Im Gegensatz zu YouTube wurde jedoch, als ich diese Deaktivierung auf Vimeo veröffentlichte, mein richtiger Name (David Stebbins) im Gegensatz zu meinem Alias Acerthorn angezeigt.

29.    Am 12. April 2021 erstellte Allison einen neuen YouTube-Kanal (auch InitiativeKookie genannt, aber anders als der erste), auf dem er ein kurzes Video veröffentlichte, das vollständig aus einem Clip aus dem oben genannten versehentlichen Livestream bestand. Dieses kurze Video zeigte den einzig interessanten Teil dieses zufälligen Livestreams und zeigte die Gesamtheit dieses einzigen interessanten Teils. An dem Clip wurde nichts geändert. Dieses Video usurpiert fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. D ie Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten"). Ich habe umgehend eine DMCA-Deaktivierung für dieses Video ausgestellt und YouTube hat es ungefähr eine Stunde später entfernt.

30.    Am 13. April 2021 hat Allison einen neuen YouTube-Kanal namens Incognito Pelican erstellt. Anschließend lud er den gleichen Clip wie zuvor – wieder ohne Änderungen – mit dem Videotitel „Cod Zombies be like (acerthorn moment) #shorts" hoch. Außerdem hat er den gleichen Clip in einem 5-Sekunden-Video hochgeladen. Diesmal nahm er jedoch eine sehr kleine, de minimus, nicht transformierende Änderung am Video vor: Er beendete den Stream-Clip mit einigen Gummi-Werbeclips. Er lieferte noch die Gesamtheit des einzigen interessanten Moments aus dem zufälligen Livestream. Als solches usurpiert dieses Video fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. D ie Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

31.     Später am 13. April 2021 erhielt ich eine Nachricht auf Reddit von Allison, diesmal unter
dem Pseudonym InitiativeKookie34, die mich darüber informierte, dass der DMCA-Takedown,
den ich auf Vimeo gegen ihn ausgestellt hat (siehe ¶ 28 für Details), ihm meine richtigen
Namen anstelle meines Online-Alias, konnte er diese Informationen verwenden, um alle meine
persönlichen Informationen zu finden. Er machte klar, dass er diese persönlichen Informationen
mit allen teilen würde, die er konnte, um meine Karriere auf YouTube und Twitch zu ruinieren.
Diese Form der Belästigung – die unfreiwillige Weitergabe persönlicher Daten über das Internet
– wird im Internet-Sprachgebrauch als „Doxxing" bezeichnet.

32.     Später am 13. April 2021 erstellte Allison einen neuen YouTube-Kanal – diesmal mit dem
Namen „Spinning Monkeys" – wo er denselben Clip aus meinem zufälligen Livestream
hochgeladen hat, mit den Gummi-Werbeclips, die ihn buchen. Genau wie zuvor usurpiert dieses
Video fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. Die
Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von
20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise
zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos
bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154
(9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im
Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der
Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient
notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

33.     In den nächsten Wochen hielt Allison sein Versprechen, mich zu doxen. Er schickte
meine persönlichen Daten an alle, die er finden konnte, die ein Mitglied meines Discord-Servers,
ein Kommentator auf meinem YouTube-Kanal oder einen meiner Follower auf Twitch waren.

34.     Am 2. Juni 20221 erhielt ich eine Nachricht auf Discord von einer Person mit dem
Pseudonym VoreNeko777. Er behauptete, dass die Videospiel-Rezensions- und
Nachrichtenwebsite IGN.com einen ziemlich aufrührerischen und verleumderischen Artikel über
mich veröffentlicht habe und dass er, obwohl er entfernt worden war, eine archivierte Kopie des
Artikels aufbewahrt hatte, falls ich ihn zeigen wollte alle Anwälte für eine mögliche
Rechtsstreit. Als ich jedoch die angehängte Datei herunterlud, die angeblich eine archivierte
Kopie des IGN-Artikels war, lud mein Browser sie nicht herunter, da sie einen Computervirus
enthielt. Am oder um den 7. Juni 2021 (das genaue Datum ist unbekannt) hatte Allison einen
neuen Account auf Reddit erstellt – diesmal unter dem Alias InitaitiveKookie 353 – und
kontaktierte mich auf dieser Seite und behauptete, derjenige zu sein, der versuchte, mich damit
zu infizieren der Computervirus. Dies geht an dieser Stelle über bloße Belästigung hinaus. Jetzt
hat er die Grenze überschritten und versucht, mir eine tatsächliche, reale, konkrete und greifbare
Verletzung zuzufügen. Nicht nur das, er hat auch ein Cyber-Verbrechen begangen und sollte
dafür ins Gefängnis gehen.

### III-4: Polanos Belästigung

35.     Polano hat am 24. März 2021 auf einen meiner Beiträge auf Reddit unter dem
Benutzernamen SomeGuyFromLosSantos geantwortet. In diesem Beitrag forderte er, dass ich
meine Bestrebungen aufgebe, eine Vollzeitkarriere mit YouTube und/oder Twitch zu machen, und

drohte, mein Leben zu „einem Abstieg in die Hölle" zu machen, wenn ich seinen Forderungen nicht nachgebe. Genau wie bei InitiativeKookie würde ich, wenn dies das Ende meiner Interaktionen mit ihm wäre, heute nicht verklagen. Ich habe in der Vergangenheit mit einmaligen Trollen zu tun gehabt. Normalerweise blockiere ich sie einfach, melde sie den Administratoren der Site und gehe dann weiter. Aber wie bei InitiativeKookie hat er mich nicht nur einmal belästigt und dann weitergezogen.

36.     Mitte April 2021 postete Karl Polano auf meinem Discord-Server (unter dem Pseudonym „SofiannP") und erklärte, dass ihm meine Inhalte auf Youtube sehr gefallen. Zu diesem Zeitpunkt war mir nicht klar, dass er derselbe Typ vom 24. März war, der drohte, mein Leben zur Hölle zu machen, wenn ich meine Bestrebungen nach einer Vollzeitkarriere auf YouTube und/oder Twitch nicht aufgab. Schließlich hatte er einen anderen Namen und eine ganz andere Persönlichkeit als diese Person. Da er zu der Zeit wie ein angesagter Kerl aussah, habe ich mir seinen Twitch-Kanal angesehen. Mir ist aufgefallen, dass er einen Twitch-Kanal mit über 300 Followern hat, und da ich selbst gerade erst angefangen hatte, auf Twitch zu streamen, fragte ich ihn, ob wir zusammen einen kollaborativen Stream (oder kurz „Collab") machen könnten. Er stimmte zu und wir hatten die Zusammenarbeit am 18. April 2021.

37.     Ähnlich wie bei den Ereignissen von ¶ 21 dieser Klage verlief zunächst alles gut. Zuerst schien er wirklich aufgeregt zu sein, mit mir zusammenzuarbeiten. Doch ähnlich wie bei den Ereignissen in ¶ 21 dieser Klage stellte sich seine Freundlichkeit als bloße List heraus, um mich in ein falsches Gefühl der Sicherheit zu wiegen, bevor er seine falsche Schafwolle entfernte und seine Wolfszähne trug. Ungefähr 90 Minuten nach Beginn des Streams enthüllte er, dass er die ganze Zeit mit InitiativeKookie zusammengearbeitet hatte und dass er jetzt, da er auf meinem Kanal war und live sendete, meine persönlichen Informationen an alle meine Zuschauer sendete, bevor ich den Stream unterbrach . Dann verbrachte er ungefähr 15 zusätzliche Minuten auf seinem eigenen Twitch-Kanal, um mich weiter zu betäuben, nachdem meine Zuschauer von meinem Kanal auf seinen Kanal umgestiegen waren.

38.     Ich habe ungefähr eine Woche damit verbracht, mich von dieser Erfahrung zu lösen. Am 25. April 2021 erhielt ich jedoch die Nachricht, dass meine urheberrechtlich geschützten Livestreams und YouTube-Videos auf dem Great Six Discord geteilt wurden, das Polano gehört. Um das zu untersuchen, ging ich zu diesem Discord-Server. Ich konnte nur auf den Chatroom „Anwendungen" zugreifen, einen Chatroom, in dem Neuankömmlinge auf dem Server den Zugang zum Hauptchatroom beantragen sollen (wo die Urheberrechtsverletzungen tatsächlich stattfanden). Also bat ich darum, dorthin zu dürfen, um nach Urheberrechtsverletzungen zu suchen. Das Ausmaß an reiner Feindseligkeit, Toxizität und Vulgarität, das Polano als Reaktion auf diese einfache Bitte auslöste, war absolut umwerfend. Er erlaubte mir nicht nur nicht, den Haupt-Chatroom zu betreten, um nach Fällen von Verstößen zu suchen, sondern er reagierte auch mit übermäßig vulgären und grenzübergreifenden persönlichen Angriffen, einschließlich, aber nicht beschränkt auf die folgenden:

    (a)     "Geh und lehre dich selbst etwas über das Gesetz, du <Kraftausdruck> schwachsinniges fettes Schwein."

    (b)     "Ich verliere meine <Kraftausdruck> Geduld mit deinem einstelligen amerikanischen

Schweinehirn."

(c)    "Warum machst du dich öffentlich, PIG <KRAFTAUSDRUCK>? Antworte, PIG <KRAFTAUSDRUCK>!"

(d)    "Lesen Sie das sorgfältig durch und stecken Sie es in Ihren dicken <Kraftausdruck>-Schädel, Sie Dummkopf."

(e)    "Wow, ein Kanal, der Clips eines anderen Kanals zeigt, ohne DMCA-bewertet zu bekommen? WIE?! Nun, fair use you <Kraftausdruck> <Kraftausdruck>, es ist nicht der gesamte <Kraftausdruck> Content-Stream, den wir hochgeladen haben, oder?"

(f)    "Ich schwöre, diese 32 Knäuel fetter Männer sind unglaublich."

39.    Unnötig zu erwähnen, dass mir kein Zugang zum Hauptchatraum gewährt wurde. Aus diesem Grund sollte Polano haftbar gemacht werden, nicht nur für die Fälle von Urheberrechtsverletzungen, die ich in dieser Beschwerde ausdrücklich erwähne, sondern auch für die potenziell Dutzende von Urheberrechtsverletzungen, die ich auf seinem Discord-Server finden kann, sobald ich während der Entdeckung von Zugriff darauf habe dieser Fall. Er sollte sogar für die Fälle von Urheberrechtsverletzung haften, die er nicht persönlich hochgeladen hat, da er die Anforderungen des DMCA zum sicheren Hafen vollständig und völlig missachtet hat.

40.    Mateas soll auch für die Urheberrechtsverletzungen haften. Er ist Moderator im Great Six Discord. Als solcher hatte er die Macht, den rechtsverletzenden Inhalt zu entfernen und sogar die Benutzer zu sperren, die ihn hochgeladen haben. Ich habe ihn auf Discord kontaktiert und ihn gebeten, den rechtsverletzenden Inhalt zu entfernen, aber er hat es nie getan. Damit hat er auch seinen sicheren Hafen verloren.

41.    Darüber hinaus haben sowohl Polano als auch Mateas Allisons Bemühungen fortgesetzt, jedes einzelne Mitglied meiner YouTube-, Twitch- und Discord-Communitys zu erreichen und mich durch die Weitergabe meiner persönlichen Daten zu doxen. Zwei Fälle, in denen ich mit Sicherheit weiß, dass dies passiert ist (und dass Polano es im Gegensatz zu Allison getan hat), waren am 10. Mai 2021 und am 26. Mai 2021. Denken Sie daran, dass dies nicht die einzigen beiden Fälle sind. Sie sind nur die einzigen beiden Fälle, in denen ich mit Sicherheit weiß, dass Polano derjenige ist, der das Doxxing persönlich durchgeführt hat.

### III-5: Polanos Urheberrechtsverletzungen

42.    Da mir kein Zugang zum Haupt-Chatroom des Great Six Discord gewährt wurde, musste ich mich auf Informanten Dritter verlassen, um diesen Discord-Server für mich zu durchsuchen und mir Fälle von Urheberrechtsverletzungen zu melden. Diese Informanten können offensichtlich nicht jeden Verstoß erfassen. Mit ihrer Hilfe konnte ich jedoch etwa ein halbes Dutzend unbefugter Verwendungen von Clips aus meinem versehentlichen Livestream finden. Jeder von ihnen kopierte den einzig interessanten Teil des Livestreams wörtlich. Ich habe DMCA-Deaktivierungsmitteilungen am 25. April, 27. April, 28. April, 5. Mai, 8. Mai und 22.

Mai herausgegeben. Die Existenz dieser Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 USD pro Monat zahlen, um den Livestream und seltsame Geräusche zu sehen der legitime Weg. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

43.     Beachten Sie, dass dies nur die Verstöße sind, die ich dank der Hinweisgeber finden konnte, die mir die Links zur Verfügung gestellt haben. Am 19. Mai 2021 erhielt ich von einem dieser Informanten einen Screenshot, auf dem Polano angab, dass auf dem Server zahlreiche weitere Verstöße vorliegen, die von den Informanten noch nicht „verraten" wurden. Ich möchte die einzelnen Angeklagten (Polano, Allison und Mateas) für all diese Verstöße haftbar machen und hoffe, sie alle beweisen zu können, sobald ich in diesem Fall eine Entdeckung erhalte. Ich weiß nur nicht, wie viele es sind.

44.     Von den Verstößen, von denen mir meine Informanten berichteten, wurden sie von Discord beseitigt. Am 8. Mai 2021 kontaktierte mich jedoch ein Vertreter des Great Six Discord-Servers unter dem Pseudonym DeFranko auf Discord und teilte mir mit, dass die Ausstellung dieser DMCA-Takedowns reine Zeitverschwendung sei, denn selbst wenn ich irgendwelche rechtsverletzenden Videos hätte vom Server entfernt, würden sie die Videos einfach erneut veröffentlichen. Er erklärte, dass ich den gesamten Great Six Discord-Server herunterfahren könnte, um die Urheberrechtsverletzung zu stoppen.

45.     Am 20. Mai 2021 postete Karl Polano ein Video auf seinem YouTube-Kanal. Dies war eine identische Kopie des Videos, das in ¶¶ 30 und 32 erwähnt wurde, wo er den einzigen interessanten Teil des zufälligen Livestreams vollständig kopierte, der von kommerziellen Gummiclips umgeben war. Falls das Video jemals wieder aufgenommen werden sollte, könnte es unter der folgenden URL angesehen werden: http://www.youtube.com/watch?v=-xL0xoU2cJA Die Existenz dieses Videos bedeutet, dass die Leute mir wahrscheinlich nicht das Geld bezahlen $20 pro Monat Gebühr, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

46.     Ich habe für dieses Video eine DMCA-Deaktivierung ausgestellt und YouTube hat es etwas mehr als eine Stunde später entfernt. Am 21. Mai 2021 erhielt ich von einem meiner Copyright-Informanten die Nachricht, dass die Mitglieder des Great Six Discord-Servers sich verschworen haben, um mehrere gefälschte Accounts zu erstellen und zu versuchen, meinen Kanal mit falschen Urheberrechtsverstößen als Vergeltung für meine Herausgabe dieser DMCA-Deaktivierung zu deaktivieren gegen Polano. Mitglieder des Great Six Discord-Servers gaben Kommentare ab, darunter "SofiannP wird das zurückfordern und den Schlag an Acerthorn

zurückgeben" und "Wir sollten einfach eine Menge Konten erstellen und ihn aus dem gleichen Grund melden."

### III-6: Betrügerische DMCA-Gegendarstellung

47.    Am 25. Mai 2021 erhielt ich eine E-Mail von YouTube, in der es hieß, dass Karl Polano eine DMCA-Gegendarstellung als Reaktion auf die von mir gegen ihn ausgestellte Deaktivierung gemäß der Beschreibung in ¶ 45 dieser Beschwerde ausgestellt hatte. Beim Einreichen dieser Gegendarstellung hat Polano ein Kästchen angekreuzt, das besagte: „Ich stimme der Zuständigkeit des Bundesbezirksgerichts für den Bezirk zu, in dem sich meine Adresse befindet, oder, wenn sich meine Adresse außerhalb der Vereinigten Staaten befindet, dem Gerichtsbezirk, in dem YouTube befindet sich und akzeptiert die Zustellung des Verfahrens durch den Kläger" und stimmt damit der Zuständigkeit des US-Berufungsgerichts für den nördlichen Bezirk von Kalifornien zu. Bei der Einreichung dieser DMCA-Gegendarstellung hat Polano im relevanten Teil Folgendes angegeben:

> "Ich habe das Video als Parodie auf den Originalinhalt erstellt, der ein 2-stündiger Livestream war. Diese Parodie soll ein Meme sein und nichts wie der Originalinhalt von Acerthorns. Dies ist Fair Use, da sein Material geändert wurde, um neues zu erstellen Inhalt und wurde auch nicht monetarisiert."

48.    Diese Aussage enthält mindestens vier verschiedene, unverblümte Lügen, die eine wissentliche falsche Darstellung durch Polano unter Verstoß gegen 17 USC § 512 (f) (2) darstellen. Erstens ist es keine Parodie. Er kopierte lediglich meinen Livestream, während er keinerlei transformativen Wert hinzufügte (die Gummi-Werbeclips sind nicht transformativ). Zweitens hat er gelogen, als er sagte, es sei "nichts wie der ursprüngliche Inhalt von Acerthorn". Es ist in der Tat „wie" mein versehentlicher Livestream, bis zu dem Punkt, an dem er den Markt für meinen Livestream vollständig an sich reißt und den Anreiz für jeden, mir die 20 US-Dollar pro Monat zu zahlen, um diesen Stream auf meinem eigenen YouTube-Kanal anzusehen, vollständig beseitigt. Kein vernünftiger Mensch könnte sein 50-sekündiges rechtsverletzendes Video und entsprechende Abschnitte meines Livestreams nebeneinanderstellen und denken, dass die beiden nicht gleich sind. Es ist nichts anderes als eine kahlköpfige Lüge. Drittens lügt er, wenn er sagt, dass mein Material geändert wurde, um neue Inhalte zu erstellen. Abgesehen von den Werbeclips aus Gummi (die keinerlei transformativen Wert bieten) hat er die Clips aus dem zufälligen Livestream in keiner Weise, Form oder Form verändert. Wenn er sagt, dass er es in irgendeiner Weise verändert hat (geschweige denn es so verändert hat, dass es neue Inhalte schafft), ist das Wissen um eine materielle Falschdarstellung. Viertens lügt er, wenn er sagt, dass das Video nicht monetarisiert wurde. Dies war in der Tat eine kommerzielle Wiederverwendung meines versehentlichen Livestreams.

49.    Zusätzlich zu all den Lügen, die er erzählt hat, gibt es noch einen weiteren Faktor, der dazu führt, dass seine DMCA-Gegendarstellung betrügerisch ist: Er hat den Vier-Faktoren-Test nicht durchgeführt, wie in 17 USC § 107 (1)-(4) beschrieben. Dies bedeutet, dass er bei der Ausstellung seiner Gegendarstellung keine faire Verwendung berücksichtigt hat, auch wenn die vier oben genannten Lügen tatsächlich wahr waren.

50.     Von all den Lügen, die er in dieser DMCA-Gegendarstellung erzählte, gab es jedoch eine sehr aufschlussreiche Sache: Er sagte, dass er diesen Clip erstellt habe. Er hat es sich nicht nur von Allison geliehen. Er hat es selbst geschaffen. Dies wird sich in Kürze als nützlich erweisen, wenn ich die Beweise für die Zusammenarbeit zwischen den drei einzelnen Angeklagten erörtere.

### III-7: Betrügerische DMCA-Deaktivierung

51.     Am oder um den 23. Mai 2021 habe ich mich qualifiziert, ein Twitch-Partner zu werden, was bedeutet, dass ich jetzt berechtigt bin, Anzeigen in meinen Streams zu schalten und „Abonnements" (oder bezahlte Follower) zu erhalten. Um mich als Affiliate zu qualifizieren, muss ich vier Kriterien erfüllen, darunter mindestens 50 Follower auf meinem Twitch-Kanal. Am 23. Mai 2021 habe ich diese Qualifikation endlich erreicht. Unmittelbar nachdem ich sie erfüllt hatte, sagte Mateas in seiner Eigenschaft als Moderator des Great Six Discord-Servers allen, dass es „nicht erlaubt" sei, dass ich 50 Follower habe. und dass jeder, der mir auf Twitch folgte, sofort entfolgen musste. Viele Leute taten es und meine Followerzahl ging weiter zurück.

52.     Trotz dieses Versuchs, meine Karriere zu sabotieren, konnte ich trotzdem den Affiliate-Status erhalten und bin jetzt zum Zeitpunkt dieses Schreibens ein Twitch-Affiliate. Um diesen Erfolg zu feiern, habe ich ein Video mit dem Titel „Woot! Ich bin ein Twitch-Affiliate!" und auf meinen YouTube-Kanal hochgeladen. Sie können das Video anzeigen, indem Sie auf die folgende URL gehen:

www.youtube.com/watch?v=FZenOvX1XHg

53.     In diesem Video erklärte ich, dass mehrere Leute versuchten, mein Wachstum zu untergraben, indem sie verlangten, dass die Leute mir von Twitch nicht mehr folgen, und ich habe einen Screenshot bereitgestellt, um dies zu beweisen.

54.     Am 25. Mai 2021 hat Mateas einen betrügerischen DMCA-Takedown für dieses Video ausgestellt. Er behauptete, dass ich ein „Bild von [seinem] Huhn" verwendet habe. Damit nehme ich an, dass er meint, dass ich sein Discord-Symbol verwendet habe, das ein Bild eines Hahns ist. Dies war jedoch ein betrügerischer DMCA-Takedown. Er besitzt nicht das Urheberrecht an diesem Bild. Wahrscheinlich hat er es einfach irgendwo aus dem Internet gezogen und stattdessen dieses Bild verwendet. Es ist der gesunde Menschenverstand, dass Sie keinen DMCA-Takedown wegen eines Urheberrechts rechtmäßig ausstellen können, wenn Sie nicht der Urheberrechtsinhaber sind!

55.     Aber selbst wenn er einen Beweis dafür vorlegen könnte, dass er der ursprüngliche Autor oder anderweitig der Urheberrechtsinhaber dieses Bildes dieses Hahns war, war seine Entfernung immer noch betrügerisch, da er keine faire Verwendung in Betracht zog. Meine Verwendung dieses Screenshots (der das Bild des Hahns enthielt) erfüllte alle vier Faktoren im Vier-Faktoren-Test, der in 17 USC § 107 (1)-(4) beschrieben ist. Ich habe über ein Nachrichtenereignis1 berichtet, also war es transformierend. Ich habe über ein Ereignis gesprochen, das sich wirklich im wirklichen Leben ereignet hat, nicht über ein fiktives Werk, daher wiegt der zweite Faktor für die faire Verwendung. Ich habe den Screenshot nur für ein paar Sekunden gezeigt, bevor ich ihn

aus dem Video entfernt habe, daher wiegt der dritte Faktor für die faire Verwendung. Schließlich formt oder formt meine Verwendung des Screenshots in einem YouTube-Video in keiner Weise den Markt von Mateas, um das Bild zu lizenzieren (vorausgesetzt, er ist überhaupt der ursprüngliche Urheberrechtsinhaber, was er nicht ist) für seine ursprünglicher Zweck, ein Kommentarsymbol in Discord zu sein. Der vierte Faktor spricht also für eine faire Verwendung. Das bedeutet, dass buchstäblich alle vier Faktoren für eine faire Verwendung sprechen; es ist ein sauberer Schwung. Daher hat Mateas mit ziemlicher Sicherheit keine faire Verwendung in Betracht gezogen, bevor er seinen DMCA-Takedown veröffentlichte. Keine vernünftige Person hätte in diesem Fall den Vier-Faktoren-Test in Betracht ziehen und irgendwie vernünftigerweise feststellen können, dass meine Verwendung des Screenshots keine faire Verwendung war. Es scheint vielmehr, dass Mateas lediglich versucht hat, sich gegen mich zu rächen, weil ich den DMCA-Takedown gegen Karl Polano ausgestellt habe, den der Zwietracht-Server der Great Six sich gegen mich verschworen hat, wie in ¶ 46 dieser Klage beschrieben.

56.     Ich habe eine DMCA-Gegendarstellung an YouTube gesendet und das Video wurde schließlich am 13. Juni 2021 wieder eingestellt. Ich habe jedoch immer noch 19 Tage damit verbracht, das Video zu entfernen. Da es so lange deaktiviert wurde, hat es keine Aufrufe und damit keine Werbeeinnahmen generiert.

### III-8: Weitere Urheberrechtsverletzungen

57.     Am oder um den 7. Juni 2021 starteten die drei einzelnen Angeklagten (zusammen mit einigen anderen) eine Seite auf der Facebook-Website „Instagram" namens AcerthornFanClub. Mateas und Karl Polano waren zwei der Schöpfer dieses sogenannten Fanclubs. Obwohl er sich selbst einen Fanclub nennt, war sein eigentlicher Zweck, mich öffentlich zu betrügen und mein Urheberrecht zu verletzen. Unter anderem haben die Angeklagten einen Clip aus meinem versehentlichen Livestream hochgeladen. Dieser Clip zeigte den einzigen interessanten Teil des zufälligen Livestreams und zeigte die Gesamtheit dieses einzigen interessanten Teils. Außerdem gab es keinerlei Modifikationen, nicht einmal die oben erwähnten Werbeclips aus Gummi. Die Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der der Beklagten").

58.     Ich habe eine DMCA-Deaktivierung für diese Seite ausgestellt. Am 9. Juni 2021 erhielt ich jedoch eine E-Mail von Facebook, in der mitgeteilt wurde, dass das rechtsverletzende Material nicht entfernt wird. Daher hat Facebook seinen sicheren Hafen für diese Zählung von Urheberrechtsverletzungen verwirkt.

59.     Am 9. Juni 2021 erhielt ich auf Instagram eine Nachricht vom AcerthornFanClub. Es war ein Bild von Karl Polano, mit dem Satz „Admin-Enthüllung" oben (was mich darüber informierte, dass Karl Polano der Verantwortliche für diese Instagram-Seite war), während er

auch sagte „Du bist eine Schlampe" und „Du bist halt uns nicht auf!"

60.    Am oder um den 6. Juli 2021 hat Polano einen Stream auf seinen Twitch-Kanal hochgeladen. In diesem Stream spielte er unter anderem einen Clip meines zufälligen Livestreams ab, bei dem die seltsamen Geräusche auftraten. Wäre dieser Stream noch verfügbar, könnte er unter folgender URL angesehen werden: https://www.twitch.tv/videos/1102055994. Am 28. August 2021 habe ich bei Twitch eine DMCA-Deaktivierungsmitteilung herausgegeben, die weniger als 2 Stunden später entfernt wurde. Am 31. August 2021 erhielt ich jedoch eine Benachrichtigung von Twitch, dass Karl Polano eine DMCA-Gegendarstellung ausgestellt hat.

61.    Am 18. August 2021 hat Frederick Allison, der jetzt unter dem Pseudonym „Sügmi Nuitz" agiert, einen 4 Minuten 19 Sekunden langen Clip aus meinem zufälligen Livestream auf Youtube gepostet, der die seltsamen Geräusche enthielt. Am 28. August 2021 habe ich eine DMCA-Deaktivierung für dieses Video ausgestellt und Youtube hat es umgehend entfernt. Zum Zeitpunkt dieses Schreibens wurde noch keine Gegendarstellung eingereicht, aber ich möchte trotzdem, dass Allison haftbar gemacht wird.

### III-9: Stress verursacht

62.    Der Stress, den ich aufgrund der Belästigung und Doxxing durch die Angeklagten erlitten habe, ist ziemlich greifbar. Ich zögere, neue Moderatoren für meinen Discord zu ernennen. Ich zögere, Nachrichten auf Reddit zu öffnen, aus Angst, dass es Allison unter einem neuen Namen sein könnte, der mich noch mehr belästigt. Ich habe mich sehr gesträubt, zusätzliche Kollaborationen mit anderen Streamern zu planen, aus Angst, dass ich wieder gedoxxt werden könnte.

63.    Zusätzlich zu diesen Symptomen von Paranoia und Angst möchte ich das Gericht bitten, den überzeugenden Präzedenzfall Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), die im einschlägigen Teil Folgendes aussagt:

> „Es mag sein, wie die Angeklagte im Wesentlichen argumentiert, dass Mrs. Mitchell keine große offensichtliche Verletzung aufweist, aber ein vernünftiger Geschworener könnte nach Anhörung der Beweise und Sichtung des fraglichen Sun-Problems zu dem Schluss kommen, dass Nellie Mitchells Erfahrung… verglichen mit einer Person, die langsam durch einen Haufen unbehandelten Abwassers geschleift wurde. Nachdem diese Person geduscht hatte und einige Wochen vergangen waren, blieben kaum noch sichtbare Beweise für die Tortur, die die Person durchgemacht hatte, und die daraus resultierenden Schäden, aber nur wenige würden bezweifeln, dass der Schlepper einen erheblichen Schaden angerichtet hatte. "

64.    Mit anderen Worten, ich halte das Verhalten der einzelnen Angeklagten (und sicherlich Karl Polano und Allison) für so unverschämt, dass ich keinen Schaden nachweisen müsste. Ihr Verhalten ist per se als quälend anzusehen.

### III-10: Nachweis der Zusammenarbeit

65.     Wie ich bereits in dieser Klage erwähnt habe, arbeiten die drei einzelnen Angeklagten (Polano, Allison und Mateas) alle zusammen, um meine Karriere böswillig zu sabotieren. Dabei handelt es sich nicht nur um drei gleichzeitig, sondern unabhängig voneinander handelnde Individuen. Es ist eine einzigartige, gemeinsame Anstrengung ihrerseits. Aus diesem Grund bin ich der Meinung, dass in diesem Fall alle drei Einzelbeklagten zu gleichen Teilen haften sollten. Karl Polano und Mateas sollten für alle Belästigungen durch Allison (einschließlich des Versuchs, mich mit einem Computervirus zu infizieren) und Urheberrechtsverletzungen haftbar gemacht werden. Allison und Mateas sollten für alle Belästigungen und Urheberrechtsverletzungen durch Polano haftbar gemacht werden. Polano und Allison sollten für den betrügerischen DMCA Takedown von Mateas haftbar gemacht werden. Und so weiter und so fort.

66.     Welche Beweise habe ich also dafür, dass sie alle zusammenarbeiten? Nun, die Verbindung zwischen Polano und Mateas ist am einfachsten zu beweisen. Wie ich bereits erwähnt habe, ist Mateas Moderator in Polanos „Great Six"-Discordserver. Als solcher hat er eine unglaubliche Autorität in der Great Six-Community. Er hat die Befugnis, Material zu entfernen, das mein Urheberrecht verletzt, Material, das mich von diesem Server belästigt oder belästigt, und jede Person (mit Ausnahme von Polano selbst), die sich an solchen Verhaltensweisen beteiligt, zu sperren. Obwohl er dazu befugt war, hat er dies nicht nur abgelehnt, sondern sich selbst wiederholt und konsequent an Belästigungen, Doxxing und Urheberrechtsverletzungen beteiligt. Er arbeitet eindeutig mit Polano zusammen.

67.     Zugegeben, wenn er sich geweigert hätte, an dieser Belästigung, Doxxing und Urheberrechtsverletzung teilzunehmen, hätte Polano ihn höchstwahrscheinlich von seiner Moderatorenposition entbunden. Allerdings wäre Mateas im vorliegenden Fall zumindest kein Mitangeklagter gewesen. Anscheinend übertrifft seine Loyalität gegenüber Polano seine Gesetzestreue.

68.     Bei Allison gibt es auch Hinweise darauf, dass er mit Polano und Mateas zusammenarbeitet. Der belastendste Beweis, den ich bisher habe, ist die Tatsache, dass (A) Polano das Video erstellt hat, das er am 20 von Allison am 13. April 2021 (siehe ¶ 30 dieser Beschwerde). Mit anderen Worten, Polano hat dieses Video erstellt und es dann InitiativeKookie gegeben, damit er es auf seinen YouTube-Kanal hochladen konnte. Da Allison jedoch keine DMCA-Gegendarstellung einreichen wollte, nahm Polano sein Video zurück und lud es selbst hoch.

69.     Vielleicht ist es nicht ganz so passiert. Vielleicht ist Allison der ursprüngliche Schöpfer des Videos, und als Polano in seiner Gegendarstellung erklärte, dass er der Schöpfer sei, war dies eine weitere Lüge, die er YouTube erzählte. Aber selbst wenn dies der Fall wäre, hilft dies den Beklagten immer noch nicht. Unabhängig davon, wer welche Rolle gespielt hat, das Endergebnis ist, dass einer von ihnen das verletzende Video erstellt und es dann dem anderen gegeben hat, damit er es verwenden kann, um mich zu belästigen, mich zu doxen und mein Urheberrecht zu verletzen. Unabhängig davon, wer der Initiator und wer der Komplize war, unter dem Strich gibt es klare Beweise für Absprachen, Kooperation und Partnerschaft zwischen ihnen.

70.     Da es also klare Beweise dafür gibt, dass Allison und Polano zusammenarbeiten, um

meine Karriere auf YouTube und Twitch zu sabotieren, und weil es klare Beweise dafür gibt, dass Polano und Mateas zusammenarbeiten, um dasselbe zu tun, diktiert der gesunde Menschenverstand, dass ALlison und Mateas auch funktionieren zusammen, um dasselbe Ziel zu erreichen.

## IV: RECHTSANALYSE

71.    Aus den folgenden Gründen gibt mir das Gesetz bei jeder unerlaubten Handlung, wegen der ich klage, Anspruch auf Entlastung.

### IV-1: Vorsätzliches Zufügen von emotionalem Stress

72.    Um einen Anspruch auf vorsätzliche Zufügung emotionaler Belastung geltend zu machen, muss der Kläger Tatsachen geltend machen, die plausibel zeigen: (1) extremes und empörendes Verhalten des/der Beklagten mit der Absicht, emotionale Belastungen zu verursachen oder leichtfertig zu missachten ; (2) der Kläger leidet unter schwerer oder extremer emotionaler Belastung; und (3) tatsächliche und unmittelbare Ursache der emotionalen Belastung durch das empörende Verhalten des Angeklagten. Corales v. Bennett, 567 F.3d 554, 571 (9. Cir. 2009).

#### IV-1-A: Extremes und empörendes Verhalten

73.    Die Behauptungen von ¶¶ 13-21, ¶¶ 26-41, ¶¶ 51-56 und ¶ 59 dieser Klageschrift sollten ausreichen, um das erste wesentliche Element dieser unerlaubten Handlung zu belegen. Die Angeklagten haben eine monatelange Kampagne durchgeführt, um mir so viel emotionalen Schmerz (und sogar Sachschaden) wie möglich zuzufügen, indem sie beispielsweise wiederholt neue Konten erstellen, um Verbote oder Sperren zu umgehen, meinen Discord-Server mit unaufgeforderten bombardieren pornografische Bilder, Sabotage meines Discord-Servers, indem ich sie dazu verleitet habe, sie als Mods zu ernennen, versucht, mich mit einem Computervirus zu infizieren (daher der Sachschaden) und illegal an meine privaten Informationen zu gelangen, damit sie sie ohne meine Zustimmung mit der Welt teilen können.

74.    Im Fall Corales v. Bennett, 567 F.3d 554 (9. Cir. 2009), befand das neunte Gericht, dass ein Verhalten als extrem oder empörend angesehen wird, wenn es mit der spezifischen, tatsächlichen Absicht geschieht, emotionales Leid oder Leiden zuzufügen. Siehe id 572 („Die Kläger führen Beispiele für scheinbar ähnliches Verhalten an, das sich als extrem und empörend herausstellte. Diese Fälle sind jedoch nicht anwendbar, da sich jeder auf die Absicht des Angeklagten stützte, der bedrohten Partei zu schaden"). Im vorliegenden Fall ist die Tatsache, dass die Handlungen der Beklagten mit der spezifischen Absicht erfolgten, emotionale Belastungen zuzufügen, axiomatisch.

75.    Denken Sie daran, dass zu den Versuchen der Angeklagten, mich zu belästigen, auch Doxxen gehört. „Doxxing ist die Abkürzung für ‚Droping Documents'. Die Praxis besteht darin, "das Internet zu verwenden, um persönliche und private Informationen von jemandem zu ermitteln und zu sammeln und diese Informationen dann online öffentlich zu veröffentlichen". Das 'Ziel von Doxxing ist typischerweise Vergeltung, Belästigung oder Demütigung'" Siehe

Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 858-59 (E.D. Mich. 2019). Da es mit dem Ziel der Belästigung und Demütigung entworfen wurde, entspricht es den in Corales festgelegten Kriterien, um unter Ausschluss aller anderen Faktoren automatisch als extrem oder empörend zu gelten.

### IV-1-B: Schadensersatzansprüche des Klägers

76.     Die Tatsachenbehauptungen von ¶¶ 62-64 sollten ausreichen, um das zweite wesentliche Element zu begründen. Der Stress, den ich aufgrund der Belästigung und Doxxing durch die Angeklagten erlitten habe, ist ziemlich greifbar. Ich zögere, neue Moderatoren für meinen Discord zu ernennen. Ich bin zögerlich geworden, Nachrichten auf Reddit zu öffnen, aus Angst, dass es Allison unter einem neuen Namen sein könnte, die mich noch mehr belästigt. Ich habe mich sehr gesträubt, zusätzliche Kollaborationen mit anderen Streamern zu planen, aus Angst, dass ich wieder gedoxxt werden könnte.

77.     Zusätzlich zu diesen Symptomen von Paranoia und Angst möchte ich das Gericht bitten, den überzeugenden Präzedenzfall Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), die im einschlägigen Teil Folgendes aussagt:

> „Es mag sein, wie die Angeklagte im Wesentlichen argumentiert, dass Mrs. Mitchell keine große offensichtliche Verletzung aufweist, aber ein vernünftiger Geschworener könnte nach Anhörung der Beweise und Sichtung des fraglichen Sun-Problems zu dem Schluss kommen, dass Nellie Mitchells Erfahrung... verglichen mit einer Person, die langsam durch einen Haufen unbehandelten Abwassers geschleift wurde. Nachdem diese Person geduscht hatte und einige Wochen vergangen waren, blieben kaum noch sichtbare Beweise für die Tortur, die die Person durchgemacht hatte, und die daraus resultierenden Schäden, aber nur wenige würden bezweifeln, dass der Schlepper einen erheblichen Schaden angerichtet hatte. "

78.     Mit anderen Worten, ich halte das Verhalten der einzelnen Angeklagten (und sicherlich Karl Polano und Allison) für so unverschämt, dass ich keinen Schaden nachweisen müsste. Ihr Verhalten ist per se als quälend anzusehen.

79.     Neben der emotionalen Belastung sollte meiner Meinung nach auch der einzelne Angeklagte für alle erlittenen Schäden haften, sowohl als direkte als auch indirekte Folge seiner Belästigung und Doxxing. Dies beinhaltet unter anderem meinen Popularitätsverlust auf den Plattformen YouTube und Twitch durch das Doxxing sowie meine Weigerung, öffentlich auf die gegen mich erhobenen Vorwürfe zu reagieren.l Diese Schäden sind praktisch nicht zu platzieren einen genauen Dollarwert auf, aber ich hoffe, dass das Gericht mich angemessen entschädigt und Strafschadenersatz zuerkennt.

80.     In der Zwischenzeit glaube ich (und ich bete, dass das Gericht mir zustimmen wird), dass das dritte wesentliche Element für jede vernünftige Person, die die Klage von Anfang an bis zu diesem Zeitpunkt gelesen hat, offensichtlich sein sollte, sodass ich hoffentlich keine spezifischen Tatsachen geltend machen muss dieses dritte wesentliche Element.

## IV-2: Copyright-Verletzung

81.     Um eine Urheberrechtsverletzung prima facie aufzuzeigen, brauche ich nur zwei wesentliche Elemente aufzuzeigen: das Eigentum an einem Urheberrecht durch die Klägerin und das Kopieren durch die Beklagte. Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9. Cir. 1986) („[D]hier sind für den Fall des Klägers in einer Verletzungsklage nur zwei Elemente erforderlich: Urheberrecht der Klägerin und Vervielfältigung durch die Beklagte").

### IV-2-A: Eigentum des Urheberrechts durch den Kläger

82.     Die Behauptungen von ¶ 22-25 dieser Beschwerde sollten dem ersten wesentlichen Element genügen. Ein Livestream auf Twitch ist urheberrechtlich geschützt, auch wenn er aus Versehen erfolgt. Als Eigentümer des Kanals und alleiniger Autor des Livestreams habe ich standardmäßig das alleinige Eigentum an diesem Stream, es sei denn, ich trete die Rechte daran ab (was ich nicht getan habe).

### IV-2-B: Kopieren von urheberrechtlich geschützten Inhalten durch die Beklagte

83.     Die erste Zählung der Urheberrechtsverletzung beruht auf der Tatsache, dass mindestens einer der Beklagten (entweder Karl Polano oder Allison) den Livestream mit Software von Drittanbietern illegal heruntergeladen hat. Denken Sie darüber nach: Wie hätten sie sonst das Rohmaterial bekommen können, um ihre rechtsverletzenden Videos überhaupt zu machen? Der Stream wurde ursprünglich auf Twitch ausgestrahlt, es gibt jedoch keine Möglichkeit, ihn direkt von Twitch herunterzuladen. Während YouTube eine begrenzte Möglichkeit zum Herunterladen von Videos zur Offline-Anzeige bietetl, hätte keiner der Beklagten den Stream von YouTube erhalten können, da dieses Video nur auf diejenigen beschränkt ist, die meinem Kanal 20 US-Dollar pro Monat zahlen. Ich weiß mit Sicherheit, dass mir keiner der Angeklagten dieses Geld bezahlt hat. Wie haben sie also das Rohmaterial des Streams erhalten, um ihre verletzenden Videos überhaupt zu machen? Die einzige Erklärung ist, dass mindestens einer von ihnen den Stream mit einer nicht autorisierten Software von Drittanbietern illegal heruntergeladen haben muss. Dies ist eine eklatante Urheberrechtsverletzung, genauso wie es illegal ist, eine Torrent-App zu verwenden, um ganze Filme und / oder Videospiele herunterzuladen, ohne dafür zu bezahlen.

84.     Nachdem einer der einzelnen Angeklagten (entweder Polano oder Allison) den Stream illegal heruntergeladen hatte, teilte er ihn dann unbedingt mit dem anderen, damit sie zusammenarbeiten konnten, um mein Urheberrecht zu verletzen. Wie ich bereits sagte, erstellte einer der Angeklagten notwendigerweise das verletzende Video mit den Gummi-Werbeclips darin und gab dieses verletzende Video dann der anderen Person zum Hochladen. Unabhängig davon, wer die Spende gemacht hat, ist die Quintessenz, dass eine nicht autorisierte Weitergabe stattgefunden hat. Da sie alle zusammenarbeiten, haften sie sowieso für beides (siehe ¶¶ 65-70 dieser Beschwerde). Diese nicht autorisierte Weitergabe stellt eine zweite Zählung der Urheberrechtsverletzung dar.

85.     Dann haben wir die dreizehn Fälle, in denen die Beklagten meine urheberrechtlich

geschützten Inhalte öffentlich entweder auf Discord, YouTube, Vimeo oder Instagram geteilt haben. Die Anzahl der Urheberrechtsverletzungen, die ich derzeit behaupte, sind wie folgt:

- ANZAHL NUMMER 3: Das Hochladen am 10. April 2021, das ich in ¶ 26 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 4: Das Hochladen am 11. April 2021, das ich in ¶ 27 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 5: Das Hochladen am 12. April 2021, das ich in ¶ 29 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 6: Das Hochladen am 13. April 2021, das ich in ¶ 30 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 7: Das Hochladen am 13. April 2021, das ich in ¶ 32 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 8: Das Hochladen am 25. April 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 9: Das Hochladen am 27. April 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 10: Das Hochladen am 28. April 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 11: Das Hochladen am 5. Mai 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 12: Das Hochladen am 8. Mai 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 13: Das Hochladen am 22. Mai 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 14: Das Hochladen am 20. Mai 2021, das ich in ¶ 45 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 15: Das Hochladen am 7. Juni 2021, das ich in ¶ 57 dieser Beschwerde beschreibe.

86.     Zu guter Letzt haben wir auch die unzähligen Fälle von Urheberrechtsverletzungen, die Karl Polano auf seinem Discord-Server zugelassen und sogar aktiv gefördert hat, die ich nicht entfernen konnte, weil er mich den Haupt-Chatroom auf diesem Server nicht sehen ließ . Obwohl

ich nicht weiß, wie viele Fälle von Urheberrechtsverletzungen es gibt, möchte ich gesetzliche Schadensersatzansprüche geltend machen und in jedem einzelnen Fall eine einstweilige Verfügung erwirken.

### IV-3: Falsche Darstellung gemäß 17 USC § 512 (f) (2)

87.    Um einen Verstoß gegen 17 USC § 512(f)(2) geltend zu machen, muss ich nachweisen, dass (A) der Beklagte bei der Ausstellung einer DMCA-Gegendarstellung wissentlich falsche (oder zumindest wissentlich irreführende) wesentliche Aussagen gemacht hat, (B) dass der Diensteanbieter (in diesem Fall YouTube) sich auf diese falschen Angaben verlassen hat und (C) dass mir durch das Vertrauen des Dienstes ein Schaden entstanden ist.

### IV-3-A: Wissentlich falsche Materialaussagen

88.    Die Vorwürfe von ¶ 48 dieser Beschwerde sollten hinreichend zeigen, dass Karl Polano in seiner DMCA-Gegendarstellung zahlreiche, wissentlich falsche Aussagen gemacht hat. Er hat gelogen, dass das Video eine Parodie sei. Er hat gelogen, dass das Video geändert wurde. Er hat gelogen, dass das Video nichts mit meinem ursprünglichen Inhalt zu tun hat. Er hat gelogen, dass das Video nicht kommerziell ist. Dies sind alles wesentliche Aussagen, über die er wissentlich gelogen hat.

### IV-3-B: Vertrauen durch ISP

89.    Die Vorwürfe von ¶ 47 dieser Beschwerde sollten jedem vernünftigen Finder von Tatsachen zeigen, dass YouTube diese Vorwürfe erleichtert. Wenn sie sich nicht auf diese Anschuldigungen verlassen haben, warum sollten sie dann die Gegendarstellung bearbeiten und mich darüber benachrichtigen?

### IV-3-C: Schäden

90.    Der Schaden, den ich erlitten habe, ist die Tatsache, dass ich diese Klage einreichen musste, um zu verhindern, dass das Video wiederhergestellt wird. Dieser Prozess wird sicherlich viel Geld kosten (auch wenn ich in forma pauperis vorgehe) und mir viel Stress bereiten.

### IV-3-D: Versäumnis, faire Nutzung zu berücksichtigen

91.    Zusätzlich zu den wissentlich falschen materiellen Aussagen, die er in seiner Gegendarstellung gemacht hat, gibt es auch die Tatsache, dass Karl Polano keine faire Verwendung in Betracht zog. Im Fall von Lenz v. Universal Music Corp., 801 F. 3d 1126 (9. Cir. 2015), muss der Urheberrechtsinhaber des neunten Kreises die faire Verwendung in Betracht ziehen, bevor er eine DMCA-Takedown erlässt. Der gesunde Menschenverstand schreibt vor, dass mutmaßliche Rechtsverletzer auch aufgefordert werden sollten, vor der Ausstellung einer Gegendarstellung die faire Verwendung zu prüfen.

92.    Noch wichtiger ist, dass der Beklagte verpflichtet sein sollte, das tatsächliche Recht der fairen Verwendung zu berücksichtigen. Wenn er versucht, einfach seinen eigenen Standard für

den fairen Gebrauch zu erstellen und dann diesen Standard in Betracht zu ziehen, sollte dies nicht erlaubt sein. Wenn das erlaubt wäre, würde das eines der grundlegendsten Prinzipien unserer Rechtsprechung völlig untergraben: Diese Unkenntnis des Gesetzes ist keine Entschuldigung. Wenn wir beginnen, in allen Ausnahmefällen Ausnahmen von diesem Grundsatz zu machen, dann bröckelt die Rechtsstaatlichkeit in ihrer Gesamtheit an ihren Fundamenten.

93.    Um die faire Verwendung zu berücksichtigen (vorausgesetzt, Sie berücksichtigen das tatsächliche Gesetz der fairen Verwendung und nicht nur Ihre eigene, benutzerdefinierte Version der fairen Verwendung), müssen Sie den Vier-Faktoren-Test berücksichtigen. Der Supreme Court und das Ninth Circuit haben ausnahmslos klargestellt, dass es keine mutmaßliche faire Verwendung gibt. Jede bemerkenswerte veröffentlichte Meinung zur fairen Verwendung in den letzten fünfzig Jahren hat den Vier-Faktoren-Test verwendet. Jeden. Einzel. Eins.

- Hustler Magazine, Inc. gegen Moral Majority, Inc., 796 F. 2d 1148 (9. Cir. 1986) verwendete den Vier-Faktoren-Test. Siehe ID bei 1152-1156.

- DR. Seuss Enterprises, LP v. Comicmix LLC, 983 F. 3d 443 (9. Cir. 2020) verwendete den Vier-Faktoren-Test. Siehe ID bei 451-461.

- Harper & Row, Publishers, Inc. gegen Nation Enterprises, 471 US 539 (1984) verwendeten den Vier-Faktoren-Test. Siehe ID bei 561-569.

- Campbell v. Acuff-Rose Music, Inc., 510 US 569 (1994) verwendete den Vier-Faktoren-Test. Siehe ID unter 578-594.

- Sony Corp. of America gegen Universal City Studios, Inc., 464 US 417 (1984) verwendete den Vier-Faktoren-Test. Siehe ID bei 496-498.

- Fisher v. Dees, 794 F. 2d 432 (9. Cir. 1986) verwendete den Vier-Faktoren-Test. Siehe ID bei 437-439.

- Dr. Seuss Enterprises, LP gegen Penguin Books, 109 F. 3d 1394 (9. Cir. 1997) verwendete den Vier-Faktoren-Test. Siehe ID bei 1399-1403.

- Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9. Cir. 2012) verwendete den Vier-Faktoren-Test. Siehe ID unter 1173-1183.

- Hosseinzadeh v. Klein, 276 F.Supp.3d 34 (S.D. NY 2017) verwendete den Vier-Faktoren-Test. Siehe ID bei 45-47.

94.    Wenn die Beklagten den Vier-Faktoren-Test daher nicht berücksichtigen, betrachten sie die faire Verwendung nicht und begehen daher eine falsche Darstellung gemäß 17 USC § 512(f). Zeitraum. Keine Ausnahmen.

95.    Das rechtsverletzende Video, das Polano am 20. Mai 2021 hochgeladen hat (das einzige,

das Gegenstand einer DMCA-Gegenanzeige ist), fehlt im Vier-Faktoren-Test so stark, dass die Wahrscheinlichkeit, dass Polano diesen Test tatsächlich ansieht, astronomisch ist. Keine vernünftige Person könnte den Vier-Faktoren-Test anwenden und zu dem Schluss kommen, dass das Video der Beklagten fair verwendet wird. Polano scheint vielmehr zu glauben, dass sein Video fair use ist, nur weil es eine Parodie auf meinen ursprünglichen Livestream ist. Außerdem glaubt er, dass es sich um eine Parodie handelt, nur weil er entschieden hat, dass es sich um eine Parodie handelt. Dies belegen seine Aussagen in der DMCA-Gegendarstellung (siehe ¶ 47 dieser Beschwerde) sowie die übermäßig giftigen und vulgären persönlichen Angriffe, die er am 25. April gegen mich gerichtet hat (siehe ¶ 38 dieser Beschwerde).

96.    Einfach gesagt, die bloße Tatsache, dass er es eine Parodie nennt, macht es noch nicht zu einer Parodie. Anders zu behaupten, würde einen weiteren unserer wichtigsten und grundlegendsten Rechtsgrundsätze völlig untergraben: Dass niemand der Richter in seinem eigenen Fall sein darf.

97.    Aber selbst wenn sein Video vom Gericht (im Gegensatz zum Beklagten) als Parodie angesehen werden könnte, scheint er zu glauben, dass es, solange es als Parodie eingestuft wird, automatisch unter Ausschluss aller anderen Faktoren fair verwendet wird. Einfach gesagt, so funktioniert das nicht. Tatsächlich hat der Oberste Gerichtshof die Idee, dass Parodie automatisch – oder sogar mutmaßlich – Fair Use ist, ausdrücklich und eindeutig abgelehnt:

> „Die Tatsache, dass Parodie für eine gewisse Aneignung Legitimität beanspruchen kann, sagt weder dem Parodisten noch dem Urteil viel darüber aus, wo die Grenze zu ziehen ist " Der Vorschlag, dass jede parodistische Verwendung mutmaßlich fair ist, hat keine rechtliche oder faktische Rechtfertigung als die ebenso hoffnungsvolle Behauptung, dass jede Verwendung für die Berichterstattung als fair angesehen werden sollte , und keine praktikable Vermutung für Parodie könnte der Tatsache Rechnung tragen, dass Parodie oft in Satire übergeht, wenn die Gesellschaft durch ihre kreativen Artefakte verspottet wird, oder dass ein Werk sowohl parodische als auch nichtparodische Elemente enthalten kann die relevanten Faktoren durchzuarbeiten und von Fall zu Fall im Lichte der Ziele des Urheberrechts zu beurteilen." Siehe Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 58 1 (1994) (Zitate weggelassen).

98.    Auch wenn dies ignoriert wird, widerspricht sich der Angeklagte immer noch. Zuerst sagt er, dass sein Video eine Parodie war. Dann sagt er buchstäblich einen Satz später, dass sein Video nicht meinem ursprünglichen Inhalt entspricht. Wenn es jedoch nicht wie mein Inhalt ist, dann ist es keine Parodie. Der Oberste Gerichtshof hat entschieden, dass "[p]arody ein Original nachahmen muss, um seinen Standpunkt zu vertreten." Siehe Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 580-8 1 (1994). Wenn es also nicht meinen Inhalten entspricht, kann es keine Parodie sein. Genauer gesagt, wenn sein resultierendes Video nicht meinem ursprünglichen Inhalt entspricht, stellt sich die Frage ... wie können die Beklagten meinen Inhalt kommentieren oder kritisieren?!

99.    Das geht zum nächsten Punkt über: Der Angeklagte hat in seiner Arbeit noch nicht einmal versucht, irgendeine transformative Wirkung zu erzielen. Er bucht den Clip aus meinem

zufälligen Livestream mit einigen Clips aus einem Kaugummi-Werbespot, aber ansonsten kopiert er nur wörtlich und absolut unverändert aus meinem Livestream. Es gibt keinen Kommentar, keine Kritik, keine Analyse, keine Bewertung, nichts, was man auch nur als transformativ bezeichnen könnte. Die Hinzufügung der Gummi-Werbeclips ist eine völlig überflüssige Ergänzung, die absolut keinen Kommentar zu meinem Livestream-Clip liefert. Selbst wenn das Gericht feststellen würde, dass die Werbeclips aus Gummi einen geringfügigen transformativen Wert hätten, wäre der Mehrwert so gering, dass er allein die anderen drei Faktoren des Vier-Faktoren-Tests nicht überwinden könnte.

100.    Der zweite Faktor der fairen Verwendung wiegt ebenfalls gegen die Beklagte. Es stimmt zwar, dass Tatsachen weniger urheberrechtlich geschützt sind als Fiktionen und die Tatsache, dass der zufällige Livestream einen Tag in meinem Leben zeigte (der als Sachbuch angesehen werden könnte), es ist jedoch wichtig zu beachten, dass, wenn Gesetzgeber und Urheberrechtswissenschaftler sagen " Fakten", meinen sie typischerweise Dinge wie Geschichte, Wissenschaft oder Politik, auch bekannt als Dinge von öffentlicher Bedeutung. Einfach an einem zufälligen Tag in das Privatleben einer Person zu blicken, wenn sie allein in ihrem eigenen Haus ist, sich um ihre eigenen Angelegenheiten kümmert und niemandem schadet, ist ganz einfach nicht im Einklang mit den öffentlichen Interessen, die durch die faire Verwendung geschützt werden sollten. Im Gegensatz dazu dient es absolut der persönlichen Agenda des Angeklagten, mich zu belästigen und zu betrügen, aber solche böswilligen Motive helfen den Angeklagten bestenfalls nicht in ihrem Fall der fairen Verwendung und behindern im schlimmsten Fall aktiv ihren Fall der fairen Verwendung.

101.    Der dritte Faktor der fairen Nutzung ist bestenfalls neutral und belastet im schlimmsten Fall die Beklagten. Es stimmt zwar, dass das Video des Beklagten nur 50 Sekunden lang war, während mein versehentlicher Livestream fast 2 Stunden lang war, aber die Beklagten nutzten den größten Teil meines versehentlichen Livestreams. Er benutzte das "Herz" des zufälligen Livestreams, und daher sollte dieser Faktor zu Ungunsten der Angeklagten ausgelegt werden.

102.    Der vierte und letzte Fair-Use-Faktor – die Auswirkung auf den potentiellen Markt – ist ungeheuerlich lächerlich zu Ungunsten der Beklagten. Die 3. bis 15. Zählung der Urheberrechtsverletzung enthält den einzigen interessanten Teil über meinen versehentlichen Livestream und die Gesamtheit dieses einzigen interessanten Teils. Als solches usurpiert dieses Video den Markt für meinen eigenen zufälligen Livestream fast vollständig. Die Existenz dieser Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können?

103.    Wie Sie sehen können, kann, wenn wir einmal den Vier-Faktoren-Test in Betracht ziehen, kein vernünftiger Trier der Tatsachen in diesem Fall eine angemessene Verwendung finden. Daher besteht die überwältigende Wahrscheinlichkeit, dass Karl Polano den Vier-Faktoren-Test nie in Betracht gezogen hat. Da er den Vier-Faktoren-Test nicht berücksichtigt hat, bedeutet dies, dass er keine faire Verwendung in Betracht gezogen hat. Siehe Lenz, supra, S. 1135 („Eine [Partei], die ein Lippenbekenntnis zur Berücksichtigung der fairen Verwendung ablegt, indem sie behauptet, sie habe in gutem Glauben geglaubt, wenn Gegenbeweise vorliegen, unterliegt immer

noch § 512 (f) Haftung").

104.    Zusätzlich zu dem oben genannten Vier-Faktoren-Test ist es auch gesetzlich verankert, dass bei bösgläubigem Verhalten eines Verletzers automatisch keine faire Nutzung vorliegt, selbst wenn dasselbe Video unter ansonsten identischen Umständen als faire Nutzung angesehen werden könnte. Siehe Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 562 (1985) („Für den Charakter der Nutzung ist auch die Angemessenheit des Verhaltens des Beklagten relevant. Fair Use setzt Treu und Glauben und faires Handeln voraus") . Siehe auch Fisher v. Dees, 794 F. 2d 432, 437-38 (9. Cir. 1986) („Ein Thema, das sich durch die Schriftsätze der Komponisten zieht, ist, dass Dees angeblich schlechtes Benehmen ihm die gerechte Verteidigung der fairen Verwendung verwehren sollte. Der geltend gemachte Grundsatz ist stichhaltig: Da die faire Verwendung Treu und Glauben und ein faires Handeln voraussetzt, können Gerichte die Angemessenheit des Verhaltens des Beklagten im ausgewogenen Verhältnis einer Fair-Use-Bestimmung abwägen") (Zitate und Zitate weggelassen). Da die Beklagten eine monatelange Kampagne durchgeführt haben, um mich zu belästigen und zu belästigen, ist es klar, dass ihre Urheberrechtsverletzung ebenfalls ausschließlich dazu dient, mich zu belästigen und zu belästigen, anstatt um ihrer selbst willen Kritik oder Kommentare abzugeben. Siehe Fed.R.Evid 404 (b)(2) (Beweise für andere Fehlhandlungen können zulässig sein, um unter anderem "Motiv" und "Absicht" zu beweisen). Dies wiegt stark gegen die faire Verwendung (wenn es den Anspruch der fairen Verwendung nicht insgesamt ausschließt), und Polanos Versäumnis, diesen Faktor zu berücksichtigen, bedeutet, dass er gegen 17 USC § 512 (f) (2) verstößt.

105.    Nicht zuletzt, weil die Beklagten das Rohmaterial notwendigerweise auf illegale Weise erhalten haben (siehe ¶¶ 83-84 dieser Klage), bedeutet dies, dass die Videos automatisch keine faire Verwendung darstellen, selbst wenn dasselbe Video ansonsten als faire Verwendung angesehen werden könnte identische Umstände. Siehe Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985), wo der Oberste Gerichtshof der Tatsachenfeststellung der Vorinstanz nicht zustimmte, dass die Beklagten in diesem speziellen Fall „wissentlich ein gestohlenes Manuskript ausgenutzt" hatten. ließ jedoch die Schlussfolgerung des Gesetzes unberührt, dass, wenn die Beklagten dies getan hätten, dies ein automatisches Hindernis für die faire Verwendung gewesen wäre. Da Polano dies bei der Ausstellung seiner DMCA-Gegendarstellung eindeutig nicht berücksichtigt hat, hat er gegen 17 USC § 512(f)(2) verstoßen.

### IV-4: Falsche Darstellung gemäß 17 USC § 512(f)(1)

106.    Um einen Verstoß gegen 17 USC § 512(f)(1) geltend zu machen, muss ich nachweisen, dass (A) Mateas eine DMCA-Gegendarstellung ausgestellt hat, (B) dass diese Gegendarstellung darin bestand, wesentliche Falschdarstellungen über den mutmaßlichen Verstoß in zu kennen das Video, und (C) dass ich aufgrund dieser wissentlich falschen Darstellung des Materials Schaden erlitten habe. Eine Person begeht eine wissentliche wesentliche Falschdarstellung, wenn sie die angemessene Verwendung nicht in Betracht zieht, bevor sie die Entfernung ausführt. Siehe Lenz v. Universal Music Corp., 801 F. 3d 1126 (9. Cir. 2015).

<u>IV-4-A: DMCA-Deaktivierung</u>

107.    Am oder um den 25. Mai 2021 hat Mateas einen DMCA-Takedown gegen mich ausgestellt. Siehe Abs. 54.

### IV-4-B: Wissentlich falsche Materialaussagen

108.    Die Anschuldigungen von ¶ 54 zeigen auch, dass er bei der Herausgabe dieser Deaktivierung mindestens eine wissentliche wesentliche Falschdarstellung begangen hat, nämlich dass er über den Besitz des Urheberrechts an diesem Bild gelogen hat.

### IV-4-C: Versäumnis, faire Nutzung zu berücksichtigen

109.    Die Anschuldigungen von ¶ 55 sollten hinreichend darauf hinweisen, dass er es versäumt hat, die faire Verwendung in Betracht zu ziehen, bevor er den Takedown erlässt. Meine Verwendung dieses Screenshots (der das Bild des Hahns enthielt) erfüllte alle vier Faktoren im Vier-Faktoren-Test, der in 17 USC § 107 (1)-(4) beschrieben ist. Ich habe über eine Nachrichtenveranstaltung berichtet (eine sehr Nischennachrichtenveranstaltung, aber dennoch eine Nachrichtenveranstaltung), also war es transformativ. Ich habe über ein Ereignis gesprochen, das sich wirklich im wirklichen Leben ereignet hat, nicht über ein fiktives Werk, daher wiegt der zweite Faktor für die faire Verwendung. Ich habe den Screenshot nur für ein paar Sekunden gezeigt, bevor ich ihn aus dem Video entfernt habe, daher wiegt der dritte Faktor für die faire Verwendung. Schließlich formt oder formt meine Verwendung des Screenshots in einem YouTube-Video in keiner Weise den Markt von Mateas, um das Bild zu lizenzieren (vorausgesetzt, er ist überhaupt der ursprüngliche Urheberrechtsinhaber, was er nicht ist) für seine ursprünglicher Zweck, ein Kommentarsymbol in Discord zu sein. Der vierte Faktor spricht also für eine faire Verwendung. Das bedeutet, dass buchstäblich alle vier Faktoren für eine faire Verwendung sprechen; es ist ein sauberer Schwung. Daher hat Mateas mit ziemlicher Sicherheit keine faire Verwendung in Betracht gezogen, bevor er seinen DMCA-Takedown veröffentlichte. Keine vernünftige Person hätte in diesem Fall den Vier-Faktoren-Test in Betracht ziehen und irgendwie vernünftigerweise feststellen können, dass meine Verwendung des Screenshots keine faire Verwendung war.

110.    Auch die Anschuldigungen von ¶ 46 schaffen eine sehr hohe Wahrscheinlichkeit, dass Mateas nicht nur die faire Verwendung nicht in Betracht gezogen hat, sondern dass er auch tatsächlich wusste, dass seine Entfernung betrügerisch war und dass er nicht in gutem Glauben gehandelt hat, um sein geistiges Eigentum zu schützen , aber zur Förderung einer Verschwörung, die der Server von Great Six Discord gegen mich eingegangen ist.

111.    Darüber hinaus ist die Tatsache, dass Mateas nie Klage gegen mich eingereicht hat und mein Video schließlich mangels Strafverfolgung wieder eingestellt wurde, ein Indiz dafür, dass er nicht wirklich glaubte, dass mein Video sein Urheberrecht verletzte. Siehe Online Policy Group gegen Diebold, Inc., 337 F. Supp. 2d 1195, 1204-05 (ND Cal 2004) („Die Tatsache, dass Diebold nie tatsächlich gegen einen mutmaßlichen Rechtsverletzer Klage erhoben hat, deutet stark darauf hin, dass Diebold versucht hat, die Safe-Harbor-Bestimmungen des DMCA – die zum Schutz von ISPs und nicht von Urheberrechtsinhabern konzipiert wurden – als ein Schwert, um die Veröffentlichung peinlicher Inhalte zu unterdrücken, und nicht als Schutzschild zum Schutz seines geistigen Eigentums.

### IV-4-D: Schäden

112.    Unterdessen sollten die Vorwürfe von ¶ 56 hinreichend einen Schaden geltend machen, der durch diese Betrugshandlung verursacht wurde. Ich habe über zwei Wochen damit verbracht, das Video zu entfernen und daher keine Aufrufe oder Werbeeinnahmen zu erzielen.

## V: ENTLASTUNG ANGEFORDERT

113.    Aus all den bereits genannten Gründen sollte mir ein prospektiver und rückwirkender Unterlassungsanspruch, gesetzlicher Schadensersatz für die Urheberrechtsverletzung sowie Schadensersatz und Strafschadensersatz für die vorsätzliche Zufügung von seelischer Belastung zustehen. Die Frage ist nur … welche Entlastung soll ich bekommen und gegen wen?

### V-1: Gerechte Entlastung gegen Karl Polano, Frederick Allison und Raul Mateas

114.    Zunächst möchte ich, dass das Gericht Karl Polano, Frederick Allison und Raul Mateas anordnet, jeden weiteren Kontakt mit mir einzustellen. Dies schließt über YouTube, Reddit, Discord, Twitch oder jede andere Form der Online- oder Offline-Kommunikation ein. Eine Ausnahme kann gemacht werden, wenn die Kommunikation von der amerikanischen Polizei oder einem zuständigen amerikanischen Gericht überwacht wird.

115.    Dieses Gericht hat bereits seine Meinung geäußert, dass ich keinen Anspruch geltend gemacht habe, für den ein Rechtsbehelf für die vorsätzliche Zufügung von seelischer Belastung gewährt werden kann. Ich wiederhole diese unerlaubten Handlungen immer noch in dieser zweiten geänderten Beschwerde, damit sie für einen Rechtsbehelf aufbewahrt werden können. Aber selbst wenn dieses Gericht es ablehnt, mir gemäß dieser unerlaubten Handlung einen Rechtsbehelf zu gewähren, gibt es einen unabhängigen Grund, aus dem ich glaube, dass ich Anspruch auf diesen Unterlassungsanspruch habe: Denn als Eigentümer meines YouTube-Kanals, Twitch-Kanals und Discord-Servers Ich habe immer noch das absolute Recht zu entscheiden, wer auf eines der oben genannten Grundstücke kommt und wer nicht, und die Gerichte sind verpflichtet, dieses Recht von mir durchzusetzen.

116.    Überlegen Sie, wie dies in einer Situation ohne Internet funktionieren würde. Stellen Sie sich vor, ich hätte ein Geschäft mit Ziegeln und Mörtel, zum Beispiel eine Bar. Frederick Allison kam in diese Bar und fing an, mich und/oder meine Kunden zu belästigen, also schmeiße ich ihn raus. Dann verkleidet er sich, damit er wieder durch die Haustür eintreten kann (oder vielleicht über einen alternativen Eingang, der nicht so stark bewacht ist), bevor er die Verkleidung ablegt, damit er mich und/oder meine Kunden wieder belästigen kann . Dann tut er es wieder. Und wieder.

117.    In diesem Szenario ist sein wiederholtes unerlaubtes Betreten – nachdem ihm wiederholt und unmissverständlich mitgeteilt wurde, dass er dort nicht willkommen ist – auch dann, wenn sein Verhalten auf dem Gelände nicht unabhängig als Straftat oder unerlaubte Handlung belangt werden kann, es dennoch. Es ist mein Eigentum, also ist es mein Recht. Als solches würde ein zuständiges Gericht in diesem Fall unbedingt eine einstweilige Verfügung erlassen, die den Beklagten anordnet, seinen unbefugten Zugang zum persönlichen oder geschäftlichen Eigentum

des Klägers einzustellen und zu unterlassen, und würde den Beklagten absolut unter Missachtung des Gerichts stellen (komplett mit Zwangshaft). ), wenn der Beklagte darauf bestand.

118.    Im vorliegenden Fall kann die Tatsache, dass es im Internet stattfindet, es den Beklagten physisch erleichtern, sich neue Verkleidungen (in Form von alternativen Konten) zu verschaffen, was jedoch meine materiellen Eigentumsrechte nicht beeinträchtigt. Im Urheberrecht gilt seit langem, dass die bloße Tatsache, dass etwas im Internet passiert, die Rechte des Urheberrechtsinhabers nicht beeinträchtigt; Ich sehe keinen Grund, warum es mein Recht beeinträchtigen sollte, zu diktieren, wer auf mein Geschäftsgelände kommt und was nicht und erhebe die Hölle.

119.    Ich glaube daher, dass ich absolut berechtigt bin, einen möglichen Unterlassungsanspruch zu erhalten, der den einzelnen Beklagten anordnet, den Versuch zu unterlassen, in mein Eigentum einzubrechen, auch wenn dieses Eigentum nur im digitalen Bereich existiert. Daher beantrage ich weiterhin einen möglichen Unterlassungsanspruch, der die einzelnen Beklagten anordnet, aus irgendeinem Grund auf keiner Website mehr mit mir in Kontakt zu treten.

120.    Diese einstweilige Verfügung sollte auch die Anweisung an alle drei Beklagten beinhalten, nie wieder DMCA Takedowns gegen mich zu erlassen. Wenn sie glauben, dass eines meiner Videos oder Streams ihr Urheberrecht verletzt, sollten sie mich direkt vor Gericht verklagen, ohne eine DMCA-Deaktivierung auszustellen und mich zu zwingen, zuerst eine DMCA-Gegendarstellung auszustellen. Auf diese Weise können sie ihre Rechte weiterhin durchsetzen, wenn ich sie verletze, aber ich hätte Anspruch auf ein vollständiges Verfahren, bevor sie meine Inhalte entfernen lassen können.

121.    Den Beklagten sollte auch untersagt werden, mit Personen zu kommunizieren, die sie kennen oder die sie kennen oder die Grund zu deren Kenntnis haben, Mitglied meines Discord-Servers oder regelmäßiger Zuschauer in meinen YouTube- oder Twitch-Kanälen zu sein. Eine Ausnahme kann gemacht werden, wenn die Kommunikation keinen Bezug zu mir hat. Dies soll verhindern, dass sie mich jemals wieder doxxen.

122.    Ich möchte auch, dass das Gericht den Beklagten untersagt, jemals wieder mein Urheberrecht zu verletzen. Diese einstweilige Verfügung sollte gelten, selbst wenn sie vernünftigerweise glauben, dass ihre verletzenden Inhalte für eine faire Verwendung geeignet sind. An dieser Stelle ist klar, dass die Beklagten nicht in der Lage sind, in gutem Glauben zu handeln, wenn es um die faire Verwendung geht. Sie werden die faire Verwendung nicht in Betracht ziehen, mich aber dennoch beleidigen, belästigen und belästigen, weil sie der Meinung sind, dass sie sich für eine faire Verwendung qualifizieren. Es ist klar, dass sie nicht in gutem Glauben handeln werden, daher sollten sie für immer das Recht verlieren, meine urheberrechtlich geschützten Inhalte fair zu nutzen. Es ist eine harte Strafe, aber sie ist notwendig.

123.    Zu guter Letzt sollte den Angeklagten angeordnet werden, von jeder Person, die Mitglied ihrer Discord-Communitys, ihrer YouTube- oder Twitch-Kanäle oder einer anderen Online-Community ist, in der sie Moderatoren- oder Administratorrechte haben, eine ähnliche Einhaltung aller oben genannten einstweiligen Verfügungen zu verlangen . Sie sollten angewiesen werden, jedes Material, das mich belästigt, belästigt oder mein Urheberrecht verletzt,

sofort zu entfernen und den Benutzern, die es veröffentlichen, sofortige, dauerhafte und unwiderrufliche Sperren zu erteilen, und dies auch in allen zukünftigen Fällen zu tun Unbegrenzte Dauer. Sie sollten angewiesen werden, mir die Möglichkeit zu geben, alle von ihnen erstellten oder unterhaltenen Gemeinschaften und alle in diesen Gemeinschaften veröffentlichten Nachrichten anzuzeigen, damit ich diese Gemeinschaften auf Verstöße gegen diese einstweilige Verfügung überwachen kann.

### V-2: Unterlassungsklage gegen Alphabet, Discord, Facebook, Amazon, Youtube, Instagram und Twitch

124.    Alphabet Inc., Discord Inc., Amazon.com Inc., Youtube LLC und Twitch Interactive Inc. haben sich größtenteils an die Safe-Harbor-Bestimmungen des DMCA gehalten. 17 USC § 512(j) sieht jedoch eine begrenzte Form eines prospektiven Unterlassungsanspruchs gegen ISPs vor, selbst wenn sie für alles andere einen sicheren Hafen haben. Aus diesem begrenzten Rechtsschutzgrund versuche ich, Alphabet Inc, Discord Inc. und Amazon.com Inc. zu untersagen. Ich beantrage auch eine einstweilige Verfügung gegen Facebook Inc. gemäß 17 USC § 512(j), obwohl sie ebenfalls auf Schadensersatz verklagt.

125.    Das Trio der einzelnen Angeklagten sind ohne Zweifel Wiederholungstäter. Ihre kollektiven Verstöße auf YouTube, Discord, Instagram und Twitch gelten zweifellos als wiederholte Verstöße. Obwohl der DMCA keine klare Definition für den Begriff „Wiederholungsverletzer" bietet, würde die Tatsache, dass die einzelnen Angeklagten mein Urheberrecht mindestens siebzehn Mal (möglicherweise mehr, wenn ich die Gelegenheit habe, ihren Discord-Server inspizieren) zu inspizieren, eine vernünftige Definition des Begriffs ausreicht. Kein vernünftiger Tatsachenbeweis würde argumentieren, dass fünfzehn Verstöße Sie nicht zu einem Wiederholungstäter machen.

126.    Aus diesem Grund ersuche ich das Gericht, Alphabet Inc., Discord Inc., Amazon.com Inc., Facebook Inc., Youtube LLC, Instagram LLC und Twitch Interactive Inc. gemäß 17 USC § 512(j)( 1)(B)(i), um die Konten der einzelnen Beklagten und alle zugehörigen Kanäle, Server und Seiten dauerhaft zu kündigen. Die Unternehmensbeklagten sollten auch angewiesen werden, den drei individuellen Beklagten weder ausdrücklich noch stillschweigend zu gestatten, aus irgendeinem Grund neue Konten zu eröffnen.

### V-3: Gesetzlicher Schadensersatz gegen Karl Polano, Frederick Allison, Raul Mateas, Facebook und Instagram

127.    Das Trio von Karl Polano, Frederick Allison und Raul Mateas hat mein Urheberrecht mindestens siebzehn (17) Mal kollektiv verletzt. Ich fordere einen gesetzlichen Schadensersatz von bis zu 150.000 US-Dollar für jede Urheberrechtsverletzung. Dies bedeutet, dass das Trio bisher für bis zu 2.550.000 US-Dollar an gesetzlichem Schadensersatz haftbar gemacht werden sollte. Ich bitte das Gericht jedoch auch, mir einen gesetzlichen Schadensersatz von bis zu 150.000 US-Dollar für jeden weiteren Fall von Urheberrechtsverletzungen zuzusprechen, den ich finden kann, wenn ich die Gelegenheit habe, den Discord-Server der Beklagten zu durchsuchen.

128.    Facebook und Instagram haben beide ihren sicheren Hafen in Bezug auf die fünfzehnte

Anklage wegen Urheberrechtsverletzungen verloren (siehe § 58 dieser Klage). Daher fordere ich, dass Facebook Inc. und Instagram LLC zusammen mit dem Trio der einzelnen Angeklagten für den fünfzehnten Fall von Urheberrechtsverletzungen haftbar gemacht werden und auch für gesetzliche Schäden bis zu 150.000 US-Dollar haftbar gemacht werden sollten.

### V-4: Emotionale Not und Strafschadenersatz gegen Polano, Allison und Mateas

129.    Um mich für das absichtliche Zufügen emotionaler Belastung zu entschädigen und die drei einzelnen Angeklagten zu bestrafen und alle anderen Personen in ähnlicher Lage davon abzuhalten, sich in Zukunft ähnlich zu verhalten, bitte ich das Gericht, mir eine Kombination aus kompensatorischer, emotionaler Belastung zuzusprechen , und Strafschadenersatz bis einschließlich einer Million ($1.000.000) Dollar gegen die drei einzelnen Angeklagten. In Kombination mit dem gesetzlichen Schadenersatz erhöht sich das Gesamtschadenspaket auf 3.550.000 US-Dollar.

### V-5: Andere geeignete Erleichterungen

130.    Zu guter Letzt bitte ich den Gerichtshof, jede andere Rechts- oder Billigkeitsmaßnahme zuzusprechen, die der Gerichtshof nach seinem Ermessen für angemessen hält, um mich gesund zu machen und sicherzustellen, dass dies nicht noch einmal passiert.

### VI: FAZIT

131.    Aus diesem Grund fordere ich unter Berücksichtigung der Prämissen respektvoll das Gericht auf, die Beklagten aufzufordern, die Belästigung, Doxxing und Urheberrechtsverletzung einzustellen und zu unterlassen, mir Schadensersatz bis zu und einschließlich 3.550.000 USD in einer Kombination aus gesetzlicher, emotionaler Belastung und Strafschadenersatz zuzusprechen, Kosten zuzuerkennen alle anderen mir zustehenden Rechtsbehelfe.

So beantragt an diesem, dem 2. October 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

GERICHTSHOF DER VEREINIGTEN STAATEN
NÖRDLICHER BEZIRK VON KALIFORNIEN

DAVID STEBBINS, d.b.a. ACERTHORN                              KLÄGER

VS.                              Case 3:21-cv-04184-JSC

KARL POLANO, d.b.a. SOFIANNP,
ALPHABET INC.,
DISCORD INC.,
FACEBOOK INC.,                                               ANGEKLAGTE
AMAZON.COM, INC.
JOHN DOE #1, d.b.a. INITIATIVEKOOKIE, und
JOHN DOE #2, d.b.a. TGP482,

## GEÄNDERTE BESCHWERDE

Kommt jetzt, Pro-se-Kläger David Stebbins, der hiermit die folgende geänderte Klage, wie vom Gericht am 30. Juni 2021 angeordnet, einreicht (siehe Dok. 10). In dieser Beschwerde behaupte ich mindestens fünfzehn (15) Fälle von Urheberrechtsverletzungen (und möglicherweise mehr, sobald die Entdeckung in diesem Fall beginnt), einen Fall von anhaltender vorsätzlicher Zufügung von emotionalem Stress[1], einen Fall von falscher Darstellung unter Verstoß gegen 17 USC § 512(f)(1) und eine Anklage wegen falscher Darstellung unter Verstoß gegen 17 USC § 512(f)(2).

## I: NAMEN & STANDORTE DER PARTEIEN

1.     Ich bin Youtuber und Twitch Streamer, der unter dem Pseudonym Acerthorn bekannt ist. Dies ist auch der Alias, den ich auf Discord verwende, sowie auf Reddit. Meinen YouTube-Kanal finden Sie unter der URL www.youtube.com/acerthorn. Meinen Twitch-Kanal finden Sie unter der URL von www.twitch.tv/acerthorn. Mein Reddit-Konto kann unter der URL www.reddit.com/user/acerthorn gefunden werden. Meinen Discord-Server finden Sie unter der URL www.discord.com/invite/8EkdSvWV9P.

2.     Karl Polano ist auch Youtuber und Twitch-Streamer. Auf YouTube, Twitch und Discord läuft er unter dem Pseudonym SofiannP. Auf den Websites von Reddit und Urban Dictionary trägt er jedoch den Alias SomeGuyFromLosSantos. Seinen YouTube-Kanal finden Sie unter der URL www.youtube.com/sofiannp. Seinen Twitch-Kanal finden Sie unter der URL www.twitch.tv/sofiannp. Seinen Discord-Server „Great Six" finden Sie unter der URL https://discord.gg/yjA7bwE. Sein Reddit-Konto kann unter der URL www.reddit.com/user/someguyfromlossantos gefunden werden. Seinen Urban Dictionary-Account finden Sie unter der URL www.urbandictionary.com/author.php?author=SomeGuyFromLosSantos. Ich gehe derzeit davon aus, dass er unter folgendem Namen und Adresse mit Prozess zugestellt werden kann:

---

1   Obwohl dieses Gericht diese Klage von Amts wegen abgewiesen hat, werde ich diese Ansprüche dennoch in der Beschwerde beibehalten, damit die Abweisung noch angefochten werden kann.

Karl Sofiann Axel Polano
Regensbergstrasse 120
Zurich, Zurich 8050 CH
Switzerland

3.      Alphabet Inc. ist die derzeitige Muttergesellschaft von Google, LLC, die wiederum die derzeitige Muttergesellschaft von YouTube ist, der derzeit größten Video-Sharing-Website der Welt. Es kann mit Prozess an folgenden Namen und Adresse zugestellt werden:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

4.      Discord Inc. ist ein Unternehmen, das die „Discord"-App besitzt und betreibt, eine kostenlose Chat- und Socializing-App, die für Android-, IOS- und Windows-Betriebssysteme verfügbar ist. Einzelpersonen und Unternehmen können Gruppen von Chatrooms einrichten, die als "Server" bezeichnet werden. Karl Polano hat einen Discord-Server mit dem Namen "Great Six". Ich habe auch einen Discord-Server, der einfach "Acerthorn" heißt. Discord Inc. kann unter folgendem Namen und Adresse prozessual zugestellt werden:

Ruth Chang
444 De Haro St,
Suite 200
San Francisco, CA 94107

5.      Facebook Inc. ist ein Unternehmen, das die Website von Instagram besitzt und betreibt. Facebook kann unter folgenden Namensadressen bedient werden:

Corporation Service Company
2710 Gateway Oaks Dr.,
Suite 150N
Sacramento, CA 95833

6.      Amazon.com, Inc. ist die Muttergesellschaft der Website von Twitch.tv. Es kann unter folgendem Namen und Adresse zugestellt werden:

7.      Frederick Allison verwendet hauptsächlich den Online-Alias "Allison" oder eine Variation davon (z. B. 6. InitaitiveKookie7767, Allison353 usw.). Er hat jedoch auch unter verschiedenen anderen Decknamen mit mir interagiert, darunter Jonathan Allison, TK Baha[HM] und zahlreiche Variationen der Phrasen "Patient Pea", "Old Zuccini", "Cap Spirited", "Incognito Pelican", " Spinning Monkeys", „We Lei Xiao Yung" und „Sigmi Nultz". Er kann unter folgendem Namen und Anschrift prozessual zugestellt werden:

Fredarick Allison
2057 Knob Lane

Hiawassee, GA 30546

8.     Raul Mateas ist ein YouTuber mit dem Pseudonym "TGP482". Seinen YouTube-Kanal finden Sie unter der URL www.youtube.com/tgp482. Obwohl er keinen eigenen Discord-Server oder Twitch-Kanal hat, hat er Konten, die er verwendet, um Streams anzusehen (einschließlich Polanos „SofiannP"-Twitch-Kanal) und auf verschiedenen Discord-Servern (einschließlich Polanos „Great Six"-Server) zu chatten. . Seine Konten bei beiden Sites können gefunden werden, indem Sie auf die URL von www.twitch.tv/tgp482 gehen und nach dem Discord-Konto von TGP482#74121 suchen. Er kann unter folgendem Namen und Anschrift prozessual zugestellt werden:

Raul Mateas
12th Shelton Avenue
Newark on Trent, Nottinghamshire
NG24 4NX
United Kingdom

## II: PERSÖNLICHE UND SACHLICHE GERICHTSBARKEIT

9.     Dieses Gericht ist in Bundesfragen zuständig für die Anklagepunkte von Urheberrechtsverletzungen und die Verletzungen von 17 USC § 512 (f). Dieses Gericht hat eine ergänzende Zuständigkeit für die unerlaubte Zufügung von emotionalem Leiden.

10.     Dieses Gericht ist persönlich für Alphabet, Discord und Facebook zuständig, da die drei Unternehmen ihren Hauptsitz in den Städten Mountain View, San Francisco bzw. Menlo Park haben, die alle im Northern District von Kalifornien liegen. Dieses Gericht ist für Amazon.com, Inc. langarmig zuständig, da die sechzehnte Anklage wegen Urheberrechtsverletzungen in diesen Fall einbezogen wird.

11.     Dieses Gericht ist persönlich für Karl Polano und Raul Mateas zuständig, da sie am 25. Mai 2021 bzw. 16. September 2021 DMCA-Gegendarstellungen bei Youtube ausgefüllt haben. Beim Einreichen dieser Gegendarstellungen stimmten sie schriftlich der Zuständigkeit des Bundesbezirksgerichts zu, in dem YouTube seinen Sitz hatte (das ist der nördliche Bezirk von Kalifornien). Dieses Gericht hat die persönliche Zuständigkeit für Frederick Allison, weil er und Mateas Komplizen bei Polanos Bemühungen sind, mich zu belästigen, zu betäuben, meine Karriere zu ruinieren und mein Urheberrecht zu verletzen. Dabei handelt es sich nicht nur um drei gleichzeitig, sondern unabhängig voneinander agierende Internet-Trolle. Es ist eine einzige, gemeinschaftliche Anstrengung.

## III: FAKTEN DES FALLS

12.     Die folgenden Fakten sind notwendig, um den Fall zu verstehen:

### III-1: Belästigung durch Allison

13.     Dies alles begann am 27. Februar 2021, als Allison unter dem Pseudonym „Allison"

einen Kommentar auf meinem YouTube-Kanal veröffentlichte, in dem er zugab, vorsätzlich und in böser Absicht versucht zu haben, meinen YouTube-Kanal mit dem sogenannten „ Ansichten mit geringer Retention.“

14.    YouTube verwendet einen Algorithmus und maschinelles Lernen, um zu entscheiden, welche Kanäle unter Ausschluss anderer beworben werden sollen. Es ist kein Geheimnis, dass die beiden wichtigsten Faktoren, die der Algorithmus bei der Entscheidung, welche Videos und Kanäle beworben werden sollen, berücksichtigt, Aufrufe und Zuschauerbindung sind. Um eine hohe Zuschauerbindung zu erreichen, muss ein Zuschauer nicht nur auf ein Video klicken und mit der Wiedergabe beginnen, sondern tatsächlich einen großen Teil des Videos ansehen. Im Idealfall sollte sich der Zuschauer dann ein anderes Video desselben Kanals ansehen. Dadurch wird dem Algorithmus angezeigt, dass der Zuschauer vom ersten Video so begeistert war, dass er sehen möchte, was der Kanal sonst noch zu bieten hat, was wiederum bedeutet, dass der Kanal dem Benutzer häufiger beworben werden sollte andere Benutzer, die einen ähnlichen Geschmack haben. Wenn ein Betrachter jedoch auf ein Video klickt und dann nach nur wenigen Sekunden sofort wieder wegklickt, geht der Algorithmus davon aus, dass das Video keine weitere Belichtung verdient und vergräbt das Video entsprechend.

15.    Vor diesem Hintergrund gab Allison zu, dass er den letzten Teil des Algorithmus absichtlich ausnutzte, um meinen Kanal vorsätzlich und in böser Absicht zu sabotieren und ihn am Wachstum zu hindern.

16.    Wenn Allisons Aktionen hier geendet hätten, hätte ich keine nennenswerten Maßnahmen ergriffen. Ich habe schon mit Trollen zu tun gehabt. Normalerweise blockiere ich sie einfach und mache mit dem Leben weiter. Am 1. März 2021 hat mich Allison jedoch auch auf Reddit kontaktiert. Ich hatte eine Frage zum Starten eines Livestreaming-Kanals auf Twitch gepostet und wollte wissen, wie man eine bestimmte Funktion meiner Streaming-Software verwendet. Am 1. März 2021 hat Allison – unter dem Pseudonym InitiativeKookie7767 agierend – in diesem Thread gepostet und erklärt: „Idk, aber deine Videos sind ziemlich beschissen, ich hoffe, du genießt den Tod deines Kanals.“

17.    Auch dies allein wäre keine große Sache gewesen. Unter normalen Umständen hätte ich ihn einfach blockiert, ihn den Reddit-Moderatoren und -Administratoren wegen einer möglichen Sperrung der Site gemeldet und dann weitergezogen. Das Problem hier ist, dass er mich auf mehreren Websites belästigt. Es reicht nicht, dass er sagt, dass er meine Inhalte nicht mag und glaubt, dass ich ein schrecklicher YouTuber bin. Er überwacht meine Social-Media-Präsenz wie ein Geier und sucht nach jeder Gelegenheit, die er finden kann, um mich zu belästigen.

18.    Am 2. März 2021 hat Allison gleich zwei Videos auf seinem eigenen YouTube-Account gepostet. Einer davon hieß „RIP Acerthorn (2018-2021).“ Der andere hieß "Acerthorn EXPOSED as Being ... anmaßend!" Beide Videos verwendeten Inhalte von meinem YouTube-Kanal, und daher habe ich DMCA-Takedowns für sie ausgestellt.

19.    Am 14. März 2021 löschte Allison seine Konten auf YouTube und Reddit und ersetzte sie durch Konten mit den Aliasen PatientPea9364 und PatientPea42. In diesen Konten gab er an, dass er InitiativeKookie unter einem neuen Namen sei und dass er jedes Mal, wenn ich ihn bei

Mods meldete oder DMCA-Takedowns gegen ihn ausstellte, einfach einen neuen Account erstellen würde, um alle Sperren oder Blockierungen zu umgehen. Er hat auch das Video „RIP Acerthorn (2018-2021)" erneut gepostet und mich auf Reddit kontaktiert, um mir einen Link zu diesem Video zu geben. Mit anderen Worten, es reichte nicht aus, dass er mich einfach nur belästigte. Er wollte, dass ich weiß, dass er mich belästigt. Die Administratoren von Reddit griffen schließlich ein und verhängten eine Sanktion gegen PatientPea, aber er löschte nur dieses Konto und erstellte ein neues, auch PatientPea genannt, aber mit einer neuen Nummer am Ende. Dann kontaktierte er mich über die „Private Chat"-Funktion von Reddit und fuhr fort, verschiedene beschimpfende Beleidigungen gegen mich auszusprechen. Dies dauerte mehrere Wochen, wobei ich ihn den Reddit-Administratoren meldete, er sanktioniert wurde, das Konto löschte, ein neues Konto unter einem anderen Namen erstellte und mich dann wieder belästigte. Und wieder. Und wieder. Dieses Muster hielt mehrere Wochen an.

20.    Am 18. März 2021 trat Allison unter dem Pseudonym „InitiativeKookie" meinem Discord-Server bei. Seine erste Nachricht lautete: "Ich habe dir ein Geschenk mitgebracht." Dieses „Geschenk" war in der Tat eine Menge unerwünschter pornografischer Bilder. Meiner Meinung nach sollte dies eine sexuelle Belästigung darstellen. Das vielleicht schockierendste und entsetzlichste dieser Bilder war das Bild eines Mannes, der versuchte, seinen eigenen Penis mit einem Steakmesser abzuschneiden.

21.    Ende März 2021 hat Allison ein neues Discord-Konto mit einem anderen Namen erstellt, den ich nicht kannte. Er verbrachte mehrere Wochen in meinem Discord, war höflich und höflich und nahm ohne Unterbrechung am Chat teil. Am oder um den 13. April 2021 bat er darum, Moderator für meinen Discord-Server zu sein. Ich habe ihn zu der Stelle befragt und er hat auf das Vorstellungsgespräch vorbildlich reagiert, also habe ich ihn für die Stelle ernannt. Ich wachte am nächsten Tag (14. April 2021) auf und stellte fest, dass fast alle von meinem Discord-Server verbannt waren und der neue Moderator seinen Namen in InitiativeKookie geändert hatte, um sein wahres Gesicht zu zeigen.

### III-2: Versehentlicher Livestream am 10. April 2021

22.    Am 10. April 2021 schaltete sich meine Livestream-Software von selbst ein, ohne dass ich es merkte. Es blieb fast zwei Stunden an, bevor ich merkte, dass es eingeschaltet war, und es schloss. Während dieses zufälligen Livestreams konnten meine Zuschauer sehen, wie ich alltägliche Aktivitäten ausführte, wie z.

23.    An einer Stelle des Videos waren jedoch einige seltsame Geräusche zu hören. Ich weiß nicht, was diese seltsamen Geräusche waren (die beste Beschreibung, die ich geben kann, ist, dass es wie das Bellen eines Hundes klang, aber ich habe keinen Hund), und ich habe sie nicht verursacht. Aber was auch immer sie waren, diese seltsamen Geräusche bildeten den einzigen interessanten und einprägsamen Teil dieses ansonsten langweiligen und inhaltslosen Livestreams. Als solches bildet es das „Herz" dieses Livestreams.

24.    Ich habe diesen versehentlichen Livestream beim U.S. Copyright Office registriert. Das Archiv dieses zufälligen Livestreams habe ich auch auf meinen YouTube-Kanal hochgeladen. Der Zugriff auf dieses Video ist jedoch nur auf diejenigen beschränkt, die mir mindestens 20 US-

Dollar pro Monat zahlen.

25.    Bisher hat mir noch niemand die $20 pro Monat bezahlt, um dieses Video anzusehen. Inzwischen gibt es keine Möglichkeit, direkt von Twitch herunterzuladen. Dies bedeutet, dass jede Person, die eine Kopie dieses Livestreams erworben hat, dies notwendigerweise durch illegales Herunterladen des Streams mit Software von Drittanbietern getan hat.

### III-3: Die anhaltenden Belästigungen und Urheberrechtsverletzungen von Allison

26.    Am 10. April 2021, ein paar Stunden nach meinem versehentlichen Livestream, hat Allison ein Video auf seinen YouTube-Kanal hochgeladen. Dieses Video ist ein Clip aus meinem zufälligen Livestream. Insbesondere enthielt es den einzigen interessanten Teil dieses Livestreams und die Gesamtheit dieses einzigen interessanten Teils. Allison hat keinerlei Modifikationen oder Veränderungen am Clip vorgenommen, geschweige denn irgendwelche Modifikationen, die als transformativ angesehen werden könnten. Dieses Video usurpiert fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. Die Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten"). Am 10. April 2021 um 16:11 Uhr (zentrale Zeitzone) habe ich eine DMCA-Deaktivierungsmitteilung herausgegeben, die am selben Tag um 17:25 Uhr (zentrale Zeitzone) von YouTube entfernt wurde.

27.    Am 11. April 2021 erstellte Allison einen Account auf der Video-Sharing-Site von Vimeo, wo er das gleiche Video wie oben erwähnt veröffentlichte, wiederum ohne jegliche Änderungen. Auch dieses Video usurpiert den Markt für den eigenen versehentlichen Livestream der Kläger fast vollständig. D ie Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie das, wenn sie dasselbe kostenlos von einer anderen Website erhalten können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

28.    Ich habe dieses Video auch über eine DMCA-Gegendarstellung entfernen lassen. Im Gegensatz zu YouTube wurde jedoch, als ich diese Deaktivierung auf Vimeo veröffentlichte, mein richtiger Name (David Stebbins) im Gegensatz zu meinem Alias Acerthorn angezeigt.

29.    Am 12. April 2021 erstellte Allison einen neuen YouTube-Kanal (auch InitiativeKookie genannt, aber anders als der erste), auf dem er ein kurzes Video veröffentlichte, das vollständig

aus einem Clip aus dem oben genannten versehentlichen Livestream bestand. Dieses kurze Video zeigte den einzig interessanten Teil dieses zufälligen Livestreams und zeigte die Gesamtheit dieses einzigen interessanten Teils. An dem Clip wurde nichts geändert. Dieses Video usurpiert fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. D ie Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten"). Ich habe umgehend eine DMCA-Deaktivierung für dieses Video ausgestellt und YouTube hat es ungefähr eine Stunde später entfernt.

30.    Am 13. April 2021 hat Allison einen neuen YouTube-Kanal namens Incognito Pelican erstellt. Anschließend lud er den gleichen Clip wie zuvor – wieder ohne Änderungen – mit dem Videotitel „Cod Zombies be like (acerthorn moment) #shorts" hoch. Außerdem hat er den gleichen Clip in einem 5-Sekunden-Video hochgeladen. Diesmal nahm er jedoch eine sehr kleine, de minimus, nicht transformierende Änderung am Video vor: Er beendete den Stream-Clip mit einigen Gummi-Werbeclips. Er lieferte noch die Gesamtheit des einzigen interessanten Moments aus dem zufälligen Livestream. Als solches usurpiert dieses Video fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. D ie Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

31.    Später am 13. April 2021 erhielt ich eine Nachricht auf Reddit von Allison, diesmal unter dem Pseudonym InitiativeKookie34, die mich darüber informierte, dass der DMCA-Takedown, den ich auf Vimeo gegen ihn ausgestellt habe (siehe ¶ 28 für Details), ihm meine richtigen Namen anstelle meines Online-Alias, konnte er diese Informationen verwenden, um alle meine persönlichen Informationen zu finden. Er machte klar, dass er diese persönlichen Informationen mit allen teilen würde, die er konnte, um meine Karriere auf YouTube und Twitch zu ruinieren. Diese Form der Belästigung – die unfreiwillige Weitergabe persönlicher Daten über das Internet – wird im Internet-Sprachgebrauch als „Doxxing" bezeichnet.

32.    Später am 13. April 2021 erstellte Allison einen neuen YouTube-Kanal – diesmal mit dem Namen „Spinning Monkeys" – wo er denselben Clip aus meinem zufälligen Livestream hochgeladen hat, mit den Gummi-Werbeclips, die ihn buchen. Genau wie zuvor usurpiert dieses Video fast vollständig den Markt für den eigenen versehentlichen Livestream der Kläger. Die Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von

20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

33.    In den nächsten Wochen hielt Allison sein Versprechen, mich zu doxen. Er schickte meine persönlichen Daten an alle, die er finden konnte, die ein Mitglied meines Discord-Servers, ein Kommentator auf meinem YouTube-Kanal oder einen meiner Follower auf Twitch waren.

34.    Am 2. Juni 20221 erhielt ich eine Nachricht auf Discord von einer Person mit dem Pseudonym VoreNeko777. Er behauptete, dass die Videospiel-Rezensions- und Nachrichtenwebsite IGN.com einen ziemlich aufrührerischen und verleumderischen Artikel über mich veröffentlicht habe und dass er, obwohl er entfernt worden war, eine archivierte Kopie des Artikels aufbewahrt hatte, falls ich ihn zeigen wollte alle Anwälte für einen möglichen Rechtsstreit. Als ich jedoch die angehängte Datei herunterlud, die angeblich eine archivierte Kopie des IGN-Artikels war, lud mein Browser sie nicht herunter, da sie einen Computervirus enthielt. Am oder um den 7. Juni 2021 (das genaue Datum ist unbekannt) hatte Allison einen neuen Account auf Reddit erstellt – diesmal unter dem Alias InitaitiveKookie 353 – und kontaktierte mich auf dieser Seite und behauptete, derjenige zu sein, der versuchte, mich damit zu infizieren der Computervirus. Dies geht an einer Stelle über bloße Belästigung hinaus. Jetzt hat er die Grenze überschritten und versucht, mir eine tatsächliche, reale, konkrete und greifbare Verletzung zuzufügen. Nicht nur das, er hat auch ein Cyber-Verbrechen begangen und sollte dafür ins Gefängnis gehen.

### III-4: Polanos Belästigung

35.    Polano hat am 24. März 2021 auf einen meiner Beiträge auf Reddit unter dem Benutzernamen SomeGuyFromLosSantos geantwortet. In diesem Beitrag forderte er, dass ich meine Bestrebungen aufgebe, eine Vollzeitkarriere mit YouTube und/oder Twitch zu machen, und drohte, mein Leben zu „einem Abstieg in die Hölle" zu machen, wenn ich seinen Forderungen nicht nachgebe. Genau wie bei InitiativeKookie würde ich, wenn dies das Ende meiner Interaktionen mit ihm wäre, heute nicht verklagen. Ich habe in der Vergangenheit mit einmaligen Trollen zu tun gehabt. Normalerweise blockiere ich sie einfach, melde sie den Administratoren der Site und gehe dann weiter. Aber wie bei InitiativeKookie hat er mich nicht nur einmal belästigt und dann weitergezogen.

36.    Mitte April 2021 postete Karl Polano auf meinem Discord-Server (unter dem Pseudonym „SofiannP") und erklärte, dass ihm meine Inhalte auf Youtube sehr gefallen. Zu diesem Zeitpunkt war mir nicht klar, dass er derselbe Typ vom 24. März war, der drohte, mein Leben zur Hölle zu machen, wenn ich meine Bestrebungen nach einer Vollzeitkarriere auf YouTube und/oder Twitch nicht aufgab. Schließlich hatte er einen anderen Namen und eine ganz andere Persönlichkeit als diese Person. Da er zu der Zeit wie ein angesagter Kerl aussah, habe ich mir seinen Twitch-Kanal angesehen. Mir ist aufgefallen, dass er einen Twitch-Kanal mit über 300 Followern hat, und da

ich selbst gerade erst angefangen hatte, auf Twitch zu streamen, fragte ich ihn, ob wir zusammen einen kollaborativen Stream (oder kurz „Collab") machen könnten. Er stimmte zu und wir hatten die Zusammenarbeit am 18. April 2021.

37.    Ähnlich wie bei den Ereignissen von ¶ 21 dieser Klage verlief zunächst alles gut. Zuerst schien er wirklich aufgeregt zu sein, mit mir zusammenzuarbeiten. Doch ähnlich wie bei den Ereignissen in ¶ 21 dieser Klage stellte sich seine Freundlichkeit als bloße List heraus, um mich in ein falsches Gefühl der Sicherheit zu wiegen, bevor er seine falsche Schafwolle entfernte und seine Wolfszähne trug. Ungefähr 90 Minuten nach Beginn des Streams enthüllte er, dass er die ganze Zeit mit InitiativeKookie zusammengearbeitet hatte und dass er jetzt, da er auf meinem Kanal war und live sendete, meine persönlichen Informationen an alle meine Zuschauer sendete, bevor ich den Stream unterbrach . Dann verbrachte er ungefähr 15 zusätzliche Minuten auf seinem eigenen Twitch-Kanal, um mich weiter zu betäuben, nachdem meine Zuschauer von meinem Kanal auf seinen Kanal umgestiegen waren.

38.    Ich habe ungefähr eine Woche damit verbracht, mich von dieser Erfahrung zu lösen. Am 25. April 2021 erhielt ich jedoch die Nachricht, dass meine urheberrechtlich geschützten Livestreams und YouTube-Videos auf dem Great Six Discord geteilt wurden, das Polano gehört. Um das zu untersuchen, ging ich zu diesem Discord-Server. Ich konnte nur auf den Chatroom „Anwendungen" zugreifen, einen Chatroom, in dem Neuankömmlinge auf dem Server den Zugang zum Hauptchatroom beantragen sollen (wo die Urheberrechtsverletzungen tatsächlich stattfanden). Also bat ich darum, dorthin zu dürfen, um nach Urheberrechtsverletzungen zu suchen. Das Ausmaß an reiner Feindseligkeit, Toxizität und Vulgarität, das Polano als Reaktion auf diese einfache Bitte auslöste, war absolut umwerfend. Er erlaubte mir nicht nur nicht, den Haupt-Chatroom zu betreten, um nach Fällen von Verstößen zu suchen, sondern er reagierte auch mit übermäßig vulgären und grenzübergreifenden persönlichen Angriffen, einschließlich, aber nicht beschränkt auf die folgenden:

(a)    "Geh und lehre dich selbst etwas über das Gesetz, du <Kraftausdruck> schwachsinniges fettes Schwein."

(b)    "Ich verliere meine <Kraftausdruck> Geduld mit deinem einstelligen amerikanischen Schweinehirn."

(c)    "Warum machst du dich öffentlich, PIG <KRAFTAUSDRUCK>? Antworte, PIG <KRAFTAUSDRUCK>!"

(d)    "Lesen Sie das sorgfältig durch und stecken Sie es in Ihren dicken <Kraftausdruck>-Schädel, Sie Dummkopf."

(e)    "Wow, ein Kanal, der Clips eines anderen Kanals zeigt, ohne DMCA-bewertet zu bekommen? WIE?! Nun, fair use you <Kraftausdruck> <Kraftausdruck>, es ist nicht der gesamte <Kraftausdruck> Content-Stream, den wir hochgeladen haben, oder?"

(f)    "Ich schwöre, diese 32 Knäuel fetter Männer sind unglaublich."

39.     Unnötig zu erwähnen, dass mir kein Zugang zum Hauptchatraum gewährt wurde. Aus diesem Grund sollte Polano haftbar gemacht werden, nicht nur für die Fälle von Urheberrechtsverletzungen, die ich in dieser Beschwerde ausdrücklich erwähne, sondern auch für die potenziell Dutzende von Urheberrechtsverletzungen, die ich auf seinem Discord-Server finden kann, sobald ich während der Entdeckung von Zugriff darauf habe dieser Fall. Er sollte sogar für die Fälle von Urheberrechtsverletzungen haften, die er nicht persönlich hochgeladen hat, da er die Anforderungen des DMCA zum sicheren Hafen vollständig und völlig missachtet hat.

40.     Mateas soll auch für die Urheberrechtsverletzungen haften. Er ist Moderator im Great Six Discord. Als solcher hatte er die Macht, den rechtsverletzenden Inhalt zu entfernen und sogar die Benutzer zu sperren, die ihn hochgeladen haben. Ich habe ihn auf Discord kontaktiert und ihn gebeten, den rechtsverletzenden Inhalt zu entfernen, aber er hat es nie getan. Damit hat er auch seinen sicheren Hafen verloren.

41.     Darüber hinaus haben sowohl Polano als auch Mateas Allisons Bemühungen fortgesetzt, jedes einzelne Mitglied meiner YouTube-, Twitch- und Discord-Communitys zu erreichen und mich durch die Weitergabe meiner persönlichen Daten zu doxen. Zwei Fälle, in denen ich mit Sicherheit weiß, dass dies die Macht, (und dass Polano es im Gegensatz zu Allison getan hat), waren am 10. Mai 2021 und am 26. Mai 2021. Denken Sie daran, dass dies nicht die einzigen beiden Fälle sind. Sie sind nur die einzigen beiden Fälle, in denen ich mit Sicherheit weiß, dass Polano derjenige ist, der das Doxxing persönlich durchgeführt hat.

### III-5: Polanos Urheberrechtsverletzungen

42.     Da mir kein Zugang zum Haupt-Chatroom des Great Six Discord gewährt wurde, musste ich mich auf Informanten Dritter verlassen, um diesen Discord-Server für mich zu durchsuchen und mir Fälle von Urheberrechtsverletzungen zu melden. Diese Informanten können offensichtlich nicht jeden Verstoß erfassen. Mit ihrer Hilfe konnte ich jedoch etwa ein halbes Dutzend unbefugter Verwendungen von Clips aus meinem versehentlichen Livestream finden. Jeder von ihnen kopierte den einzig interessanten Teil des Livestreams wörtlich. Ich habe DMCA-Deaktivierungsmitteilungen am 25. April, 27. April, 28. April, 5. Mai, 8. Mai und 22. Mai herausgegeben. Die Existenz dieser Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 USD pro Monat zahlen, um den Livestream und seltsame Geräusche zu sehen der legitime Weg. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

43.     Beachten Sie, dass dies nur die Verstöße sind, die ich dank der Hinweisgeber finden konnte, die mir die Links zur Verfügung gestellt haben. Am 19. Mai 2021 erhielt ich von einem dieser Informanten einen Screenshot, auf dem Polano angab, dass auf dem Server zahlreiche weitere Verstöße vorliegen, die von den Informanten noch nicht „verraten" wurden. Ich möchte die einzelnen Angeklagten (Polano, Allison und Mateas) für all diese Verstöße haftbar machen

und hoffe, sie alle beweisen zu können, sobald ich in diesem Fall eine Entdeckung erhalte. Ich weiß nur nicht, wie viele es sind.

44.     Von den Verstößen, von denen mir meine Informanten berichteten, wurden sie von Discord beseitigt. Am 8. Mai 2021 kontaktierte mich jedoch ein Vertreter des Great Six Discord-Servers unter dem Pseudonym DeFranko auf Discord und teilte mir mit, dass die Ausstellung dieser DMCA-Takedowns reine Zeitverschwendung sei, denn selbst wenn ich irgendwelche rechtsverletzenden Videos hätte vom Server entfernt, würden sie die Videos einfach erneut veröffentlichen. Er erklärte, dass ich den gesamten Great Six Discord-Server herunterfahren könnte, um die Urheberrechtsverletzung zu stoppen.

45.     Am 20. Mai 2021 postete Karl Polano ein Video auf seinem YouTube-Kanal. Dies war eine identische Kopie des Videos, das in ¶¶ 30 und 32 erwähnt wurde, wo er den einzigen interessanten Teil des zufälligen Livestreams vollständig kopierte, der von kommerziellen Gummiclips umgeben war. Falls das Video jemals wieder aufgenommen werden sollte, könnte es unter der folgenden URL angesehen werden: http://www.youtube.com/watch?v=-xL0xoU2cJA Die Existenz dieses Videos bedeutet, dass die Leute mir wahrscheinlich nicht das Geld bezahlen $20 pro Monat Gebühr, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

46.     Ich habe für dieses Video eine DMCA-Deaktivierung ausgestellt und YouTube hat es etwas mehr als eine Stunde später entfernt. Am 21. Mai 2021 erhielt ich von einem meiner Copyright-Informanten die Nachricht, dass die Mitglieder des Great Six Discord-Servers sich verschworen haben, um mehrere gefälschte Accounts zu erstellen und zu versuchen, meinen Kanal mit falschen Urheberrechtsverstößen als Vergeltung für meine Herausgabe dieser DMCA-Deaktivierung zu deaktivieren gegen Polano. Mitglieder des Great Six Discord-Servers gaben Kommentare ab, darunter "SofiannP wird das zurückfordern und den Schlag an Acerthorn zurückgeben" und "Wir sollten einfach eine Menge Konten erstellen und ihn aus dem gleichen Grund melden."

### III-6: Betrügerische DMCA-Gegendarstellung

47.     Am 25. Mai 2021 erhielt ich eine E-Mail von YouTube, in der es hieß, dass Karl Polano eine DMCA-Gegendarstellung als Reaktion auf die von mir gegen ihn ausgestellte Deaktivierung gemäß der Beschreibung in ¶ 45 dieser Beschwerde ausgestellt hatte. Beim Einreichen dieser Gegendarstellung hat Polano ein Kästchen angekreuzt, das besagte: „Ich stimme der Zuständigkeit des Bundesbezirksgerichts für den Bezirk zu, in dem sich meine Adresse befindet, oder, wenn sich meine Adresse außerhalb der Vereinigten Staaten befindet, dem Gerichtsbezirk, in dem YouTube befindet sich und akzeptiert die Zustellung des Verfahrens durch den Kläger" und stimmt damit der Zuständigkeit des US-Berufungsgerichts für den nördlichen Bezirk von Kalifornien zu. Bei der Einreichung dieser DMCA-Gegendarstellung hat Polano im relevanten

Teil Folgendes angegeben:

> "Ich habe das Video als Parodie auf den Originalinhalt erstellt, der ein 2-stündiger Livestream war. Diese Parodie soll ein Meme sein und nichts wie der Originalinhalt von Acerthorns. Dies ist Fair Use, da sein Material geändert wurde, um neues zu erstellen Inhalt und wurde auch nicht monetarisiert."

48.     Diese Aussage enthält mindestens vier verschiedene, unverblümte Lügen, die eine wissentliche falsche Darstellung durch Polano unter Verstoß gegen 17 USC § 512 (f) (2) darstellen. Erstens ist es keine Parodie. Er kopierte lediglich meinen Livestream, während er keinerlei transformativen Wert hinzufügte (die Gummi-Werbeclips sind nicht transformativ). Zweitens hat er gelogen, als er sagte, es sei "nichts wie der ursprüngliche Inhalt von Acerthorn". Es ist in der Tat „wie" mein versehentlicher Livestream, bis zu dem Punkt, an dem er den Markt für meinen Livestream vollständig an sich reißt und den Anreiz für jeden, mir die 20 US-Dollar pro Monat zu zahlen, um diesen Stream auf meinem eigenen YouTube-Kanal anzusehen, vollständig beseitigt. Kein vernünftiger Mensch könnte sein 50-sekündiges rechtsverletzendes Video und entsprechende Abschnitte meines Livestreams nebeneinanderstellen und denken, dass die beiden nicht gleich sind. Es ist nichts anderes als eine kahlköpfige Lüge. Drittens lügt er, wenn er sagt, dass mein Material geändert wurde, um neue Inhalte zu erstellen. Abgesehen von den Werbeclips aus Gummi (die keinerlei transformativen Wert bieten) hat er die Clips aus dem zufälligen Livestream in keiner Weise, Form oder Form verändert. Wenn er sagt, dass er es in irgendeiner Weise verändert hat (geschweige denn es so verändert hat, dass es neue Inhalte schafft), ist das Wissen um eine materielle Falschdarstellung. Viertens lügt er, wenn er sagt, dass das Video nicht monetarisiert wurde. Dies war in der Tat eine kommerzielle Wiederverwendung meines versehentlichen Livestreams.

49.     Zusätzlich zu all den Lügen, die er erzählt hat, gibt es noch einen weiteren Faktor, der dazu führt, dass seine DMCA-Gegendarstellung betrügerisch ist: Er hat den Vier-Faktoren-Test nicht durchgeführt, wie in 17 USC § 107 (1)-(4) beschrieben. Dies bedeutet, dass er bei der Ausstellung seiner Gegendarstellung keine faire Verwendung berücksichtigt hat, auch wenn die vier oben genannten Lügen tatsächlich wahr waren.

50.     Von all den Lügen, die er in dieser DMCA-Gegendarstellung erzählte, gab es jedoch eine sehr aufschlussreiche Sache: Er sagte, dass er diesen Clip erstellt habe. Er hat es sich nicht nur von Allison geliehen. Er hat es selbst geschaffen. Dies wird sich in Kürze als nützlich erweisen, wenn ich die Beweise für die Zusammenarbeit zwischen den drei einzelnen Angeklagten erörtere.

### III-7: Betrügerische DMCA-Deaktivierung

51.     Am oder um den 23. Mai 2021 habe ich mich qualifiziert, ein Twitch-Partner zu werden, was bedeutet, dass ich jetzt berechtigt bin, Anzeigen in meinen Streams zu schalten und „Abonnements" (oder bezahlte Follower) zu erhalten. Um mich als Affiliate zu qualifizieren, muss ich vier Kriterien erfüllen, darunter mindestens 50 Follower auf meinem Twitch-Kanal. Am 23. Mai 2021 habe ich diese Qualifikation endlich erreicht. Unmittelbar nachdem ich sie erfüllt hatte, sagte Mateas in seiner Eigenschaft als Moderator des Great Six Discord-Servers allen, dass

es „nicht erlaubt" sei, dass ich 50 Follower habe. und dass jeder, der mir auf Twitch folgte, sofort entfolgen musste. Viele Leute taten es und meine Followerzahl ging weiter zurück.

52.    Trotz dieses Versuchs, meine Karriere zu sabotieren, konnte ich trotzdem den Affiliate-Status erhalten und bin jetzt zum Zeitpunkt dieses Schreibens ein Twitch-Affiliate. Um diesen Erfolg zu feiern, habe ich ein Video mit dem Titel „Woot! Ich bin ein Twitch-Affiliate!" und auf meinen YouTube-Kanal hochgeladen. Sie können das Video anzeigen, indem Sie auf die folgende URL gehen:

www.youtube.com/watch?v=FZenOvX1XHg

53.    In diesem Video erklärte ich, dass mehrere Leute versuchten, mein Wachstum zu untergraben, indem sie verlangten, dass die Leute mir von Twitch nicht mehr folgen, und ich habe einen Screenshot bereitgestellt, um dies zu beweisen.

54.    Am 25. Mai 2021 hat Mateas einen betrügerischen DMCA-Takedown für dieses Video ausgestellt. Er behauptete, dass ich ein „Bild von [seinem] Huhn" verwendet habe. Damit nehme ich an, dass er meint, dass ich sein Discord-Symbol verwendet habe, das ein Bild eines Hahns ist. Dies war jedoch ein betrügerischer DMCA-Takedown. Er besitzt nicht das Urheberrecht an diesem Bild. Wahrscheinlich hat er es einfach irgendwo aus dem Internet gezogen und stattdessen dieses Bild verwendet. Es ist der gesunde Menschenverstand, dass Sie keinen DMCA-Takedown wegen eines Urheberrechts rechtmäßig ausstellen können, wenn Sie nicht der Urheberrechtsinhaber sind!

55.    Aber selbst wenn er einen Beweis dafür vorlegen könnte, dass er der ursprüngliche Autor oder anderweitig der Urheberrechtsinhaber dieses Bildes dieses Hahns war, war seine Entfernung immer noch betrügerisch, da er keine faire Verwendung in Betracht zog. Meine Verwendung dieses Screenshots (der das Bild des Hahns enthielt) erfüllte alle vier Faktoren im Vier-Faktoren-Test, der in 17 USC § 107 (1)-(4) beschrieben ist. Ich habe über ein Nachrichtenereignis1 berichtet, also war es transformierend. Ich habe über ein Ereignis gesprochen, das sich wirklich im wirklichen Leben ereignet hat, nicht über ein fiktives Werk, daher wiegt der zweite Faktor für die faire Verwendung. Ich habe den Screenshot nur für ein paar Sekunden gezeigt, bevor ich ihn aus dem Video entfernt habe, daher wiegt der dritte Faktor für die faire Verwendung. Schließlich formt oder formt meine Verwendung des Screenshots in einem YouTube-Video in keiner Weise den Markt von Mateas, um das Bild zu lizenzieren (vorausgesetzt, er ist überhaupt der ursprüngliche Urheberrechtsinhaber, was er nicht ist) für seine ursprünglicher Zweck, ein Kommentarsymbol in Discord zu sein. Der vierte Faktor spricht also für eine faire Verwendung. Das bedeutet, dass buchstäblich alle vier Faktoren für eine faire Verwendung sprechen; es ist ein sauberer Schwung. Daher hat Mateas mit ziemlicher Sicherheit keine faire Verwendung in Betracht gezogen, bevor er seinen DMCA-Takedown veröffentlichte. Keine vernünftige Person hätte in diesem Fall den Vier-Faktoren-Test in Betracht ziehen und irgendwie vernünftigerweise feststellen können, dass meine Verwendung des Screenshots keine faire Verwendung war. Es scheint vielmehr, dass Mateas lediglich versucht hat, sich gegen mich zu rächen, weil ich den DMCA-Takedown gegen Karl Polano ausgestellt habe, den der Zwietracht-Server der Great Six sich gegen mich verschworen hat, wie in ¶ 46 dieser Klage beschrieben.

56.    Ich habe eine DMCA-Gegendarstellung an YouTube gesendet und das Video wurde schließlich am 13. Juni 2021 wieder eingestellt. Ich habe jedoch immer noch 19 Tage damit verbracht, das Video zu entfernen. Da es so lange deaktiviert wurde, hat es keine Aufrufe und damit keine Werbeeinnahmen generiert.

### III-8: Weitere Urheberrechtsverletzungen

57.    Am oder um den 7. Juni 2021 starteten die drei einzelnen Angeklagten (zusammen mit einigen anderen) eine Seite auf der Facebook-Website „Instagram" namens AcerthornFanClub. Mateas und Karl Polano waren zwei der Schöpfer dieses sogenannten Fanclubs. Obwohl er sich selbst einen Fanclub nennt, war sein eigentlicher Zweck, mich öffentlich zu betrügen und mein Urheberrecht zu verletzen. Unter anderem haben die Angeklagten einen Clip aus meinem versehentlichen Livestream hochgeladen. Dieser Clip zeigte den einzigen interessanten Teil des zufälligen Livestreams und zeigte die Gesamtheit dieses einzigen interessanten Teils. Außerdem gab es keinerlei Modifikationen, nicht einmal die oben erwähnten Werbeclips aus Gummi. Die Existenz dieses Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können? Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9. Cir. 1986) ("Tatsächlich verschwindet durch das Kopieren des gesamten oder im Wesentlichen des gesamten urheberrechtlich geschützten Werks die Unterscheidung der Funktion, da" ungeachtet der Absicht des Kopierers, eine wortgetreue Wiedergabe dient notwendigerweise sowohl der Arbeit des Klägers als auch der des Beklagten").

58.    Ich habe eine DMCA-Deaktivierung für diese Seite ausgestellt. Am 9. Juni 2021 erhielt ich jedoch eine E-Mail von Facebook, in der mitgeteilt wurde, dass das rechtsverletzende Material nicht entfernt wird. Daher hat Facebook seinen sicheren Hafen für diese Zählung von Urheberrechtsverletzungen verwirkt.

59.    Am 9. Juni 2021 erhielt ich auf Instagram eine Nachricht vom AcerthornFanClub. Es war ein Bild von Karl Polano, mit dem Satz „Admin-Enthüllung" oben (was mich darüber informierte, dass Karl Polano der Verantwortliche für diese Instagram-Seite war), während er auch sagte „Du bist eine Schlampe" und „Du bist halt uns nicht auf!"

60.    Am oder um den 6. Juli 2021 hat Polano einen Stream auf seinen Twitch-Kanal hochgeladen. In diesem Stream spielte er unter anderem einen Clip meines zufälligen Livestreams ab, bei dem die seltsamen Geräusche auftraten. Wäre dieser Stream noch verfügbar, könnte er unter folgender URL angesehen werden: https://www.twitch.tv/videos/1102055994. Am 28. August 2021 habe ich bei Twitch eine DMCA-Deaktivierungsmitteilung herausgegeben, die weniger als 2 Stunden später entfernt wurde. Am 31. August 2021 erhielt ich jedoch eine Benachrichtigung von Twitch, dass Karl Polano eine DMCA-Gegendarstellung ausgestellt hat.

61.    Am 18. August 2021 hat Frederick Allison, der jetzt unter dem Pseudonym „Sügmi Nuitz" agiert, einen 4 Minuten 19 Sekunden langen Clip aus meinem zufälligen Livestream auf Youtube gepostet, der die seltsamen Geräusche enthielt. Am 28. August 2021 habe ich eine DMCA-Deaktivierung für dieses Video ausgestellt und Youtube hat es umgehend entfernt. Zum

Zeitpunkt dieses Schreibens wurde noch keine Gegendarstellung eingereicht, aber ich möchte trotzdem, dass Allison haftbar gemacht wird.

### III-9: Stress verursacht

62.    Der Stress, den ich aufgrund der Belästigung und Doxxing durch die Angeklagten erlitten habe, ist ziemlich greifbar. Ich zögere, neue Moderatoren für meinen Discord zu ernennen. Ich zögere, Nachrichten auf Reddit zu öffnen, aus Angst, dass es Allison unter einem neuen Namen sein könnte, der mich noch mehr belästigt. Ich habe mich sehr gesträubt, zusätzliche Kollaborationen mit anderen Streamern zu planen, aus Angst, dass ich wieder gedoxxt werden könnte.

63.    Zusätzlich zu diesen Symptomen von Paranoia und Angst möchte ich das Gericht bitten, den überzeugenden Präzedenzfall Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), die im einschlägigen Teil Folgendes aussagt:

> „Es mag sein, wie die Angeklagte im Wesentlichen argumentiert, dass Mrs. Mitchell keine große offensichtliche Verletzung aufweist, aber ein vernünftiger Geschworener könnte nach Anhörung der Beweise und Sichtung des fraglichen Sun-Problems zu dem Schluss kommen, dass Nellie Mitchells Erfahrung… verglichen mit einer Person, die langsam durch einen Haufen unbehandelten Abwassers geschleift wurde. Nachdem diese Person geduscht hatte und einige Wochen vergangen waren, blieben kaum noch sichtbare Beweise für die Tortur, die die Person durchgemacht hatte, und die daraus resultierenden Schäden, aber nur wenige würden bezweifeln, dass der Schlepper einen erheblichen Schaden angerichtet hatte. ”

64.    Mit anderen Worten, ich halte das Verhalten der einzelnen Angeklagten (und sicherlich Karl Polano und Allison) für so unverschämt, dass ich keinen Schaden nachweisen müsste. Ihr Verhalten ist per se als quälend anzusehen.

### III-10: Nachweis der Zusammenarbeit

65.    Wie ich bereits in dieser Klage erwähnt habe, arbeiten die drei einzelnen Angeklagten (Polano, Allison und Mateas) alle zusammen, um meine Karriere böswillig zu sabotieren. Dabei handelt es sich nicht nur um drei gleichzeitig, sondern unabhängig voneinander handelnde Individuen. Es ist eine einzigartige, gemeinsame Anstrengung ihrerseits. Aus diesem Grund bin ich der Meinung, dass in diesem Fall alle drei Einzelbeklagten zu gleichen Teilen haften sollten. Karl Polano und Mateas sollten für alle Belästigungen durch Allison (einschließlich des Versuchs, mich mit einem Computervirus zu infizieren) und Urheberrechtsverletzungen haftbar gemacht werden. Allison und Mateas sollten für alle Belästigungen und Urheberrechtsverletzungen durch Polano haftbar gemacht werden. Polano und Allison sollten für den betrügerischen DMCA Takedown von Mateas haftbar gemacht werden. Und so weiter und so fort.

66.    Welche Beweise habe ich also dafür, dass sie alle zusammenarbeiten? Nun, die

Verbindung zwischen Polano und Mateas ist am einfachsten zu beweisen. Wie ich bereits erwähnt habe, ist Mateas Moderator in Polanos „Great Six"-Discordserver. Als solcher hat er eine unglaubliche Autorität in der Great Six-Community. Er hat die Befugnis, Material zu entfernen, das mein Urheberrecht verletzt, Material, das mich von diesem Server belästigt oder belästigt, und jede Person (mit Ausnahme von Polano selbst), die sich an solchen Verhaltensweisen beteiligt, zu sperren. Obwohl er dazu befugt war, hat er dies nicht nur abgelehnt, sondern sich selbst wiederholt und konsequent an Belästigungen, Doxxing und Urheberrechtsverletzungen beteiligt. Er arbeitet eindeutig mit Polano zusammen.

67.    Zugegeben, wenn er sich geweigert hätte, an dieser Belästigung, Doxxing und Urheberrechtsverletzung teilzunehmen, hätte Polano ihn höchstwahrscheinlich von seiner Moderatorenposition entbunden. Allerdings wäre Mateas im vorliegenden Fall zumindest kein Mitangeklagter gewesen. Anscheinend übertrifft seine Loyalität gegenüber Polano seine Gesetzestreue.

68.    Bei Allison gibt es auch Hinweise darauf, dass er mit Polano und Mateas zusammenarbeitet. Der belastendste Beweis, den ich bisher habe, ist die Tatsache, dass (A) Polano das Video erstellt hat, das er am 20 von Allison am 13. April 2021 (siehe ¶ 30 dieser Beschwerde). Mit anderen Worten, Polano hat dieses Video erstellt und es dann InitiativeKookie gegeben, damit er es auf seinen YouTube-Kanal hochladen konnte. Da Allison jedoch keine DMCA-Gegendarstellung einreichen wollte, nahm Polano sein Video zurück und lud es selbst hoch.

69.    Vielleicht ist es nicht ganz so passiert. Vielleicht ist Allison der ursprüngliche Schöpfer des Videos, und als Polano in seiner Gegendarstellung erklärte, dass er der Schöpfer sei, war dies eine weitere Lüge, die er YouTube erzählte. Aber selbst wenn dies der Fall wäre, hilft dies den Beklagten immer noch nicht. Unabhängig davon, wer welche Rolle gespielt hat, das Endergebnis ist, dass einer von ihnen das verletzende Video erstellt und es dann dem anderen gegeben hat, damit er es verwenden kann, um mich zu belästigen, mich zu doxen und mein Urheberrecht zu verletzen. Unabhängig davon, wer der Initiator und wer der Komplize war, unter dem Strich gibt es klare Beweise für Absprachen, Kooperation und Partnerschaft zwischen ihnen.

70.    Da es also klare Beweise dafür gibt, dass Allison und Polano zusammenarbeiten, um meine Karriere auf YouTube und Twitch zu sabotieren, und weil es klare Beweise dafür gibt, dass Polano und Mateas zusammenarbeiten, um dasselbe zu tun, diktiert der gesunde Menschenverstand, dass ALlison und Mateas auch funktionieren zusammen, um dasselbe Ziel zu erreichen.

## IV: RECHTSANALYSE

71.    Aus den folgenden Gründen gibt mir das Gesetz bei jeder unerlaubten Handlung, wegen der ich klage, Anspruch auf Entlastung.

### IV-1: Vorsätzliches Zufügen von emotionalem Stress

72.    Um einen Anspruch auf vorsätzliche Zufügung emotionaler Belastung geltend zu

machen, muss der Kläger Tatsachen geltend machen, die plausibel zeigen: (1) extremes und empörendes Verhalten des/der Beklagten mit der Absicht, emotionale Belastungen zu verursachen oder leichtfertig zu missachten ; (2) der Kläger leidet unter schwerer oder extremer emotionaler Belastung; und (3) tatsächliche und unmittelbare Ursache der emotionalen Belastung durch das empörende Verhalten des Angeklagten. Corales v. Bennett, 567 F.3d 554, 571 (9. Cir. 2009).

## IV-1-A: Extremes und empörendes Verhalten

73.     Die Behauptungen von ¶¶ 13-21, ¶¶ 26-41, ¶¶ 51-56 und ¶ 59 dieser Klageschrift sollten ausreichen, um das erste wesentliche Element dieser unerlaubten Handlung zu belegen. Die Angeklagten haben eine monatelange Kampagne durchgeführt, um mir so viel emotionalen Schmerz (und sogar Sachschaden) wie möglich zuzufügen, indem sie beispielsweise wiederholt neue Konten erstellen, um Verbote oder Sperren zu umgehen, meinen Discord-Server mit unaufgefordertem bombardieren pornografische Bilder, Sabotage meines Discord-Servers, indem ich sie dazu verleitet habe, sie als Mods zu ernennen, versucht, mich mit einem Computervirus zu infizieren (daher der Sachschaden) und illegal an meine privaten Informationen zu gelangen, damit sie sie ohne meine Zustimmung mit der Welt teilen können.

74.     Im Fall Corales v. Bennett, 567 F.3d 554 (9. Cir. 2009), befand das neunte Gericht, dass ein Verhalten als extrem oder empörend angesehen wird, wenn es mit der spezifischen, tatsächlichen Absicht geschieht, emotionales Leid oder Leiden zuzufügen. Siehe id 572 („Die Kläger führen Beispiele für scheinbar ähnliches Verhalten an, das sich als extrem und empörend herausstellte. Diese Fälle sind jedoch nicht anwendbar, da sich jeder auf die Absicht des Angeklagten stützte, der bedrohten Partei zu schaden"). Im vorliegenden Fall ist die Tatsache, dass die Handlungen der Beklagten mit der spezifischen Absicht erfolgten, emotionale Belastungen zuzufügen, axiomatisch.

75.     Denken Sie daran, dass zu den Versuchen der Angeklagten, mich zu belästigen, auch Doxxen gehört. „Doxxing ist die Abkürzung für ‚Droping Documents'. Die Praxis besteht darin, "das Internet zu verwenden, um persönliche und private Informationen von jemandem zu ermitteln und zu sammeln und diese Informationen dann online öffentlich zu veröffentlichen". Das 'Ziel von Doxxing ist typischerweise Vergeltung, Belästigung oder Demütigung'" Siehe Vangheluwe v. Got News, LLC, 365 F. Supp. 3d 850, 858-59 (E.D. Mich. 2019). Da es mit dem Ziel der Belästigung und Demütigung entworfen wurde, entspricht es den in Corales festgelegten Kriterien, um unter Ausschluss aller anderen Faktoren automatisch als extrem oder empörend zu gelten.

## IV-1-B: Schadensersatzansprüche des Klägers

76.     Die Tatsachenbehauptungen von ¶¶ 62-64 sollten ausreichen, um das zweite wesentliche Element zu begründen. Der Stress, den ich aufgrund der Belästigung und Doxxing durch die Angeklagten erlitten habe, ist ziemlich greifbar. Ich zögere, neue Moderatoren für meinen Discord zu ernennen. Ich bin zögerlich geworden, Nachrichten auf Reddit zu öffnen, aus Angst, dass es Allison unter einem neuen Namen sein könnte, die mich noch mehr belästigt. Ich habe mich sehr gesträubt, zusätzliche Kollaborationen mit anderen Streamern zu planen, aus Angst,

dass ich wieder gedoxxt werden könnte.

77.     Zusätzlich zu diesen Symptomen von Paranoia und Angst möchte ich das Gericht bitten, den überzeugenden Präzedenzfall Peoples Bank & Trust Co. v. Globe Intern., 786 F. Supp. 791, 796 (1992), die im einschlägigen Teil Folgendes aussagt:

> „Es mag sein, wie die Angeklagte im Wesentlichen argumentiert, dass Mrs. Mitchell keine große offensichtliche Verletzung aufweist, aber ein vernünftiger Geschworener könnte nach Anhörung der Beweise und Sichtung des fraglichen Sun-Problems zu dem Schluss kommen, dass Nellie Mitchells Erfahrung… verglichen mit einer Person, die langsam durch einen Haufen unbehandelten Abwassers geschleift wurde. Nachdem diese Person geduscht hatte und einige Wochen vergangen waren, blieben kaum noch sichtbare Beweise für die Tortur, die die Person durchgemacht hatte, und die daraus resultierenden Schäden, aber nur wenige würden bezweifeln, dass der Schlepper einen erheblichen Schaden angerichtet hatte. "

78. Mit anderen Worten, ich halte das Verhalten der einzelnen Angeklagten (und sicherlich Karl Polano und Allison) für so unverschämt, dass ich keinen Schaden nachweisen müsste. Ihr Verhalten ist per se als quälend anzusehen.

79. Neben der emotionalen Belastung sollte meiner Meinung nach auch der einzelne Angeklagte für alle erlittenen Schäden haften, sowohl als direkte als auch indirekte Folge seiner Belästigung und Doxxing. Dies beinhaltet unter anderem meinen Popularitätsverlust auf den Plattformen YouTube und Twitch durch das Doxxing sowie meine Weigerung, öffentlich auf die gegen mich erhobenen Vorwürfe zu reagieren.1 Diese Schäden sind praktisch nicht zu platzieren einen genauen Dollarwert auf, aber ich hoffe, dass das Gericht mich angemessen entschädigt und Strafschadenersatz zuerkennt.

80. In der Zwischenzeit glaube ich (und ich bete, dass das Gericht mir zustimmen wird), dass das dritte wesentliche Element für jede vernünftige Person, die die Klage von Anfang an bis zu diesem Zeitpunkt gelesen hat, offensichtlich sein sollte, sodass ich hoffentlich keine spezifischen Tatsachen geltend machen muss dieses dritte wesentliche Element.

## IV-2: Copyright-Verletzung

81. Um eine Urheberrechtsverletzung prima facie aufzuzeigen, brauche ich nur zwei wesentliche Elemente aufzuzeigen: das Eigentum an einem Urheberrecht durch die Klägerin und das Kopieren durch die Beklagte. Siehe Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9. Cir. 1986) („[D]hier sind für den Fall des Klägers in einer Verletzungsklage nur zwei Elemente erforderlich: Urheberrecht der Klägerin und Vervielfältigung durch die Beklagte").

### IV-2-A: Eigentum des Urheberrechts durch den Kläger

82. Die Behauptungen von ¶ 22-25 dieser Beschwerde sollten dem ersten wesentlichen

Element genügen. Ein Livestream auf Twitch ist urheberrechtlich geschützt, auch wenn er aus Versehen erfolgt. Als Eigentümer des Kanals und alleiniger Autor des Livestreams habe ich standardmäßig das alleinige Eigentum an diesem Stream, es sei denn, ich trete die Rechte daran ab (was ich nicht getan habe).

### IV-2-B: Kopieren von urheberrechtlich geschützten Inhalten durch die Beklagte

83. Die erste Zählung der Urheberrechtsverletzung beruht auf der Tatsache, dass mindestens einer der Beklagten (entweder Karl Polano oder Allison) den Livestream mit Software von Drittanbietern illegal heruntergeladen hat. Denken Sie darüber nach: Wie hätten sie sonst das Rohmaterial bekommen können, um ihre rechtsverletzenden Videos überhaupt zu machen? Der Stream wurde ursprünglich auf Twitch ausgestrahlt, es gibt jedoch keine Möglichkeit, ihn direkt von Twitch herunterzuladen. Während YouTube eine begrenzte Möglichkeit zum Herunterladen von Videos zur Offline-Anzeige bietet1 , hätte keiner der Beklagten den Stream von YouTube erhalten können, da dieses Video nur auf diejenigen beschränkt ist, die meinem Kanal 20 US-Dollar pro Monat zahlen. Ich weiß mit Sicherheit, dass mir keiner der Angeklagten dieses Geld bezahlt hat. Wie haben sie also das Rohmaterial des Streams erhalten, um ihre verletzenden Videos überhaupt zu machen? Die einzige Erklärung ist, dass mindestens einer von ihnen den Stream mit einer nicht autorisierten Software von Drittanbietern illegal heruntergeladen haben muss. Dies ist eine eklatante Urheberrechtsverletzung, genauso wie es illegal ist, eine Torrent-App zu verwenden, um ganze Filme und / oder Videospiele herunterzuladen, ohne dafür zu bezahlen.

84. Nachdem einer der einzelnen Angeklagten (entweder Polano oder Allison) den Stream illegal heruntergeladen hatte, teilte er ihn dann unbedingt mit dem anderen, damit sie zusammenarbeiten konnten, um mein Urheberrecht zu verletzen. Wie ich bereits sagte, erstellte einer der Angeklagten notwendigerweise das verletzende Video mit den Gummi-Werbeclips darin und gab dieses verletzende Video dann der anderen Person zum Hochladen. Unabhängig davon, wer die Spende gemacht hat, ist die Quintessenz, dass eine nicht autorisierte Weitergabe stattgefunden hat. Da sie alle zusammenarbeiten, haften sie sowieso für beides (siehe ¶¶ 65-70 dieser Beschwerde). Diese nicht autorisierte Weitergabe stellt eine zweite Zählung der Urheberrechtsverletzung dar.

85. Dann haben wir die dreizehn Fälle, in denen die Beklagten meine urheberrechtlich geschützten Inhalte öffentlich entweder auf Discord, YouTube, Vimeo oder Instagram geteilt haben. Die Anzahl der Urheberrechtsverletzungen, die ich derzeit behaupte, sind wie folgt:

- ANZAHL NUMMER 3: Das Hochladen am 10. April 2021, das ich in ¶ 26 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 4: Das Hochladen am 11. April 2021, das ich in ¶ 27 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 5: Das Hochladen am 12. April 2021, das ich in ¶ 29 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 6: Das Hochladen am 13. April 2021, das ich in ¶ 30 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 7: Das Hochladen am 13. April 2021, das ich in ¶ 32 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 8: Das Hochladen am 25. April 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 9: Das Hochladen am 27. April 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 10: Das Hochladen am 28. April 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 11: Das Hochladen am 5. Mai 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 12: Das Hochladen am 8. Mai 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 13: Das Hochladen am 22. Mai 2021, das ich in ¶ 42 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 14: Das Hochladen am 20. Mai 2021, das ich in ¶ 45 dieser Beschwerde beschreibe.

- ANZAHL NUMMER 15: Das Hochladen am 7. Juni 2021, das ich in ¶ 57 dieser Beschwerde beschreibe.

86.    Zu guter Letzt haben wir auch die unzähligen Fälle von Urheberrechtsverletzungen, die Karl Polano auf seinem Discord-Server zugelassen und sogar aktiv gefördert hat, die ich nicht entfernen konnte, weil er mich den Haupt-Chatroom auf diesem Server nicht sehen ließ . Obwohl ich nicht weiß, wie viele Fälle von Urheberrechtsverletzungen es gibt, möchte ich gesetzliche Schadensersatzansprüche geltend machen und in jedem einzelnen Fall eine einstweilige Verfügung erwirken.

### IV-3: Falsche Darstellung gemäß 17 USC § 512 (f) (2)

87.    Um einen Verstoß gegen 17 USC § 512(f)(2) geltend zu machen, muss ich nachweisen, dass (A) der Beklagte bei der Ausstellung einer DMCA-Gegendarstellung wissentlich falsche (oder zumindest wissentlich irreführende) wesentliche Aussagen gemacht hat, (B) dass der Diensteanbieter (in diesem Fall YouTube) sich auf diese falschen Angaben verlassen hat und (C) dass mir durch das Vertrauen des Dienstes ein Schaden entstanden ist.

<u>IV-3-A: Wissentlich falsche Materialaussagen</u>

88.    Die Vorwürfe von ¶ 48 dieser Beschwerde sollten hinreichend zeigen, dass Karl Polano in seiner DMCA-Gegendarstellung zahlreiche, wissentlich falsche Aussagen gemacht hat. Er hat gelogen, dass das Video eine Parodie sei. Er hat gelogen, dass das Video geändert wurde. Er hat gelogen, dass das Video nichts mit meinem ursprünglichen Inhalt zu tun hat. Er hat gelogen, dass das Video nicht kommerziell ist. Dies sind alles wesentliche Aussagen, über die er wissentlich gelogen hat.

### IV-3-B: Vertrauen durch ISP

89.    Die Vorwürfe von ¶ 47 dieser Beschwerde sollten jedem vernünftigen Finder von Tatsachen zeigen, dass YouTube diese Vorwürfe erleichtert. Wenn sie sich nicht auf diese Anschuldigungen verlassen haben, warum sollten sie dann die Gegendarstellung bearbeiten und mich darüber benachrichtigen?

### IV-3-C: Schäden

90.    Der Schaden, den ich erlitten habe, ist die Tatsache, dass ich diese Klage einreichen musste, um zu verhindern, dass das Video wiederhergestellt wird. Dieser Prozess wird sicherlich viel Geld kosten (auch wenn ich in forma pauperis vorgehe) und mir viel Stress bereiten.

### IV-3-D: Versäumnis, faire Nutzung zu berücksichtigen

91.    Zusätzlich zu den wissentlich falschen materiellen Aussagen, die er in seiner Gegendarstellung gemacht hat, gibt es auch die Tatsache, dass Karl Polano keine faire Verwendung in Betracht zog. Im Fall von Lenz v. Universal Music Corp., 801 F. 3d 1126 (9. Cir. 2015), muss der Urheberrechtsinhaber des neunten Kreises die faire Verwendung in Betracht ziehen, bevor er eine DMCA-Takedown erlässt. Der gesunde Menschenverstand schreibt vor, dass mutmaßliche Rechtsverletzer auch aufgefordert werden sollten, vor der Ausstellung einer Gegendarstellung die faire Verwendung zu prüfen.

92.    Noch wichtiger ist, dass der Beklagte verpflichtet sein sollte, das tatsächliche Recht der fairen Verwendung zu berücksichtigen. Wenn er versucht, einfach seinen eigenen Standard für den fairen Gebrauch zu erstellen und dann diesen Standard in Betracht zu ziehen, sollte dies nicht erlaubt sein. Wenn das erlaubt wäre, würde das eines der grundlegendsten Prinzipien unserer Rechtsprechung völlig untergraben: Diese Unkenntnis des Gesetzes ist keine Entschuldigung. Wenn wir beginnen, in allen Ausnahmefällen Ausnahmen von diesem Grundsatz zu machen, dann bröckelt die Rechtsstaatlichkeit in ihrer Gesamtheit an ihren Fundamenten.

93.    Um die faire Verwendung zu berücksichtigen (vorausgesetzt, Sie berücksichtigen das tatsächliche Gesetz der fairen Verwendung und nicht nur Ihre eigene, benutzerdefinierte Version der fairen Verwendung), müssen Sie den Vier-Faktoren-Test berücksichtigen. Der Supreme Court und das Ninth Circuit haben ausnahmslos klargestellt, dass es keine mutmaßliche faire Verwendung gibt. Jede bemerkenswerte veröffentlichte Meinung zur fairen Verwendung in den letzten fünfzig Jahren hat den Vier-Faktoren-Test verwendet. Jeden. Einzel. Eins.

- Hustler Magazine, Inc. gegen Moral Majority, Inc., 796 F. 2d 1148 (9. Cir. 1986)

verwendete den Vier-Faktoren-Test. Siehe ID bei 1152-1156.

- DR. Seuss Enterprises, LP v. Comicmix LLC, 983 F. 3d 443 (9. Cir. 2020) verwendete den Vier-Faktoren-Test. Siehe ID bei 451-461.

- Harper & Row, Publishers, Inc. gegen Nation Enterprises, 471 US 539 (1984) verwendeten den Vier-Faktoren-Test. Siehe ID bei 561-569.

- Campbell v. Acuff-Rose Music, Inc., 510 US 569 (1994) verwendete den Vier-Faktoren-Test. Siehe ID unter 578-594.

- Sony Corp. of America gegen Universal City Studios, Inc., 464 US 417 (1984) verwendete den Vier-Faktoren-Test. Siehe ID bei 496-498.

- Fisher v. Dees, 794 F. 2d 432 (9. Cir. 1986) verwendete den Vier-Faktoren-Test. Siehe ID bei 437-439.

- Dr. Seuss Enterprises, LP gegen Penguin Books, 109 F. 3d 1394 (9. Cir. 1997) verwendete den Vier-Faktoren-Test. Siehe ID bei 1399-1403.

- Monge v. Maya Magazines, Inc., 688 F. 3d 1164 (9. Cir. 2012) verwendete den Vier-Faktoren-Test. Siehe ID unter 1173-1183.

- Hosseinzadeh v. Klein, 276 F.Supp.3d 34 (S.D. NY 2017) verwendete den Vier-Faktoren-Test. Siehe ID bei 45-47.

94.    Wenn die Beklagten den Vier-Faktoren-Test daher nicht berücksichtigen, betrachten sie die faire Verwendung nicht und begehen daher eine falsche Darstellung gemäß 17 USC § 512(f). Zeitraum. Keine Ausnahmen.

95.    Das rechtsverletzende Video, das Polano am 20. Mai 2021 hochgeladen hat (das einzige, das Gegenstand einer DMCA-Gegenanzeige ist), fehlt im Vier-Faktoren-Test so stark, dass die Wahrscheinlichkeit, dass Polano diesen Test tatsächlich ansieht, astronomisch ist. Keine vernünftige Person könnte den Vier-Faktoren-Test anwenden und zu dem Schluss kommen, dass das Video der Beklagten fair verwendet wird. Polano scheint vielmehr zu glauben, dass sein Video fair use ist, nur weil es eine Parodie auf meinen ursprünglichen Livestream ist. Außerdem glaubt er, dass es sich um eine Parodie handelt, nur weil er entschieden hat, dass es sich um eine Parodie handelt. Dies belegen seine Aussagen in der DMCA-Gegendarstellung (siehe ¶ 47 dieser Beschwerde) sowie die übermäßig giftigen und vulgären persönlichen Angriffe, die er am 25. April gegen mich gerichtet hat (siehe ¶ 38 dieser Beschwerde).

96.    Einfach gesagt, die bloße Tatsache, dass er es eine Parodie nennt, macht es noch nicht zu einer Parodie. Anders zu behaupten, würde einen weiteren unserer wichtigsten und grundlegendsten Rechtsgrundsätze völlig untergraben: Dass niemand der Richter in seinem eigenen Fall sein darf.

97.     Aber selbst wenn sein Video vom Gericht (im Gegensatz zum Beklagten) als Parodie angesehen werden könnte, scheint er zu glauben, dass es, solange es als Parodie eingestuft wird, automatisch unter Ausschluss aller anderen Faktoren fair verwendet wird. Einfach gesagt, so funktioniert das nicht. Tatsächlich hat der Oberste Gerichtshof die Idee, dass Parodie automatisch – oder sogar mutmaßlich – Fair Use ist, ausdrücklich und eindeutig abgelehnt:

> „Die Tatsache, dass Parodie für eine gewisse Aneignung Legitimität beanspruchen kann, sagt weder dem Parodisten noch dem Urteil viel darüber aus, wo die Grenze zu ziehen ist " Der Vorschlag, dass jede parodistische Verwendung mutmaßlich fair ist, hat keine rechtliche oder faktische Rechtfertigung als die ebenso hoffnungsvolle Behauptung, dass jede Verwendung für die Berichterstattung als fair angesehen werden sollte , und keine praktikable Vermutung für Parodie könnte der Tatsache Rechnung tragen, dass Parodie oft in Satire übergeht, wenn die Gesellschaft durch ihre kreativen Artefakte verspottet wird, oder dass ein Werk sowohl parodische als auch nichtparodische Elemente enthalten kann die relevanten Faktoren durchzuarbeiten und von Fall zu Fall im Lichte der Ziele des Urheberrechts zu beurteilen." Siehe Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 58 1 (1994) (Zitate weggelassen).

98.     Auch wenn dies ignoriert wird, widerspricht sich der Angeklagte immer noch. Zuerst sagt er, dass sein Video eine Parodie war. Dann sagt er buchstäblich einen Satz später, dass sein Video nicht meinem ursprünglichen Inhalt entspricht. Wenn es jedoch nicht wie mein Inhalt ist, dann ist es keine Parodie. Der Oberste Gerichtshof hat entschieden, dass "[p]arody ein Original nachahmen muss, um seinen Standpunkt zu vertreten." Siehe Campbell v. Acuff-Rose Music, Inc., 5 10 US 569, 580-8 1 (1994). Wenn es also nicht meinen Inhalten entspricht, kann es keine Parodie sein. Genauer gesagt, wenn sein resultierendes Video nicht meinem ursprünglichen Inhalt entspricht, stellt sich die Frage ... wie können die Beklagten meinen Inhalt kommentieren oder kritisieren?!

99.     Das geht zum nächsten Punkt über: Der Angeklagte hat in seiner Arbeit noch nicht einmal versucht, irgendeine transformative Wirkung zu erzielen. Er bucht den Clip aus meinem zufälligen Livestream mit einigen Clips aus einem Kaugummi-Werbespot, aber ansonsten kopiert er nur wörtlich und absolut unverändert aus meinem Livestream. Es gibt keinen Kommentar, keine Kritik, keine Analyse, keine Bewertung, nichts, was man auch nur als transformativ bezeichnen könnte. Die Hinzufügung der Gummi-Werbeclips ist eine völlig überflüssige Ergänzung, die absolut keinen Kommentar zu meinem Livestream-Clip liefert. Selbst wenn das Gericht feststellen würde, dass die Werbeclips aus Gummi einen geringfügigen transformativen Wert hätten, wäre der Mehrwert so gering, dass er allein die anderen drei Faktoren des Vier-Faktoren-Tests nicht überwinden könnte.

100.    Der zweite Faktor der fairen Verwendung wiegt ebenfalls gegen die Beklagte. Es stimmt zwar, dass Tatsachen weniger urheberrechtlich geschützt sind als Fiktionen und die Tatsache, dass der zufällige Livestream einen Tag in meinem Leben zeigte (der als Sachbuch angesehen werden könnte), es ist jedoch wichtig zu beachten, dass, wenn Gesetzgeber und Urheberrechtswissenschaftler sagen " Fakten", meinen sie typischerweise Dinge wie Geschichte, Wissenschaft oder Politik, auch bekannt als Dinge von öffentlicher Bedeutung. Einfach an einem

zufälligen Tag in das Privatleben einer Person zu blicken, wenn sie allein in ihrem eigenen Haus ist, sich um ihre eigenen Angelegenheiten kümmert und niemandem schadet, ist ganz einfach nicht im Einklang mit den öffentlichen Interessen, die durch die faire Verwendung geschützt werden sollten. Im Gegensatz dazu dient es absolut der persönlichen Agenda des Angeklagten, mich zu belästigen und zu betrügen, aber solche böswilligen Motive helfen den Angeklagten bestenfalls nicht in ihrem Fall der fairen Verwendung und behindern im schlimmsten Fall aktiv ihren Fall der fairen Verwendung.

101.    Der dritte Faktor der fairen Nutzung ist bestenfalls neutral und belastet im schlimmsten Fall die Beklagten. Es stimmt zwar, dass das Video des Beklagten nur 50 Sekunden lang war, während mein versehentlicher Livestream fast 2 Stunden lang war, aber die Beklagten nutzten den größten Teil meines versehentlichen Livestreams. Er benutzte das "Herz" des zufälligen Livestreams, und daher sollte dieser Faktor zu Ungunsten der Angeklagten ausgelegt werden.

102.    Der vierte und letzte Fair-Use-Faktor – die Auswirkung auf den potentiellen Markt – ist ungeheuerlich und lächerlich zu Ungunsten der Beklagten. Die 3. bis 15. Zählung der Urheberrechtsverletzung enthält den einzigen interessanten Teil über meinen versehentlichen Livestream und die Gesamtheit dieses einzigen interessanten Teils. Als solches usurpiert dieses Video den Markt für meinen eigenen zufälligen Livestream fast vollständig. Die Existenz dieser Videos bedeutet, dass es unwahrscheinlich ist, dass die Leute mir die Gebühr von 20 US-Dollar pro Monat zahlen, um den Livestream und seltsame Geräusche auf legitime Weise zu sehen. Warum sollten sie, wenn sie das Gleiche von einem anderen Youtube-Kanal kostenlos bekommen können?

103.    Wie Sie sehen können, kann, wenn wir einmal den Vier-Faktoren-Test in Betracht ziehen, kein vernünftiger Trier der Tatsachen in diesem Fall eine angemessene Verwendung finden. Daher besteht die überwältigende Wahrscheinlichkeit, dass Karl Polano den Vier-Faktoren-Test nie in Betracht gezogen hat. Da er den Vier-Faktoren-Test nicht berücksichtigt hat, bedeutet dies, dass er keine faire Verwendung in Betracht gezogen hat. Siehe Lenz, supra, S. 1135 („Eine [Partei], die ein Lippenbekenntnis zur Berücksichtigung der fairen Verwendung ablegt, indem sie behauptet, sie habe in gutem Glauben geglaubt, wenn Gegenbeweise vorliegen, unterliegt immer noch § 512 (f) Haftung").

104.    Zusätzlich zu dem oben genannten Vier-Faktoren-Test ist es auch gesetzlich verankert, dass bei bösgläubigem Verhalten eines Verletzers automatisch keine faire Nutzung vorliegt, selbst wenn dasselbe Video unter ansonsten identischen Umständen als faire Nutzung angesehen werden könnte. Siehe Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 562 (1985) („Für den Charakter der Nutzung ist auch die Angemessenheit des Verhaltens des Beklagten relevant. Fair Use setzt Treu und Glauben und faires Handeln voraus") . Siehe auch Fisher v. Dees, 794 F. 2d 432, 437-38 (9. Cir. 1986) („Ein Thema, das sich durch die Schriftsätze der Komponisten zieht, ist, dass Dees angeblich schlechtes Benehmen ihm die gerechte Verteidigung der fairen Verwendung verwehren sollte. Der geltend gemachte Grundsatz ist stichhaltig: Da die faire Verwendung Treu und Glauben und ein faires Handeln voraussetzt, können Gerichte die Angemessenheit des Verhaltens des Beklagten im ausgewogenen Verhältnis einer Fair-Use-Bestimmung abwägen") (Zitate und Zitate weggelassen). Da die Beklagten eine monatelange Kampagne durchgeführt haben, um mich zu belästigen und zu belästigen, ist es

klar, dass ihre Urheberrechtsverletzung ebenfalls ausschließlich dazu dient, mich zu belästigen und zu belästigen, anstatt um ihrer selbst willen Kritik oder Kommentare abzugeben. Siehe Fed.R.Evid 404 (b)(2) (Beweise für andere Fehlhandlungen können zulässig sein, um unter anderem "Motiv" und "Absicht" zu beweisen). Dies wiegt stark gegen die faire Verwendung (wenn es den Anspruch der fairen Verwendung nicht insgesamt ausschließt), und Polanos Versäumnis, diesen Faktor zu berücksichtigen, bedeutet, dass er gegen 17 USC § 512 (f) (2) verstößt.

105.    Nicht zuletzt, weil die Beklagten das Rohmaterial notwendigerweise auf illegale Weise erhalten haben (siehe ¶¶ 83-84 dieser Klage), bedeutet dies, dass die Videos automatisch keine faire Verwendung darstellen, selbst wenn dasselbe Video ansonsten als faire Verwendung angesehen werden könnte identische Umstände. Siehe Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539 (1985), wo der Oberste Gerichtshof der Tatsachenfeststellung der Vorinstanz nicht zustimmte, dass die Beklagten in diesem speziellen Fall „wissentlich ein gestohlenes Manuskript ausgenutzt" hatten. ließ jedoch die Schlussfolgerung des Gesetzes unberührt, dass, wenn die Beklagten dies getan hätten, dies ein automatisches Hindernis für die faire Verwendung gewesen wäre. Da Polano dies bei der Ausstellung seiner DMCA-Gegendarstellung eindeutig nicht berücksichtigt hat, hat er gegen 17 USC § 512(f)(2) verstoßen.

### IV-4: Falsche Darstellung gemäß 17 USC § 512(f)(1)

106.    Um einen Verstoß gegen 17 USC § 512(f)(1) geltend zu machen, muss ich nachweisen, dass (A) Mateas eine DMCA-Gegendarstellung ausgestellt hat, (B) dass diese Gegendarstellung darin bestand, wesentliche Falschdarstellungen über den mutmaßlichen Verstoß in zu kennen das Video, und (C) dass ich aufgrund dieser wissentlich falschen Darstellung des Materials Schaden erlitten habe. Eine Person begeht eine wissentliche wesentliche Falschdarstellung, wenn sie die angemessene Verwendung nicht in Betracht zieht, bevor sie die Entfernung ausführt. Siehe Lenz v. Universal Music Corp., 801 F. 3d 1126 (9. Cir. 2015).

### IV-4-A: DMCA-Deaktivierung

107.    Am oder um den 25. Mai 2021 hat Mateas einen DMCA-Takedown gegen mich ausgestellt. Siehe Abs. 54.

### IV-4-B: Wissentlich falsche Materialaussagen

108.    Die Anschuldigungen von ¶ 54 zeigen auch, dass er bei der Herausgabe dieser Deaktivierung mindestens eine wissentliche wesentliche Falschdarstellung begangen hat, nämlich dass er über den Besitz des Urheberrechts an diesem Bild gelogen hat.

### IV-4-C: Versäumnis, faire Nutzung zu berücksichtigen

109.    Die Anschuldigungen von ¶ 55 sollten hinreichend darauf hinweisen, dass er es versäumt hat, die faire Verwendung in Betracht zu ziehen, bevor er den Takedown erlässt. Meine Verwendung dieses Screenshots (der das Bild des Hahns enthielt) erfüllte alle vier Faktoren im Vier-Faktoren-Test, der in 17 USC § 107 (1)-(4) beschrieben ist. Ich habe über eine

Nachrichtenveranstaltung berichtet (eine sehr Nischennachrichtenveranstaltung, aber dennoch eine Nachrichtenveranstaltung), also war es transformativ. Ich habe über ein Ereignis gesprochen, das sich wirklich im wirklichen Leben ereignet hat, nicht über ein fiktives Werk, daher wiegt der zweite Faktor für die faire Verwendung. Ich habe den Screenshot nur für ein paar Sekunden gezeigt, bevor ich ihn aus dem Video entfernt habe, daher wiegt der dritte Faktor für die faire Verwendung. Schließlich formt oder formt meine Verwendung des Screenshots in einem YouTube-Video in keiner Weise den Markt von Mateas, um das Bild zu lizenzieren (vorausgesetzt, er ist überhaupt der ursprüngliche Urheberrechtsinhaber, was er nicht ist) für seine ursprünglicher Zweck, ein Kommentarsymbol in Discord zu sein. Der vierte Faktor spricht also für eine faire Verwendung. Das bedeutet, dass buchstäblich alle vier Faktoren für eine faire Verwendung sprechen; es ist ein sauberer Schwung. Daher hat Mateas mit ziemlicher Sicherheit keine faire Verwendung in Betracht gezogen, bevor er seinen DMCA-Takedown veröffentlichte. Keine vernünftige Person hätte in diesem Fall den Vier-Faktoren-Test in Betracht ziehen und irgendwie vernünftigerweise feststellen können, dass meine Verwendung des Screenshots keine faire Verwendung war.

110.    Auch die Anschuldigungen von ¶ 46 schaffen eine sehr hohe Wahrscheinlichkeit, dass Mateas nicht nur die faire Verwendung nicht in Betracht gezogen hat, sondern dass er auch tatsächlich wusste, dass seine Entfernung betrügerisch war und dass er nicht in gutem Glauben gehandelt hat, um sein geistiges Eigentum zu schützen , aber zur Förderung einer Verschwörung, die der Server von Great Six Discord gegen mich eingegangen ist.

111.    Darüber hinaus ist die Tatsache, dass Mateas nie Klage gegen mich eingereicht hat und mein Video schließlich mangels Strafverfolgung wieder eingestellt wurde, ein Indiz dafür, dass er nicht wirklich glaubte, dass mein Video sein Urheberrecht verletzte. Siehe Online Policy Group gegen Diebold, Inc., 337 F. Supp. 2d 1195, 1204-05 (ND Cal 2004) („Die Tatsache, dass Diebold nie tatsächlich gegen einen mutmaßlichen Rechtsverletzer Klage erhoben hat, deutet stark darauf hin, dass Diebold versucht hat, die Safe-Harbor-Bestimmungen des DMCA – die zum Schutz von ISPs und nicht von Urheberrechtsinhabern konzipiert wurden – als ein Schwert, um die Veröffentlichung peinlicher Inhalte zu unterdrücken, und nicht als Schutzschild zum Schutz seines geistigen Eigentums.

IV-4-D: Schäden

112.    Unterdessen sollten die Vorwürfe von ¶ 56 hinreichend einen Schaden geltend machen, der durch diese Betrugshandlung verursacht wurde. Ich habe über zwei Wochen damit verbracht, das Video zu entfernen und daher keine Aufrufe oder Werbeeinnahmen zu erzielen.

V: ENTLASTUNG ANGEFORDERT

113.    Aus all den bereits genannten Gründen sollte mir ein prospektiver und rückwirkender Unterlassungsanspruch, gesetzlicher Schadensersatz für die Urheberrechtsverletzung sowie Schadensersatz und Strafschadensersatz für die vorsätzliche Zufügung von seelischer Belastung zustehen. Die Frage ist nur … welche Entlastung soll ich bekommen und gegen wen?

**V-1: Gerechte Entlastung gegen Karl Polano, Frederick Allison und Raul Mateas**

114.    Zunächst möchte ich, dass das Gericht Karl Polano, Frederick Allison und Raul Mateas anordnet, jeden weiteren Kontakt mit mir einzustellen. Dies schließt über YouTube, Reddit, Discord, Twitch oder jede andere Form der Online- oder Offline-Kommunikation ein. Eine Ausnahme kann gemacht werden, wenn die Kommunikation von der amerikanischen Polizei oder einem zuständigen amerikanischen Gericht überwacht wird.

115.    Dieses Gericht hat bereits seine Meinung geäußert, dass ich keinen Anspruch geltend gemacht habe, für den ein Rechtsbehelf für die vorsätzliche Zufügung von seelischer Belastung gewährt werden kann. Ich wiederhole diese unerlaubten Handlungen immer noch in dieser zweiten geänderten Beschwerde, damit sie für einen Rechtsbehelf aufbewahrt werden können. Aber selbst wenn dieses Gericht es ablehnt, nur gemäß dieser unerlaubten Handlung einen Rechtsbehelf zu gewähren, gibt es einen unabhängigen Grund, aus dem ich glaube, dass ich Anspruch auf diesen Unterlassungsanspruch habe: Denn als Eigentümer meines YouTube-Kanals, Twitch-Kanals und Discord-Servers Ich habe immer noch das absolute Recht zu entscheiden, wer auf eines der oben genannten Grundstücke kommt und wer nicht, und die Gerichte sind verpflichtet, dieses Recht von mir durchzusetzen.

116.    Überlegen Sie, wie dies in einer Situation ohne Internet funktionieren würde. Stellen Sie sich vor, ich hätte ein Geschäft mit Ziegeln und Mörtel, zum Beispiel eine Bar. Frederick Allison kam in diese Bar und fing an, mich und/oder meine Kunden zu belästigen, also schmeiße ich ihn raus. Dann verkleidet er sich, damit er wieder durch die Haustür eintreten kann (oder vielleicht über einen alternativen Eingang, der nicht so stark bewacht ist), bevor er die Verkleidung ablegt, damit er mich und/oder meine Kunden wieder belästigen kann . Dann tut er es wieder. Und wieder.

117.    In diesem Szenario ist sein wiederholtes unerlaubtes Betreten – nachdem ihm wiederholt und unmissverständlich mitgeteilt wurde, dass er dort nicht willkommen ist – auch dann, wenn sein Verhalten auf dem Gelände nicht unabhängig als Straftat oder unerlaubte Handlung belangt werden kann, es dennoch. Es ist mein Eigentum, also ist es mein Recht. Als solches würde ein zuständiges Gericht in diesem Fall unbedingt eine einstweilige Verfügung erlassen, die den Beklagten anordnet, seinen unbefugten Zugang zum persönlichen oder geschäftlichen Eigentum des Klägers einzustellen und zu unterlassen, und würde den Beklagten absolut unter Missachtung des Gerichts stellen (komplett mit Zwangshaft). ), wenn der Beklagte darauf bestand.

118.    Im vorliegenden Fall kann die Tatsache, dass es im Internet stattfindet, es den Beklagten physisch erleichtern, sich neue Verkleidungen (in Form von alternativen Konten) zu verschaffen, was jedoch meine materiellen Eigentumsrechte nicht beeinträchtigt. Im Urheberrecht gilt seit langem, dass die bloße Tatsache, dass etwas im Internet passiert, die Rechte des Urheberrechtsinhabers nicht beeinträchtigt; Ich sehe keinen Grund, warum es mein Recht beeinträchtigen sollte, zu diktieren, wer auf mein Geschäftsgelände kommt und was nicht und erhebe die Hölle.

119.    Ich glaube daher, dass ich absolut berechtigt bin, einen möglichen Unterlassungsanspruch zu erhalten, der den einzelnen Beklagten anordnet, den Versuch zu unterlassen, in mein Eigentum einzubrechen, auch wenn dieses Eigentum nur im digitalen Bereich existiert. Daher beantrage ich weiterhin einen möglichen Unterlassungsanspruch, der die einzelnen Beklagten

anordnet, aus irgendeinem Grund auf keiner Website mehr mit mir in Kontakt zu treten.

120.    Diese einstweilige Verfügung sollte auch die Anweisung an alle drei Beklagten beinhalten, nie wieder DMCA Takedowns gegen mich zu erlassen. Wenn sie glauben, dass eines meiner Videos oder Streams ihr Urheberrecht verletzt, sollten sie mich direkt vor Gericht verklagen, ohne eine DMCA-Deaktivierung auszustellen und mich zu zwingen, zuerst eine DMCA-Gegendarstellung auszustellen. Auf diese Weise können sie ihre Rechte weiterhin durchsetzen, wenn ich sie verletze, aber ich hätte Anspruch auf ein vollständiges Verfahren, bevor sie meine Inhalte entfernen lassen können.

121.    Den Beklagten sollte auch untersagt werden, mit Personen zu kommunizieren, die sie kennen oder die sie kennen oder die Grund zu deren Kenntnis haben, Mitglied meines Discord-Servers oder regelmäßiger Zuschauer in meinen YouTube- oder Twitch-Kanälen zu sein. Eine Ausnahme kann gemacht werden, wenn die Kommunikation keinen Bezug zu mir hat. Dies soll verhindern, dass sie mich jemals wieder doxxen.

122.    Ich möchte auch, dass das Gericht den Beklagten untersagt, jemals wieder mein Urheberrecht zu verletzen. Diese einstweilige Verfügung sollte gelten, selbst wenn sie vernünftigerweise glauben, dass ihre verletzenden Inhalte für eine faire Verwendung geeignet sind. An dieser Stelle ist klar, dass die Beklagten nicht in der Lage sind, in gutem Glauben zu handeln, wenn es um die faire Verwendung geht. Sie werden die faire Verwendung nicht in Betracht ziehen, mich aber dennoch beleidigen, belästigen und belästigen, weil sie der Meinung sind, dass sie sich für eine faire Verwendung qualifizieren. Es ist klar, dass sie nicht in gutem Glauben handeln werden, daher sollten sie für immer das Recht verlieren, meine urheberrechtlich geschützten Inhalte fair zu nutzen. Es ist eine harte Strafe, aber sie ist notwendig.

123.    Zu guter Letzt sollte den Angeklagten angeordnet werden, von jeder Person, die Mitglied ihrer Discord-Communitys, ihrer YouTube- oder Twitch-Kanäle oder einer anderen Online-Community ist, in der sie Moderatoren- oder Administratorrechte haben, eine ähnliche Einhaltung aller oben genannten einstweiligen Verfügungen zu verlangen . Sie sollten angewiesen werden, jedes Material, das mich belästigt, beleidigt oder mein Urheberrecht verletzt, sofort zu entfernen und den Benutzern, die es veröffentlichen, sofortige, dauerhafte und unwiderrufliche Sperren zu erteilen, und dies auch in allen zukünftigen Fällen zu tun Unbegrenzte Dauer. Sie sollten angewiesen werden, mir die Möglichkeit zu geben, alle von ihnen erstellten oder unterhaltenen Gemeinschaften und alle in diesen Gemeinschaften veröffentlichten Nachrichten anzuzeigen, damit ich diese Gemeinschaften auf Verstöße gegen diese einstweilige Verfügung überwachen kann.

### V-2: Unterlassungsanspruch gegen Alphabet, Discord, Facebook und Amazon

124.    Alphabet Inc., Discord Inc. und Amazon.com Inc. haben sich größtenteils an die Safe-Harbor-Bestimmungen des DMCA gehalten. 17 USC § 512(j) sieht jedoch eine begrenzte Form eines prospektiven Unterlassungsanspruchs gegen ISPs vor, selbst wenn sie für alles andere einen sicheren Hafen haben. Aus diesem begrenzten Rechtsschutzgrund versuche ich, Alphabet Inc, Discord Inc. und Amazon.com Inc. zu untersagen. Ich beantrage auch eine einstweilige Verfügung gegen Facebook Inc. gemäß 17 USC § 512(j), obwohl sie ebenfalls auf

Schadensersatz verklagt.

125.    Das Trio der einzelnen Angeklagten sind ohne Zweifel Wiederholungstäter. Ihre kollektiven Verstöße auf YouTube, Discord und Instagram gelten zweifellos als wiederholte Verstöße. Obwohl der DMCA keine klare Definition für den Begriff "Wiederholungsverletzer" bietet, würde die Tatsache, dass die einzelnen Angeklagten mein Urheberrecht mindestens siebzehn Mal (möglicherweise mehr, wenn ich die Gelegenheit habe, ihren Discord-Server inspizieren) zu inspizieren, eine vernünftige Definition des Begriffs ausreicht. Kein vernünftiger Tatsachenbeweis würde argumentieren, dass fünfzehn Verstöße Sie nicht zu einem Wiederholungstäter machen.

126.    Aus diesem Grund ersuche ich das Gericht, Alphabet Inc., Discord Inc., Amazon.com Inc. und Facebook Inc. gemäß 17 USC § 512(j)(1)(B)(i) zu die Konten der einzelnen Beklagten und alle zugehörigen Kanäle, Server und Seiten dauerhaft kündigen. Die Unternehmensbeklagten sollten auch angewiesen werden, den drei individuellen Beklagten weder ausdrücklich noch stillschweigend zu gestatten, aus irgendeinem Grund neue Konten zu eröffnen.

### V-3: Gesetzlicher Schadensersatz gegen Karl Polano, Frederick Allison, Raul Mateas und Facebook

127.    Das Trio von Karl Polano, Frederick Allison und Raul Mateas hat mein Urheberrecht mindestens siebzehn (17) Mal kollektiv verletzt. Ich fordere einen gesetzlichen Schadensersatz von bis zu 150.000 US-Dollar für jede Urheberrechtsverletzung. Dies bedeutet, dass das Trio bisher für bis zu 2.550.000 US-Dollar an gesetzlichem Schadensersatz haftbar gemacht werden sollte. Ich bitte das Gericht jedoch auch, mir einen gesetzlichen Schadensersatz von bis zu 150.000 US-Dollar für jeden weiteren Fall von Urheberrechtsverletzungen zuzusprechen, den ich finden kann, wenn ich die Gelegenheit habe, den Discord-Server der Beklagten zu durchsuchen.

128.    Facebook hat seinen sicheren Hafen in Bezug auf die fünfzehnte Anklage wegen Urheberrechtsverletzungen verloren (siehe ¶ 58 dieser Beschwerde). Daher fordere ich, dass Facebook Inc. zusammen mit dem Trio der einzelnen Angeklagten für den fünfzehnten Fall von Urheberrechtsverletzungen gesamtschuldnerisch haftbar gemacht wird und auch für gesetzliche Schäden bis zu 150.000 US-Dollar haftbar gemacht werden sollte.

### V-4: Emotionale Not und Strafschadenersatz gegen Polano, Allison und Mateas

129.    Um mich für das absichtliche Zufügen emotionaler Belastung zu entschädigen und die drei einzelnen Angeklagten zu bestrafen und alle anderen Personen in ähnlicher Lage davon abzuhalten, sich in Zukunft ähnlich zu verhalten, bitte ich das Gericht, mir eine Kombination aus kompensatorischer, emotionaler Belastung zuzusprechen , und Strafschadenersatz bis einschließlich einer Million ($1.000.000) Dollar gegen die drei einzelnen Angeklagten. In Kombination mit dem gesetzlichen Schadensersatz erhöht sich das Gesamtschadenspaket auf 3.550.000 US-Dollar.

### V-5: Andere geeignete Erleichterungen

130.    Zu guter Letzt bitte ich den Gerichtshof, jede andere Rechts- oder Billigkeitsmaßnahme zuzusprechen, die der Gerichtshof nach seinem Ermessen für angemessen hält, um mich gesund zu machen und sicherzustellen, dass dies nicht noch einmal passiert.

## VI: FAZIT

131.    Aus diesem Grund fordere ich unter Berücksichtigung der Prämissen respektvoll das Gericht auf, die Beklagten aufzufordern, die Belästigung, Doxxing und Urheberrechtsverletzung einzustellen und zu unterlassen, mir Schadensersatz bis zu und einschließlich 3.550.000 USD in einer Kombination aus gesetzlicher, emotionaler Belastung und Strafschadenersatz zuzusprechen, Kosten zuzuerkennen alle anderen mir zustehenden Rechtsbehelfe.

So beantragt an diesem, dem 10. September 2021.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com