David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                              PLAINTIFF

VS.                            Case 3:21-cv-04184-JSW

KARL POLANO, et al                                           DEFENDANTS

**MEMORANDUM IN SUPPORT OF**
**SECOND MOTION FOR PRELIMINARY INJUNCTION**

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Memorandum of Points and Authorities in Support of my Second Motion for Preliminary Injunction in the above-styled action.

**FACTS**

1.On June 7, 2021, I filed this lawsuit because Karl Polano, Frederick Allison, and Raul Mateas had joined forces to infringe on my copyright out of a desire to harass me, dox me, sabotage my career as a Youtube content creator and twitch streamer, and generally all around just to inflict suffering upon me for its own sake. There was never even so much as a pretense by any of the individual defendants to portray their actions as anything other than willful and malicious. See **Exhibits A, B**, and **C**.

2.Since filing this case, Polano and Allison (and possibly even Mateas) have joined a Discord server called "The Owl Server." In this server, there used to be a thread called the

"Acerthorn Pinata Bashing" thread. In that thread, Polano and Allison (and possibly even Mateas) proceeded to dox me and spread libelous and outlandish rumors about me in order to stir up hatred against me. Information about my personal life which was shared in that thread includes a crime I was charged with over a decade ago that I wasn't even convicted of, my medical records, and even various aspects of my sex life, such as finding porn sites that I supposedly joined over 9 years ago or dating sites that have profiles on them with usernames that suggest they could belong to me. See **Exhibit D**.

3. Emily Rebolo has participated in this thread, and therefore has participated in the harassment, doxxing, and dogpiling. See **Exhibit E**.

4. Trysten Burger has participated in this thread, and therefore has participated in the harassment, doxxing, and dogpiling. See **Exhibit F**.

5. Rebolo and Burger have both made "revenge videos" which infringe on my copyright, but also spread the harassment, doxxing, and dogpiling which they picked up from the Acerthorn Pinata Bashing thread, all in an attempt to "get even" with me for what they perceive to be my "abuse" of the DMCA. See Case 3:22-cv-00546-SK Stebbins v. Rebolo. See also **Doc. 105**.

6. There is another Youtuber who goes by the online psuedonym "SidAlpha," who has also joined the group dedicated to harassing, doxxing, and dogpiling me for its own sake. He has publicly declared on Twitter that he also intends to publish a "revenge video" about me, and he has utterly refused to listen to my good faith attempts to discuss the matter with him. See **Exhibit G**.

7. SidAlpha's Youtube channel has over 118,000 subscribers, and his videos regularly get

tens of thousands of views within the first few days. A revenge video from SidAlpha is likely to cause severe, and even irreversible, damage to my reputation and career on Youtube and Twitch.

8.     The Court has historically been rather accommodating in my motions for leave to amend the complaint, but only on the grounds that "at this stage of the proceedings, the Court finds little prejudice to the opposing partie"). See **Doc. 54, Page 2, Lines 19-20**. It is axiomatic that this lack of prejudice will not last very long, especially when the lack of prejudiced is predicated almost exclusively on how early in the proceedings the case currently is.

9.     If I continue to issue DMCA takedowns against these videos, one of two things will continue to happen: Either the nominal defendants in this case (such as Alphabet) will take the content down pursuant to the DMCA, or they will refuse to. If the sites refuse to take the content down, they lose their safe harbor, and I will have to take the site to court in order to stop the infringement. This means I will have to either file a new Amended Complaint in this case (delaying the case, potentially indefinitely), or file an entirely new lawsuit, which would result in piecemeal litigation.

10.     If, however, the ISP takes the content down, the uploader will have the right to issue a DMCA Counter-Notification. At that point, although the ISP will still have safe harbor, I must still take the uploader to court within 10 business days, otherwise the content will be reinstated. At that point, we are faced with the same problem as before, having to choose between constantly delaying this case or engaging in piecemeal litigation.

11.     But at the same time, I can't just not issue the DMCA takedowns or not act on the counter-notifications. The idea of just allowing people carte blanche to infringe my copyright,

and also to harass me, dox me, and dogpile me out of pure hatred, malice, and spite, for months or even years at a time, until this case finally manages to wrap up, is a proposal that is patently ludicrous on its face.

12.     I can see only one solution to this conundrum: I have to be free to issue my DMCA Takedowns against revenge videos, but it cannot be required of me to take any further legal action, in this case or any other, to keep the content taken down, for the duration of this case.

### Requested Preliminary Injunction

13.     To safeguard against irreversible prejudice, I request that the corporate defendants in this case be preliminarily ordered to do the following:

(a)     To always process any DMCA Takedowns I issue against any user of their site, within 2 hours of issuing it, regardless of whether they feel the videos are fair use or not, unless it is clear that the video in question is not in any way, shape, or form motivated by Polano's attempts to harass, dox, or dogpile me.

(b)     To refuse to entertain any DMCA Counter-Notifications issued in response to any DMCA takedowns that are filed by me, until this case is resolved, UNLESS it is clear the infringement in question is not in any way, shape, or form motivated by Polano's attempts to harass, dox, or dogpile me.

14.     These two preliminary injunctions are necessary in order to avoid either constant delay in this case or piecemeal litigation, without forcing me to suffer copyright infringement for months or years on end, without remedy.

15.     This preliminary injunction can only work if it is issued against the corporate defendants.

A preliminary injunction issued against the individual defendants will not stop other people from acting on behalf of the individual defendants and publishing their own revenge videos, not unless the Court wants to issue a preliminary injunction against everyone in the entire world (and even if the court wanted to and had the logistical means to enforce such an injunction, it is axiomatic that the court cannot issue injunctions – preliminary or otherwise – to anyone who is not even a party to the case). As such, it has to be the corporate defendants who are made to follow this injunction. No other avenue is possible.

## LEGAL ANALYSIS

16. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." See Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008).

### Likelihood of Success on the Merits

17. "[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant." See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986). I will easily be able to prove both of these essential elements. In fact, when any of the individual defendants finally appear in the case, they will likely admit to these two things themselves.

18. Instead, the individual defendants have indicated that they plan to justify their infringement on the grounds of fair use. However, I am highly likely to nullify their case for fair use using three different counter-defense.

19. The individual defendants have made it exceptionally clear that their infringements of my copyright are done solely out of pure hatred and malice towards me. They have no greater ambitions than to harass me, dox me, dogpile me, sabotage my career on Youtube and Twitch, and generally all around inflict suffering upon me entirely for its own sake. See **Exhibits A-C**.

20. Because of the individual defendants' exceptionally malicious behavior (and also due to their complete lack of attempt to hide the malice in their actions), this means that the individual defendants cannot claim the affirmative defense of fair use, even if those videos could be considered fair use under otherwise identical circumstances. There are not one, not two, but three different legal theories on which I base this claim. The first is that the Supreme Court has held that "Fair use presupposes good faith and fair dealing." See Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 US 539, 562 (1985). The word "presuppose" means "to require as an antecedent in logic or fact." See https://www.merriam-webster.com/dictionary/presuppose. Therefore, if the defendants have not acted in good faith with respect to their infringing activity, fair use cannot exist.

21. The second theory is the common law doctrine of "abuse of rights." This is a doctrine which "refers to the concept that the malicious or antisocial exercise of otherwise legitimate rights can give rise to civil liability." See https://definitions.uslegal.com/a/abuse-of-rights/. Since the individual defendants have made it abundantly clear that "the predominant motive for exercising [fair use] is to cause harm," that "no serious or legitimate motive exists for exercising the right," and that "the exercise of the right is against moral rules, good faith, or elementary fairness," (all of which are listed in the aforementioned citation as grounds to invoke the "abuse

of rights" doctrine), they should be held liable, even if those same videos could be considered fair use under otherwise identical circumstances.

22. Last but not least, because fair use is considered an "equitable defense" (see Fisher v. Dees, 794 F. 2d 432, 435 (9th Cir. 1986): "The fair-use doctrine was initially developed by courts as an equitable defense to copyright infringement"), that means that all of the maxims of equity apply to it. One of those maxims is the doctrine of "unclean hands," which states that, when a party has acted in relation to the current pending action in a manner that is offensive to morals and ethics, the Court must shut its doors to inequitable party in totality, and refuse to award the inequitable party any remedy. See Keystone Driller Co. v. General Excavator Co., 290 US 240, 244-45 (1933) ("The governing principle is that whenever a party ... has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy"). See also Bein v. Heath, 47 US 228, 247 (1848) ("It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity"). See also Deweese v. Reinhard, 165 US 386, 390 (1897) ("[I]f the conduct of the plaintiff be offensive to the dictates of natural justice, then … he will be held remediless in a court of equity").

23. Although little of the individual defendants' behavior is illegal on its own, the mere fact that it is not illegal is not a bar to a finding of unclean hands. See Precision Co. v. Automotive

Co., 324 US 806, 815 (1945) ("[O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the [judge]").

24. Exhibits A through G show that the individual defendants have acted with more than enough malice and disregard for my rights to qualify for any one of these three counter-defenses. Not only that, but it is clear that I have a very high likelihood of proving these counter-defenses, given that I have over 100 sub-exhibits worth of evidence of this malice.

25. Therefore, I have a high likelihood of success on the merits in this case.

### Likelihood of Irreparable Harm

26. Other people – such as SidAlpha – have made it clear that they intend to post "revenge videos" smearing me in order to punish me for perceived DMCA abuse. See **Exhibit G**. It is clear that these revenge videos will continue unless they are forcibly stopped.

27. If these revenge videos are allowed to continue, I will suffer irreparable harm in one capacity or another. Either …

(a) I would have to file a new lawsuit, which would generate unnecessary extra legal costs and, perhaps even worse, piecemeal litigation,

(b) I would have to file another amended complaint, which, if done repeatedly, has the potential to delay judgment in this case indefinitely, or

(c) I would have to allow the infringing content to continue unabated.

28. Either way, I am extremely prejudiced by any of the three possibilities. Therefore, the

second essential element of a preliminary injunction is met.

## Balance of Equities

29.     It is the corporate defendants in this case, not the individual defendants, who I seek to have effected by this preliminary injunction. In the instant case, the corporate defendants have almost no equity of their own to be balanced. It should already be common practice for these ISPs to process technically-perfect DMCA Takedown notices. With the preliminary injunction requested in ¶ 13(a), I am merely asking that the ISPs in question simply continue to do that and do not break from it.

30.     Meanwhile, while the corporate defendants could, in theory, lose their safe harbor if they refuse to process a technically perfect DMCA Counter-Notification, we should also remember that a loss of safe harbor does not create any new liability. It only restores whatever liability they otherwise would have. But the corporate defendants in the instant case already have included provisions in their terms of service which give them sole discretion to remove content for any reason they want. See https://www.youtube.com/t/terms. See also https://discord.com/terms. See also https://www.twitch.tv/p/en/legal/terms-of-service/.  This means that, even if they lose their safe harbor by refusing to process a DMCA Counter-Notification, the uploader has already agreed to immunize them from any liability in such a case.

31.     So as you can clearly see, the balance of equities tips in my favor, almost by default, seeing as the corporate defendants have virtually no equity of their own to balance.

## Public Interest

32.     It is axiomatic that the public interest heavily disfavors piecemeal litigation, as well as

litigants engaging in undue delay, especially when that delay is merely done solely for delay for its own sake. As such, issuing this preliminary injunction is certainly in the public interest.

## CONCLUSION

33.     In conclusion, I have demonstrated a very high likelihood of success on the merits by showing that the individual defendants' claims to fair use will likely be precluded due to overwhelming evidence of bad faith, abuse of rights, and/or unclean hands. The public interest favors this preliminary injunction, and the balance of equities not only tips in my favor, but is almost exclusively in my favor. This preliminary injunction is warranted.

34.     Wherefore, premises considered, I respectfully request that this motion for preliminary injunction be granted.

So requested on this, the 29th day of January, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
