RYAN S. BENYAMIN, State Bar No. 322594
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: rbenyamin@wsgr.com

JASON B. MOLLICK (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: jmollick@wsgr.com

*Counsel for Defendant Alphabet Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DAVID A. STEBBINS, | CASE NO.: 4:21-cv-04184-JSW |
| Plaintiff, | **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KARL POLANO et al., | |
| Defendants. | Judge: Hon. Jeffrey S. White<br>Date: March 11, 2022<br>Time: 10:00 AM<br>By videoconference |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.  PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS AS TO UNPLEADED COPYRIGHT INFRINGEMENT CLAIMS CONCERNING UNKNOWN FUTURE INFRINGEMENTS ................................................................. 3

II. PLAINTIFF'S ATTEMPT TO FORCE ONLINE PLATFORMS TO PREVENT OR REMOVE NON-INFRINGING CONTENT IS BARRED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT ............................................................ 6

III. NONE OF THE REMAINING FACTORS SUPPORT ISSUING A PRELIMINARY INJUNCTION ........................................................................................ 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Ascentive, LLC v. Opinion Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. 2011)...................................................................................8

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
    2011 U.S. Dist. LEXIS 145380 (C.D. Cal. May 4, 2011)......................................................7

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (2006).............................................................................................................7

*Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*,
    1999 U.S. Dist. LEXIS 23095 (D.N.M. Mar. 1, 1999),
    *aff'd*, 206 F.3d 980 (10th Cir. 2000)......................................................................................8

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003)................................................................................................7

*Chukwurah v. Google, LLC*,
    2020 U.S. Dist. LEXIS 17910 (D. Md. Jan. 31, 2020) .........................................................7

*Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies*,
    2021 U.S. App. LEXIS 25145 (9th Cir. Aug. 23, 2021)........................................................5

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019) ............................................................................................................4

*Gajo v. Brand*,
    2017 U.S. Dist. LEXIS 88404 (N.D. Cal. June 8, 2017) .......................................................4

*Gavra v. Google Inc.*,
    2013 U.S. Dist. LEXIS 100127 (N.D. Cal. July 17, 2013) ................................................ 7, 8

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021)....................................................................................................7

*Google LLC v. Oracle Am., Inc.*,
    141 S. Ct. 1183 (2021) ..........................................................................................................5

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003)..................................................................................................8

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010).................................................................................................8

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014)...............................................................................................10

*Kathleen R. v. City of Livermore*,
    87 Cal. App. 4th 684 (2001) ................................................................................................ 8

*Kifle v. YouTube LLC*,
    2021 U.S. Dist. LEXIS 193604 (N.D. Cal. Oct. 5, 2021) ..................................................... 4

*Kifle v. YouTube LLC*,
    2022 U.S. Dist. LEXIS 20014 (N.D. Cal. Feb. 3, 2022) ....................................................... 4

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ............................................................................................. 6

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ............................................................................................. 4

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................................................. 3

*Murawski v. Pataki*,
    514 F. Supp. 2d 577 (S.D.N.Y. 2007) ................................................................................. 7

*Noah v. AOL Time Warner, Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003),
    *aff'd*, 2004 U.S. App. LEXIS 5495 (4th Cir. Mar. 24, 2004) ............................................. 7

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ............................................................................................... 4

*Rosen v. eBay, Inc.*,
    2015 U.S. Dist. LEXIS 49999 (C.D. Cal. Jan. 16, 2015) ..................................................... 6

*Small Justice LLC v. Xcentric Ventures LLC*,
    873 F.3d 313 (1st Cir. 2017) ............................................................................................... 7

*Smith v. Intercosmos Media Grp., Inc.*,
    2002 U.S. Dist. LEXIS 24251 (E.D. La. Dec. 17, 2002) ..................................................... 8

*Stebbins v. Stebbins*,
    2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013) .................................................... 9

*Tvb Holdings United States v. Enom Inc.*,
    2014 U.S. Dist. LEXIS 194490 (C.D. Cal. Jan. 6, 2014) ..................................................... 4

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ............................................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................................. 3

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ....................................................................................... 8, 10

**STATUTES**

17 U.S.C. § 107 .................................................................................................................... 5, 6

17 U.S.C. § 411 ....................................................................................................................... 4

17 U.S.C. § 512 .................................................................................................................... 4, 6

47 U.S.C. § 230 ................................................................................................................*passim*

# INTRODUCTION

Defendants Alphabet Inc. ("Alphabet"), Amazon.com, Inc. ("Amazon"), and Discord Inc. ("Discord") (collectively, the "Corporate Defendants") oppose Plaintiff David Stebbins' January 29, 2022 Second Motion for Preliminary Injunction. Dkt. 106 ("Mot.").[1]

Plaintiff wants the Court to rewrite the Digital Millennium Copyright Act ("DMCA"), just for him. He speculates that co-Defendant Karl Polano – who has not been served – "will continue to post infringing content" on YouTube, Twitch, and Discord, and "will provide a counter-notification" disputing Plaintiff's future claims of infringement. Mot. ¶ 2. Plaintiff also speculates that "new people will be recruited in their war against me, forcing me to issue DMCA takedowns against them, which in turn means they will … issue DMCA Counter-Notifications," which may lead to future litigation against those "new people." *Id.* ¶ 4. For that reason, Plaintiff seeks an unprecedented forward-looking injunction. <u>First</u>, he wants YouTube, Twitch, and Discord to preemptively agree with all future DMCA notices that he submits, and to remove the content at issue within just two hours – regardless of the merit of Plaintiff's claim and "regardless of whether [the services] feel the videos are fair use or not." Dkt. 106-2 ("Br.") ¶ 13(a). <u>Second</u>, YouTube, Twitch, and Discord must "refuse to entertain any DMCA Counter-Notifications issued in response to any DMCA takedowns that are filed by me, until this case is resolved, UNLESS it is clear that the infringement in question is not in any way, shape, or form motivated by Polano's attempts to harass, dox or dogpile me." *Id.* ¶ 13(b).

The Court should reject Plaintiff's motion for a variety of reasons. As an initial matter, Plaintiff's motion is improper to the extent he seeks to enjoin YouTube and Twitch – platforms operated by *subsidiaries* of Defendants Alphabet and Amazon – without any evidence that those non-party entities are alter egos of the named defendants. *See* Dkt. 106-3, Proposed Order ¶ 3 (requesting an order compelling Alphabet and Amazon to "[r]equire their subsidiaries" to

---

[1] Pursuant to stipulation, the Corporate Defendants' time to respond to the operative complaint has been stayed until all individual defendants are served. Dkts. 52, 69, 86.

comply with the proposed injunction). Google LLC (which operates YouTube[2]) and Twitch Interactive, Inc. are not presently defendants and have never been served. Thus, there is no jurisdiction that would support an injunction directed at those companies.

Even if Google and Twitch were before this Court, Plaintiff's injunction fails because he cannot show that he is likely to succeed on the merits. Plaintiff's first request essentially requires removal of all content he *will claim* to be infringing *in the future*, without identifying what works will be infringed, without identifying who will infringe them, without considering fair use or other requirements for issuing a valid DMCA takedown notice, and without affording the infringers an opportunity to be heard. Without this information, he cannot show likelihood of success on the merits. In essence, Plaintiff wants the Court to convert the DMCA from a statutory safe-harbor into an affirmative duty requiring the removal of anything that he (and only he) complains about, even if that content is fair use. This Court already held that Plaintiff is not entitled to such sweeping prospective injunctive relief. *See* Dkts. 44, 88.

Plaintiff also cannot show likelihood of success on the merits for another reason. The second request – to bar Google, Twitch, and Discord from entertaining any DMCA counter-notifications concerning videos that "harass, dox or dogpile" the Plaintiff – reveals the true nature of this motion. Plaintiff does not seek an order to prevent provable copyright infringement: he seeks an order forbidding all content – including content that may be *non-infringing, fair use content* – that he deems offensive or defamatory. *See* Mot. ¶ 11; Br. ¶¶ 1-7 (complaining of content intended to "spread libelous and outlandish rumors … to stir up hatred against me," including a so-called "revenge video" that one user "intends to publish" in the future). The Corporate Defendants take abusive content seriously, and they or their subsidiaries provide tools by which Plaintiff can flag such content for review. But his effort to *force* Google, Twitch, and Discord to remove non-infringing content violates Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or the "CDA"), which expressly

---

[2] *See* https://www.youtube.com/static?template=terms (YouTube Terms of Service, explaining that "[t]he entity providing the Service is Google LLC").

bars any attempt to treat the provider of an "interactive computer service" as the "publisher or speaker" of information provided by third parties. Under this statute, online services cannot be sued for republishing tortious content created by users, and cannot be compelled through an injunction to remove that content from their platforms.

Finally, the remaining injunctive relief factors strongly support denial. Plaintiff fails to establish irreparable harm because past experience shows that Plaintiff is swiftly able to seek removal of infringing content consistent with the DMCA. Additionally, the balance of equities and the public interest favor denial. Plaintiff wants the Court to create new rules of content moderation just for him, without giving appropriate latitude to the service provider and affording the speakers an opportunity to be heard.

## ARGUMENT

As the Court explained in denying Plaintiff's motion for a TRO against co-Defendant Discord (Dkt. 12), "[p]reliminary injunctive relief … is an 'extraordinary and drastic remedy' that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). In order to obtain such relief, Plaintiff must establish: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)." Dkt. 44 at 2. As explained further below, Plaintiff does not come close to meeting any of these elements.

### I. PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS AS TO UNPLEADED COPYRIGHT INFRINGEMENT CLAIMS CONCERNING UNKNOWN FUTURE INFRINGEMENTS

Plaintiff requests a preliminary injunction requiring the Corporate Defendants and/or their subsidiaries to immediately remove any future content that he claims to be infringing, regardless of whether such content is actually infringing or fair use. In other words, he asks the Court to find that he is likely to succeed on the merits of all future and unpleaded copyright infringement claims, based on infringements that haven't occurred, concerning copyrighted materials that he cannot identify, against individuals who he cannot name.

This Court already held, in denying Plaintiff's TRO motion against Discord, that to the extent Plaintiff seeks "relief related to potential future infringements" he "has not shown that he would be entitled to such sweeping prospective injunctive relief." Dkt. 44 at 3. The same holds true here. By its nature, a copyright infringement lawsuit is "a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted [works]; it is not a lawsuit against copyright infringement in general …." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (citation omitted). A plaintiff alleging copyright infringement "must allege which specific original works are the subject of the copyright claim." *Tvb Holdings United States v. Enom Inc.*, 2014 U.S. Dist. LEXIS 194490, at *7 (C.D. Cal. Jan. 6, 2014) (citation omitted) (infringement allegations are insufficient where plaintiff "does not specifically define the 'Copyrighted Works' identified in its Complaint") (cleaned up); *see also, e.g.*, *Gajo v. Brand*, 2017 U.S. Dist. LEXIS 88404, at *4-5 (N.D. Cal. June 8, 2017) (dismissing copyright claims with only "vague" references to infringed works, "because it is not clear what the copyrighted works are in the first instance"); *Kifle v. YouTube LLC*, 2021 U.S. Dist. LEXIS 193604, at *15-16 (N.D. Cal. Oct. 5, 2021) (dismissing copyright claims against YouTube because the complaint "fail[ed] to identify any specific works that Kifle claims were infringed").

Plaintiff does not identify any specific works that would be subject to his injunction. He instead relies on speculation that future infringement might occur on YouTube, Twitch, or Discord. But to state a claim for secondary infringement, Plaintiff must do more than speculate; indeed even "generalized knowledge … of the possibility of infringement" is not enough to state such a claim. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *see also* 17 U.S.C. § 512(j) (requiring an injunction against a service provider under the DMCA to be tailored to *specific* infringing activity identified in the order that occurs at a *particular* online location on the provider's network (i.e., a URL)).

In addition, Section 411 of the Copyright Act requires that each specific work at issue be registered with the Copyright Office before an action can be brought concerning its infringement. 17 U.S.C. § 411(a); *see also Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019) (pending applications do not meet the pre-registration requirement); *Kifle v. YouTube*

*LLC*, 2022 U.S. Dist. LEXIS 20014, at *8-12 (N.D. Cal. Feb. 3, 2022) (dismissing copyright infringement claims against YouTube arising from unregistered, pre-recorded videos).  Because Plaintiff merely speculates as to future acts of infringement, he does not and cannot point to any specific registered works that would be covered by his proposed injunction.[3]

Plaintiff also argues that all future infringements will not amount to fair use, because all future infringers will be acting with "bad faith," "unclean hands," or the like.  Br. ¶¶ 20-24, 33.  Of course, the Court cannot possibly predict whether future conduct is fair use.  Fair use is a statutory defense based on a series of context-specific factors, including (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the work as a whole, and (4) the effect of the use upon the potential market for or value of the work.  17 U.S.C. § 107.  As the Court held in denying Plaintiff's first TRO motion, "Plaintiff's conclusory assertion that he is likely to succeed on the merits is insufficient," especially because "some individual defendants are likely to contest Plaintiff's claims of infringement as fair use."  Dkt. 44 at 3-4.  His request for a preemptive ruling that fair use cannot possibly succeed, without evidence, is baseless.

Plaintiff also cites no authority for the proposition that bad faith automatically precludes fair use.  *See* Br. ¶¶ 20-24.  To the contrary, just last year, both the Supreme Court and the Ninth Circuit *minimized* the role that bad faith plays in the fair use analysis.  *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204 (2021) ("As for bad faith, our decision in *Campbell* expressed some skepticism about whether bad faith has any role in a fair use analysis.  We find this skepticism justifiable, as [c]opyright is not a privilege reserved for the well-behaved.") (cleaned up); *Divine Dharma Meditation Int'l, Inc. v. Inst. of Latent Energy Studies*, 2021 U.S. App. LEXIS 25145, at *3 (9th Cir. Aug. 23, 2021) ("[T]he Supreme Court has minimized the relevance of bad faith as part of the first factor, and we conclude it plays no significant role here.") (citing *Google v. Oracle*, 141 S. Ct. at 1204).  It is also readily apparent that Plaintiff

---

[3] To the extent Plaintiff purports to rely on the single registered work identified in his complaint, he acknowledges that Google, Twitch, and Discord already removed the materials that he identified, thus mooting any grounds for an injunction.  *See, e.g.*, Dkt. 55 (2AC) ¶ 124.

often equates criticism of him as "bad faith." But "criticism" is expressly permitted under the fair use statute, even if it involves the use of some copyrighted material. 17 U.S.C. § 107.

Finally, Plaintiff's request that Google, Twitch, and Discord disregard all future counter-notifications, "regardless of whether they feel the videos are fair use or not" (Br. ¶ 13(a)), is a lawless attempt to rewrite the DMCA. Users are entitled to submit DMCA counter-notifications and to advance fair use defenses, and content-hosting platforms may consider fair use before deciding whether to take down alleged infringements. 17 U.S.C. § 512(g)(3); *see also, e.g.*, *Rosen v. eBay, Inc.*, 2015 U.S. Dist. LEXIS 49999, at *35-53 (C.D. Cal. Jan. 16, 2015) (finding content-hosting platform was not liable for direct or secondary infringement because the content uploaded by its users was fair use). Indeed, the Ninth Circuit has made clear that the DMCA "requires copyright holders to consider fair use before sending a takedown notification." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1148, 1151-53 (9th Cir. 2016). The Court also already denied a similar motion seeking to enjoin the individual defendants from submitting counter-notifications. Dkt. 88.

## II. PLAINTIFF'S ATTEMPT TO FORCE ONLINE PLATFORMS TO PREVENT OR REMOVE NON-INFRINGING CONTENT IS BARRED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT

As noted above, Plaintiff's motion reveals an ulterior motive that has little or nothing to do with copyright infringement. *See* Mot. ¶ 11; Br. ¶¶ 1-7. The proposed injunction would require Google, Twitch, and Discord to remove all content – even content that they believe is non-infringing – so long as the content is defamatory or harassing. Br. ¶ 13.

To the extent Plaintiff seeks to force Google, Twitch, and Discord to remove non-infringing content, this is barred by federal law. Section 230(c)(1) of the CDA mandates that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute expressly preempts any state law claims that run afoul of this directive, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). Taken together, these

provisions "create a blanket immunity from tort liability for online republication of third party content." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 57 (2006); *accord, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) ("§ 230(c) provides broad immunity for publishing content provided primarily by third parties."); *see also, e.g., Gonzalez v. Google LLC*, 2 F.4th 871, 890-99 (9th Cir. 2021) (CDA immunized Google from liability arising from videos posted by ISIS on YouTube); *Gavra v. Google Inc.*, 2013 U.S. Dist. LEXIS 100127, at *4-9 (N.D. Cal. July 17, 2013) (dismissing tort claims against Google arising from allegedly defamatory videos posted on YouTube, because Section 230 "was intended to protect websites against the evil of liability for failure to remove offensive content").[4]

      Notwithstanding this immunity, Plaintiff believes he can force Google, Twitch, and Discord through an injunction to remove any content that he objects to, even if that content is not infringing. But "[d]eciding whether or not to remove content or deciding when to remove content falls squarely within [a website's] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity." *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590-91 (S.D.N.Y. 2007). Thus, courts have consistently held that Section 230 precludes "requests for injunctive relief requiring removal or altering disputed third-party content." *Chukwurah v. Google, LLC*, 2020 U.S. Dist. LEXIS 17910, at *5 (D. Md. Jan. 31, 2020). "[G]iven that the purpose of § 230 is to shield service providers from legal responsibility for the statements of third parties, § 230 should not be read to permit claims that request only injunctive relief." *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540 (E.D. Va. 2003), *aff'd*, 2004 U.S. App. LEXIS 5495 (4th Cir. Mar. 24, 2004); *see also, e.g., Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 U.S. Dist. LEXIS 145380, at *20-23 (C.D. Cal. May 4, 2011) ("Because Defendants are not accountable for such postings under the CDA, they can not be liable for their effects in tort, and injunctive relief is similarly unavailable."); *Small Justice LLC v. Xcentric Ventures LLC*, 873

---

[4] Section 230 lists several exceptions to its broad immunity, including claims arising from federal intellectual property rights. 47 U.S.C. § 230(e)(2). Defendants do not suggest that the CDA bars Plaintiff's valid copyright infringement claims; but the statute does bar Plaintiff's attempt to force the removal of *non*-infringing content.

1   F.3d 313, 321-23 (1st Cir. 2017) (affirming dismissal where plaintiff sought preliminary and
2   permanent injunctions requiring website to remove third-party defamatory content); *Ascentive,*
3   *LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 471-76 (E.D.N.Y. 2011) (applying CDA to deny
4   motion for preliminary injunction to disable webpages containing negative comments); *Smith v.*
5   *Intercosmos Media Grp., Inc.*, 2002 U.S. Dist. LEXIS 24251, at *14-15 (E.D. La. Dec. 17, 2002)
6   ("[A]ny claim made by the plaintiffs for damages or injunctive relief … are precluded by the
7   immunity afforded by Section 230(c)(1), and subject to dismissal."); *Ben Ezra, Weinstein & Co.*
8   *v. Am. Online, Inc.*, 1999 U.S. Dist. LEXIS 23095, at *11 (D.N.M. Mar. 1, 1999) ("Plaintiff
9   seeks injunctive relief from the Defendant's continued publication of inaccurate stock
10  information.  AOL is again entitled to Section 230 immunity and this claim will be dismissed as
11  well."), *aff'd*, 206 F.3d 980 (10th Cir. 2000); *Kathleen R. v. City of Livermore*, 87 Cal. App. 4th
12  684, 698 (2001) ("[E]ven if for purposes of section 230 'liability' means only an award of
13  damages, the statute by its terms also precludes other causes of action for other forms of relief,"
14  including "injunctive relief") (citation omitted).[5]

15      It also does not matter, for purposes of Section 230, whether Plaintiff notifies Google,
16  Twitch, or Discord of allegedly harmful material.  "Section 230 immunity applies even after
17  notice of the potentially unlawful nature of the third-party content."  *Universal Commc'n Sys.,*
18  *Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007).  Otherwise, service providers "would have
19  a natural incentive simply to remove messages upon notification," which would have "a chilling
20  effect on the freedom of Internet speech."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (4th Cir.
21  1997); *see also, e.g.*, *Gavra*, 2013 U.S. Dist. LEXIS 100127, at *5, 7-9 (Section 230 "explicitly

---

[5] *Cf. Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010) (Section 230 "precludes courts from entertaining claims that would place a computer service provider in a publisher's role.  Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.") (citation omitted); *Green v. Am. Online (AOL)*, 318 F.3d 465, 470-72 (3d Cir. 2003) (Section 230 "specifically proscribes liability" for any claim which seeks to hold a service provider "liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role") (citation omitted).

prohibit[s] imposing liability" based on Google's "refraining from removing objectionable content" from YouTube "despite receiving notice").

In sum, Plaintiff's request for an injunction effectively compelling Google, Twitch, and Discord to remove non-infringing content is barred by federal law.

### III. NONE OF THE REMAINING FACTORS SUPPORT ISSUING A PRELIMINARY INJUNCTION

In light of the above, the Court need not even consider the remaining preliminary injunction factors. None favor issuing an injunction, regardless.

As for irreparable harm, Plaintiff does not explain how content that infringes his copyrights would cause irreparable damage that cannot be addressed through a monetary award. Plaintiff has also acknowledged that Google, Twitch, and Discord have generally removed content in response to his DMCA notices. *See, e.g.*, Dkt. 100 at ¶ 7 ("I have issued DMCA Takedowns on both of those infringements. They were removed by Twitch and Youtube, respectfully, but Polano issued Counter-Notifications to them."). His only argument is that without an injunction, he would have to continue filing new lawsuits. Br. ¶ 27. Yet Plaintiff can file a proposed amendment listing additional instances of related infringements (as he recently filed at Dkt. 100). This additional work is not irreparable harm, especially for a repeat litigant like Plaintiff.[6]

As for the balance of equities and the public interest, Plaintiff wants the Court to create new rules of content moderation just for him, in a manner that would effectively stifle all manner of speech that is critical of him, and without affording the speakers an opportunity to be heard in response. That distorts the balance of equities, is against the public interest, and contravenes the First Amendment. In enacting the DMCA, Congress has already spoken on the circumstances in which content-hosting platforms should remove or restore content in order to maintain a safe

---

[6] At least one district has deemed Plaintiff a vexatious litigant with "a history of filing ultimately meritless cases upon which the Court has been forced to expend countless hours of time and judicial resources." *See Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528, at *3-4 (W.D. Ark. July 3, 2013) (denying Plaintiff's request to proceed *in forma pauperis* and directing the Clerk not to accept his future filings without a fee).

harbor from claims of copyright infringement – including by permitting users to contest claims of infringement through counter-notifications. Congress has also determined, in enacting Section 230, that it is against the public interest to permit plaintiffs like Mr. Stebbins to sue websites for hosting unwanted user content. *See, e.g.*, *Zeran*, 129 F.3d at 333 (imposing liability on website operators for hosting third-party content would have "a chilling effect on the freedom of Internet speech"); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407-08 (6th Cir. 2014) ("[T]he immunity provided by § 230 protects against the 'heckler's veto' that would chill free speech."). Plaintiff's effort to rewrite the law should be rejected.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's second motion for a preliminary injunction.

Dated: February 14, 2022

| For Alphabet Inc., Defendant | For Amazon.com, Inc., Defendant |
|---|---|
| *s/ Ryan S. Benyamin* | *s/ Sanjay Nangia* |
| Ryan S. Benyamin | Sanjay Nangia |
| WILSON SONSINI GOODRICH & ROSATI, P.C. | DAVIS WRIGHT TREMAINE LLP |
| 633 West Fifth Street, Suite 1550 | 505 Montgomery Street, Suite 800 |
| Los Angeles, CA 90071 | San Francisco, CA 94111 |
| Telephone: (323) 210-2900 | Telephone: (415) 276-6577 |
| E-Mail: rbenyamin@wsgr.com | Email: sanjaynangia@dwt.com |

For Discord, Inc., Defendant

*s/ Jui-Ting Anna Hsia*
Jui-Ting Anna Hsia
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2341
Email: anna@zwillgen.com