David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                              PLAINTIFF

VS.                              Case 3:21-cv-04184-JSW

KARL POLANO, et al                                        DEFENDANTS

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR DEFAULT JUDGMENT AS TO KARL POLANO,**
**FREDERICK ALLISON, AND RAUL MATEAS**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following
Memorandum of Points and Authorities in Support of Motion for Default Judgment as to the
individual defendants in the above-styled action.

## I – TABLE OF CONTENTS

| Chapter | Page # |
|---|---|
| 1. TABLE OF CONTENTS | 1 |
| 2. TABLE OF AUTHORITIES | 3 |
| 3. FACTS OF THE CASE | 4 |
| (a) Continued harassment, doxxing, and copyright infringement by other accomplices | 4 |
| 4. SUMMARY OF ARGUMENT | 7 |
| 5. ARGUMENTS & LAW | 8 |
| (a) Just cause for delay | 8 |
| (b) Default judgment | 8 |
| (c) the possibility of prejudice to the plaintiff; | 9 |

(d) the merits of the plaintiff's substantive claim;                     10

    i.    Sidalpha Video                                                    11

(e) the sufficiency of the complaint;                                    14

(f) the sum of money at stake in the action;                             14

(g) the possibility of a dispute concerning material facts;              15

(h) whether the default was due to excusable neglect                     15

(i) the strong policy underlying the Federal                             16

    Rules of Civil Procedure favoring

    decisions on the merits.

6.  RELIEF REQUESTED                                                      17

(a) $1,800,000 in actual damages                                         17

(b) Injunction to cease and desist                                       17

    the infringment, harassment, and doxxing

(c) Injunction to undo all acts of infringement,                         17

    harassment, and doxxing

(d) Impossibility should not be a defense in this case                   18

7.  CONCLUSION                                                           21

MOTION FOR
                                                                         DEFAULT JUDGMENT

## II – TABLE OF AUTHORITIES

| **Statutes & Rules** | **Page(s)** |
| --- | --- |
| 17 USC § 512(f)(1) | 9 |
| 28 USC § 1915(e)(2)(B)(ii) | 14 |
| Fed.R.Civ.P. 54(b) | 8 |

| **Case Law** | **Page(s)** |
| --- | --- |
| Aldabe v. Aldabe, 616 F.2d 1089 (9th Cir. 1980) | 9 |
| Draper v. Coombs, 792 F.2d 915 (9th Cir. 1986) | 9 |
| Dr. Seuss Enterprises, LP v. COMICMIX LLC, 983 F. 3d 443 (9th Cir. 2020) | 11 |
| Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986) | 9 |
| Hughes v. Benjamin, 437 F. Supp. 3D 382 (2020) | 13 |
| TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915 (9th Cir. 1987) | 4, 8, 12 |

MOTION FOR
DEFAULT JUDGMENT

### III -- FACTS OF THE CASE

1.     The following facts are necessary to understand the case:

2.     First off, all of the factual allegations mentioned in ¶¶ 13-70 of the Second Amended Complaint (**Dkt. 55**) are hereby incorporated by reference. These facts are automatically admitted by the Defendants by way of them being entered in default. On a motion for default judgment, the factual allegations in the plaintiff's complaint are deemed to be true, except those relating to the amount of damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). As a result, there is no need to redundantly go over them again or to provide extraneous evidence.

3.     However, to the extent that evidence may be required, I defer the Court to **Dkt. 90** (Motion for Default Judgment as to Frederick Allison), and the attachments made therein. That attached report, and all of its corresponding sub-exhibits, provide thorough evidence of all of the factual allegations contained in the Second Amended Complaint, as well as a few other facts, all of which throw the individual defendants' malice and hatred towards me into greater and greater relief.

### Continued harassment, doxxing, and copyright infringement by other accomplices

4.     Since the commencement of this litigation, the individual defendants have continued their hate campaign against me, spreading my copyrighted content (without any claims to fair use) among other independent Youtube creators, who have in turn spread the claims on their own social media platforms. This has caused the marketability of my copyrighted work to be completely and thoroughly devalued. I can no longer make *any* money off of the April 10, 2021 livestream because everybody now has free access to it.

5.     Hands down, the most damaging example of this happening is with the accomplice who goes by the online psuedonym "SidAlpha." He has posted a video that uses my clips from the April 10, 2021 stream. By his own admission, he got those clips because Polano, Allison, and Mateas gave him the clips for him to use to smear me. As of the time of this writing, the video has approximately 90,000 views. See **Exhibit R**.

             MOTION FOR
DEFAULT JUDGMENT

6.     Because my livestream is supposed to be restricted only to those who pay my channel $20 per month, that means that every view that video gets amounts to actual damages of $20 each.

7.     Remember that, by SidAlpha's own admission in that video, he got this clip in the first place because the individual defendants in this case gave it to him to use in the video. This means that the individual defendants' own acts of infringement are the proximate cause for this increased circulation. If SidAlpha had paid me the fee to acquire the footage in the first instance through lawful channels, we may still have to litigate whether or not his video is fair use (which I doubt, for reasons stated below), but at least the individual defendants in this case would not have been jointly liable for it.

8.     In addition to the copyright infringement, let us also not forget that the harassment and doxxing is also a direct result of me providing my real name for one of my DMCA Takedowns, for which the individual defendants are now presumed liable. See **Dkt 55, ¶¶ 29, 31, & 33**. This means that their copyright infringement is the proximate cause of the harassment and doxxing I have received.

9.     When I first filed this lawsuit, nearly a year ago, the harassment and doxxing was so small-scale that it could reasonably be contained. However, since then, the individual defendants have spread my personal information so far and wide around the Internet – all out of pure hatred, malice, and spite – that it may require a fortune to undo.

10.    First of all, as you can see from **Exhibit R**, a ton of my personal information and history was shared by SidAlpha for the sole purpose of sharing it. Some of this information is true. Some of it is false, and some of it is technically true but egregiously misleading because he left out critical context and nuance with the express, malicious purpose of portraying me as the biggest monster he possibly could. However, the truth of his accusations is mostly irrelevant in a copyright infringement action. Rather, what matters is … he has no legitimate motive for doing it. He's doing just to harass me. Just pure hatred, pure malice, pure spite.

11.    Polano, Allison, and Mateas had been spreading this information about me around for months before SidAlpha took up the post. As you can see from **Exhibit Q**, they have been

MOTION FOR
                                                    DEFAULT JUDGMENT

actively searching for any information they could find from my past just so they could twist it into portraying me as the most vile person imaginable. As you can see from the first minutes of **Exhibit Q**, that community began simply sharing relatively banal criticism about me. But when Allison, Polano, and Mateas appeared in the thread, it quickly escelated to full-blown harassment and doxxing, all done with one motive: Inflict as much pain on me as possible. Once they entered the picture, it never de-escalated back to the regular levels of criticism that one should normally expect to receive when one posts videos on Youtube.

12.     Because of the willful and malicious actions of the individual defendants, I have received an astonishing amount of harassment, insults, and death threats from various people. See **Exhibits C-P**. None of these people would be harassing me if the individual defendants had not taken to the forums to spread their hate about me. They are the reason I am harassed to this degree.

13.     In short, if the individual defendants had never took up this obsession with me, 99.999999% of the copyright infringement, harassment, doxxing, dogpiling, and death threats would cease to exist like a grandfather paradox. Therefore, the individual defendants' behavior – which is the direct result of the DMCA Takedowns I have issued in order to stop their unlawful copyright infringement – is the proximate cause of the harassment, doxxing, dogpiling, and copyright infringement I have suffered, even at the hands of third parties.

14.     In addition to that, Frederick Allison has recently engaged in a new act of malice: Hijacking my Youtube channel and changing it into a joke channel. See **Exhibits A** & **B**. That alone should give the individual defendants even more unclean hands than they already had.

Case 3:21-cv-04184-JSW                                                                    MOTION FOR
                                                                                 DEFAULT JUDGMENT

## SUMMARY OF ARGUMENT

15.     All factual allegations contained in my complaint are deemed true. There are a few other facts that I needed to bring up, but I have evidence for them.

16.     There is no just cause for delaying entry of judgment in this instance. There are additional claims against the individual defendants which will be added in a Third Amended Complaint, but those claims will not affect the validity of the claims currently before the court. Meanwhile, there are three nominal defendants in this case, but this motion does not seek to enjoin them to do anything. The claim/party combination which is the subject of this motion is entirely compartmentalized away from the rest of the case, so there is no just cause to delay entering judgment.

17.     The seven factors the Court considers on a motion for default judgment are almost unanimously in my favor in this case. Failing to enter judgment would egregiously prejudice me. My substantive claim has ample evidence to support it. I have alleged sufficient facts in the complaint. The amount of evidence I have eliminates nearly any possibility that there might be a dispute concerning material facts. The default was absolutely, beyond any reasonable doubt, NOT due to excusable neglect, but was in all likelihood a conscious choice by the individual defendants motivated by nothing more than a desire to waste everyone's time. Furthermore, although the public policy disfavors default judgment, it is preferable to no judgment at all.

18.     Therefore, default judgment is proper in this case.

Case 3:21-cv-04184-JSW                                               MOTION FOR
                                                                   DEFAULT JUDGMENT

## ARGUMENTS & LAW

19.     The following law is applicable to this case.

### Just cause for delay

20.     I am seeking leave to file a Third Amended Complaint to include a new copyrighted work which is being infringed upon. Also, there are multiple nominal defendants in this case who I plan to seek prospective injunctive relief on to have the individual defendants' accounts terminated. In multi-claim and multi-party cases such as this one, **Fed.R.Civ.P. 54(b)** provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

21.     In the instant case, I see only for the three individual defendants to have default judgment entered against them. The nominal defendants have no skin in this game. Therefore, that is not a good reason to delay entering judgment against the individual defendants.

22.     Likewise, when the individual defendants get served with the Third Amended Complaint, bringing the infringement claim for the April 18, 2021 infringement, the individual defendants may, if they so choose, proceed to litigate that infringement. A judgment on that count of infringement will not affect the disposition of their infringements of the April 10, 2021 livestream. The two copyrighted works, and their subsequent infringements are entirely separate from one another. They may as well be filed in two completely different cases.

23.     Therefore, there is no need to delay entering judgment on the infringements of the April 10 stream or the DMCA Misrepresentation claim. A judgment on those two claims will not affect any parties not in default, nor any claims that are still pending.

### Default Judgment

24.     On a motion for default judgment, the factual allegations in the plaintiff's complaint are deemed to be true, except those relating to the amount of damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

25.     Because the facts in the complaint are presumed true, that means the Court must deem to be true that (A) I have a valid copyright on the April 10, 2021 livestream, and (B) the individual defendants copied clips from that stream and distributed them without my consent. This creates a

MOTION FOR
DEFAULT JUDGMENT

claim for copyright infringement. See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986) ("[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant").

26.     It is also deemed to be true that (A) Raul Mateas does not own the copyright to the picture of the rooster which formed the basis for his DMCA Takedown Notice on May 25, 2021, (B) he did not consider fair use when he issued the takedown, and (C) he only issued the takedown as retaliation for my issuing the DMCA Takedown against Karl Polano on May 20, 2021. Therefore, I am entitled to judgment as a matter of law as to the DMCA Misrepresentation claim under **17 USC § 512(f)(1)**.

27.     A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. See Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter default judgment against a party following the clerk's entry of default. A district court has discretion in deciding whether to enter a default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising this discretion, the court considers several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

28.     Nearly all seven of these factors weigh in my favor in this case.

### Possibility of prejudice to the plaintiff

29.     The individual defendants have proven themselves to be wholly unscrupulous people with absolutely no morals or respect for anyone's boundaries except for their own. Ever since this case got filed, they have only doubled down on their harassment, doxxing, and copyright infringement, as demonstrated by Exhibits Q & R.

30.     All throughout this debacle, the individual defendants have proven, time and again, that a court judgment is the only thing that will get them to stop. In fact, even a court judgment itself

probably won't do the trick. In order to truly get them to cease and desist, it is apparent that I will need to (A) get a judgment from the court, (B) wait out the mandatory two week grace period for compliance, only for the individual defendants to remain just as silent as they are now, (C) file a motion to enforce judgment, (D) have the Court enter an order holding the individual defendants in contempt of court, and (E) have the individual defendants flown in (at their own expense, no less) to Northern California so they can serve time in coercive confinement. At that point, they will most likely stop what they are doing, if for no other reason than the fact that they *literally can't* continue their harassment and infringement from inside a prison cell, even if they wanted to.

31.     In fact, Frederick Allison has even said as much. See **Dkt. 106, Exhibits A-C, Sub-Exhibit 51** ("even if you sue me I ain't going away"). By his own admission, an injunction on its own is not going to make him stop; only the *enforcement* of that injunction will do the trick.

32.     Public policy favors judgment on the merits, no question. But in this case, it is a choice between default judgment or no judgment at all. If even one of the individual defendants had appeared in the case, we might have gotten a judgment on the merits. But because the individual defendants had willfully and maliciously chose to ignore the case (more on that when we discuss the possibility of excusable neglect), we cannot have that.

33.     Therefore, it is default judgment or nothing, and if I get nothing, the individual defendants will just continue their rampage. If they continue their rampage, the prejudice I will suffer is axiomatic.

34.     For all of these reasons, there is an obvious possibility (bordering on a guarantee) of prejudice to the plaintiff if this default judgment is not entered.

### Merits of the plaintiff's substantive claim

35.     In **Dkt. 92 & 106**, I attached a report that I had previously submitted to the counsel for the corporate defendants. This report contained over 100 sub-exhibits that thoroughly prove all of the following things:

- The individual defendants have committed prima facie copyright infringement, on multiple occasions.

- The individual defendants only acquired the footage from the April 10, 2021 stream by illegally downloading it.

- The individual defendants are obsessed with inflicting harassment, doxxing, and dogpiling onto me, and ruining my career, all entirely for its own sake. There is no legitimate motive behind their actions; just pure hatred, pure malice, pure spite.

- Because of all of this malice and harassment, any claims the individual defendants may have to fair use are effectively negated because they have acted with "unclean hands" in regards to the infringements, which serves as a counter-defense to fair use.

- Even if we we must litigate fair use on the merits, the individual defendants' claims to fair use are so pathetically weak that it is honestly embarrassing. The individual defendants seem to believe that, as long as you provide even a *de minimus* amount of criticism or parody, then the resulting video is automatically fair use, to the exclusion of all other factors, including whether you use the heart of the work or whether you usurp the market for the original, and that is, quite simply, not how fair use works.

36.    Put simply, had the individual defendants appeared in the case, they likely would have embarrassed themselves with how weak their case was for fair use.

37.    However, there is one additional issue we need to address. Because Polano had reached out to and solicited SidAlpha to make his videos, Polano should be held jointly liable for that. However, this does require we take a moment to discuss the potential that SidAlpha's video may qualify as fair use.

<u>SidAlpha Video</u>

38.    SidAlpha is indeed providing criticism and commentary about me in his video. See **Exhibit R**. However, that alone is not enough to constitute fair use on its own. See Dr. Seuss Enterprises, LP v. COMICMIX LLC, 983 F. 3d 443, 452 (9th Cir. 2020) ("While the analysis of the first fair use factor may be guided by the examples given in the preamble to § 107, i.e., criticism, comment, ... not even these works compel a per se finding of fair use" (citations and quotations ommitted).

39.    At approximately the timestamp of 52:16, SidAlpha played the "strange noises" clip from

the April 10, 2021 livestream (aka the "heart" of that work). This clip was entirely unaltered and unedited.

40.     Immediately prior to playing it, all he said about the clip was that it showed quote "alarming behavior." That's it. That's where his "criticism" and "commentary" of that clip begins and ends. After that, all he does is talk about my use of the DMCA to have copies of that clip taken down, and how he believes my copyright is invalid because it was accidental. However, none of that commentary actually required he play the clip.

41.     Because the individual defendants are entered in default, they have forever forfeited their right to challenge the validity of the copyright. Because they were entered in default, the validity of my copyright is admitted by default. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). Even if it weren't, the fact that I have a registration on the copyright means I am statutorily entitled to a presumption of the validity of the copyright. See **17 USC §410(c)**. In order to overcome that presumption, the individual defendants would have to come forth with affirmative evidence to the contrary, which they, obviously, cannot do when they are entered in default. As a result, my copyright is valid, period.

42.     Even if the defendants were present, their likelihood of successfully prevailing on that challenge are one in a million. The only way the "accidental" nature of the stream could actually invalidate its copyright is if the streaming software turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it to happen. See **Exhibit S**. The odds that the defendants will be able to prove this are one in a million. See **Exhibit S, ¶¶ 29-32**. The court should not delay entering this default judgment just on the one in a million chance that the defendants could stumble backwards into evidence that saves their skin, especially when the individual defendants have made it perfectly clear that they have no intention of cooperating in this case in the first place.

43.     So that just leaves fair use. First, I would argue that the individual defendants should be equally barred from claiming fair use int his motion as they are in challenging the validity of copyright, and for the same reasons as the former. Because all use of copyrighted material is presumed unfair, the individual defendants must come forth with affirmative evidence in their

MOTION FOR
                                                                        DEFAULT JUDGMENT

defense.

44.     However, some courts have held that fair use can indeed be adjudicated on the pleadings when the defense is apparent on the face of the video in question. See Hughes v. Benjamin, 437 F. Supp. 3D 382 (2020). So I feel I should at least pay lip service to fair use. If, however, I am able to provide enough of an argument against fair use that the defendants would ordinarily be required to *actually litigate* the fair use defense, I believe that should be enough to qualify me for default judgment, since the individual defendants, being listed in default, obviously won't be able to litigate anything.

45.     First, because SidAlpha (A) only acquired the footage to use that clip in the first place by illegally downloading it from one of the individual defendants in a peer to peer transfer, (B) he is publicly condoning and siding with the individual defendants in their ongoing efforts to harass, dox, and dogpile me, (C) he is even engaging in the exact same acts of doxxing[1] and dogpiling against me at the individual defendants' request, and (D) he made this video primarily because the individual defendants reached out to him and asked him to smear me for them, that all collectively means that SidAlpha is, in essence, acting as a de factor agent, mouthpiece, and arm of the individual defendants' hate campaign against me. This means that the individual defendants should be considered jointly liable for SidAlpha's video.

46.     At that point, the individual defendants' unclean hands should likewise serve as a barrier to fair use in this instance, just as much as it serves as a barrier to fair use in all other instances of infringement.

47.     Second, even if we must consider the four factors test on its own, SidAlpha's video still fails to qualify for fair use. He provided criticism of my behavior, sure, but he also used the heart of the April 10 livestream, so the third factor weighs against fair use. His usage of that clip also serves as a market substitute. Nobody will pay me the $20 to see the stream now, because they can just go to SidAlpha's video and see the most interesting part. The fact that his usage of the

---

1   See timestamps 19:41 – 30:20 for instances of doxxing. He claims that his actions are allowed because all fo this information is "publicly available," but in doing so, he (and the individual defendants) are completely missing the point. The point is not that they are illegally tapping into my private records. The problem is that the only reason they are doing any of this is just to harass me and incite hatred against me. Their motives are pure hatred, pure malice, and pure spite. They are not even *pretending* like there is any motive beyond that. THAT is what makes it unclean hands, not simply the fact that the information is private vs. public.

MOTION FOR
                                                                                          DEFAULT JUDGMENT

clip did not contain any visual or auditory obstructions only makes it even easier for those in the market for that clip to seek out SidAlpha's video instead of my own.

48.     Therefore, because both Factor #3 and Factor #4 weigh against fair use, that should be enough to negate fair use. At the very least, it should create enough of a doubt about fair use that the defendants would have to come forth with affirmative evidence to the contrary, which they obviously will not be able to do on a default judgment.

49.     Therefore, I believe I have thoroughly demonstrated that this factor of a default judgment – merits of a Plaintiff's substantive claim – are thoroughly in my favor.

### Sufficiency of the complaint

50.     This is most likely only a relevant factor if the plaintiff is paying the filing fee, as the language of this factor seems redundant of what the Court is already supposed to look for under **28 USC § 1915(e)(2)(B)(ii)** when reviewing a complaint *sua sponte* for failure to state a claim. In the instant case, the Court has already reviewed the complaint for sufficiency, and determined that I am entitled to proceed on the infringement claims as well as one of the DMCA Misrepresentation claim. Because the Court has already ruled in my favor on this issue, I will not engage in redundant arguments or factual citations. If the Court wishes for me to provide additional clarification, it may order me to provide a supplement to this motion, at which point I will reply.

### Sum of money at stake in the action

51.     This is the one factor that seems to be against default judgment. I am asking for actual damages of $1.8 million, a substantial sum.

52.     However, I imagine the seven factors for a motion for default judgment are a lot like the four factors for fair use: No one factor is singularly dispositive, and all factors must be considered in unison.

53.     That being said, this feels like the equivalent to default judgment as the 2nd factor is to fair use: The least important factor. At best, it can serve as a tie-breaker when the other six factors are neutral.

54.     If this one factor could singlehandedly negate a default judgment, it would be far too easy

MOTION FOR
DEFAULT JUDGMENT

for bad actors (such as these individual defendants) to exploit. It would effectively give any defendant in any lawsuit a free pass to simply ignore the lawsuit, just because they are being sued for a lot of money. Plaintiffs would be heavily chilled from requesting amounts to which they legitimately feel they are entitled.

55.     To safeguard against this slippery slope, this factor *has* to be the least important factor in a default judgment. To hold otherwise would be a recipe for disaster.

**Possibility of a dispute concerning material facts**

56.     As I have thoroughly demonstrated throughout this case, there is almost no case the individual defendants can make. Their cases for fair use are pathetically weak, and that's assuming their equitable defenses aren't barred by the counter-defense of unclean hands (which it most likely is). I have a valid copyright registration, and negating that validity would require substantial evidence from the defendants, which they most likely cannot produce.

57.     The individual defendants have left a large trail of incriminating evidence in their wake. Because they have done so, they have effectively eliminated any likelihood of of there being any dispute concerning material facts. Everything they have done is out in the open.

58.     Therefore, this factor weighs in favor of default judgment.

**Whether the default was due to excusable neglect**

59.     This one is laughable. At least with Karl Polano, no excusable neglect is even possible. He has freely admitted to going out of his way to evade service of process solely out of a desire to waste everyone's time. See **Dkt. 119**. His default is not the result of excusable neglect, but a result of a conscious choice to evade process out of pure malice.

60.     With Allison, it is highly probable that he has also ignored the summons out of an equal amount of malice. After all, as mentioned above, he has already admitted that he intends to ignore any judgment I may obtain against him.

61.     With Mateas, I have no admissions from him, either express or implied, to this effect. However, bear in mind that he has also admitted in writing that he does not believe the May 20, 2021 infringement constitutes fair use. See **Dkt. 126-4**. Furthermore, he has had several months now to appear in the case. If his failure to appear wasn't intentional at first, it has become such.

MOTION FOR
                                        DEFAULT JUDGMENT

62.     As a result, it is highly improbable that the individual defendants' failures to appear were the result of excusable neglect. This factor *heavily* weighs in favor of default judgment.

**Strong policy underlying the Federal Rules of**

**Civil Procedure favoring decisions on the merits.**

63.     Aside from the sum of money at stake, this is the factor that appears to be the most likely to weigh against fair use. However, that is not because my case is simply undeserving of judgment. Rather, it is because this public policy *always* weighs against default judgment. All plaintiffs who seek a default judgment must overcome this hurdle equally. It never weighs against fair use more in one case than another, because the public policy is the same in every case.

64.     That being said, public policy may disfavor default judgment, but it is still preferable to no judgment at all, and as I have demonstrated earlier, that is the alternative we are faced with. It's default judgment or nothing, because the defendants have utterly refused to participate in this case.

65.     For all of these reasons and more, six out of seven factors for default judgment weigh in my favor. The totality of the circumstances undeniably favors default judgment in this case.

## RELIEF REQUESTED

66.     In light of all of this, I request the following relief from the individual defendants

### $1,800,000 in actual damages

67.     First, because the SidAlpha video has over 90,000 views, that is 90,000 copies of my April 10 stream that people did not have to pay me for. Each one of those should have given me $20 because I have that video gated beyond a $20 paywall. This means that I have lost a total of $1,800,000 in lost sales as a result of the SidAlpha video, which was done at the request of the individual defendants. For this reason, I ask that the individual defendants be ordered to compensate me for these lost sales. I ask for $1,800,000 in actual damages.

68.     Even if the Court disagrees with me on the calculation of actual damages, I still ask the Court to award me statutory damages of $150,000 per individual defendant, for a grand total of $450,000 in statutory damages overall.

### Injunction to cease and desist the infringement, harassment, and doxxing

69.      Also, pursuant to ¶¶ 114-123 of the Second Amended Complaint, I ask that the individual defendants be ordered to cease and desist all acts of copyright infringement against me. The arguments contained in ¶¶ 114-123 of the Second Amended Complaint are hereby incorporated by reference.

### Injunction to undo all acts of infringement, harassment, and doxxing, even those handed off to third parties like SidAlpha

70.     It would be the epitome of a pyrrhic victory if the individual defendants were enjoined to stop circulating my copyrighted content and personal information, but not ordered to clean up the mess they had already made. That would be the equivalent of ordering an arsonist to stop burning down the plaintiff's house, after the house had already been reduced to ashes, but not ordering the arsonist to repair the damage he had already inflicted.

71.     Therefore, in addition to ordering the defendants to cease and desist their own acts of infringement, harassment, and doxxing, I also ask the Court to order the defendants to go back and undo all acts of harassment, doxxing, and copyright infringement that they caused to happen, even if they personally were not the ones doing it.

72.     SidAlpha is easily the biggest example of this, but it is not the only one. I ask that the individual defendants be made to clean up the mess they have made in its totality, including, but not limited to …

    (a)     Any instances of my April 10, 2021 livestream, except those that were obtained lawfully by paying me the money.

    (b)     Any instances of my personal information that did not exist on the Internet prior to me issuing DMCA Takedowns against the individual defendants, except those which existed entirely independently of the individual defendants' actions.

    (c)     Any instances of harassment against me that are directly or indirectly related to my interactions with the individual defendants, past present or future.

73.     The individual defendants should be ordered to remove all instances of the above material if ...

    (a)     The individual defendants put it out there themselves;

    (b)     Anyone got it from the individual defendants, such as SidAlpha;

    (c)     Anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from anyone got it from the individual defendants; and

    (d)     everything in between and beyond.

74.     They should be required to ensure this content is removed, even if the content is stored on someone else's computers.

75.     This sounds like an extreme remedy, one that the individual defendants may never be able to complete. However …

**Impossibility should not be a defense in this case**

76.      It may indeed be true that the individual defendants will never, in their entire lifetimes, be able to fully comply with this injunction. It is such a monumental task that even the corporate defendants in this case (Alphabet, Discord, and Amazon) would likely never be able to fully

MOTION FOR
DEFAULT JUDGMENT

complete it in any human lifetime, even if they worked together and put 100% of their resources

behind doing so (not that I am attempting to hold them to this injunction; this is just an example).

77.     However, that should not absolve the individual defendants of liability in this case. If the

individual defendants can never comply with this injunction because it is impossible, maybe they

should have thought about that when they were willfully and maliciously setting out to cause this

injury with the express intent of making it impossible to fix. At that point, the impossibility

should be their problem, not mine!

78.     Furthermore, there is nothing in the law stating that an otherwise meritorious injunction

or judgment should suddenly become unmeritorious simply because of the difficulty in

complying with it. There is indeed precedent for this. Two examples I can think of off the top of

my head are (A) The British Petroleum oil spill in the Gulf of Mexico from 2010, and (B) the

more recent "gender reveal wildfire" from El Dorado.

79.     Regarding the BP oil spill, as recently as June of 2021, people are *still* working to clean

up that mess. See https://www.them.us/story/couple-gender-reveal-wildfire-manslaughter-

charges. However, if BP had not settled out of court in 2014, they would have been liable for

every single solitary cent of clean-up costs, no matter how astronomical those costs may have

been.

80.     At least BP was a major, multinational corporation, and thus had the capital needed to pay

for these otherwise insurmountable debts. In the case of the gender reveal wildfire, however,

their hopes of rebounding are much more bleak. That was only a family, not a corporation, and

yet they were fined $8.1 million. See https://www.them.us/story/couple-gender-reveal-wildfire-

manslaughter-charges ("Dickey ultimately pled guilty and was fined $8.1 million in restitution").

Because it is a fine, not compensatory damages, he cannot discharge this debt in bankruptcy.

81.     The Dickey family will never, in their entire lives, be able to pay that debt off, and yet,

pay it off they must. That family will be making installment payments on that fine for the rest of

their lives. Their only consolation is that the debt will not be passed onto their next of kin (the

very next of kin they were revealing the gender of!), but then again, their next of kin will likely

not inherit anything, since any assets the Dickeys may have accumulated in their lifetime will be

MOTION FOR
                                                                                    DEFAULT JUDGMENT

sucked up, like water in a rain forest, by probate court in order to make one final payment on the fines before those fines are finally discharged.

82.     Despite those two debts being absolutely massive, and the latter being one that the perpetrators (at least the Dickeys) would never be able to fully pay off, the impossibility of complying with those judgments fully did not deter the court from entering those judgments.

83.     Even still, the individual defendants in this case have an extenuating circumstance that make them even more deserving of an impossible judgment than BP or the Dickeys: Their relative culpable mental states. With BP, the oil spill was the result of their negligence (cutting corners on pipe maintenance in order to reduce overhead costs). With the Dickeys, the wildfire was the result of their reckless behavior (setting off fireworks during wildfire season). But here, the individual defendants have acted with sheer malice. They knew that the injuries they were inflicting on me would likely never be taken off the Internet. They *wanted* these injuries to be irreversible, and they intentionally set out to make them irreversible. So even more so than BP or the Dickeys, if the individual defendants find themselves with an impossible task in front of them, cleaning up their own mess, then they have nobody but themselves to blame. Much more than either of the aforementioned cases, these individual defendants deserve it.

84.     If they cannot comply with this injunction, removing all un-authorized instances of my April 10 livestream and my personal information from the Internet in totality, then they can simply spend the rest of their lives in contempt of court, forever staying in American federal prison in coercive confinement, kind of like the old "debtors prisons" from mideival England that ultimately lead to the creation of the New World colony of Georgia.

85.     This would certainly create a deterring effect against all future bad actors. It would send a powerful message to future citizens of the world: Don't do things maliciously. Even if you feel the victim deserves it, doing *anything* out of malice is a bad idea. If you do something with malice and somehow manage to escape legal liability, that is the exception, not the rule, and you have dodged a bullet.

86.     Therefore, the individual defendants should be enjoined to remove any and all instances of my personal information (unless I am the one who put it out there of my own accord,

MOTION FOR
DEFAULT JUDGMENT

unrelated to this case), and all unauthorized copies of the April 10, 2021 livestream, by any means necessary, even if it takes them the rest of their lives. It is drastic, but it is an appropriate response considering the scope of the individual defendants' malice.

MOTION FOR
DEFAULT JUDGMENT

**CONCLUSION**

87.     In conclusion, the individual defendants smugly believed they were screwing me over with their actions. They should not be allowed this victory. They should be ordered to pay me for the damage they have already inflicted, and to actively clean up their mess to ensure that no further damage is caused, either at their hands or at the hands of anyone else continuing where they left off.

88.     Default judgment is appropriate in this case. Six of the seven factors weigh heavily in favor of default judgment, and the one factor that weighs against it is obviously the least important factor. Although this motion does not dispose of the case in its entirety, there is still no need to delay default judgment on these issues, since the claims and parties being adjudicated in this motion are entirely compartmentalized away from the claims and parties that are not part of this motion.

89.     Wherefore, premises considered, I respectfully pray that the motion for default judgment be granted, actual damages of $1,800,000 be awarded, injunctions be issued ordering the defendants to undo their damage, costs incurred be awarded, and any other relief to which I may be entitled.

So requested on this, the 7th day of April, 2022.

_/s/ David Stebbins_
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com