1    SANJAY M. NANGIA (State Bar No. 264986)
     DAVIS WRIGHT TREMAINE LLP
2    505 Montgomery Street, Suite 800
     San Francisco, California 94111
3    Telephone:    (415) 276-6500
     Facsimile:    (415) 276-6599
4    Email:  sanjaynangia@dwt.com
5
     Attorneys for Defendant
6    AMAZON.COM, INC.

7    [Additional Counsel on Signature Page]

8

9

10                  IN THE UNITED STATES DISTRICT COURT

11                  THE NORTHERN DISTRICT OF CALIFORNIA

12                            OAKLAND DIVISION

13

14   DAVID A. STEBBINS,                    Case No. 4:21-cv-04184-JSW

15            Plaintiff,                    **CORPORATE DEFENDANTS' JOINT
                                           NOTICE OF MOTION AND MOTION
16        v.                               TO DISMISS**

17   KARL POLANO, et al.,                  Date:    May 27, 2022
                                           Time:    9:00 a.m.
18            Defendants.                   Dept.:   Courtroom 5

19
                                           Action Filed:  June 2, 2021
20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:**

**PLEASE TAKE NOTICE** that on May 27, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 5 – 2nd Floor, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, Amazon.com, Inc. ("Amazon"), Alphabet Inc. ("Alphabet"), and Discord Inc. ("Discord") (collectively, the "Corporate Defendants") will and hereby do move the Court for an order dismissing Plaintiff David A. Stebbins' claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on this Notice of Motion, the concurrently filed Memorandum of Points and Authorities, the concurrently-filed Request For Judicial Notice and accompanying Exhibits ("RJN"), all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and on such other argument as may be heard by this Court.

Dated: April 11, 2022                                    Respectfully submitted,

For Discord, Inc., Defendant                    For Amazon.com, Inc., Defendant

<u>s/ James Orenstein</u>                                   <u>s/ Sanjay Nangia</u>
James Orenstein (*pro hac vice*)               Sanjay Nangia
ZWILLGEN PLLC                                      DAVIS WRIGHT TREMAINE LLP
183 Madison Ave., Suite 1504                  505 Montgomery Street, Suite 800
New York, NY 10016                               San Francisco, CA 94111
Telephone: (646) 362-5590                       Telephone: (415) 276-6577
Email: Jamie.Orenstein@zwillgen.com     Email: sanjaynangia@dwt.com


For Alphabet Inc., Defendant

<u>s/ Jason Mollick</u>
Jason Mollick (*pro hac vice*)
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
E-Mail: jmollick@wsgr.com

1

**TABLE OF CONTENTS**

2
                                                                          **Page**

3    I.      INTRODUCTION .................................................................................. 1

4    II.     RELEVANT FACTS ............................................................................ 2

5            A.      Mr. Stebbins is a Vexatious Litigant and his Suits Have Been Deemed
                     Frivolous. ................................................................................... 2
6
             B.      This is a Dispute Between Mr. Stebbins and the Individual Defendants. ............... 4
7
8    III.    LEGAL STANDARD .......................................................................... 5

9    IV.     LEGAL ARGUMENT ......................................................................... 5

10           A.      The Accidental Livestream is Not Copyrightable. .................................... 5

11           B.      Mr. Stebbins Has Not Stated an Actual Claim Against Any Corporate
                     Defendant. .................................................................................. 7
12
                     1.      Injunctive Relief is Not a Claim or Cause of Action. ................................ 7
13
                     2.      Plaintiff Cannot Advance a Substantive Claim to Support
14                           Injunctive Relief. ................................................................. 8

15                   3.      The DMCA Does Not Authorize Injunctive Relief Against Non-
                             Infringers. ......................................................................... 9
16           C.      The Requested Injunctive Relief is Improper. ....................................... 11

17           D.      Mr. Stebbins Has Failed to State a Claim Against Amazon and Alphabet. ........... 13

18           E.      The Court Should Deny Any Request for Leave to Amend and Warn Mr.
                     Stebbins Against Further Frivolous Filings. ......................................... 14
19
     V.      CONCLUSION .................................................................................. 15
20
21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actuate Corp. v. Fid. Nat'l Info. Servs., Inc.*,
 2014 U.S. Dist. LEXIS 117513 (N.D. Cal. Aug. 21, 2014) ...................................................... 8

*Arista Records LLC v. Usenet.com, Inc.*,
 2008 U.S. Dist. LEXIS 95514 (S.D.N.Y. Nov. 24, 2008) ...................................................... 11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................... 5

*Bastidas v. Good Samaritan Hosp.*,
 2014 U.S. Dist. LEXIS 92772 (N.D. Cal. July 7, 2014) ...................................................... 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................... 5

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
 2022 U.S. Dist. LEXIS 50166 (S.D.N.Y. Mar. 21, 2022)...................................................... 9, 11

*Canary v. Youngevity Int'l, Inc.*,
 2019 U.S. Dist. LEXIS 46429 (N.D. Cal. Mar. 20, 2019) ...................................................... 14

*Corbis Corp. v. Amazon.com, Inc.*,
 351 F. Supp. 2d 1090 (W.D. Wash. 2004) ...................................................... 10

*CoStar Grp., Inc. v. LoopNet, Inc.*,
 373 F.3d 544 (4th Cir. 2004)...................................................... 11

*De Long v. Hennessey*,
 912 F.2d 1144 (9th Cir. 1990) ...................................................... 15

*Ellison v. Robertson*,
 357 F.3d 1072 (9th Cir. 2004) ...................................................... 11

*Escobar, Inc. v. Klarna, Inc.*,
 2021 U.S. Dist. LEXIS 1443 (C.D. Cal. Jan. 4, 2021)...................................................... 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991) ...................................................... 6

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
 642 F. Supp. 2d 1012 (N.D. Cal. 2009) ...................................................... 1, 8

*Greenspan v. IAC/InterActiveCorp*,
 2016 U.S. Dist. LEXIS 137204 (N.D. Cal. Sept. 30, 2016) ...................................................... 15

ii

*Io Grp., Inc. v. Veoh Networks, Inc.*,
  586 F. Supp. 2d 1132 (N.D. Cal. 2008) .......................................................... 11, 13

*Jensen v. Quality Loan Serv. Corp.*,
  702 F. Supp. 2d 1183 (E.D. Cal. 2010) ................................................................ 8

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ............................................................................ 15

*Kifle v. YouTube LLC*,
  2021 U.S. Dist. LEXIS 193604 (N.D. Cal. Oct. 5, 2021) ..................................... 9

*Kinsley v. Udemy, Inc.*,
  2021 U.S. Dist. LEXIS 62885 (N.D. Cal. Mar. 31, 2021) ................................... 13

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
  345 F.3d 1140 (9th Cir. 2003) .............................................................................. 6

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) .............................................................................. 14

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) .............................................................................. 9

*Mangindin v. Wash. Mut. Bank*,
  637 F. Supp. 2d 700 (N.D. Cal. 2009) .................................................................. 8

*MGM Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ............................................................................................. 9

*Naruto v. Slater*,
  2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016) ...................................... 6

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ............................................................................................. 5

*Ou-Young v. Roberts*,
  2013 U.S. Dist. LEXIS 179213 (N.D. Cal. Dec. 20, 2013) ................................. 15

*Overton v. Uber Techs., Inc.*,
  2019 U.S. Dist. LEXIS 161374 (N.D. Cal. Sept. 20, 2019)................................. 15

*Pantoja v. Countrywide Home Loans, Inc.*,
  640 F. Supp. 2d 1177 (N.D. Cal. 2009) .............................................................. 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007)............................................................................. 11

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017)............................................................................. 8, 9

iii

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................................. 9

*Prudencio v. Midway Importing, Inc.*,
    831 F. App'x 808 (9th Cir. 2020) .......................................................................... 14

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................................... 9

*Reynolds v. Apple Inc. et al.*,
    No. 3:19-cv-05440-RS, slip. op. (N.D. Cal. Nov. 27, 2019) .................................. 8

*Richards v. Harper*,
    864 F.2d 85 (9th Cir. 1988) .................................................................................... 5

*Rosal v. First Fed. Bank of Cal.*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................... 1, 8, 12

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC*,
    2021 U.S. Dist. LEXIS 35620 (C.D. Cal. Feb. 24, 2021) .................................... 13

*Stebbins v. Bradford*,
    2013 U.S. Dist. LEXIS 94179 (W.D. Ark. July 5, 2013) ...................................... 3

*Stebbins v. Google, Inc.*,
    2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) ......................... 2, 5, 13

*Stebbins v. Hixson*,
    2018 U.S. Dist. LEXIS 79361 (W.D. Ark. May 8, 2018) ...................................... 3

*Stebbins v. Microsoft, Inc.*,
    2012 WL 12896360 (W.D. Wash. Jan. 13, 2012) .................................................. 3

*Stebbins v. Rebolo*,
    No. 4:21-cv-04184-JSW .................................................................................. 3, 4

*Stebbins v. Stebbins*,
    2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013) .................................. 1, 3

*Stebbins v. Stebbins*,
    575 F. App'x 705 (8th Cir. 2014) .......................................................................... 3

*Stebbins v. Steen*,
    2013 U.S. Dist. LEXIS 117914 (E.D. Ark. Aug. 20, 2013) .................................. 3

*Stebbins v. Texas*,
    2011 U.S. Dist. LEXIS 146248 (N.D. Tex. Oct. 24, 2011) .................................. 2

*Totally Her Media, LLC v. BWP Media United States, Inc.*,
    2015 U.S. Dist. LEXIS 193685 (C.D. Cal. Mar. 24, 2015) ................................ 10

iv

*Tur v. YouTube, Inc.*,
    2007 U.S. Dist. LEXIS 50254 (C.D. Cal. June 20, 2007)........................................................ 10

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ..................................................................................................... 2, 14

*Ventura Content, Ltd. v. Motherless, Inc.*,
    2013 U.S. Dist. LEXIS 189948 (C.D. Cal. July 3, 2013) ...................................................... 13

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007) .............................................................................. 11

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019)............................................................................................... 9

*Williby v. Hearst Corp.*,
    2017 U.S. Dist. LEXIS 106212 (N.D. Cal. July 10, 2017) .............................................. 14, 15

*Wolk v. Kodak Imaging Network, Inc.*,
    2011 U.S. Dist. LEXIS 27541 (S.D.N.Y. Mar. 17, 2011)...................................................... 13

**Statutes**

17 U.S.C.
    § 101 ........................................................................................................................ 6
    § 102(a) .................................................................................................................... 6
    § 512 ................................................................................................................. *passim*

**Rules**

Federal Rule of Civil Procedures
    Rule 65(d)(2) ............................................................................................................ 10

**Regulations**

U.S. Copyright Office Practices
    § 313.2 ..................................................................................................................... 6

**Constitutional Provisions**

United States Constitution
    Artcle I.................................................................................................................. 6, 7

CORPORATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

# I.   INTRODUCTION

Plaintiff David Stebbins, a recognized "vexatious" litigant (*Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013)), has asserted copyright infringement claims alleging that a handful of Individual Defendants posted infringing content on YouTube, Twitch, and Discord.  Rather than simply sue the persons who posted that content, he also asks this Court to enter a needless and improper injunction under the Digital Millennium Copyright Act ("DMCA") that would require the service providers – or their parent companies Amazon (of Twitch) and Alphabet (of YouTube) – to "permanently terminate" the "individuals' accounts" and "not permit" them "to create any new accounts for any reason."  Dkt. 55 (SAC) ¶ 126.  The Court should dismiss Mr. Stebbins's claims against all Corporate Defendants with prejudice, and warn Mr. Stebbins that continued frivolous filings could result in sanctions.

*First*, the sole work at issue in this case – a video of Mr. Stebbins that was recorded accidentally through a fixed camera – is not copyrightable to begin with.  Copyright protection subsists in creative works of authorship that are fixed in a tangible medium of expression by a human author.  But here, Mr. Stebbins admits that the video was created by accident, without his knowledge, and without the slightest spark of creativity on his part.  The fixation of the video itself was done by computer software – not a human author – without Mr. Stebbins even realizing the camera had turned on.  Because such a work cannot be copyrightable, all of Mr. Stebbins's infringement claims should be dismissed without needing to go further.

*Second*, even if the video at issue were copyrightable, Mr. Stebbins has not stated (and cannot state) an actual legal claim against any of the Corporate Defendants.  Mr. Stebbins asks for a remedy – an injunction – but fails to accompany it with a viable cause of action upon which a request for relief could be granted as to those Defendants.  As a result, his "claim" for injunctive relief fails as a matter of law.  *See, e.g.*, *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1028 (N.D. Cal. 2009) (dismissing "claim" for injunctive relief and explaining that "[a] request for injunctive relief by itself [] does not state a cause of action").  Even with an amendment, Mr. Stebbins cannot state such a claim because the DMCA does not authorize injunctions against innocent defendants who have not infringed in the first place.  The statute is a

1

*limitation* on the remedies that can be sought against *infringing* online service providers, not an independent expansion of power to issue no-fault injunctions.

**Third**, where, as here, the Corporate Defendants are already removing all instances of the allegedly infringed work in suit when given DMCA-compliant notice, courts agree that it is improper and unnecessary for an injunction to issue under that statute.

**Fourth**, absent exceptional circumstances, corporate parents are not liable for the conduct of their subsidiaries, requiring dismissal of Amazon and Alphabet. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Mr. Stebbins admits that neither Amazon nor Alphabet has engaged in any wrongful conduct, and he has advanced no allegation that those parent companies are alter egos of their subsidiaries. Instead, he claims he "wants to keep [his] options open" in the event, at some point, he develops a claim against them. Dkt. 71 ¶ 6. That is not how litigation works. For this reason alone, the Court should dismiss Amazon and Alphabet.

Any dismissal of the Corporate Defendants should be with prejudice and without leave to amend as Mr. Stebbins cannot cure the defects in his complaint. And given his well-documented history as a vexatious litigant, the Court should warn Mr. Stebbins that continued frivolous litigation could result in sanctions, including awards of attorneys' fees in favor of defendants who are forced to respond to his endless filings.

## II.      RELEVANT FACTS

### A.      Mr. Stebbins is a Vexatious Litigant and his Suits Have Been Deemed Frivolous.

Mr. Stebbins, a self-proclaimed "Youtuber" and "Twitch Streamer," goes by the online alias "Acerthorn." Dkt. 55 (SAC) ¶ 1. He is widely ridiculed by other users on those services, in large part because of his years'-long abuse of the court system. Mr. Stebbins has bogged down courts across the nation with frivolous lawsuits. In this District, for example, he sued Google to confirm a purported "arbitration award" for half a trillion dollars, even though no arbitration actually occurred. *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) (dismissing *sua sponte* as "frivolous" and "clearly baseless"). There are many other suits just like that one. *See Stebbins v. Texas*, 2011 U.S. Dist. LEXIS 146248, at *8-9 (N.D. Tex. Oct. 24, 2011) (warning Mr. Stebbins could face monetary sanctions and/or that court would ban him

2

from filing further actions without prior approval); *Stebbins v. Steen*, 2013 U.S. Dist. LEXIS
117914, at *5-6 (E.D. Ark. Aug. 20, 2013) (concluding his complaint was frivolous and failed to
state a claim); *Stebbins v. Stebbins*, 575 F. App'x 705 (8th Cir. 2014) (affirming dismissal and
noting it is "undisputed that Stebbins has proceeded *in forma pauperis* on at least sixteen
complaints [as of 2014] that proved meritless, and has filed numerous frivolous motions");
*Stebbins v. Bradford*, 2013 U.S. Dist. LEXIS 94179, at *7 (W.D. Ark. July 5, 2013) (dismissing
his complaint as frivolous), *aff'd*, 552 F. App'x 606 (8th Cir. 2014).

Mr. Stebbins has been reprimanded multiple times.  One federal court noted that "time
spent dealing with Mr. Stebbins's filings prevents the Court from addressing the genuine, vexing
problems that people trust the Court to resolve quickly and fairly."  *Stebbins v. Microsoft, Inc.*,
2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), *aff'd sub nom. Stebbins v. Microsoft
Corp.*, 520 F. App'x 589 (9th Cir. 2013).  Similarly, the Western District of Arkansas declared
him a "vexatious" litigant who has "abused the system" with "a history of filing ultimately
meritless cases upon which the Court has been forced to expend countless hours of time and
judicial resources.  Not only has Mr. Stebbins filed numerous cases, but he has also filed over
one hundred motions within those cases, some of which have been repetitive, and few of which
have had any merit."  *Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528, at *3-4.  When that
court limited him to filing one case per every three months (*id.* at *8-9), he evaded the order by
suing in the *Eastern* District, and then attempting to transfer to the Western District.  *Stebbins v.
Hixson*, 2018 U.S. Dist. LEXIS 79361, at *3-4, *7-8 (W.D. Ark. May 8, 2018).

Mr. Stebbins's conduct has continued in this case and in other lawsuits pending before
this Court.  In this case alone there are already over 125 docket entries, including dozens of
"motions" filed by him.  The Court has denied the vast majority of them.  Mr. Stebbins has also
filed a related action in this Court, *Stebbins v. Rebolo*, No. 4:21-cv-04184-JSW, and recently
amended his complaint.  In that case Mr. Stebbins complains that YouTube declined to remove
fair use videos critiquing his litigious behavior.[1]

---

[1] One such video at issue in the related *Rebolo* suit, entitled "Acerthorn: Serial DMCA Abuse
Controversy," can be found at https://www.youtube.com/watch?v=WB-Xd1qDKIY.  This is the
same video that Plaintiff attempted to enjoin in his Second Motion for Preliminary Injunction in

3

**B.**     **This is a Dispute Between Mr. Stebbins and the Individual Defendants.**

According to Mr. Stebbins, on April 10, 2021, his "livestream software turned on of its own accord without me realizing it.  It stayed on for nearly two hours before I realized it was on and closed it down.  During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities," and were able to hear "strange noises" that he "did not cause." Dkt. 55 (SAC) ¶¶ 22-23.  He allegedly registered this "Accidental Livestream" with the U.S. Copyright Office and uploaded the archive to his YouTube channel, where access is limited to those who pay $20 per month, which no one has ever paid.  *Id.* ¶¶ 24-25.  Mr. Stebbins's claims against the Individual Defendants stem from their alleged posting of the Accidental Livestream and harassing comments on various social media platforms.

Mr. Stebbins does not allege that he or any of the Individual Defendants have accounts with Amazon or Alphabet, or that any party posted allegedly infringing content (including the Accidental Livestream) on Amazon's or Alphabet's websites (indeed, both are merely holding companies and do not operate any content-hosting website at all).  The only link between Mr. Stebbins and Amazon is Mr. Stebbins's assertion that Amazon is the "parent company of the website Twitch.tv."  *Id.* ¶ 6.  Although Mr. Stebbins has not named Twitch as a defendant in this lawsuit, his claim against Amazon is based on his allegation that one of the Individual Defendants, Karl Polano, shared his Accidental Livestream on Twitch without authorization.  *Id.* ¶ 60.  Similarly, Alphabet's only connection to this lawsuit is that it is the parent company of Google LLC, which in turn is the parent company of YouTube.  *Id.* ¶ 3.

As to the websites that actually hosted the allegedly infringing content, Mr. Stebbins acknowledges there is a functioning system in place for dealing with all of that material.  He followed this process, submitting a DMCA takedown request to Twitch and, as he concedes, less

_____

this case, which the Court denied.  *See* Dkt. 106-2 ¶¶ 6-7.  The video also features prominently in Mr. Stebbins's Motion for Default Judgment against the Individual Defendants as a measure of his damages (which makes no sense, since the video was not created or posted by the Individual Defendants in default).  *See* Dkt. 127-20 ¶¶ 38-49; Dkt. 247-18.  The video provides a detailed history of Mr. Stebbins's abuse of the Court system and the DMCA to strike videos that fairly criticize him.  Mr. Stebbins immediately sued YouTube in the *Rebolo* action even though the video (and others alleged in that complaint) is plainly fair use criticism.

4

than two hours later Twitch took down the video.  *Id.* ¶ 60.  Similarly, Mr. Stebbins concedes that YouTube promptly removed all alleged instances of the Accidental Livestream from its platform, often within hours of him submitting a takedown notice.  *Id.* ¶¶ 26, 29, 46, 61.  Nor does he allege that Discord ignored any of his takedown notices.  *Id.* ¶ 44.  Indeed, Mr. Stebbins admits that Alphabet, Discord, Amazon, and/or their subsidiaries "have complied with the DMCA's safe harbor provisions."  *Id.* ¶ 124.  Despite all that, he seeks injunctive relief requiring the sites to permanently ban the Individual Defendants.  *Id.* ¶¶ 124-126.

### III.    LEGAL STANDARD

The Court should grant a motion to dismiss when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  This standard applies equally to *pro se* plaintiffs.  *See, e.g.*, *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988).

Moreover, the Court should be mindful that Mr. Stebbins is proceeding *in forma pauperis* and therefore, if his complaint lacks an arguable basis either in law *or in fact*, the Court has "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701, at *10-11.  The *in forma pauperis* process "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  That concern is particularly acute here, given Mr. Stebbins's history.

### IV.    LEGAL ARGUMENT

**A.    The Accidental Livestream is Not Copyrightable.**

Mr. Stebbins's complaint fails from the get-go because the Accidental Livestream is not copyrightable.  The Court need go no further to dispose of this entire litigation.

While Mr. Stebbins did register the video, "[t]he presumption of the validity of a registered copy-right may be overcome by the offer [of] some evidence or proof to dispute or

5

1  deny the plaintiff's prima facie case of infringement."  *Lamps Plus, Inc. v. Seattle Lighting*

2  *Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (citation omitted).  Here, that proof is found in

3  the complaint itself, in which Mr. Stebbins admits that the Accidental Livestream lacks even the

4  slightest modicum of creativity, and is not a product of human authorship.  Mr. Stebbins did ***not***

5  disclose these facts in his application to the Copyright Office – a fact he concedes in his recent

6  Motion for Default Judgment.  RJN, Ex. A; *see also* Dkt. 127-19 ¶ 3.

7          "Copyright protection subsists … in original works of authorship fixed in any tangible

8  medium of expression …."  17 U.S.C. § 102(a).  "The *sine qua non* of copyright is originality.

9  To qualify for copyright protection, a work must be original to the author.  Original, as the term

10  is used in copyright, means … that it possesses at least some minimal degree of creativity."

11  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).  "To be

12  sure, the requisite level of creativity is extremely low," but the work must at least possess "some

13  creative spark" to be copyrightable.  *Id.*  Moreover, the "fixing" of a creative work in a tangible

14  medium of expression must be done "by or under the authority of the author."  17 U.S.C. § 101.

15  That author must be a human, not a machine.  Compendium of U.S. Copyright Office Practices

16  § 313.2 ("works produced by a machine or mere mechanical process that operates randomly or

17  automatically without any creative input or intervention from a human author" are not

18  copyrightable)[2]; *cf. Naruto v. Slater*, 2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016),

19  *aff'd*, 888 F.3d 418 (9th Cir. 2018) (finding monkey cannot sue for infringement of a selfie it

20  took with a camera).  These two requirements – creativity and human authorship – are consistent

21  with the Constitution, which calls upon Congress to protect the rights of "Authors" to "promote

22  the Progress of Science and useful Arts."  U.S. Const. Art. I, § 8, Cl. 8.

23          Here, Mr. Stebbins states in the SAC that the Accidental Livestream was created when

24  "my livestream software ***turned on of its own accord without me realizing it.***"  Dkt. 55 (SAC) ¶

25  22 (emphasis added).  The software remained on for nearly two hours until he "realized it was

26  on," at which point he turned it off.  *Id.*  During this time Mr. Stebbins could be seen doing

27

28  [2] Available at https://www.copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf.

"*mundane, daily activities*."  *Id.* (emphasis added).  "[T]he only interesting and memorable part of this otherwise boring and *contentless* livestream" were "strange noises" that Mr. Stebbins says he "*did not cause.*"  *Id.* ¶ 23 (emphasis added).  Thus by his own admission, the video lacks even the slightest creative spark necessary for it to be copyrightable.  It shows nothing other than "mundane, daily activities"; it is "boring and contentless"; and the only notable content consists of sounds that he "did not cause."  Mr. Stebbins made no creative choices in generating this content, whether in the form of directing the scenery or even turning on the stationary camera. This is not a case where an author intends to create a work but catches something by happpenstance—such as a photographer who snaps a photo at the same time as a strike of lightning, or a painter who slips while holding the brush.  Rather, Mr. Stebbins admits that the *very making* of the video was accidental and done entirely without his knowledge.

Not only that, the fixation of the work was performed by a machine, not a human author. Mr. Stebbins admits that computer software – not him – "turned on [the livestream] of its own accord without me realizing it."  He also concedes, in his Motion for Default Judgment, that the "accidental" nature of his video would "invalidate its copyright [] if the streaming software turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it to happen"—which is precisely what he alleges in the complaint.  Dkt. 127-20 ¶ 42.

It is clear that Mr. Stebbins is claiming copyright in this video not because it reflects his creative expression, but because he finds it embarrassing and wants to stop others from accessing it.  That is understandable, but it is not a proper invocation of the copyright laws.[3]

**B.      Mr. Stebbins Has Not Stated an Actual Claim Against Any Corporate Defendant.**

**1.      Injunctive Relief is Not a Claim or Cause of Action.**

Even if the Accidental Livestream were copyrightable, Mr. Stebbins has no legal basis for roping the Corporate Defendants into this case.  His sole "claim" against the Corporate Defendants is "V-2" for "Injunctive Relief."  Dkt. 55 (SAC) ¶¶ 124-126.  He asks the Court to

---

[3] Mr. Stebbins claims that he offers the video for "at least" $20 per month ($240 per year), but no one has ever paid for it.  Dkt. 55 (SAC) ¶¶ 24-25.  The complaint, and his litigation history, strongly suggests that Plaintiff did this simply to manufacture a damages claim over a video that has no actual value.  *Id.* ¶ 131.

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

require the Corporate Defendants to terminate the Individual Defendants' accounts and to enjoin them from allowing any of the Individual Defendants to "create any new accounts" in the future. *Id.* ¶ 126.  But "[a]n injunction is a ***remedy***, not a separate claim or cause of action.  A pleading can … request injunctive relief ***in connection with a substantive claim***, but a separately pled claim or cause of action for injunctive relief is inappropriate."  *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) (emphasis added); *see also Fortaleza*, 642 F. Supp. 2d at 1028 (dismissing "claim" for injunctive relief and explaining that "[a] request for injunctive relief by itself [] does not state a cause of action"); *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1136 (N.D. Cal. 2009) (same); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 709 (N.D. Cal. 2009) (injunctive relief not an independent cause of action); *Actuate Corp. v. Fid. Nat'l Info. Servs., Inc.*, 2014 U.S. Dist. LEXIS 117513, at *11 (N.D. Cal. Aug. 21, 2014) (dismissing "claim" for injunctive relief); *Reynolds v. Apple Inc. et al.*, No. 3:19-cv-05440-RS, slip. op. at 6 (N.D. Cal. Nov. 27, 2019) (same).  The Corporate Defendants should be dismissed on this basis alone.

### 2.     Plaintiff Cannot Advance a Substantive Claim to Support Injunctive Relief.

Mr. Stebbins cannot advance a substantive claim of prima facie copyright infringement against the Corporate Defendants that could support an injunction against them.  This is because Discord, Twitch, and YouTube immediately disabled all alleged infringements of the Accidental Livestream as soon as the websites learned of those videos.

Copyright infringement falls into two categories: direct and secondary liability.  "[D]irect infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant."  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).  As automated service providers that merely hosted content posted by the Individual Defendants, Discord, Twitch, and YouTube cannot be liable under this theory because "passively storing material at the direction of users in order to make that material available to other users upon request, or automatically copying, storing, and transmitting materials upon instigation by others," is not "volitional" conduct; and thus, "does not render an [Internet service provider] strictly liable for copyright infringement."  *Id.* at 668-70 (brackets in original; citations omitted); *accord,*

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

*e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369 (N.D. Cal. 1995); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731-38 (9th Cir. 2019).

Nor can the Corporate Defendants be liable for secondary infringement. Contributory liability only exists if a service provider "has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, ***yet continues to provide access to infringing works***." *Giganews*, 847 F.3d at 671 (citation omitted) (emphasis added); *accord, e.g.*, *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071-72 (9th Cir. 2013); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 801 (9th Cir. 2007); *Kifle v. YouTube LLC*, 2021 U.S. Dist. LEXIS 193604, at *14-16 (N.D. Cal. Oct. 5, 2021). Similarly, vicarious liability only exists when a platform "profit[s] from direct infringement while ***declining to exercise a right to stop or limit it.***" *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (emphasis added); *accord, e.g.*, *Luvdarts*, 710 F.3d at 1071. Mr. Stebbins concedes that Discord, Twitch, and YouTube did the opposite of these things: as soon as they learned of the alleged infringements, the websites promptly took them down. Dkt. 55 (SAC) ¶¶ 26, 29, 44, 46, 60, 61. As another federal court recently held in a similar case against YouTube, that precludes any theory of prima facie infringement against the websites, irrespective of whether they might also qualify for the DMCA safe harbor. *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 U.S. Dist. LEXIS 50166, at *14-16 (S.D.N.Y. Mar. 21, 2022) (dismissing contributory and vicarious claims where plaintiff conceded that YouTube promptly removed the infringing videos); *see also id.* at *7-11 (also dismissing direct infringement claims for lack of volitional conduct).

### 3. The DMCA Does Not Authorize Injunctive Relief Against Non-Infringers.

Mr. Stebbins relies on 17 U.S.C. § 512(j) as a basis for seeking a standalone injunction without a supporting claim. Section 512(j), however, is a ***limit*** on the Court's power to enjoin, not an expansion. The DMCA presupposes that the enjoined service providers are prima facie infringers who sought refuge from monetary liability under the safe harbor. By its plain terms, 17 U.S.C. § 512(j) places constraints on injunctions against infringing service providers who are "not subject to monetary remedies ***under this section***" (emphasis added).

In other words, the DMCA is a limitation-of-liability provision that restricts the remedies that can be sought against platforms "after it is determined whether they are infringers in the first place under the preexisting Copyright Act." *Tur v. YouTube, Inc.*, 2007 U.S. Dist. LEXIS 50254, at *6-7 (C.D. Cal. June 20, 2007) (citation omitted); *see also Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1099 (W.D. Wash. 2004) (Section 512(j) injunctions are available "if a plaintiff can show that a safe harbor-eligible service provider has violated her copyright"), *overruled on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010), *abrogated by Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881 (2019). Thus if a plaintiff "seeks injunctive relief under [Section 512(j)], the Court must still consider the question of ultimate liability for direct and vicarious copyright infringement." *Totally Her Media, LLC v. BWP Media United States, Inc.*, 2015 U.S. Dist. LEXIS 193685, at *33-34 (C.D. Cal. Mar. 24, 2015). The statute does not authorize relief against innocent platforms who are not "infringers in the first place" *(Tur*, 2007 U.S. Dist. LEXIS 50254, at *6-7), and therefore cannot be enjoined under existing principles of law.

This is confirmed by the DMCA's legislative history, which makes clear that Section 512(j) "defines the terms and conditions under which an injunction may be issued against a service provider that qualifies for the limitations of liability [in the safe harbor provisions] *but is otherwise subject to an injunction under existing principles of law*." S. Rep. No. 105-190, at 52-53 (emphasis added); *see also* H.R. Rep. No. 105-551, at 62 (same); *accord* 144 Cong. Rec. E160 (daily ed. Feb. 12, 1998) (remarks of Rep. Coble) ("Copyright owners may still seek an injunction against such activities under theories of secondary liability, *if they can establish the necessary elements of a claim*.") (emphasis added). This is also consistent with Federal Rule 65(d)(2), which limits injunctive relief only to parties, their agents, and "other persons who are in active concert or participation with" them.

In *Totally Her Media*, for example, the court denied a copyright owner's request for a 512(j) injunction against an online service provider because the provider was not liable for a third-party's infringement. 2015 U.S. Dist. LEXIS 193685, at *37-38. And in *Business Casual*, the plaintiff requested a similar injunction requiring YouTube to ban a user pursuant to the

DMCA's "repeat infringer" provision, even though YouTube had promptly removed all of the user's infringing content and thus did not infringe.  The court dismissed, in part because "[t]he DMCA safe harbors provide potential defenses against copyright infringement claims where, but for the safe harbors, the plaintiff has a meritorious cause of action against the defendant for copyright infringement."  2022 U.S. Dist. LEXIS 50166, at *13; *accord, e.g.*, *Arista Records LLC v. Usenet.com, Inc.*, 2008 U.S. Dist. LEXIS 95514, at *12 (S.D.N.Y. Nov. 24, 2008) ("The DMCA does not provide an affirmative cause of action," but rather "'limitations of liability … if the provider is found to be [already] liable *under existing principles of law*.'") (emphasis in original; quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004)); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 n.4 (9th Cir. 2007) ("[T]he DMCA does not change copyright law; rather, Congress provided that [the DMCA's] limitations of liability apply if the provider is found to be liable under existing principles of law.") (citing *Ellison*; cleaned up); *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271-72 (S.D. Cal. 2007) ("[T]he safe harbor presupposes that a specific allegation of infringement has already been levied."); *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1142 (N.D. Cal. 2008) (the safe harbors limit liability of service providers to injunctive relief, but "do not affect the question of ultimate liability under the various doctrines of direct, vicarious, and contributory liability"); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) ("[T]he DMCA is irrelevant to determining what constitutes a prima facie case of copyright infringement."); *see also* H.R. Conf. Rep. No. 105-796, at 73 (1998) ("[T]he limitations of liability [in 17 U.S.C. § 512] apply if the provider is found to be liable under existing principles of law.").

Accordingly, Section 512(j) has no application here because the Corporate Defendants did not infringe, and thus have no need to invoke the DMCA safe harbor.  Mr. Stebbins cannot seek an injunction in the absence of a substantive claim of infringement against them.

## C.    The Requested Injunctive Relief is Improper.

Mr. Stebbins's requested relief also fails on the merits.  He appears to invoke Section 512(j)(1)(A)(ii), which authorizes a court to enter "[a]n order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or

11

network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order." For three independent reasons, the Court should dismiss Mr. Stebbins's request.

*First*, the relief Mr. Stebbins seeks does not conform with Section 512(j)'s plain language. He asks the Court to order the Corporate Defendants to "permanently terminate the individual Defendants' accounts … and not permit … the three individual defendants to create any new accounts for any reason." Dkt. 55 (SAC) ¶ 126. Section 512(j)(1)(A)(ii) does not permit this type of relief. While it allows the Court to require the website to terminate specific accounts "that are specified in the order," it does not allow for broad injunctive relief requiring the website to forever bar an individual from opening other, unspecified accounts with the site in the future. Thus, the requested injunctive relief is improper.[4]

*Second*, Section 512(j)(2) identifies four factors the Court must consider before granting injunctive relief against the Corporate Defendants. Under these factors, Mr. Stebbins's request fails on the face of the complaint. Perhaps the most obvious example, the fourth factor, asks the court to consider "[w]hether other less burdensome and comparably effective means of preventing or restraining access to the infringing material are available." 17 U.S.C. § 512(j)(2)(D). As the complaint makes clear, there is a functioning system in place for dealing with the allegedly infringing content: Discord, Twitch, and YouTube removed all instances of the alleged infringement at issue almost immediately after they were notified of that content. Dkt. 55 (SAC) ¶ 60 (Twitch removed after two hours); *id.* ¶¶ 26, 29, 46, 61 (YouTube removed all infringements, often within hours); *id.* ¶ 44 (Discord removed all infringements). Given the existence of this functioning system, injunctive relief is not necessary or appropriate: It is "undisputed [Twitch, YouTube, and Discord] [are] already removing allegedly infringing works when given DMCA-compliant notice so [] there is no need for an injunction requiring [them] to

---

[4] Moreover, it allows for this relief only *after* a showing that the user is engaging in "infringing activity" on the website. Mr. Stebbins does not allege that the Individual Defendants "engaged in infringing activity" on Amazon's or Alphabet's websites. Nor does Mr. Stebbins identify any account belonging to the Individual Defendants on Amazon or Alphabet.

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

1   do the same." *Wolk v. Kodak Imaging Network, Inc.*, 2011 U.S. Dist. LEXIS 27541, at \*19-21

2   (S.D.N.Y. Mar. 17, 2011) (denying request for injunction under 17 U.S.C. § 512(j)(1)(A)).

3        ***Third***, setting aside the above factors, any request for relief is moot because, again, the

4   service providers removed the allegedly infringing content promptly after receiving Mr.

5   Stebbins's DMCA notices.  *E.g.*, Dkt. 55 (SAC) ¶¶ 26, 29, 44, 46, 60, 61, 124.  In these

6   situations, a "request for injunctive relief" under Section 512(j) "is moot."  *Ventura Content, Ltd.*

7   *v. Motherless, Inc.*, 2013 U.S. Dist. LEXIS 189948, at \*49-50 (C.D. Cal. July 3, 2013), *aff'd*, 885

8   F.3d 597 (9th Cir. 2018); *see also Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 2021 U.S. Dist.

9   LEXIS 35620, at \*13 (C.D. Cal. Feb. 24, 2021) ("Because Pixels qualifies for safe harbor under

10  § 512(c), the only relief available to MVPT is the limited injunctive relief pursuant to § 512(j).

11  Once Pixels received notice of the infringing images through MPTV's complaint, however,

12  Pixels treated the pleadings as takedown notices and immediately removed the images identified.

13  Accordingly, any injunctive relief to which MPTV would be entitled is now moot.") (internal

14  citations omitted); *Io Grp.*, 586 F. Supp. 2d at 1154-55 (reaching same conclusion where

15  defendant who qualified for safe harbor had already removed all of the infringing content).

16  Fundamentally, because the Corporate Defendants (or their subsidiaries) "removed the infringing

17  content," there "there is no injunctive relief to which Mr. [Stebbins] is entitled."  *Kinsley v.*

18  *Udemy, Inc.*, 2021 U.S. Dist. LEXIS 62885, at \*16-17 (N.D. Cal. Mar. 31, 2021).

19       In sum, the Court should dismiss Mr. Stebbins's injunctive relief claim as baseless.  *See*,

20  *e.g.*, *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701, at \*10-11 (where plaintiff is *in*

21  *forma pauperis*, judges possess "the unusual power to pierce the veil of the complaint's factual

22  allegations" and to dismiss a complaint that lacks an arguable basis either in law or in fact).

23  **D.      Mr. Stebbins Has Failed to State a Claim Against Amazon and Alphabet.**

24       In addition to failing to state a substantive claim, nowhere in any of Mr. Stebbins's

25  complaints does he allege that Amazon or Alphabet have any connection to the Individual

26  Defendants or the allegedly infringing content.  Instead, he named Amazon and Alphabet as

27  Defendants solely based on their alleged status as parent companies of Twitch and YouTube

28  respectively.  Dkt. 55 (SAC) ¶¶ 3, 6.  This is not enough: "It is a general principle of corporate

13

law deeply ingrained in our economic and legal systems that a parent corporation … is not liable

for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also*

*Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009) ("It is

the general rule that a parent corporation and its subsidiary will be treated as separate legal

entities."); *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) ("[I]t is

well established that a parent-subsidiary relationship by itself is insufficient to impute liability.").

Mr. Stebbins acknowledges as much, explaining to the Court: "[A]ccording to my

research n (*sic*) the matter, there are some limited instances where a parent company can indeed

be held liable for the actions of its subsidiary … I want to keep my options open … just in the off

chance I may discover evidence during this case that makes them qualify for an exception."  Dkt.

71 ¶ 6.  This is not a valid basis to sue Amazon and Alphabet.  Courts routinely grant motions to

dismiss such claims against parent corporations with no involvement in the allegedly wrongful

conduct.  *See, e.g.*, *Canary v. Youngevity Int'l, Inc.*, 2019 U.S. Dist. LEXIS 46429, at *11 (N.D.

Cal. Mar. 20, 2019) (dismissing parent corporation from lawsuit when allegedly wrongful

conduct was done by subsidiary); *Bastidas v. Good Samaritan Hosp.,* 2014 U.S. Dist. LEXIS

92772, at *14-15 (N.D. Cal. July 7, 2014) (same); *Williby v. Hearst Corp.*, 2017 U.S. Dist.

LEXIS 106212, at *4-6 (N.D. Cal. July 10, 2017) (same); *Escobar, Inc. v. Klarna, Inc.*, 2021

U.S. Dist. LEXIS 1443, at *9-10 (C.D. Cal. Jan. 4, 2021) (same).  Given Mr. Stebbins's

admissions that (1) Amazon and Alphabet did not engage in any wrongdoing, and (2) their only

relationship to this lawsuit is their status as parent corporations, the Court should dismiss

Amazon and Alphabet from this case.[5]

**E.** **The Court Should Deny Any Request for Leave to Amend and Warn Mr. Stebbins**
**Against Further Frivolous Filings.**

Although courts have wide discretion in determining whether to grant leave to amend, a

court should deny leave when a proposed amendment would be futile.  *See, e.g.*, *Leadsinger, Inc.*

*v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (denying leave to amend based on

---

[5] Even if the Court permits the pending amendments seeking to add Twitch and YouTube as
parties, Amazon and Alphabet still should be dismissed for the same reasons.

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW

futility); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) ("Futility alone can justify the denial of a motion to amend.") (internal quotations and citation omitted). The sole work at issue is not copyrightable. Moreover, Mr. Stebbins's injunctive relief claim cannot be cured because it is not, as a matter of law, an independent or cognizable claim. Nor is any injunctive relief even necessary given his admissions that all instances of the Accidental Livestream have been removed. Mr. Stebbins cannot walk back from those admissions in an amended pleading. Additionally, Mr. Stebbins acknowledged that he does not have a claim against Amazon or Alphabet but instead is continuing to name them in the lawsuit to "keep [his] options open." Dkt. 71 ¶ 6. Therefore, his "claims" against Amazon and Alphabet cannot be cured through amendment, either. *See Williby*, 2017 U.S. Dist. LEXIS 106212, at *4-6 (dismissing claims with prejudice against a parent company based on actions of a subsidiary).

Further, this Court should warn Mr. Stebbins that it will issue sanctions if he continues to file frivolous motions, amendments, and lawsuits. In this case alone he has made excessive and repetitive filings, even before all the Individual Defendants had been served. This is just another episode of his abuse of the court system. Courts are free to restrict vexatious litigants from meritless filings and to impose sanctions on that basis. *See De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). And courts regularly impose restrictions based on prolific motions practice over repetitive or baseless arguments. *See, e.g.*, *Ou-Young v. Roberts*, 2013 U.S. Dist. LEXIS 179213, at *27 (N.D. Cal. Dec. 20, 2013) ("[W]hile the number of filings here (five) does not establish Plaintiff as vexatious per se, the patently meritless nature of his filings and motions do."); *Greenspan v. IAC/InterActiveCorp*, 2016 U.S. Dist. LEXIS 137204, at *10 (N.D. Cal. Sept. 30, 2016) (ordering vexatious litigant "to obtain leave of court before filing any further motions in this case"). This Court should issue an order warning Mr. Stebbins that his frivolous filings will not be tolerated. *Overton v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 161374, at *12 (N.D. Cal. Sept. 20, 2019) (warning pro se plaintiffs "against filing additional motions").

## V.   CONCLUSION

For the foregoing reasons, the Corporate Defendants respectfully request that the Court dismiss Mr. Stebbins's claims against them with prejudice.

15

Dated:  April 11, 2022

For Discord, Inc., Defendant

_s/ James Orenstein_
James Orenstein (*pro hac vice*)
ZWILLGEN PLLC
183 Madison Ave., Suite 1504
New York, NY 10016
Telephone: (646) 362-5590
Email: Jamie.Orenstein@zwillgen.com


For Alphabet Inc., Defendant

_s/ Jason Mollick_
Jason Mollick (*pro hac vice*)
WILSON SONSINI GOODRICH
& ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
E-Mail: jmollick@wsgr.com

Respectfully submitted,

For Amazon.com, Inc., Defendant

_s/ Sanjay Nangia_
Sanjay Nangia
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6577
Email: sanjaynangia@dwt.com

16

1

**SIGNATURE ATTESTATION**

2          I hereby attest that all signatories listed above, on whose behalf this motion is submitted,

3   concur in the filing's content and have authorized the filing.

4       DATED: April 11, 2022                    DAVIS WRIGHT TREMAINE LLP

5                                                By /s/ *Sanjay M. Nangia*

6                                                   Sanjay M. Nangia
                                                   Attorneys for Defendant
7                                                   AMAZON.COM, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORPORATE DEFENDANTS' MOTION TO DISMISS
Case No. 4:21-cv-04184-JSW