RYAN S. BENYAMIN, State Bar No. 322594
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
rbenyamin@wsgr.com

JASON MOLLICK (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com

*Counsel for Intervenors*
*Alphabet Inc. and YouTube, LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DAVID A. STEBBINS, | CASE NO.: 4:21-cv-04184-JSW |
| Plaintiff, | **MOTION TO INTERVENE** |
| v. | Judge: Hon. Jeffrey S. White |
| KARL POLANO et al., | Date: June 3, 2022 |
| | Time: 9:00 AM |
| Defendants. | By videoconference |
| | Action Filed: June 2, 2021 |

**TABLE OF CONTENTS**

NOTICE OF MOTION ................................................................................................................ 1

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 3

  A. Plaintiff is a Vexatious Litigant and his Suits Have Been Deemed Frivolous ........ 3

  B. Plaintiff's Abusive Litigation Tactics Have Continued in this Case ...................... 4

ARGUMENT ............................................................................................................................... 8

  I. Alphabet and YouTube Should be Permitted to Intervene Because They Are Defendants in a Related Action Involving Common Dispositive Issues ................ 8

  II. The Court Should Deny Plaintiff's Motion for Default Judgment Because His Allegedly Infringed Livestream Is Not Copyrightable ................................... 10

CONCLUSION .......................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Aldabe v. Aldabe*,
    616 F.2d 1089 (9th Cir. 1980)............................................................................................ 10

*California v. Health & Hum. Servs.*,
    330 F.R.D. 248 (N.D. Cal. 2019) ...................................................................................... 8, 9

*Degamo v. Bank of Am., N.A.*,
    849 F. App'x 620 (9th Cir. 2021) ........................................................................................ 8

*Dixon v. Cost Plus*,
    2012 U.S. Dist. LEXIS 90854 (N.D. Cal. June 27, 2012) ................................................... 8

*Draper v. Coombs*,
    792 F.2d 915 (9th Cir. 1986) ............................................................................................ 10

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) .......................................................................................... 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .......................................................................................................... 12

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) .............................................................................................. 8

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
    345 F.3d 1140 (9th Cir. 2003) .................................................................................... 11, 13

*Naruto v. Slater*,
    2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016),
    aff'd, 888 F.3d 418 (9th Cir. 2018) ................................................................................... 12

*Neitzke v. Williams*,
    490 U.S. 319 (1989) .......................................................................................................... 11

*Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .......................................................................................... 11

*Stebbins v. Bradford*,
    2013 U.S. Dist. LEXIS 94179 (W.D. Ark. July 5, 2013),
    aff'd, 552 F. App'x 606 (8th Cir. 2014) .............................................................................. 3

*Stebbins v. Google, Inc.*,
    2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) ........................................... 3, 11

*Stebbins v. Hixson*,
    2018 U.S. Dist. LEXIS 79361 (W.D. Ark. May 8, 2018) .................................................. 4

*Stebbins v. Microsoft, Inc.*,
   2012 WL 12896360 (W.D. Wash. Jan. 13, 2012),
   *aff'd*, 520 F. App'x 589 (9th Cir. 2013) .................................................................. 3, 10

*Stebbins v. Stebbins*,
   2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013) ............................................. 1, 4

*Stebbins v. Stebbins*,
   575 F. App'x 705 (8th Cir. 2014) ..................................................................................... 3

*Stebbins v. Steen*,
   2013 U.S. Dist. LEXIS 117914 (E.D. Ark. Aug. 20, 2013) ............................................. 3

*Stebbins v. Texas*,
   2011 U.S. Dist. LEXIS 146248 (N.D. Tex. Oct. 24, 2011) ............................................. 3

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) .......................................................................................... 11

*United States v. City of L.A.*,
   288 F.3d 391 (9th Cir. 2002) ............................................................................................ 8

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989),
   *aff'd*, 495 U.S. 82 (1990) ................................................................................................. 9

*Westchester Fire Ins. Co. v. Mendez*,
   585 F.3d 1183 (9th Cir. 2009) .......................................................................................... 8

### CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, § 8, Cl. 8 ........................................................................................................ 12

### STATUTES AND RULES

17 U.S.C. § 101 ............................................................................................................................ 12

17 U.S.C. § 102(a) ....................................................................................................................... 12

17 U.S.C. § 107 .............................................................................................................................. 5

17 U.S.C. § 410(c) ........................................................................................................................ 11

17 U.S.C. § 512(j) .......................................................................................................................... 6

28 U.S.C. § 1915(e)(2) ................................................................................................................. 11

Fed. R. Civ. P. 24 ............................................................................................................... 1, 2, 8, 9

Fed. R. Civ. P. 41(a)(1) .................................................................................................................. 2

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on June 3, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 5 – 2nd Floor, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, non-parties Alphabet Inc. ("Alphabet") and YouTube, LLC ("YouTube") will and hereby do move the Court to permit them to intervene in this action pursuant to Federal Rule of Civil Procedure 24, for purposes of opposing Plaintiff David Stebbins's Motion for Default Judgment against defendants Karl Polano, Frederick Allison, and Raul Mateas (collectively, the "Individual Defendants"). This Motion is based on this Notice of Motion, the below Memorandum of Points and Authorities, the concurrently filed Request For Judicial Notice and accompanying Exhibit ("RJN"), all other matters of which this Court may take judicial notice, the pleadings, files, and records in this action, and such other argument as may be heard by the Court.

# INTRODUCTION

Non-parties Alphabet and YouTube ask that the Court exercise its broad discretion under Federal Rule 24(b) to permit them to intervene on an issue that is common to this case and a related action where they are named defendants. Permitting intervention would serve judicial economy and prevent Plaintiff's litigation gamesmanship.

Plaintiff David Stebbins, a recognized "vexatious" *pro se* litigant (*Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528 (W.D. Ark. July 3, 2013)), has asserted copyright infringement claims alleging that a handful of Individual Defendants (who have all defaulted) posted infringing content on YouTube, Twitch, and Discord. Rather than simply sue the persons who posted that content, Plaintiff also sued Alphabet (YouTube's parent company), Amazon (Twitch's parent company), and Discord to obtain an injunction requiring those "Corporate Defendants" to permanently ban the Individual Defendants from their services. Plaintiff also filed a motion for leave to add YouTube as a defendant. A few months later, Plaintiff filed a related action in this Court alleging additional infringements of the same content—again naming

the Corporate Defendants and/or their subsidiaries as defendants, including Alphabet and YouTube. *Stebbins v. Rebolo*, 4:22-cv-00546-JSW (the "Related Case").

There are major defects in Plaintiff's copyright claims. Among others, the sole work at issue in this case – a video of Plaintiff that was recorded accidentally through a fixed camera – is not copyrightable to begin with. Copyright protection subsists in creative works of authorship that are fixed in a tangible medium of expression by a human author. But here, Plaintiff admits that the video (the "Accidental Livestream") was created by accident, without his knowledge, and without the slightest degree of creativity on his part. The fixation of the video itself was done by computer software – not a human author – without Plaintiff even realizing the camera had turned on. Because such a work cannot be copyrightable, all of Plaintiff's infringement claims in this case should be dismissed without needing to go further. His infringement claims in the related case involving the same video should be dismissed as well.

Plaintiff claims he is confident in the validity of his copyright, but his behavior shows otherwise. As soon as Plaintiff learned that the Corporate Defendants would be contesting his copyright through a motion to dismiss, he rushed to dismiss them voluntarily, moved to strike their motion, and implored the Court to "cast the contents therein from its mind." In so doing, Plaintiff admitted that the sole reason he "played this trump card" was to silence anyone from challenging his copyright. The Court granted Plaintiff's motion to strike, finding that it lacked discretion to proceed otherwise under Federal Rule 41(a)(1). But in so doing, the Court rightly called out "Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship."

Fortunately, the Court *does* have discretion to deal with Plaintiff's abusive tactics in another way. While the Corporate Defendants have been dismissed from *this* case, Alphabet and YouTube remain defendants in the *related* case where the same alleged copyright is at issue. The Court, therefore, has broad discretion to permit them to intervene under Federal Rule 24(b), which authorizes anyone to be heard in any action who "has a claim or defense that shares with the main action a common question of law or fact." Here, that common question is the validity of Plaintiff's copyright in the Accidental Livestream, which is common to both actions. Accordingly, Alphabet and YouTube respectfully request that the Court consider the substantive

evidence and arguments set forth herein, deny Plaintiff's Motion for Default Judgment against the Individual Defendants, and dismiss this case.

## BACKGROUND

### A. Plaintiff is a Vexatious Litigant and his Suits Have Been Deemed Frivolous

Plaintiff, a self-proclaimed "Youtuber" and "Twitch Streamer," goes by the online alias "Acerthorn." Dkt. 55 (SAC) ¶ 1. He is widely ridiculed by users on those and other platforms, in large part because of his years'-long abuse of the court system. Plaintiff has bogged down courts across the nation with frivolous lawsuits. In this District, for example, he sued Alphabet's subsidiary, Google, to confirm a purported "arbitration award" for half a trillion dollars, even though no arbitration actually occurred. *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) (dismissing *sua sponte* as "frivolous" and "clearly baseless"). There are many other suits just like that one. *See Stebbins v. Texas*, 2011 U.S. Dist. LEXIS 146248, at *8-9 (N.D. Tex. Oct. 24, 2011) (warning Plaintiff could face monetary sanctions and/or that the court would ban him from filing further actions without prior approval); *Stebbins v. Steen*, 2013 U.S. Dist. LEXIS 117914, at *5-6 (E.D. Ark. Aug. 20, 2013) (concluding his complaint was frivolous and failed to state a claim); *Stebbins v. Stebbins*, 575 F. App'x 705, 705 (8th Cir. 2014) (affirming dismissal and noting it is "undisputed that Stebbins has proceeded *in forma pauperis* on at least sixteen complaints [as of 2014] that proved meritless, and has filed numerous frivolous motions"); *Stebbins v. Bradford*, 2013 U.S. Dist. LEXIS 94179, at *7 (W.D. Ark. July 5, 2013) (dismissing his complaint as frivolous), *aff'd*, 552 F. App'x 606 (8th Cir. 2014).

Plaintiff has been reprimanded multiple times. One federal court noted that "time spent dealing with Mr. Stebbins's filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly." *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), *aff'd*, 520 F. App'x 589 (9th Cir. 2013). Similarly, the Western District of Arkansas (Plaintiff's home district) declared him a "vexatious" litigant who has "abused the system" with "a history of filing ultimately meritless cases upon which the Court has been forced to expend countless hours of time and judicial resources. Not only has Plaintiff filed numerous cases, but he has also filed over one hundred motions within

those cases, some of which have been repetitive, and few of which have had any merit." *Stebbins v. Stebbins*, 2013 U.S. Dist. LEXIS 93528, at *3-4. When that court limited him to filing one case per every three months (*id.* at *8-9), he evaded the order by suing in the *Eastern* District, and then attempting to transfer to the Western District. *Stebbins v. Hixson*, 2018 U.S. Dist. LEXIS 79361, at *3-4, *7-8 (W.D. Ark. May 8, 2018).

### B. Plaintiff's Abusive Litigation Tactics Have Continued in this Case

Plaintiff's conduct has continued here. In this case alone there are already over 130 docket entries, including dozens of "motions" filed by him. The Court has denied the vast majority of them. Plaintiff has also engaged in abusive litigation tactics that he admits were designed to prevent the Court from considering a major weakness in his copyright infringement claims: the fact that the sole work in suit is not copyrightable to begin with.

According to Plaintiff, on April 10, 2021, his "livestream software turned on of its own accord without me realizing it. It stayed on for nearly two hours before I realized it was on and closed it down. During this accidental livestream, my viewers were able to see me engaging in mundane, daily activities." Dkt. 55 (SAC) ¶ 22. Plaintiffs adds that "the only interesting and memorable part of this otherwise boring and contentless livestream" were "strange noises" that he "did not cause." *Id.* ¶ 23. He allegedly registered this "Accidental Livestream" with the United States Copyright Office; however, he did ***not*** disclose any of the aforementioned facts concerning the nature and circumstances of the video in his application. RJN, Ex. A.[1]

Plaintiff asserts copyright infringement claims in this case against three Individual Defendants who allegedly posted copies of the Accidental Livestream on YouTube, Twitch, and Discord. All three Individual Defendants have defaulted. Plaintiff also initially sued Alphabet (the parent company of YouTube), Amazon (the parent company of Twitch), and Discord to assert a "claim" for an injunction that would require those "Corporate Defendants" (and/or their

---

[1] Plaintiff claims that he offers the video for "at least" $20 per month ($240 per year), which is more expensive than a Netflix subscription. Dkt. 55 (SAC) ¶¶ 24-25. No one has ever paid for it. *Id.* The complaint, and his litigation history, strongly suggests that Plaintiff did this simply to manufacture a damages claim over a video that has no actual market value. *Id.* ¶ 131.

subsidiaries, including YouTube) to permanently terminate the Individual Defendants' accounts and prevent them from creating new accounts in the future—even though YouTube, Twitch, and Discord had already removed all instances of the video from their services. *See* Dkt. 55 (SAC) ¶ 60 (Twitch removed after two hours); *id.* ¶¶ 26, 29, 46, 61 (YouTube removed all alleged infringements, often within hours); *id.* ¶ 44 (Discord removed all alleged infringements).

Plaintiff also filed a related action in this Court, *Stebbins v. Rebolo*, No. 4:22-cv-00546-JSW, and recently amended his complaint to include Alphabet, YouTube, and others. *See* Related Case Dkt. 15. One of the alleged copyrighted videos at issue in the related case is the same Accidental Livestream at issue here. *Id.* ¶¶ 20-25. For this reason, the Court stayed the related case at Plaintiff's request pending final resolution of this case, because "a ruling in the [first] case will be relevant and potentially fully dispositive in the [second] case." Related Case Dkt. 14. In that case Plaintiff alleges additional infringements by at least nine individual defendants, and again seeks an injunction requiring Alphabet and YouTube to permanently ban the users' accounts. Related Case Dkt. 15 ¶¶ 182-183. Plaintiff also asserts secondary infringement claims against Alphabet and YouTube because YouTube declined to remove certain videos that used portions of the Accidental Livestream for purposes of criticizing him— videos that are clearly fair use under 17 U.S.C. § 107.[2] *Id.* ¶¶ 166-168.

On April 7, 2022, Plaintiff filed a Motion for Default Judgment against the Individual Defendants in this case. Dkt. 127. In that motion he expresses concern that the Corporate Defendants might challenge the copyrightability of his Accidental Livestream. *Id.* at 5-6 ¶ f. Realizing that the Corporate Defendants would indeed bring this issue to the Court's attention,

---

[2] One of the allegedly infringing videos in the related case, entitled "Acerthorn: Serial DMCA Abuse Controversy," was posted by a third-party "SidAlpha" and can be found at https://www.youtube.com/watch?v=WB-Xd1qDKIY. This video features prominently in Plaintiff's Motion for Default Judgment against the Individual Defendants as a measure of his damages (which makes no sense, since the video was not created or posted by the Individual Defendants in default here). *See* Dkt. 127-20 ¶¶ 38-49; Dkt. 247-18. The video provides a detailed history of Plaintiff's abuse of the Court system and the DMCA to strike videos that fairly criticize him. Plaintiff sued YouTube in the *Rebolo* action for declining to remove it, even though the video (and others alleged in that complaint) is plainly fair use criticism.

Plaintiff emailed the undersigned counsel for Alphabet shortly before the Corporate Defendants filed their Motion to Dismiss. In that email Plaintiff taunted that he could hide the issue from the Court's attention and secure an unopposed default judgment against the Individual Defendants, simply by dismissing the Corporate Defendants voluntarily on the same day they file their motion. And in the process, he can require the Corporate Defendants to expend even more legal fees by re-litigating the same issue in the related case:

> I could simply ... dismiss your client from the Polano case! If I did that, the dismissal would be without prejudice, allowing me to re-file the request for prospective injunctive relief as part of the Rebolo case. So I wouldn't even be missing out on that injunction. The[n], you won't have a choice but to wait until the Rebolo case to challenge the validity of the copyright, at which point you will get nowhere with that challenge because my copyright is indeed valid. If I dismissed Alphabet as a party, you would likely not get your attorneys [sic] fees, for the reasons I set forth last weekend.[3]

Minutes later, at the same time as the Corporate Defendants were in the process of filing their Motion to Dismiss (Dkt. 129), Plaintiff filed a Notice of Voluntarily Dismissal to remove the Corporate Defendants from the case (Dkt. 128). In the Notice Plaintiff admits that his sole reason for abruptly dismissing the Corporate Defendants on the day their responses were due was to prevent the Corporate Defendants from exposing the invalidity of his alleged copyright. Plaintiff argues that any consideration of this issue "would only result in tedious delays in a case where I was about to get a default judgment otherwise." Dkt. 128 ¶ 1. But Plaintiff promises to re-litigate the issue against the same Corporate Defendants "in the near future," after he gets an unopposed default judgment where his alleged copyright is not challenged:

> This is not a surrender. This is a tactical retreat. I wish to have this action dismissed *without prejudice*, so I can re-file the case again, seeking to obtain the prospective injunctive relief under 17 USC § 512(j) in the near future. This is just being done so that Alphabet (and possibly the other nominal defendants) cannot delay this case that is already in the eleventh hour, just out of sheer pettiness.

---

[3] We do not attach the remainder of this email correspondence because prior communications in the thread contain confidential settlement communications.

*Id.* ¶ 3 (emphasis in original).

The Corporate Defendants filed their Motion to Dismiss at virtually the same time as Plaintiff filed his Notice of Voluntary Dismissal. Dkt. 129. As Plaintiff feared, the motion explained that the Accidental Livestream is not copyrightable because it lacks creativity and human authorship, based on facts admitted in the complaint. Dkt. 129 at 5-7. The Corporate Defendants also proffered a copy of Plaintiff's application to register the video with the United States Copyright Office, which reveals that he did not disclose the true nature and circumstances of the video to the Copyright Office. Dkt. 129-1. Plaintiff immediately moved to strike the Motion to Dismiss (Dkt. 130), insisting that he "should not need to" "defend the validity of the copyright." Dkt. 132 ¶ 13. Plaintiff brags that because he "thought of this tactic" and "played this trump card," he has "stripp[ed] [the Corporate Defendants] of their opportunity to litigate the case with me." *Id.* ¶ 14.

The Court granted Plaintiff's motion to strike, finding that it lacked authority to disregard or to place a condition on the voluntary dismissal. Dkt. 134. However, the Court noted that it "does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship. Should Plaintiff continue to dismiss and refile cases in bad faith to obtain a different result, he risks being declared a vexatious litigant in this district." *Id.* Plaintiff responded the next day with a "Motion to Clarify" in which he asks the Court to "do whatever it takes to cast the contents [of the copyrightability arguments] from its mind," and to grant default judgment "assuming the copyright's validity to be unchallenged." Dkt. 135.

Meanwhile, the Corporate Defendants and/or their subsidiaries (including Alphabet and YouTube) remain defendants in the related action, where copyrightability of the same Accidental Livestream remains squarely at issue. Related Case. Dkt. 15.

# ARGUMENT

## I. ALPHABET AND YOUTUBE SHOULD BE PERMITTED TO INTERVENE BECAUSE THEY ARE DEFENDANTS IN A RELATED ACTION INVOLVING COMMON DISPOSITIVE ISSUES

Although Alphabet and YouTube are no longer defendants or proposed defendants in this case, Federal Rule 24(b)(1)(B) authorizes the Court on timely motion to "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." "Thus, a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted); *accord, e.g.*, *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 252 (N.D. Cal. 2019). However, the first prong – an "independent ground for subject matter jurisdiction" – "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011); *accord, e.g.*, *Health & Hum. Servs.*, 330 F.R.D. at 254. In such cases "the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *Freedom from Religion Foundation*, 644 F.3d at 844.[4]

Once these conditions are met, permissive intervention is "committed to the broad discretion of the district court." *Degamo v. Bank of Am., N.A.*, 849 F. App'x 620, 623 (9th Cir.

---

[4] Although Rule 24(c) states that a motion to intervene should "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," that "is not required where … the movant describes the basis for intervention with sufficient specificity to allow the district court to rule." *Dixon v. Cost Plus*, 2012 U.S. Dist. LEXIS 90854, at *16-17 (N.D. Cal. June 27, 2012) (citation omitted); *see also, e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion.") (citation omitted). Alphabet and YouTube do not attach a pleading here because they are not asserting a legal claim against the Plaintiff, their arguments are reflective of those that would be made on a motion to dismiss, and they rely on facts that are admitted in Plaintiff's own complaint. The grounds for intervention and for dismissing this case are also fully set forth in this motion.

2021) (citation omitted). Courts consider whether the intervenor's interests are adequately represented by other parties in the case; whether intervention would cause undue delay or prejudice; and judicial economy. *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990); Fed. R. Civ. P. 24(b)(3); *see also, e.g.*, *Health & Hum. Servs.*, 330 F.R.D. at 255 (finding intervention would "not unduly delay or prejudice the adjudication of the original parties' rights. If anything, allowing intervention will promote judicial economy and spare the parties from needing to litigate a similar case in another district.").

All of the conditions for permissive intervention are met here. <u>First</u>, there is no need for independent grounds for jurisdiction since this is a federal-question case, and Alphabet and YouTube are not raising new claims. <u>Second</u>, this motion is timely because Alphabet and YouTube brought it only one week after Plaintiff voluntarily dismissed the Corporate Defendants, and there are no pending deadlines. <u>Third</u>, copyrightability is a common issue to both this and the related action where Alphabet and YouTube are still defendants. As noted above, the Court stayed the related action at Plaintiff's request for this very reason: because "a ruling in [this first] case will be relevant and potentially fully dispositive in the [second] case." Related Case Dkt. 14. A grant of default judgment here necessarily requires a finding that Plaintiff has a valid copyright in the Accidental Livestream. That could lead to inconsistent results concerning the same issue in the related case, where the validity of the same copyrighted video will be at issue. Indeed, the Court previously recognized this risk as sufficient for denying Plaintiff's first motion for default judgment against a subset of defendants. *See* Dkt. 99 at 3 (finding that "denial of a default judgment motion is necessary to avoid an inconsistent result").

The discretionary factors favor permissive intervention as well. Alphabet and YouTube's interests are not being represented in any fashion, given that all remaining defendants are in default. Intervention would not cause undue delay, since there are no other deadlines pending in this case. Intervention will not be unfairly prejudicial, because Alphabet and YouTube only ask that Plaintiff be held to his burden of establishing a valid copyright. Finally, intervention would promote judicial economy, because the Court will otherwise need to consider the same issue twice. If the Court does not hear the arguments herein concerning copyrightability, there is a

substantial risk that the Court may issue a default judgment in this case, only to realize later that the ruling was incorrect.

The Court should also exercise its broad discretion to combat "Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship." Dkt. 134 at 1. Plaintiff is a vexatious litigant with a long history of abusing the court system. As one court described it, "time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly." *Stebbins v. Microsoft, Inc.*, 2012 WL 12896360, at *1. What happened in recent days is the same old story, and the Court need not tolerate it. Even if the Court had no discretion to consider the Corporate Defendants' Motion to Dismiss (*see* Dkt. 134), it does have broad discretion to permit Alphabet and YouTube to intervene as interested parties, given their continued status as defendants in the related case where the same copyrighted work is at issue.

In sum, because any ruling in this case will necessarily impact overlapping issues in the related case, the Court should consider the arguments set forth below concerning the invalidity of Plaintiff's copyright in the Accidental Livestream.

## II.  THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BECAUSE HIS ALLEGEDLY INFRINGED LIVESTREAM IS NOT COPYRIGHTABLE

Plaintiff's Motion for Default Judgment should be denied, and this case should be dismissed, because the Accidental Livestream is not copyrightable. The Court need go no further to dispose of this entire litigation and much of the related case.

Plaintiff thinks that because he "thought of this tactic" to dismiss the Corporate Defendants (Dkt. 132 ¶ 15), the Court has no choice but to issue judgment in his favor, "including assuming the copyright's validity to be unchallenged." Dkt. 135 ¶ 12. Not so. As the Court explained in denying Plaintiff's prior motion for default judgment, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." Dkt. 99 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)). "A district court has discretion in deciding whether to enter a default judgment." *Id.* (*citing Aldabe v. Aldabe*, 616 F.2d 1089, 1092

(9th Cir. 1980)).  In exercising this discretion a court considers several factors, including (as relevant here) "the merits of the plaintiff's substantive claim," "the sufficiency of the complaint," and "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).  While factual allegations in the complaint are assumed to be true, legal conclusions – such as whether Plaintiff has a valid copyright – are not. *Id.* (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)).

Moreover, the Court should be mindful that Plaintiff is proceeding *in forma pauperis* and therefore, if his complaint lacks an arguable basis either in law ***or in fact***, the Court has "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Stebbins v. Google, Inc.*, 2011 U.S. Dist. LEXIS 125701, at *10-11.  The Court may exercise this power "at any time." 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any time if the court determines that … the action or appeal … is frivolous or malicious [or] fails to state a claim on which relief may be granted.").  This *in forma pauperis* process "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit[.]" *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  That concern is particularly acute here given Plaintiff's abuse of the court system, including in this very case.

To state a claim for copyright infringement, Plaintiff must first show "that he owns a valid copyright in the work" at issue.  Dkt. 10 at 4 (citing *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)).  While Plaintiff did register the Accidental Livestream, and such registration constitutes "prima facie evidence of the validity of the copyright," "[t]he evidentiary weight to be accorded the certificate of a registration … shall be within the discretion of the court."  17 U.S.C. § 410(c).  In the Ninth Circuit, "[t]he presumption of the validity of a registered copy-right may be overcome by the offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (citation omitted).

Here, that proof is found in the complaint itself, in which Plaintiff admits that the Accidental Livestream lacks even the slightest modicum of creativity, and is not a product of human authorship.

"Copyright protection subsists … in original works of authorship fixed in any tangible medium of expression …." 17 U.S.C. § 102(a).  "The *sine qua non* of copyright is originality.  To qualify for copyright protection, a work must be original to the author.  Original, as the term is used in copyright, means … that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).  "To be sure, the requisite level of creativity is extremely low[,]" but the work must at least possess "some creative spark" to be copyrightable.  *Id.*  Moreover, the "fixing" of a creative work in a tangible medium of expression must be done "by or under the authority of the author."  17 U.S.C. § 101.  That author must be a human, not a machine.  Compendium of U.S. Copyright Office Practices § 313.2 ("works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author" are not copyrightable)[5]; *cf. Naruto v. Slater*, 2016 U.S. Dist. LEXIS 11041 (N.D. Cal. Jan. 28, 2016), *aff'd*, 888 F.3d 418 (9th Cir. 2018) (finding monkey cannot sue for infringement of a selfie it took with a camera).  These two requirements – creativity and human authorship – are consistent with the Constitution, which calls upon Congress to protect the rights of "Authors" to "promote the Progress of Science and useful Arts."  U.S. Const. Art. I, § 8, Cl. 8.

Here, Plaintiff states in the SAC that the Accidental Livestream was created when "my livestream software **turned on of its own accord without me realizing it.**"  Dkt. 55 (SAC) ¶ 22 (emphasis added).  The software remained on for nearly two hours until he "realized it was on," at which point he turned it off.  *Id.*  During this time Plaintiff could be seen doing "***mundane, daily activities***."  *Id.* (emphasis added).  "[T]he only interesting and memorable part of this otherwise boring and **contentless** livestream" were "strange noises" that Plaintiff says he "***did not cause.***"  *Id.* ¶ 23 (emphasis added).  Thus by his own admission, the video lacks even the

---

[5] Available at https://www.copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf.

| Motion to Intervene | -12- | Case No.: 4:21-cv-04184-JSW |

slightest creative spark necessary for it to be copyrightable. It shows nothing other than "mundane, daily activities"; it is "boring and contentless"; and the only notable content consists of sounds that he "did not cause." Plaintiff made no creative choices in generating this content, whether in the form of directing the scenery or even turning on the stationary camera. This is not a case where an author intends to create a work but catches something by happenstance—such as a photographer who snaps a photo at the same time as a strike of lightning, or a painter who slips while holding the brush. Rather, Plaintiff admits that the *very making* of the video was accidental and done entirely without his knowledge.

Not only that, the fixation of the work was performed by a machine, not a human author. Plaintiff admits that computer software – not him – "turned on [the livestream] *of its own accord* without me realizing it." Dkt. 55 (SAC) ¶ 22 (emphasis added). This fits neatly within the Copyright Office's guidance that "works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author" are not copyrightable. Compendium of U.S. Copyright Office Practices § 313.2. Indeed, Plaintiff concedes in his Motion for Default Judgment that the "accidental" nature of his video would "invalidate its copyright [] if the streaming software turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it to happen." Dkt. 127-20 ¶ 42. ***Yet that is precisely what he alleges to have happened in the complaint***, and those facts are presumed to be true for purposes of a Motion for Default Judgment.

Plaintiff did not disclose these facts in his application to register the Accidental Livestream with the Copyright Office—which he concedes in his Motion for Default Judgment. RJN, Ex. A; *see also* Dkt. 127-19 ¶ 3. In the application Plaintiff characterizes the video as a "Dramatic Work." He does not explain (among other things) that the "livestream software turned on of its own accord without [him] realizing it," and he does not disclose that "the only interesting and memorable part" of this otherwise "contentless" video was not caused by him. Dkt. 55 (SAC) ¶¶ 22-23. This is more than enough to overcome the "presumption of the validity" of Plaintiff's copyright and to "deny the plaintiff's prima facie case of infringement." *Lamps Plus*, 345 F.3d at 1144-47 (citation omitted) (finding copyright invalid notwithstanding its

registration with the Copyright Office, because information that was not disclosed in plaintiff's application showed that the work lacked creativity).

What happened here is quite simple. Plaintiff asserts a copyright in the Accidental Livestream not because it reflects his creative expression, but because he finds it embarrassing and wants to stop others from seeing it. That is understandable, but it is not a proper invocation of the copyright laws. The Court should find that the Accidental Livestream is not copyrightable, and on that basis dismiss this case.

## CONCLUSION

For the foregoing reasons, the Court should (1) permit Alphabet and YouTube to intervene for purposes of opposing Plaintiff's Motion for Default Judgment against the Individual Defendants; (2) deny Plaintiff's Motion for Default Judgment; and (3) dismiss this case with prejudice.

Dated: April 20, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   *s/ Jason Mollick*

Jason Mollick (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com

*Counsel for Intervenors*
*Alphabet Inc. and YouTube, LLC*