David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, PLAINTIFF

VS.         Case 3:21-cv-04184-JSW

KARL POLANO, et al         DEFENDANTS

### EMERGENCY MOTION TO ORDER THE PRESERVATION OF EVIDENCE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Emergency Motion to Order the Preservation of Evidence.

### "Emergency" Status of this Motion

1. This Court has previously expressed annoyance at my overuse of the "emergency" tag for motions in order to get faster rulings on motions that, in the Courts view, do not require such expeditious rulings.  I have already issued my apology to the Court in **Dkt. 144, ¶¶ 41-43**, and I was entirely sincere when I issued that apology. This time, however, I see no alternative but to give this motion the "emergency" tag.

2. In my experience, once a video is removed via the DMCA, Youtube will typically keep the videos metadata (e.g. view count, analytics, comments, etc.) on its system for only 30 days in order to give the uploader a fair opportunity to issue a Counter-Notification if he so chooses. If no counter-notification is filed within that time, the content is typically deleted permanently with no option of ever recovering it.

3. This means that, if we follow the Court's typical schedule of waiting 35+ days from the date of filing to get a ruling on this motion, it may already be too late.

4. Even barring that, owing to the fact that, as we will soon see, the intervenors' actions have the effect of actively concealing potentially relevant evidence from the Court, I feel this needs to be brought to the Court's immediate attention, lest it result in great confusion.

5.  I'm sorry to bother the Court with yet another "emergency" motion, but it really is necessary in this case. Or at least, that is my good faith belief (the key word being "good faith").

## Facts of the Case

6.  On April 29, 2022, I issued an Opposition to Motion to Intervene. See **Dkt. 144**. At ¶¶ 74-77 of that Opposition, I provided a link to an infringing upload of the accidental stream that Youtube had refused to take down. My goal with sharing this was not to complain about the infringement itself (that will come when we lift the stay on the case of Stebbins v. Rebolo), but to draw the Court's attention to the comment section of that video in order to show that the audience was indeed enjoying itself by watching that video, thus proving that the accidental stream does indeed have *some* content in it, thereby qualifying for copyright protection.

7.  Mere hours after that opposition was filed, Youtube finally decided to remove the infringing content. See **Exhibit A**. That notification was provided at 9:50AM central time zone on April 29, 2022. By contrast, the Opposition was filed at 3:50AM central (or 1:50AM pacific) on that same day. This means that the video was removed only six hours after the opposition was filed.

8.  Because the video was removed, the Court is no longer able to review the comment section. This has the effect of actively (and maliciously) concealing potentially relevant evidence from the Court.

9.  Bear in mind that Youtube had previously refused to take the content down unless I provided a bunch of superfluous details and arguments that the DMCA does not require me to. See **Exhibit B**. That email was sent to me on April 18, 2022.

## Arguments & Law

10. The intervenors' actions in this case are, in a word, scummy. The timing of this removal could not possibly have been a coincidence. Considering that, for a week and a half, Youtube has sat on this DMCA Takedown and allowed the infringing video to accumulate *over fifty thousand views* (no, that is not an exaggeration, and I will be able to prove it if the relief requested later in this motion is granted and the intervenors comply with it). Then, only six hours after I start using that infringement as evidence against them, then and only then do they remove the content.

11. It is clear, based on their past actions and the timing of the removal, that the removal was

not done in order to comply with the DMCA for its own sake or to enforce it own policies for its own sake, but in order to intentionally and maliciously conceal potentially incriminating evidence from the court. At the time I filed the Opposition, the Court could have simply clicked on that link and seen with its own two eyes evidence beyond any genuine dispute that people were finding enjoyment in the accidental livestream, thereby defeating utterly the intervenors' claims that the stream was so bereft of creative content as to lose its eligibility for copyright protection. It is highly likely that they removed this content *because* they knew that the comment section would defeat their claims utterly.

12.   I should not even have to provide a legal citation in order to prove that this practice is not typically allowed in the Courts. The public policy disfavoring such practice is so widely common knowledge that it is on par with the rule that you're supposed to stand up when the judge enters the courtroom, in terms of how universally known it is.

13.   In fact, owing to the fact that, at the time of the removal, the infringing video was already the subject of a high-stakes motion in Court, this removal may even constitute the crime of "tampering with evidence." See https://definitions.uslegal.com/t/tampering-with-evidence/ ("Tampering with evidence is ... the concealment or destruction of evidence for the purpose of impairing its availability as evidence in an investigation or official proceeding").

**Relief Requested**

14.   To rectify this blatant attempt at concealing evidence from the Court, I ask that the intervenors be ordered to preserve all of the metadata of the video described in ¶¶ 74-77 of my Opposition to Motion to Intervene. This metadata should include all of the following:

- The final view count right before it was taken down (this is especially important, because with actual damages of $20 per view, the view count is essential to calculating damages).
- Every comment that video had (at last count, there were over 950 comments on that video).
- Every piece of analytics that Youtube had about that video.

15.   They should also be required to provide me with a copy of all of this metadata within 24 hours of the date of the Court's order, so that I may retrieve the comments and provide them in a

supplemental brief in support of my Opposition to Motion to Intervene, thereby providing the Court with the comments needed to prove the existence of creative content in the video.

16. Also, I ask the Court to declare that Youtube has still lost its safe harbor for this infringement can still be held vicariously liable for the infringement. After all, Youtube had previously refused to take the infringement down unless I gave them additional information that the DMCA does not require as a condition for safe harbor (see **Exhibit B**). At that point, they lost their safe harbor, and there is nothing in the DMCA suggesting that safe harbor, once lost, can ever be recovered for any reason. Once you've lost safe harbor, you can never get it back. I ask the Court to declare that in my favor when it issues this order.

17. Last but not least, I also ask the Court to consider issuing the intervenors an appropriate sanction for their blatant, scummy attempts at tampering with the evidence. It is clear that their actions were designed to manipulate the record rather than comply with the DMCA and/or their own policies for its own sake, and they deserve to be punished for it.

## Conclusion

18. Wherefore, premises considered, I respectfully request that the Court order the intervenors to preserve the evidence that they sought to suppress, declare that they have still lost their safe harbor regardless, to issue them an appropriate sanction, and for whatever other relief to which I may be entitled.

So requested on this, the 29th day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
