RYAN S. BENYAMIN, State Bar No. 322594
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, California 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
rbenyamin@wsgr.com

JASON MOLLICK (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
jmollick@wsgr.com

*Counsel for Intervenors
Alphabet Inc. and YouTube, LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| DAVID A. STEBBINS, <br><br> Plaintiff, <br><br> v. <br><br> KARL POLANO et al., <br><br> Defendants. | CASE NO.: 4:21-cv-04184-JSW <br><br> **REPLY IN FURTHER SUPPORT OF MOTION TO INTERVENE** <br><br> Judge: Hon. Jeffrey S. White <br><br> Action Filed: June 2, 2021 |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Alphabet And YouTube Should Be Permitted To Intervene Because They Are Defendants In A Related Action Involving Common Dispositive Issues ........ 2

    II.    The Court Should Deny Plaintiff's Motion For Default Judgment Because His Allegedly Infringed Livestream Is Not Copyrightable ..................................... 4

        A.    Plaintiff is Not Entitled to a Presumption of Copyright Validity ................ 5

        B.    The Video in Suit is Not a Creative Work of Human Authorship .............. 6

        C.    Plaintiff Cannot Contradict Prior Admissions in an Amended Complaint ..................................................................................................... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*,
    191 F.2d 99 (2d Cir. 1951) ................................................................................................ 8

*Degamo v. Bank of Am., N.A.*,
    849 F. App'x 620 (9th Cir. 2021) ........................................................................................ 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................................................ 6

*Garcia v. Google*,
    786 F.3d 733 (9th Cir. 2015) .............................................................................................. 9

*Kifle v. YouTube LLC*,
    2022 U.S. Dist. LEXIS 20014 (N.D. Cal. Feb. 3, 2022) ................................................... 10

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
    345 F.3d 1140 (9th Cir. 2003) ......................................................................................... 5, 6

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ............................................................................................ 10

*Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ............................................................................................ 8

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) .............................................................................................. 2

## RULES

Fed. R. Civ. P. 24 ........................................................................................................................ 1, 2, 3

Fed. R. Civ. P. 41 ........................................................................................................................... 1, 3

## OTHER AUTHORITIES

Compendium of U.S. Copyright Office Practices § 313.2 ................................................................. 7

# INTRODUCTION

Alphabet and YouTube's Motion to Intervene (Dkt. 138, "MTI") raises two issues. <u>First</u>, should they be permitted to intervene for purposes of opposing Plaintiff's motion for default judgment? <u>Second</u>, should Plaintiff's motion for default judgment be denied, and his copyright case dismissed, because the sole work at issue is not copyrightable? Plaintiff's opposition brief (Dkt. 144, "Opp.") confirms that the answer to both questions is "yes."

Alphabet and YouTube should be permitted to intervene in this action under Federal Rule of Civil Procedure 24(b) so Plaintiff does not secure a judgment by default concerning the copyrightability of his Accidental Livestream, which he plainly intends to then use against Alphabet, YouTube, and other defendants in the related case involving the same video. Plaintiff does not dispute that all of the prerequisites for intervention are met, nor does he deny that intervention would promote judicial economy and reduce the risk of conflicting judgments. His sole basis for opposing intervention is that he voluntarily dismissed Alphabet under Rule 41(a), and that permitting intervention would supposedly amount to "fanning the ashes of the action back to life." Opp. ¶ 9. But the action *is* alive against other defendants, and it requires a decision by the Court as to whether the video at issue is copyrightable. That same issue will need to be addressed in a related action where Alphabet and YouTube are still named defendants. It is therefore sensible and appropriate for the Court to permit intervention here, and to consider arguments from all interested parties as to why Plaintiff's copyright is invalid. It is also the appropriate way to combat Plaintiff's blatant and ongoing procedural gamesmanship.

As to the Accidental Livestream, Plaintiff is incorrect in asserting that the validity of his copyright is "not reviewable." Under Ninth Circuit law, any presumption of validity of a registered copyright may be overcome with some evidence or proof to the contrary. That evidence is found in the complaint itself, where Plaintiff admits facts he did not provide to the Copyright Office: that the video was a product of a software glitch that he did not cause or notice. Plaintiff concedes in his opposition brief (as he did in his Motion for Default Judgment) that if the video was created in the manner that he alleged in the complaint, he has no valid copyright because the video lacks a human author.

Plaintiff's sole defense is that the complaint should not be read to say what it says, and that the Court should consider the *possibility* that the video was created by Plaintiff's slippery fingers on a keyboard. Plaintiff concedes, however, that "any attempts at explaining how it happened are just speculation." That too is fatal to his case, because ultimately it is he who must establish a valid copyright in the video to state a claim of copyright infringement. If Plaintiff cannot say how the video was created, then he cannot state, much less prove, his claim.

Even if the video was created by Plaintiff's errant keystroke (as he asks the Court to speculate) it still lacks the necessary "creative spark" to be copyrightable. Plaintiff made absolutely no creative choices in fixing the video or generating its content. The video does not embody a dramatic work, a pantomime, or some other choreographed performance that was captured in the footage. Plaintiff claims that his simple "facial expressions" in the video are expressive content, but a person's likeness is not copyrightable. Nor is the video a "selfie" or a self-portrait, where the likeness depicted in the content is simultaneously the author who deliberately created it. Here, by Plaintiff's own account, the very *making* of the video was accidental and unknown to the person being filmed. For those reasons this case should be dismissed.

Dismissal should be with prejudice. Plaintiff asks for leave to amend not to clarify his allegations or provide added detail, but to *change the facts* concerning how the Accidental Livestream was created—facts that he now, in hindsight, finds inconvenient to his case. That is not a valid reason to amend. The Court should dispose of this frivolous case.

## ARGUMENT

### I. ALPHABET AND YOUTUBE SHOULD BE PERMITTED TO INTERVENE BECAUSE THEY ARE DEFENDANTS IN A RELATED ACTION INVOLVING COMMON DISPOSITIVE ISSUES

Under Federal Rule of Civil Procedure 24(b)(1)(B), a court may permit intervention when (1) there are grounds for jurisdiction, (2) the motion is timely, and (3) the applicant "has a claim or defense that shares with the main action a common question of law or fact." MTI at 8 (citing, *e.g.*, *United States v. City of L.A.*, 288 F.3d 391, 403 (9th Cir. 2002)). Once these conditions are

met, permissive intervention is "committed to the broad discretion of the district court," accounting for factors such as whether the intervenor's interests are adequately represented by other parties in the case, whether intervention would cause undue delay or prejudice, and judicial economy.  *Id.* at 8-9 (citing, *e.g.*, *Degamo v. Bank of Am., N.A.*, 849 F. App'x 620, 623 (9th Cir. 2021)).

   Plaintiff's opposition brief is virtually silent on all these factors.  He does not deny that the preconditions are met, specifically (1) that the court has jurisdiction in this federal-question case; (2) that the intervention request is timely; and (3) that copyrightability of the Accidental Livestream is a common and potentially dispositive issue in both this and the related action where Alphabet and YouTube are defendants.  *See* MTI at 9.  Plaintiff also does not dispute that the discretionary factors favor permissive intervention.  He concedes that Alphabet and YouTube's interests in this action are not being represented; he offers no reason why intervention would cause undue delay; he points to no undue prejudice; and he admits that the same copyrightability issue will need to be considered again in the related case—thereby wasting judicial resources and risking inconsistent judgments.  *Id.* at 9-10.

   Plaintiff's only argument is that intervention should be denied because Alphabet was already voluntarily dismissed under Rule 41(a)(1)(A)(i), so allowing it to intervene would be tantamount to circumventing the dismissal and "fanning the ashes of the action back to life."  Opp. ¶¶ 9, 26-28.  Plaintiff forgets that YouTube was never made a defendant in this case.  More fundamentally, he conflates dismissal of *defendants* under Rule 41(a) with a motion to intervene as interested non-parties under Rule 24(b).  Nothing under Rule 41(a) preempts intervention under Rule 24(b) where, as here, there are strong and independent grounds for intervention.  Nor are Alphabet and YouTube attempting to "fan the ashes of the action back into life" (Opp. ¶ 28), because the action is not dead.  Plaintiff continues to seek a default judgment against the Individual Defendants, which necessarily requires a finding by this Court that the infringed content is copyrightable.  But that same content is at issue in the related case where Alphabet and YouTube remain defendants.

As explained in the opening brief, the Court should also exercise its broad discretion here to combat Plaintiff's ongoing abuse of the litigation process. *See* MTI at 10. While Plaintiff expresses remorse for his vexatious behavior, he insists that it is "in the past" and "has not continued in this case." Opp. ¶¶ 35-40. That is palpably false, as the Court itself has recognized. *See* Dkt. 134 ("[T]he Court does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship."); Dkt. 143 (admonishing Plaintiff for filing improper motions "[d]espite numerous admonishments," for repeatedly characterizing his motions as "emergencies," and for "abus[ing] the judicial process"); Dkt. 147 (reiterating same admonishment after Plaintiff filed another "emergency" motion two days after being warned to stop doing so).[1]

## II. THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BECAUSE HIS ALLEGEDLY INFRINGED LIVESTREAM IS NOT COPYRIGHTABLE

As to the core issue in dispute – whether the Accidental Livestream is copyrightable – Plaintiff's opposition brief confirms that it is not. He makes two basic points: (1) that the Court must presume his copyright is valid; and (2) that the video is a creative work of human authorship

---

[1] Plaintiff's abusive tactics continued in connection with this motion. On the evening of April 26, 2022, Plaintiff claimed in an email to counsel that he had just been released from the hospital. Plaintiff repeated the same story to the Court the next day, saying in a sworn filing that he had been hospitalized, and had not even been aware of this motion until he arrived home the night before. Dkt. 139 ¶ 1. Having no reason to doubt his story, we stipulated in good faith to extend the briefing schedule on the motion. ***Minutes after the stipulation was filed***, he filed a lengthy, researched, and procedurally-misguided motion to strike, setting a hearing in advance of the earlier motion that we had just agreed to extend. *See* Dkts. 141, 142. Minutes after that, he emailed the clerk and asked: "Any chance the Motion to Strike can get a ruling before the motion for extension can? No need for me to respond to the motion to intervene at all (belated or otherwise) if it's just going to get struck." When that effort failed (Dkt. 143), he still managed to file a 25-page opposition brief less than 72 hours after he claims to have first learned of the motion.

We do not know whether Plaintiff was in fact hospitalized without his phone or laptop, whether he fabricated the whole thing, or whether there is some truth in between. What we do know is that Plaintiff attempted to pull yet another procedural trick. He duped Alphabet and YouTube into adjourning their motion, and then minutes later, swooped in with his own "emergency" motion to try and get ahead of it.

because it *might* have been created by his accidental keystroke, rather than a software glitch as he alleges in the complaint.  Both points are incorrect and misunderstand the law.

### A.  Plaintiff is Not Entitled to a Presumption of Copyright Validity

Plaintiff begins by claiming that "[t]he presumption of validity of my copyright is not within this Court's discretion."  Opp. ¶ 12; *see also id.* ¶ 48.  Alphabet and YouTube already explained in their motion that "[t]he presumption of the validity of a registered copy-right may be overcome by the offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."  MTI at 11-12 (citing *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003)).  Again, that evidence is found in the admissions Plaintiff made in his own complaint: that the video was created by a software glitch – not him – which made his "livestream software turn[] on of its own accord without [him] realizing it"; and that the only notable content in the video consists of sounds that he "did not cause."  SAC (Dkt. 155) ¶¶ 22-23.

Plaintiff's application to register the video with the United States Copyright Office, which the Court can judicially notice, shows that he did not disclose these facts to the copyright examiners.  *See* RJN iso MTI Ex. A (Dkt. 138-2).  Plaintiff insists that the Copyright Office was "constructively notified" of these facts, because he submitted a copy of the video with his application and called the video an "Accidental" Livestream.  Opp. ¶¶ 2, 65.  But that told the examiners nothing about the critical circumstances in which the video was created—information that Plaintiff subsequently admitted in the complaint.  To the contrary, Plaintiff characterized the video in his application as a "Dramatic Work" (Dkt. 138-2 at 4), suggesting to the examiners that while some aspect of the video was "accidental," it still recorded content that was choreographed in some manner.  No matter how Plaintiff tries to speculate what the examiners understood, the fact remains that the Court is now in possession of facts and admissions which override any "presumption of the validity" and "deny the plaintiff's prima facie case of infringement."  MTI at 13-14 (citing *Lamps Plus*, 345 F.3d at 1144-47) ("To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.") (citation omitted)).

Plaintiff also claims that "[b]arring a showing of actual fraud" on his part, the "USCO's decision to grant registration … is not reviewable." Opp. ¶ 45. That misunderstands the law. Alphabet and YouTube are not claiming that the registration is invalid *per se* on the grounds that Plaintiff committed a deliberate fraud on the Copyright Office. We are claiming instead that the Court now has "evidence or proof" to overcome the presumption of validity arising from the registration, which the examiners did not have when they reviewed the application. Whether that is a result of fraud or innocent mistake is irrelevant. Indeed in the *Lamps Plus* decision that Plaintiff cites, the Ninth Circuit reached the same conclusion that Alphabet and YouTube urge here: that facts before the court were sufficient to overcome the presumption of validity in a registered work, even if the registrant did not intend to defraud the Copyright Office. 345 F.3d at 1144-45 (finding that "[t]he record, viewed in the light most favorable to Lamps Plus, does not demonstrate that it intended to defraud the Copyright Office"); *id.* at 1147 (finding nonetheless that plaintiff's work was not copyrightable because it lacked "the quantum of originality needed to merit copyright protection," based on facts not known to the examiners) (citation omitted).

Plaintiff responds further that even if there were no presumption of validity, the Court already found earlier in this case that he holds a valid copyright. Opp. ¶ 5. But those findings were made in screening orders before any defendants appeared and before the Court had the benefit of briefing on the issue. *See* Dkts. 10, 21. The Court may also have been deferring to the Copyright Office's decision to register the video, without knowing (as it does now) that Plaintiff's application did not disclose the true nature and circumstances of the video.

**B.  The Video in Suit is Not a Creative Work of Human Authorship**

Plaintiff does not dispute that he needs a valid copyright to prevail on his motion for default judgment. *See* MTI at 10-11. To be copyrightable, that work must (1) contain some minimal degree of creativity, and (2) be fixed by a human author. *Id.* at 12 (citing, *e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)). The opening brief establishes that neither requirement is satisfied here. *Id.* at 12-14. The opposition brief confirms it.

As to human authorship, Plaintiff alleges in the complaint, in terms as clear as day, that the Accidental Livestream resulted from a software glitch. He explicitly states that his

"livestream software *turned on of its own accord without me realizing it*"—not due to any act on his part. SAC (Dkt. 55) ¶ 22 (emphasis added). Plaintiff also conceded in his Motion for Default Judgment that the copyright would be invalid if "the streaming software turned on, entirely of its own accord, without any human input (knowing or otherwise) causing it to happen"—which, again, is exactly what he alleges to have happened in the complaint. Dkt. 127-20 ¶ 42. In his opposition brief, Plaintiff again does not dispute that if what he alleged in the complaint is taken as true – as it must be on a motion for default judgment – then the copyright is invalid and the case must be dismissed. *See* MTI at 12-13 (citing, *e.g.*, Compendium of U.S. Copyright Office Practices § 313.2 ("works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author" are not copyrightable)).

Plaintiff argues that Alphabet and YouTube rely on a "hyper-literal interpretation" of the complaint, and that his own allegations should be taken "figuratively, not literally." Opp. ¶¶ 13, 51; *see also id.* ¶ 93(a) ("my statements were speculative rather than based on personal knowledge"). He now claims – after realizing he may have pleaded himself out of court – that "[t]he odds are overwhelmingly likely that the streaming software turned on as a result of an errant keystroke, rather than purely autonomous means." *Id.* ¶ 20. But anyone who owns a computer, a car, or a dishwasher knows that machines are not perfect. Software bugs are as commonplace as printer jams. There is nothing "hyper-literal" or "figurative" about software doing something unexpectedly. Plaintiff alleged that the livestream "turned on of its own accord" because he meant it and believed it. It was only after Plaintiff realized his own allegations meant the video was not copyrightable that he began to change his story.

Even if the Court were willing to entertain a different version of events, Plaintiff admits there are only "two possible explanations for how the stream came on": either (1) "I had accidentally pressed the key on my keyboard to turn the stream on without realizing I had done it"; or (2) as alleged in the complaint, "[t]he stream software came on entirely of its own accord, without any input from me, accidental or otherwise." Opp. ¶ 81. Plaintiff contends that #1 leads to the video being copyrightable, but that too is incorrect because the video still lacks creativity

(discussed below).  Moreover, **Plaintiff admits he has no idea which scenario occurred.**  *Id.* ¶ 52 ("I don't know how the streaming software turned on!"); *id.* ¶ 53 ("I don't know how it happened, and [] any efforts by me to guess as to how it happened are just that: A guess, not based on personal knowledge."); *id.* ¶ 84 ("I don't know how the streaming software came on, which means any attempts at explaining how it happened are just speculation, not based on personal knowledge.").  That is fatal to his case, because Plaintiff must plausibly allege his own cause of action.  Dkt. 10 at 4 (citing *Skidmore for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020)).  If he cannot allege that the video was a product of human authorship, contrary to the allegations in his own complaint, he simply cannot prevail on the first element of copyright infringement.

The Accidental Livestream also lacks the requisite creativity regardless of how it was made.  Even under the first scenario Plaintiff supposes – that the video was created by an errant keystroke – the entire video was recorded without his knowledge or creative input.  He did not direct the scenery, position the camera, focus the lens, adjust the lighting, or make any other creative choices that a videographer or director would ordinarily make.  Plaintiff argues that "accidental" expression is copyrightable (Opp. ¶ 61), which is sometimes true, but here the very **making** of the video was unknown to him.  Plaintiff's lone case, *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 (2d Cir. 1951), illustrates the distinction.  In that case the Second Circuit noted that an author still engages in creative expression even if he or she makes a mistake in the process of creating a work, i.e., due to "[a] copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder[.]"  *Id.* at 104-05.  Those mistakes are still creative elements because the author was engaged in the deliberate process of creating something (in that case, a mezzotint).  "[H]e has employed skill and judgment in its production[,]" even if happy accidents occurred along the way.  *Id.* at 104 n.22.  None of that happened here.

Tellingly, the only "acts of personal expression" that Plaintiff claims to make in the video are banal "facial expressions[.]"  Opp. ¶ 70.  But Plaintiff and his facial expressions are merely unwitting subjects of a camera that was rolling without his knowledge or input.  Plaintiff's appearance in the video does not make him its author for copyright purposes, because he was not

responsible in any copyright-relevant way for its fixation. *See, e.g., Garcia v. Google*, 786 F.3d 733, 744 (9th Cir. 2015) (en banc) (holding that an actress who appeared in a film, "[h]owever one might characterize [her] performance," did not hold any copyright in the film because "she played no role in the fixation"). If it were otherwise, then anyone who walks in front of a security camera could claim copyright in the feed.

Plaintiff conflates being the *subject* of a work and being the *author* of that work, when being the subject of a work is neither a necessary nor a sufficient condition for being its author. He posits that "[i]f I were taking a selfie, any one of those faces would be singularly sufficient individual creative expression to be entitled to copyright protection." Opp. ¶ 71. That may be true, but Plaintiff did not take a selfie here. When a person takes a selfie he or she is both the subject of the image *and* the author, much like an artist who paints a self-portrait. His or her facial expressions form part of a series of creative choices in deliberately capturing the author's own likeness, including where to position the camera, how to pose, what scenery to include, and when to snap the photo. The author might then edit the image by cropping it, adjusting the lighting, or applying other visual effects. In that case the copyright is owned by the person depicted in the image, because the author and subject are one and the same. But again, that is not what happened here. Whether caused by computer glitch or errant keystroke, Plaintiff had no idea the camera was rolling and made no creative choices when fixing the content in a tangible medium. His facial expressions were not part of, say, a pantomime or dramatic work that he had choreographed and captured on camera. His likeness was simply captured on video. The Accidental Livestream thus lacks the creative spark by a human author that is necessary to make it copyrightable.

Lastly, Plaintiff claims that the content must be creative because "many people are getting enjoyment out of watching the stream[.]" Opp. ¶¶ 74-77. That is not evidence that the content is a copyrightable work of authorship. If anything, it reflects only that the content is embarrassing, and that Plaintiff is being widely ridiculed online for his litigious behavior. That is unfortunate, but it has nothing to do with whether the video is a copyrightable work of which Plaintiff is the author.

**C.     Plaintiff Cannot Contradict Prior Admissions in an Amended Complaint**

Plaintiff argues that even if the video is not copyrightable based upon the allegations made in his complaint, he "can easily correct those deficiencies in an amended complaint." Opp. ¶ 21; *see also id.* ¶¶ 87-91. He seeks not to provide further details or clarification, but to undo an admission that the "livestream software turned on of its own accord without me realizing it," along with others that are fatal to his claims.

This he cannot do. "To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal 'without contradicting any of the allegations of [the] original complaint.'" *Kifle v. YouTube LLC*, 2022 U.S. Dist. LEXIS 20014, at *8 (N.D. Cal. Feb. 3, 2022) (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading.") (citation omitted)). Plaintiff cannot use an amendment to change inconvenient facts that he already swore to, simply to dodge a defense that he now finds troublesome.

## CONCLUSION

For the foregoing reasons, and those provided in the opening brief, the Court should (1) permit Alphabet and YouTube to intervene for purposes of opposing Plaintiff's Motion for Default Judgment; (2) deny Plaintiff's Motion for Default Judgment; and (3) dismiss this case with prejudice.

| | | |
|---|---|---|
| 1 | Dated: June 1, 2022 | Respectfully submitted, |
| 2 | | WILSON SONSINI GOODRICH & ROSATI |
| 3 | | Professional Corporation |
| 4 | | By: *s/ Jason Mollick* |
| 5 | | Jason Mollick (*pro hac vice*) |
| | | 1301 Avenue of the Americas, 40th Floor |
| 6 | | New York, New York 10019 |
| 7 | | Telephone: (212) 999-5800 |
| | | Facsimile: (212) 999-5899 |
| 8 | | jmollick@wsgr.com |
| 9 | | *Counsel for Intervenors* |
| | | *Alphabet Inc. and YouTube, LLC* |