David Stebbins (pro se Plaintiff)      123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947           acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                    PLAINTIFF

VS.                                    Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                              DEFENDANTS

## OBJECTION TO REPLY EVIDENCE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Objection to Reply Evidence, as permitted by Local Rule 7-3(d)(1) without prior court approval.

1. This Objection may be improper. I may be confused as to what "new evidence submitted in the reply" means. If so, Dkt. 152 (Motion for Leave to File Supplement) still stands, only now, you have an idea as to what kind of things I plan to argue upon supplementary filing (only without the 5-page limit that applies here).

2. Anyway, first, the intervenors raise, for the first time in their reply, that Youtube LLC is a new party in the case. This is not true. Youtube was a party to this case ever since the First Amended Complaint, and counsel for intervenors knew this all along. As you can see from **Exhibit A**, Mollick and I had a conversation about Youtube being the proper defendant almost immediately after Alphabet was served. He knew full well that, when I included Alphabet Inc. as a nominal defendant, I was actually including Yotuube LLC, and that this error could be corrected through the simple expedient of substituting the parties. So Mollick is lying. Youtube was a party to this case ever since the First Amended Complaint, and Mollick knows this. Therefore, Youtube LLC was included in the voluntary dismissal.

3. Even if that were the case, why would Alphabet Inc still be included in the motion if, by their own admission, they do not qualify? Clearly, intervenors are just trying to circumscribe the voluntary dismissal and that's all there is to it. This leads us to the second problem: The intervenors raise, for the first time in their reply, that the motion to intervene supersedes the voluntary dismissal. This is patently frivolous. The binding precedent which I have cited – Com. Space Man. v. Boeing, 193 F. 3d 1074 (9th Cir. 1999) – makes it abundantly clear that a

voluntary dismissal is "absolute" and "cannot be circumscribed" in any way, shape, or form. The Intervenors have offered absolutely nada in legal authority to contradict this unambiguous and absolute case law.

4. If the dismissal could be circumscribed at all, it should only be permitted under truly exceptional circumstances. Allowing a defendant who didn't want to be dismissed from the action to rejoin the case through the simple expedient of filing a motion to intervene would effectively render all future voluntary dismissals as completely toothless, because *literally anyone could do it*. "It is unlikely that [the applicable policymaking body] intended to allow the provisions … to be bypassed so easily." See MCI v. Exalon, 138 F. 3d 426. 430 (1st Cir. 1998)[1].

5. Third, the intervenors raise, for the first time in their reply, that the statements made in ¶¶ 22-23 of the SAC were affirmative admissions that I am now bound by, not simply speculative or figurative statements. They have offered precisely zero evidence in support of this interpretation. They should be ordered to either provide objective proof that my statements were meant to be taken literally, or admit they have none and just made that assertion up despite knowing it to be false. If they do neither, they should be held in contempt of court and/or sanctioned for violating FRCP 11(b)(3).

6. Fourth, the intervenors raise, for the first time in their reply, that the fact that I described the work as a "dramatic work" was an act of intentional fraud on my part. They say that "no matter how Plaintiff tries to speculate what the examiners understood," this classification is grounds for invalidating the registration.

7. This is patently false. At least in this specific instance, I am not speculating as to what the examiners understood; I already know full well what the examiners were thinking. How do I know this? Because they literally told me so, themselves! See **Exhibit B**, an email sent to me by the Copyright Office where they inquired about this exact problem. I responded to this inquiry with **Exhibit C**, defending my interpretation of the word "dramatic." I then proceeded to call the US Copyright Office at (202) 707-3000 to further inquire about the status of my registration. I was told that I would still get registration, and that they would simply file it as a motion picture

---

1  Although this case law concerned arbitration law, rather than voluntary dismissals, the general logic of this section of the opinion is still applicable.

despite me improperly classifying it as a dramatic work. This reassurance prompted me to send **Exhibit D** to the Copyright Office later that same day.

8.      17 USC § 411(b) provides the statutory basis for challenging the validity of a timely-regstered copyright. Paragraph (2) of that subsection states that "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The Court should do that in this case, for every alleged deficiency the intervenors raise. After all, as shown above, not all errors necessarily "occasion the rejection" of a registration. We should ask the Register (currently Shira Perlmutter) if the error is serious enough to warrant such nuclear action.

9.      Fifth, the intervenors raise, for the first time in their reply, that to prevail on a claim of copyright infringement, I must affirmatively allege that the work was one of human authorship, not simply admit to a lack of knowledge. This is blatantly false. All I am required to provide (at least at the complaint stage) is proof of registration. This registration creates a presumption of copyright validity, and then the defendants/intervenors must affirmative prove facts which show that the copyright is invalid. I have not made a defective complaint simply because I did not allege this ultra-specific factor of copyrightability; the registration alone provides sufficient factual allegation for copyright ownership in all respects to overcome a motion to dismiss.

10.     Sixth, the intervenors raise, for the first time in their reply, that my stream is lacking in minimal creativity because I "did not direct the scenery, position the camera, focus the lens, adjust the lighting." They are not simply claiming that, because I accidentally pressed the button to turn the camera on *this one time*, these things somehow don't count as a matter of law (although, even if they did, they have provided no legal citation stating that this is the law); they are saying that *didn't do these things* in the first instance. It should be clear at this point that the intervenors are just making stuff up as they go along.

11.     Bear in mind that the motion to intervene is tantamount to a motion to dismiss, which means that the Court cannot look beyond the Complaint for undisputed facts. The intervenors have offered precisely zero evidence – in the SAC or otherwise – to show that I did not do any of these things.

12. In fact, I can easily demonstrate that I did indeed do all three of these things. Think about it: I live by myself. So if I did not "position the camera," then who in the name of Jesus do you *think* put it there?! The camera was clearly in a position where my face and upper torso were clearly visible whenever I sat in front of my computer, so it was clearly placed in that spot on purpose by me. Therefore, I necessarily "position[ed] the camera."

13. I did all three of these things (and many others) when I first started doing livestreams. I set up the camera, focused the lense, and chose the room of my apartment where I would do the livestreams, while furnishing and decorating the room to my liking (thereby directing the scenery) before I did my first stream. I then re-used that same setup for all future streams, so that whenever I wanted to stream, I could just press the start button and poof, I was streaming. Just because, on April 10, 2021, I accidentally pressed the start button *this one time* does not negate all the creative choices I made, and it is preposterous for the intervenors to argue – especially in the complete lack of any evidence – that I somehow did not do these things.

14. Last but not least, the intervenors raise, for the first time in their reply, that because the stream was accidentally affixed in any capacity, that means that it is not creative. Automatically. Categorically. Even if that same video could be considered minimally creative under otherwise identical circumstances. The intervenors offer precisely zero legal authority in support of this outlandish legal argument. But this is not an open-and-shut issue. It has never been litigated before and therefore should require more considered attention than throwing a case out at the pleading stage.

15. For just one example of how reasonable minds may interpret an accidental creation as being protectable by copyright, see this webpage: https://www.avvo.com/legal-answers/authorized/5481841.html[2]. As the Court can see from that link, I described a hypothetical scenario that is virtually identical to the instant case. There are some minor differences, but it is similar to this case in all the ways that matter, especially on the main issue: The accidental creation of the work in the first instance. Despite the similarities between the

---

[2] In case the Court doesn't already know, Avvo is a website where anybody is allowed to post a legal question, but only those verified by the site as being licensed to practice law in at least one state is allowed to post answers. This ensures that the answers have a guaranteed minimum level of reliability, unlike most other Q&A sites like Quora.

instant case and that one, the attorneys who responded unanimously agreed that the copyright would still be valid, and that the accidental nature of the creation does not negate this. One of them even said "Creation can arise out of spontaneity and 'accident,' and Intention and pre-meditation aren't necessarily prerequisites of creativity."

16.     This shows that it's not quite as much of an open and shut case as the intervenors would have you believe. Even if the Court may eventually decide that the copyright is invalid, we would need further litigation (including discovery) to reach that decision with confidence, meaning it cannot be disposed of at the pleading stage. After all, this is not even remotely a unique occurrence. There have been plenty of streamers before and after me who have either accidentally turned their stream on or forgot to turn it off. See https://youtu.be/7Cq2gHNXWrg for only ten, out of literally *tens of thousands*, of examples. If the Court were to rule in favor of the intervenors on this issue, it would categorically deprive ALL of these works of copyright protection. So the Court should not do so on a whim.

17.     Before I sign off, I would respectfully like to refer the Court to **Dkt. 152, ¶¶ 4-12**. While the filing of this Objection negates the need for the Court to grant that motion (unless I am mistaken as to what "new evidence submitted in the reply" means, in which case, my Motion for Leave to File still stands), those paragraphs still need to be read by the Court, and I cannot repeat them here without overstepping the 5-page limit set forth in Local Rule 7-3(d)(1), but it still *needs to be seen* by the Court!

18.     Wherefore, premises considered, I respectfully pray that the Motion to Intervene be denied. So requested on this, the 6th day of June, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D,
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
