UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| in re DAVID STEBBINS,<br>　　　　Petitioner | ）<br>）<br>） Case No. _____<br>）<br>） **PETITION FOR WRIT OF MANDAMUS**<br>） **AND WRITS OF PROHIBITION** |

Comes now, pro se Petitioner David Stebbins, who hereby submits the following Petition for Writ of Mandamus and for two Writs of Prohibition in the above-styled action.

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| I.　TABLE OF CONTENTS | 1 |
| II.　TABLE OF AUTHORITES | 2 |
| III.　RELIEF SOUGHT | 3 |
| IV.　ISSUES PRESENTED | 3 |
| V.　FACTS OF THE CASE | 3 |
| VI.　REASONS WHY THE WRITS SHOULD ISSUE | 5 |
| 　　1.　Writ of Mandamus | 5 |
| 　　2.　Lack of Availability of Other Remedies | 8 |
| 　　3.　Prejudice I have suffered as a result of the delay | 9 |
| 　　4.　Writ of Prohibition #1 | 9 |
| 　　5.　Writ of Prohibition #2 | 10 |
| VII.　　SERVICE ON RESPONDENTS | 12 |
| VIII.　　CONCLUSION | 12 |

## TABLE OF AUTHORITIES

| Rules & Statutes | Page(s) |
|---|---|
| • 17 USC § 512(f) | 4 |
| • 17 USC § 512(j) | 4 |
| • 28 USC § 1915 | 4 |
| • Canon 3(A)(5) of the Code of Conduct for United States Judges | 6 |
| • Fed.R.App.P. 21(a)(1) | 12 |
| • Fed.R.Civ.P. 41(a)(1)(i) | 3,4,7,10,11 |

| Case Law | Page(s) |
|---|---|
| • Bordenkircher v. Hayes, 434 US 357, 363 (1978) | 10,12 |
| • Burlington Nort. & Santa Fe Ry. v. Dist. Court, MT, 408 F. 3d 1142, 1146 (9th Cir. 2005) | 6,8 |
| • Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1077-78 (9th Cir. 1999) | 7,10,12 |
| • Cooter & Gell v. Hartmarx Corp., 496 US 384, 410 (199) | 11 |
| • Dukes v. Wal-Mart Stores, Inc., Case No. 01-cv-02252-CRB, 5 (N.D. Cal. Aug. 15, 2016) | 7 |
| • Fort Sill Apache Tribe of Okla. v. United States, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008) | 7 |
| • in re A Community Voice, 878 F. 3d 779 (9th Cir. 2017) | 6,8 |
| • Kenna v. US Dist. Court for CD Cal., 435 F. 3d 1011, 1017 (9th Cir. 2006) | 6 |
| • Mallard v. United States Dist. Court for Southern Dist. of Iowa, 490 US 296, 309 (1989) | 8 |
| • Railroad Trainmen v. B. & OR CO., 331 US 519, 524 (1947) | 7 |

## RELIEF SOUGHT

1. I seek one writ of mandamus and two writs of prohibition.

    (a) First, I seek a writ of mandamus, ordering Honorable Judge Jeffrey White to pass judgment on all pending motions in the case of Stebbins v. Polano, including and especially the motion for default judgment and denying the motion to intervene.

    (b) Second, I seek a writ of prohibition, ordering the Court not to consider any of the arguments raised in the frivolous motion to intervene when ruling on the motion for default judgment.

    (c) Third, I seek a writ of prohibition, ordering Judge Jeffrey White not to perform any adverse actions against me that are motivated in whole or in part by my filing of the Notice of Voluntary Dismissal.

## ISSUES PRESENTED

2. The issues presented are thus:

    (a) Whether the District Court has taken an unreasonably long time to issue a ruling on the motion to intervene.

    (b) Whether the binding precedent unequivocally requires the District Court to deny the motion to intervene, solely on the grounds that granting it would violate the plaintiff's absolute right to a voluntary dismissal under Fed.R.Civ.P. 41(a)(1)(i).

    (c) Whether the District Court should be allowed to consider, sua sponte, the arguments raised by the intervenors on a motion for default judgment.

    (d) Whether the District Court should be prohibited from taking any adverse action against me (including considering the arguments raised in the motion to intervene) for the lawful exercise of my absolute right to a voluntary dismissal.

## FACTS OF THE CASE

3. One June 2, 2022, I filed a complaint against Swiss resident Karl Polano. Officially, the suit was for copyright infringement, but the biggest reason why I cared about filing this lawsuit was because Polano was leading the charge in an online hate campaign against me, harassing and doxxing me and encouraging and recruiting others to do the same. This harassment and doxxing has given me quite a bit of stress, and it has grown to unmanageable levels in the recent months. By obtaining an injunction ordering him to cease and desist, I am hoping to put a stop to the

harassment.

4. The case was given the case number of 3:21-cv-04184 and, after several re-assignments, was ultimately assigned to judge Jeffrey White. See Dkt. 20. Two amended complaints were filed, and so the Second Amended Complaint (Dkt. 55) is the current operative complaint. The SAC lists three individual defendants (Karl Polano, Raul Mateas, and Frederick Allison), suing them for intentional infliction of emotional distress, two counts of DMCA Misrepresentation under 17 USC § 512(f), and multiple counts of copyright infringement. I also included several corporate defendants and their subsidiaries as nominal defendants, seeking prospective injunctive relief pursuant to 17 USC § 512(j). Upon screening the complaint pursuant to 28 USC § 1915, the district court dismissed the IIED claim and one count of DMCA misrepresentation for failure to state a claim, while allowing one count of DMCA misrepresentation and all counts of copyright infringement to remain.

1. Process was served on all defendants. While the corporate defendants all made timely appearances, none of the individual defendants did and thus were entered in default. The last of the individual defendants to be entered in default was Karl Polano, who was entered in default on April 6, 2022. A motion for default judgment against the individual defendants was filed the next day, and was set to receive a ruling on May 13, 2022. See Dkt. 127.

2. Because the corporate defendants were only included as nominal defendants, I felt it prudent to voluntarily dismiss them from the action, pursuant to FRCP 41(a)(1)(i), so as to avoid tedious and unnecessary litigation against parties who didn't actually matter all that much to the case. Thus, on April 11, 2022, I did exactly that. See Dkt. 128. Despite this dismissal, the corporate defendants filed a Motion to Dismiss 20 minutes after they were dismissed. See Dkt. 129. They *claim* that they were in the process of filing the motion at the time I entered my voluntary dismissal, but the fact that it was filed *a full twenty minutes* later makes this highly unlikely. It is far more likely that they saw the dismissal, and scrambled to file their motion to dismiss as quickly as possible so as to create the *illusion* that they were in the process of filing it when the voluntary dismissal happened.

3. I moved to strike the motion to dismiss (see Dkt. 130). Defendants Alphabet Inc. and YouTube LLC – represented by counsel Jason Mollick – had the audacity to ask the district court to still consider the arguments made in the motion to dismiss, even though they acknowledged

that the motion was not properly before the court! See Dkt. 131, p. 2, lines 12-14. Of course, they offered no legal authority by which the Court had such discretion. Since they were effectively non-parties at that point, for the Court to consider the facts and arguments therein would be no better than the Court considering facts and arguments shouted at him by random protesters outside the courthouse when he was getting out of his car in the morning.

4. While Judge Jeffrey White granted the motion to strike, he made it clear that he takes exception to my use of my right to voluntarily dismiss parties, and threatened to declare me a vexatious litigant if I did it again. See Dkt. 134.

5. However, on April 20, 2022, YouTube LLC and Alphabet Inc tried to circumvent the voluntary dismissal by filing a motion to intervene. See Dkt. 138. This motion to intervene had large chunks of the motion to dismiss copied and pasted verbatim into it. It was obvious that this was nothing more than a transparent attempt to circumscribe the voluntary dismissal. See Dkt. 138, p. 6, lines 21-22 ("the Court does have discretion to deal with Plaintiff's abusive tactics in another way").

6. In opposition to this motion, I argued, among other things, that the voluntary dismissal was absolute and cannot be circumscribed by adversary or by court in any way, shape, or form, and that this alone compelled the court to deny their motion. See Dkt. 144. The now-intervenors claimed that their motion to intervene supersedes the voluntary dismissal (see Dkt. 151), although they offer absolutely no legal authority in support of their claim.

7. Because of the pending motion to intervene, the Court canceled the hearing for the motion for default judgment, and failed to set any new hearing date for that motion. See Dkt. 146. Thus, even if the motion to intervene is eventually denied, the intervenors still caused the very delay that the voluntary dismissal was meant to prevent.

8. Among other motions that have been filed in this case and have yet to receive a ruling include the following:

- Motion for Leave to File Third Amended Complaint (Dkt. 100)
- Motion for Sanctions (Dkt. 119)
- Motion to Clarify (Dkt. 126)

9. This makes for a total of five motions that are sitting on the docket, waiting for a ruling.

10. But in addition to the motions themselves, there is also the fact that the aforementioned

harassment and doxxing is still ongoing for as long as the case remains without a judgment. Were it not for the motion to intervene, I would have obtained a judgment by now, which would have put a stop to the harassment. But the motion to intervene is preventing the judgment from issuing, which in turn is keeping the harassment going and even amplifying.

## REASONS WHY THE WRITS SHOULD ISSUE

11.    For the foregoing reasons, all three of the writs should be issued.

**Writ of Mandamus: Ordering the District Court to deny motion to intervene and pass judgment on motion for default judgment, as well as all other pending motions.**

12.    "A judge should dispose promptly of the business of the court." See Canon 3(A)(5) of the Code of Conduct for United States Judges. It is well-established that one of the most common grounds for granting a writ of mandamus is to compel a court to issue a ruling on a motion that has sat on its docket without a ruling for an unreasonable amount of time. See in re A Community Voice, 878 F. 3d 779 (9th Cir. 2017). In addition to undue delay in ruling on a pending motion, other grounds for mandamus relief include "clear … legal error by the district court [and] no other means for the petitioner to obtain review" as well as "issue[s] of first impression." See Kenna v. US Dist. Court for CD Cal., 435 F. 3d 1011, 1017 (9th Cir. 2006). "In order to gain the benefit of the writ, ... the right to the writ must be clear and indisputable." See Burlington Nort. & Santa Fe Ry. v. Dist. Court, MT, 408 F. 3d 1142, 1146 (9th Cir. 2005).

13.    Just like in that case, the issues present here are (A) whether the district court has a duty to act, (B) if so, whether the district court has engaged in unreasonable delay in discharging this duty, and (C) whether he is required, specifically, to deny the motion to intervene.

14.    It is axiomatic that a district judge has a duty to issue a ruling on all motions properly filed in cases before it. Even if the motion is entirely frivolous and baseless, a judge must issue, at the very least, a 1-page order calling it frivolous and baseless, and denying it accordingly. Therefore, the first essential element for obtaining mandamus relief is met.

15.    We then turn to the question of whether the District Court has engaged in undue delay. Whether a delay is considered "undue" depends on a multitude of factors, but the most important one to consider is the complexity of the factual or legal issues being litigated. Here, however, there is no complexity. The motion to intervene is at odds with the voluntary dismissal of those same parties. The two filings are entirely irreconcilable; one simply has to be cast out in favor of

In re David Stebbins -Page 7 of 13- Petition for Exceptional Writs

the other. The only question is, which one?

16. This is not even a question. The two filings are entirely in different leagues in terms of how courts are supposed to deal with them. The intervenors admit that the motion to intervene is within the Court's discretion. In fact, it is so discretionary that, absent an affirmative right to intervene (which is not being alleged here), an order denying leave to intervene is not even ordinarily appealable. See Railroad Trainmen v. B. & OR CO., 331 US 519, 524 (1947).

17. By contrast, "a court has no discretion to exercise once a Rule 41(a)(1) dismissal is filed. It is well settled that under Rule 41(a)(1)(i), a plaintiff has an absolute right to voluntarily dismiss his action prior to service by the defendant of an answer or a motion for summary judgment … There is nothing the defendant can do to fan the ashes of that action into life. This … may not be extinguished or circumscribed by adversary or court … the defendant can't complain, and the district court lacks jurisdiction to do anything about it." See Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1077-78 (9th Cir. 1999).

18. In fact, *this exact tactic* (the filing of a motion to intervene in an attempt to circumscribe a voluntary dismissal) has already been tried, and failed. See Dukes v. Wal-Mart Stores, Inc., Case No. 01-cv-02252-CRB, 5 (N.D. Cal. Aug. 15, 2016)[1] ("[T]he Court lacks jurisdiction to adjudicate the Proposed Intervenors' Motion to Intervene"). See also Fort Sill Apache Tribe of Okla. v. United States, 2008 WL 2891654, at *1 (W.D. Okla. July 23, 2008)[2] ("The fact that a motion to intervene is pending at the time the notice is filed does not affect the automatic dismissal provided for by Rule 41(a)(1)(A)(i) and (B) … a motion to intervene should not affect the plaintiff's right to dismiss as of right").

19. This leads us to one inescapable conclusion: The intervenors' argument that "the Court does have discretion to deal with [the voluntary dismissal] in another way" is patently false. The law makes it abundantly clear that *nothing* can extinguish or circumscribe the dismissal. There is *nothing* the defendants can do to fan the ashes of the action to life. Nothing. At all. Period.

20. The only way a voluntary dismissal could even theoretically be circumscribed is if there were an equally-absolute interest or right that was at odds with the voluntary dismissal. At least then, we would be faced with a sort of "irresistible force vs. immovable object" scenario. But

---

1 The unpublished opinion can be found at https://scholar.google.com/scholar_case?case=1581261639147081396
2 The unpublished opinion can be found at https://scholar.google.com/scholar_case?case=7366738215539446155

since no such absolute right or interest has been offered in this case, that is not an issue here. The closest thing being offered to a countervailing interest is the public policy against inconsistent judgments, which is not an *absolute* policy.

21.     As a result, there is only one thing the District Court can legally do in this case: It must deny the motion to intervene solely on the grounds that it goes against the voluntary dismissal.

22.     Because the District Court has a plain, nondiscretionary duty to act in one specific manner, that is what this Court should compel it to do via a writ of mandamus. See Burlington Nort. & Santa Fe Ry. v. Dist. Court, MT, 408 F. 3d 1142, 1146 (9th Cir. 2005) (holding a writ of mandamus is appropriate when the petitioner's right is "clear and indisputable").

23.     Because of how cut and dry the case is, any delay, other than a few days after the normal hearing date, is necessarily "undue" for purposes of requiring a writ of mandamus. The District Judge has made it clear that he does not believe the voluntary dismissal should be an absolute right. But what the district judge feels the law should be is irrelevant. The bottom line is that *this is the law*, and so the district court must follow it. It's called the "Rule of Law," and it is a concept that has served humanity well for millennia.

24.     Therefore, I ask this Court to issue a writ of mandamus, ordering the District Court to issue orders on all currently-pending motions (including the ones mentioned in ¶ 8), and specifically to deny the motion to intervene solely on the grounds that the parties cannot circumscribe the voluntary dismissal in any way, shape, or form.

**Lack of availability of alternative methods.**

25.     It is well settled law that a writ of mandamus should not issue if alternative methods are available for obtaining the same relief. See Mallard v. United States Dist. Court for Southern Dist. of Iowa, 490 US 296, 309 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek"). In the instant case, no adequate alternative remedy is available. It is equally well established that a district court's refusal to rule on a pending motion can only be corrected by mandamus. See in re A Community Voice, 878 F. 3d 779 (9th Cir. 2017).

26.     As for the specific act of *denying* (as opposed to simply ruling on) the motion to intervene, that is also an issue that cannot be corrected by alternative remedies, such as appeal. If the District Court were to grant leave to intervene, and then I had to go through long and

expensive discovery against the intervenors while I patiently waited for a final, appealable order, just to appeal whether I should have even been subject to that long and expensive litigation in the first place, that would entirely undermine the whole point of me not having to go through all that. Therefore, a regular appeal cannot adequately protect my legal right to have the voluntary dismissal recognized and enforced by the district court.

### Prejudice I have suffered as a result of the delay

27. Of course, the delay itself is a problem for its own sake, but there is more to this case than just the district court not discharging its duties. As I mentioned earlier, this is a Capone Case. Just like how Al Capone how officially charged with tax evasion, but the main purpose of charging him was to get a mob boss off the streets by any means necessary, this too is a lawsuit that is officially filed for one reason (copyright infringement) but is primarily designed for another purpose (to stop harassment and doxxing). Therefore, it is a Capone Case: A case officially filed for one thing but which serves a different purpose in addition to the official thing.

28. Were it not for the motion to intervene, I would have had a default judgment by now. Such a judgment would have put a stop to the harassment and doxxing, owing to an injunction I asked for in Dkt. 127-20 (Memorandum in Support of Motion for Default Judgment), ¶¶ 69-86. But because of the motion to intervene delaying the entry of that judgment, the harassment by the individual defendants and their privies is not only continuing, but intensifying.

29. This means that every single day that the motion to intervene is not denied by the district court is actively harmful to me. For this reason, this Court should order the District Court to cease procrastination, post haste.

### Writ of Prohibition #1: Ordering the District Court not to consider the arguments contained in the motion to intervene or motion to dismiss.

30. Once the writ of mandamus is complied with, then the motion to intervene will be found to have never been lawfully put before the court in the first place. As a result, for the Court to consider these arguments (e.g. by officially classifying them as sua sponte considerations – which are allowed on a motion for default judgment – even if they were anything but sua sponte) would be no better than if the Court were to consider facts or legal arguments shouted at him by random protesters outside the courthouse as he was getting out of his car in the morning.

31. To protect against this, I ask this Court to issue a writ of prohibition ordering the District

Court not to consider the arguments contained in the motion to dismiss or motion to intervene while it is complying with the aforementioned writ of mandamus.

32.     I am not seeking this writ out of fear that their arguments might have merit. As I showed in my Opposition to Motion to Intervene, I have a strong and sincere belief that my copyright is indeed valid, and am prepared to litigate challenges to it. I even pointed out in that opposition that the intervenors will still get their day in court; they just need to wait their turn. See Dkt. 144, ¶ 31. Clearly, that means that I am not afraid to litigate this matter against them.

33.     Rather, I seek this writ out of principle. If the District Court were allowed to consider the arguments contained in the motion to intervene, it would effectively undermine the whole point of the aforementioned writ of mandamus, since it would effectively cause the ghost of the intervenors' frivolous motion to indirectly influence the case. Even if their motion to intervene were technically denied, they would still have quintessentially prevailed, thereby encouraging other parties in future to circumscribe voluntary dismissals (which is absolute and cannot be circumscribed in any way, shape, or form) through the simple expedient of filing a motion to intervene, not because they expect the motion to be granted, but just to get their arguments to the judge's ear, even unofficially. After all, it is highly unlikely that an intervenor would object to the district court issuing precisely the ruling they wanted, simply because they are not given de jure credit for coming up with the legal theory supporting the verdict. Such future behavior must not be encouraged, and this writ of prohibition is needed to ensure it is not encouraged.

**Writ of Prohibition #2: Ordering the District Court not to engage in any adverse actions against the Petitioner because of the voluntary dismissal.**

34.     The District Court acknowledged that I had the right to voluntarily dismiss the corporate defendants from the case, but also stated that, because he personally did not believe I should have this right, he intended to declare me a vexatious litigant if I did this again. See Dkt. 134.

35.     "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." See Bordenkircher v. Hayes, 434 US 357, 363 (1978) (citations and quotations omitted). "It is _well settled_ that under Rule 41(a)(1)(i), a plaintiff has an _absolute right_ to voluntarily dismiss his action" See Commercial, supra at 1077 (emphasis added). Very few rights in this country are

absolute, but this has been declared by the courts to be one of them.

36.     Put simply, you cannot abuse an absolute right. It is literally impossible. If a right can, even hypothetically, be abused, then that means that the abuse of said right would be an exception to the free exercise thereof. But if a right has even one exception to it, no matter how obtuse or circumstantial, then the right is not "absolute."

37.     Therefore, because a voluntary dismissal under FRCP 41(a)(1)(A)(i) is an "absolute right," and because the absoluteness of this right is "well settled" in the 9th Circuit, that means it is literally impossible for this right to be abused, even if that same conduct would constitute "abuse" of any other right.

38.     What's next? If a suspect were to (A) refuse to grant police entry into his home unless they have either a warrant or exigent circumstances, (B) invoke his fifth amendment right to silence at all stages of the prosecution, (C) demand the appointment of counsel in his case, and/or (D) refuse to plea bargain and insisted on a jury trial, and the judge arbitrarily determines that his exercise of these rights were done in order to "manipulate the litigation process … in bad faith to obtain a different result," would the judge then be at liberty to issue blatantly retaliatory adverse actions (up to an including harsher sentences upon conviction) against that man to punish him for his "blatant gamesmanship?"

39.     Even if an absolute right could theoretically be abused while still retaining its status as "absolute," the District Court's belief that the dismissal was done in an effort to "obtain a different result," rather than for the purpose I have given (to avoid tedious and unnecessary delay in the entering of default judgment against the individual defendants) is entirely without any evidenciary basis. Even if the District Court had the discretion to punish me for this, he should not be allowed to do so unless he has actual *proof* of my true motive, or at the very least an objectively reasonable factual basis for his belief that I am acting in bad faith. Since he has none (or at least has offered none), that alone is grounds for prohibiting him from acting on this personal animus.

40.     In fact, the modern version of the voluntary dismissal was meant to *stamp out* patterns of abuse found in the old version of the voluntary dismissal! See Cooter & Gell v. Hartmarx Corp., 496 US 384, 410 (199). Therefore, simply by using the modern version of the voluntary dismissal within the prescribed limitations (only once per defendant per case, and only before an

answer or summary judgment motion is filed), I am necessarily not abusing it.

41.   Furthermore, even if the voluntary dismissal could be abused, it still does not matter. The fact that Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074, 1078 (9th Cir. 1999) clearly states that "the district court lacks jurisdiction to do anything about it" automatically forecloses any potential for sanctions. It very clearly says "anything," and "anything" is an absolute word. This means that, even if my actions were abusive, the fact that the District Court **_lacks jurisdiction_** to do **_anything_** means that it is irrelevant if I broke the law.

42.   For this reason, the District Court's threat to declare me a vexatious litigant if I ever issue another voluntary dismissal that doesn't comport with his personal standards of what constitutes good faith is "a due process violation of the most basic sort," and is "patently unconstitutional." See Bordenkircher, supra.

43.   To safeguard against this, I ask this Court to issue a writ of prohibition ordering the District Court not to issue any adverse rulings against me that are motivated, even partially, by me having filed any past, present, or future Notice of Voluntary Dismissal under FRCP 41, and that, if he has already issued any adverse actions motivated even partially by same, to cease and desist the practice. **_You can't abuse an absolute right!_** It's as simple as that, and for the District Court to threaten to sanction me for any perceived abuse thereof (especially in the complete absence of actual evidence of bad faith) is patently unconstitutional.

## SERVICE ON RESPONDENTS

44.   Once I submit this Petition to the email address of prose_pleadings@ca9.uscourts.gov, I will file a "Notice of Application for Writ" in the district court case, using the ECF system. I will include a copy of this Petition with that notice, thereby complying with the requirements of Fed.R.App.P. 21(a)(1) to serve the district court judge and opposing parties.

## CONCLUSION

45.   The District Court has blatantly overstepped its authority by threatening to punish me for the exercise of this absolute right. It is engaging in undue delay by failing to pass judgment on a cut and dry issue in which it knows it has no discretion, simply because it does not, by its own admission, believe the law *should* favor me. Therefore, a writ of mandamus is necessary to put an end to the undue delay, to stop the intervenors from attempting to circumscribe that which cannot be circumscribed, and writs of prohibition are necessary to stop the district court from

retaliating against me for "abusing" that which cannot be abused.

Wherefore, premises considered, I respectfully pray that these extraordinary remedies be issued.

So requested on this, the 28th day of June, 2022.

_David Stebbins_
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com