David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                        PLAINTIFF

VS.                                    Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                                  DEFENDANTS

### MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF, AND INCORPRATED SUPPLEMENTAL BRIEF, IN SUPPORT OF [159] MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND [162] MOTION TO SET ASIDE JUDGMENT

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Leave to File Supplemental Brief in Support of Dkt. 159 and 162. If granted, then let this document also serve as the supplemental brief.

**Sample Argument**

1. To give the Court just a taste of what sort of arguments I can bring to the table if I am allowed my day in court (assuming the Court is willing to even give me my constitutional right to my day in court), consider this. Please keep in mind that this is just a sample argument. I will provide more if the motion for leave to file a motion for reconsideration is granted.

2. The Court initially held my accidental livestream to lack minimal creativity primarily because I wasn't intending to do anything copyrightable when I made the accidental livestream. See Dkt. 158, p. 6, Lines 8-9 ("Here, Plaintiff was not engaged in the process of creating an intended work because he the recording occurred without his knowledge"). This, according to the Court, is what distinguishes this case from Alfred v. Catalda, because in that case, the copyright holder was still intending to create something copyrightable.

3.      However, there are two problems with this logic. The first is that the copyright holder in Alfred was, in fact, NOT trying to create something copyrightable! Had things gone according to plan, the plaintiff in that case would have merely created a 1-to-1 recreation of a public domain work! See id at 104 (where the defendants argue that "plaintiff's mezzotints could not validly be copyrighted because they are reproductions of works in the public domain"). So just how distinguishable is that case from this one, really? Clealry, that precedent does not hold that you can copyright an accidental work if, and only if, you are intending to create something copyrightable to begin with. Clearly, they held the exact opposite: That even if the accidental part of the creation is the only original element, that's still good enough to support a brand new copyright!

4.      Second, there is absolutely no evidence appearing anywhere in the SAC – or anywhere in the world, for that matter, aside from the intervenors uncorroborated accusations – that I didn't intend to create any intended work when I created the accidental livestream by mistake! In fact, if we take that logic and run with it (that I can still copyright the accidental livestream as long as I was intending to create *something* copyrightable at the time my errant keystroke accidentally turned on the streaming software), then the odds are overwhelmingly likely that I do indeed satisfy that requirement.

5.      Think about it: At the start of the accidental stream, I can clearly be seen sitting at my computer, and typing at the keyboard. What exactly I was doing is lost to history, but it is clear that I was doing *something that required the use of a keyboard*. So this begs the question: Of all the things I could have been doing that would have required a keyboard, what among them would not have been copyrightable?

6.      Bear in mind that even documents meant for purely personal use can still be protected by copyright. For example, personal letters meant entirely for private communication are protectable by copyright. See "Toward a Fair Use Standard", 103 Harv. L. Rev. 1105 (1990), Page 1117 ("In the early history of copyright, British courts debated whether letters written for private communication should receive any protection at all from the Statute of Anne.5 6 The question was soon satisfactorily settled in favor of protection"). Meanwhile, "the great American

novel, a report prepared as a duty of employment, a shopping list, or a loanshark's note on a debtor's door saying 'Pay me by Friday or I'll break your goddamn arms' are all protected by the copyright." See *id* at 1116-17.

7. Perhaps I was typing and sending an email when I accidentally turned the stream on. If private letters can be copyrighted, surely private emails can.

8. Perhaps I was entering a comment onto a Youtube video or issuing a tweet on Twitter. But again, if a mere shopping list can be copyrighted, those comments certainly can as well. In fact, those comments would probably receive even *more* copyright protection than a mere shopping list, since such comments would, by their very nature, be made "in contemplation of publication," which Pierre Leval says is a major factor in copyrightability.

9. Meanwhile, if I were operating my *video editing software*, trying to create a video to upload to Youtube, then I absolutely, definitely would have been creating something copyrightable!

10. Put simply, even though we do not know exactly what I was doing when I accidentally turned the streaming software on, the fact that what I was doing required the use of a keyboard means it is overwhelmingly likely that what I was doing was copyrightable, much like how, in a hypothetical situation where we don't know exactly what a person was doing, but we know it required the use of a *guitar*, that means it is overwhelmingly likely that what he was doing was copyrightable. Sure, an image of a keyboard does not readily conjure up ideas in a normal person's mind of creativity and art the same way an image of a guitar does, but if you think about how low the threshhold is for copyrightability in the first instance, it is irrefutable that a keyboard is just as much an instrument for copyrightable expression as a guitar is.

11. Therefore, the Court's finding of fact that I "was not engaged in the process of creating an intended ]copyrightable] work" is clearly devoid of merit, and if the judge weren't furious at me for issuing that voluntary dismissal, he might have been calm and reasoned enough to see that on his own. All the more reason why the judge should recuse himself.

12. This is the third time the intervenors and court have attempted to manufacture some deficiency in my claim to copyright protection that was entirely cut from whole cloth. First, the

intervenors argued that, because my stream was accidental, it was devoid of any and all creative expression. When I pointed out several points where I engaged in creative expression, they switched horses and argued that I did not position the camera, focus the lens, direct the scenery, and so on and so forth. But then, I provided an Objection to Reply Evidence where I explained that I absolutely did do these things. Then, the Court swoops in and makes its own ruling, independently of the intervenors, by finding that I have to at least intend to do something copyrightable in order for an accidental work created as a side effect of that otherwise intentional work to likewise be copyrightable. Then I debunked that argument by showing that I, in all likelihood, have indeed done this. This is honestly getting ridiculous at this point. What's going to be your next argument for invalidating the copyright?

13. The bottom line is this: Aside from the accident itself, there is nothing – not one single solitary thing – wrong with my accidental livestream that renders it uncopyrightable. The only grounds you could possibly have for arguing that my accidental livestream is not copyrightable is if you were to argue that all accidental works are categorically and inherently devoid of copyrightability. No need to argue that, because it's an accident, it necessarily is lacking in this or that, because accident *alone* invalidates copyright.

14. But you can't argue that, because both the intervenors and this Court have already conceded that accidental works can sometimes be copyrighted, as long as the copyright holder was intending to create something when he accidentally created a side work by mistake.

15. If the Court were to change its tune now, and hold Alfred to be entirely inapplicable (rather than merely distinguishable), then it would be announcing with trumpets to the Court of Appeals that you are biased against me and therefore must recuse. Why? Because if you concede that you were in error when you made the finding of fact that I wasn't in the process of creating an intended work, but then you turn around and conjure up a *fourth* argument out of thin air to justify finding my copyright to be invalid, then you are effectively admitting that all you really seek to do is make sure that I – David Stebbins – cannot have a valid and enforceable copyright. At that point, it would be on record that you (A) decided that I should not get my day in court, and (B) then proceeded to pull some pretextual excuse out of thin air for why I shouldn't be

entitled my day in court, rather than the other way around. At that point, you would effectively be admitting with trumpets that you are throwing my cases out solely because you don't like me, which means the Court of Appeals will likely reverse and order you to recuse.

16.  But if you were to instead double down on your finding of fact, and insist that you were right all along when you found that I "was not in the process of creating an intended work," and that the arguments contained in ¶¶ 5-9 of this brief are manifestly untrue, then your judgment will likely be reversed for clear error. There is absolutely no evidence, appearing anywhere on the record – let alone the SAC, which is the only part of the record the Court is supposed to consider on a Rule 12(b)(6) motion to dismiss – which supports this finding of fact. You literally just made that up!

17.  Again, I would like to remind the Court that this is only meant as a sample argument, While I certainly intend to raise this argument (with even more details and evidence to boot) if granted leave to file the motion for reconsideration, it is not the only one I plan to argue.

### Conclusion

18.  This Court has made it clear that it doesn't like me. It doesn't like the fact that I issued that voluntary dismissal, and now it seeks to punish me for doing it. It has already admitted to this on the record, so I don't even have to prove it. The Court needs to set aside the judgment, vacate Dkt. 158 (Order Dismissing Action) and then recuse, allowing a new judge to come in and issue his own ruling on the motion to intervene. It's the only way to protect my constitutional right to an impartial judge.

So requested on this, the 27th day of July, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
