David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                                     PLAINTIFF

VS.                                             Case 3:21-cv-04184-JSW

KARL POLANO, et al                                                                              DEFENDANTS

### REPLY IN SUPPORT OF MOTION TO SET ASIDE JUDGMENTT

  Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Reply in Support of Motion to Set Aside Judgment in the above-styled action.

1.   The Intervenors' entire argument for opposing the motion to set aside judgment consists entirely of the fact that my motion is allegedly redundant of arguments already rejected by the Court. No other grounds for opposing the motion have been submitted.

2.   I would like to emphasize that the Motion for Leave to File a Motion for Reconsideration – which is intertwined with this motion – was not meant to be dispositive on its own. As per the local rules, I cannot simply file the motion for reconsideration without first seeking leave of Court. If leave is granted, then and only then will I file the motion for reconsideration which will contain the actual arguments, facts, and evidence. For this reason, the Court may see fit to put off on ruling on this motion (to set aside judgment) until after it has had an opportunity to consider the actual, proper motion for reconsideration which has yet to be filed.

3.   Even barring that, there are several issues raised, even in the motion for leave, that were not "rejected" by the Court, including but not limited to the fact that there is still a claim that has yet to be adjudicated, the fact that this Court, by its own admission, holds a grudge against me for issuing the voluntary dismissal, and the fact that, because my factual allegations were not based on personal knowledge, they are not admissible. The Court never explicitly rejected that

last argument. It instead appeared to act as if it had discretion to consider the arguments. It appeared as if the Court didn't realize that it was a challenge to admissibility, but instead perceived it as a "That's not what I said" kind of argument.

4.  Also, the Court stated that I had not provided any legal authority stating that motions to intervene cannot be used to counter a voluntary dismissal. I am offering to provide the legal authorities which the Court said it wanted to see. But I need leave from the Court to file the motion to reconsider before I can do that.

5.  Then, there are the issues which I raised, but which the Court manifestly ignored, such as evidence that the minor error made when I categorized the accidental stream as a "dramatic work" was not good enough to invalidate the entire registration, or the fact that Commercial Space Management Co. v. Boeing Co., 193 F. 3d 1074 (9th Cir. 1999) already provided an absolute bar against any/all forms of circumventing a voluntary dismissal, so addressing the specific theory of a motion to intervene was not necessary. Per Local Rule 7-9(b)(3), manifestly ignoring evidence or arguments is grounds for filing a motion for reconsideration.

**Sample Argument**

6.  To give the Court just a taste of what sort of arguments I can bring to the table if I am allowed my day in court (assuming the Court is willing to even give me my constitutional right to my day in court), consider this. Please keep in mind that this is just a sample argument. I will provide more if the motion for leave to file a motion for reconsideration is granted.

7.  The Court initially held my accidental livestream to lack minimal creativity primarily because I wasn't intending to do anything copyrightable when I made the accidental livestream. See Dkt. 158, p. 6, Lines 8-9 ("Here, Plaintiff was not engaged in the process of creating an intended work because he the recording occurred without his knowledge"). This, according to the Court, is what distinguishes this case from Alfred v. Catalda, because in that case, the copyright holder was still intending to create something copyrightable.

8.  However, there are two problems with this logic. The first is that the copyright holder in Alfred was, in fact, NOT trying to create something copyrightable! Had things gone according to plan, the plaintiff in that case would have merely created a 1-to-1 recreation of a public domain

work! See id at 104 (where the defendants argue that "plaintiff's mezzotints could not validly be copyrighted because they are reproductions of works in the public domain"). So just how distinguishable is that case from this one, really? Clearly, that precedent does not hold that you can copyright an accidental work if, and only if, you are intending to create something copyrightable to begin with. Clearly, they held the exact opposite: That even if the accidental part of the creation is the only original element, that's still good enough to support a brand new copyright!

9.      I honestly don't know how the Court could possibly have not realized this. That excerpt was literally in the same paragraph as the part about defects in musculature or bad eyesight, an excerpt that was quoted by the Court! What, did the Court not even *read* that case law before it decided it was distinguishable?! If so, why not? Is it because the Court was so overflowing with rage and hatred towards me personally that it was going to find a distinction no matter what, and so the minutia didn't matter? If so, that only further cements my entitlement to a recusal because the judge is no longer impartial.

10.     Second, there is absolutely no evidence appearing anywhere in the SAC – or anywhere in the world, for that matter, aside from the intervenors uncorroborated accusations – that I didn't intend to create any intended work when I created the accidental livestream by mistake. In fact, if we take that logic and run with it (that I can still copyright the accidental livestream as long as I was intending to create *something* copyrightable at the time my errant keystroke accidentally turned on the streaming software), then the odds are overwhelmingly likely that I do indeed satisfy that requirement.

11.     Think about it: At the start of the accidental stream, I can clearly be seen sitting at my computer, and typing at the keyboard. What exactly I was doing is lost to history, but it is clear that I was doing *something that required the use of a keyboard*. So this begs the question: Of all the things I could have been doing that would have required a keyboard, what among them would not have been copyrightable?

12.     Bear in mind that even documents meant for purely personal use can still be protected by copyright. For example, personal letters meant entirely for private communication are

protectable by copyright. See "Toward a Fair Use Standard", 103 Harv. L. Rev. 1105 (1990), Page 1117 ("In the early history of copyright, British courts debated whether letters written for private communication should receive any protection at all from the Statute of Anne. The question was soon satisfactorily settled in favor of protection"). Meanwhile, "the great American novel, a report prepared as a duty of employment, a shopping list, or a loanshark's note on a debtor's door saying 'Pay me by Friday or I'll break your goddamn arms' are all protected by the copyright." See *id* at 1116-17.

13. Perhaps I was typing and sending an email when I accidentally turned the stream on. If private letters can be copyrighted, surely private emails can.

14. Perhaps I was entering a comment onto a Youtube video or issuing a tweet on Twitter. But again, if a mere shopping list can be copyrighted, those comments certainly can as well. In fact, those comments would probably receive even *more* copyright protection than a mere shopping list, since such comments would, by their very nature, be made "in contemplation of publication" (since all Youtube comments and tweets are public by default), which Pierre Leval says is a major factor in copyrightability. See *id* at 1117 ("there is a meaningful difference between writings ... made in contemplation of publication, and documents written for a private purpose").

15. Meanwhile, if I were operating my *video editing software*, trying to create a video to upload to Youtube, then I absolutely, definitely would have been creating something copyrightable! In fact, this is, by far, the thing I was most likely doing at the start of the stream (which is when the errant keystroke happened), for reasons I will discuss if I am given leave to file the motion to reconsider.

16. Put simply, even though we do not know exactly what I was doing when I accidentally turned the streaming software on, the fact that what I was doing required the use of a keyboard means it is overwhelmingly likely that what I was doing was copyrightable, much like how, in a hypothetical situation where we don't know exactly what a person was doing, but we know it required the use of a *guitar*, that means it is overwhelmingly likely that what he was doing was copyrightable. Sure, an image of a keyboard does not readily conjure up ideas in a normal

person's mind of creativity and art the same way an image of a guitar does, but if you think about how low the threshhold is for copyrightability in the first instance, it is irrefutable that a keyboard is just as much an instrument for copyrightable expression as a guitar is.

17. Therefore, the Court's finding of fact that I "was not engaged in the process of creating an intended ]copyrightable] work" is clearly devoid of merit, and if the judge weren't furious at me for issuing that voluntary dismissal, he might have been calm and reasoned enough to see that on his own. All the more reason why the judge should recuse himself.

18. This is the third time the intervenors and court have attempted to manufacture some deficiency in my claim to copyright protection that was entirely cut from whole cloth. First, the intervenors argued that, because my stream was accidental, it was devoid of any and all creative expression. When I pointed out several points where I engaged in creative expression, they switched horses and argued that I did not position the camera, focus the lens, direct the scenery, and so on and so forth. But then, I provided an Objection to Reply Evidence where I explained that I absolutely did do these things. Then, the Court swoops in and makes its own ruling, independently of the intervenors, by finding that I have to at least intend to do something copyrightable in order for an accidental work created as a side effect of that otherwise intentional work to likewise be copyrightable. Then I debunked that argument by showing that I, in all likelihood, have indeed done this. This is honestly getting ridiculous at this point. What's going to be your next argument for invalidating the copyright?

19. The bottom line is this: Aside from the accident itself, there is nothing – not one single solitary thing – wrong with my accidental livestream that renders it uncopyrightable. The only grounds you could possibly have for arguing that my accidental livestream is not copyrightable is if you were to argue that all accidental works are categorically and inherently devoid of copyrightability.

20. But you can't argue that, because both the intervenors and this Court have already conceded that accidental works can sometimes be copyrighted, as long as the copyright holder was intending to create something when he accidentally created a side work by mistake.

21. If the Court were to change its tune now, and hold Alfred to be entirely inapplicable

(rather than merely distinguishable), then it would be announcing with trumpets to the Court of Appeals that you are biased against me and therefore must recuse. Because if you concede that you were in error when you made the finding of fact that I wasn't in the process of creating an intended work, but then you turn around and conjure up a *fourth* argument out of thin air to justify finding my copyright to be invalid, then you are effectively admitting that all you really seek to do is make sure that I – David Stebbins in particular – cannot have a valid and enforceable copyright. At that point, it would be on record that you (A) decided that I should not get my day in court, and (B) then proceeded to pull some pretextual excuse out of thin air for why I shouldn't be entitled my day in court, rather than the other way around. At that point, everyone could see you, on the record, literally just making up the rules as you go along.

22.  At that point, you would effectively be admitting with trumpets that you are throwing my cases out solely because you don't like me, which means the Court of Appeals will likely reverse and order you to recuse.

23.  But if you were to instead double down on your finding of fact, and insist that you were right all along when you found that I "was not in the process of creating an intended work," and that the arguments contained in ¶¶ 13-15 of this Reply are manifestly untrue, then your judgment will likely be reversed for clear error. There is absolutely no evidence, appearing anywhere on the record – let alone the SAC, which is the only part of the record the Court is supposed to consider on a Rule 12(b)(6) motion to dismiss – which supports this finding of fact. You literally just made that up, simply because you personally don't like me because of that voluntary dismissal.

24.  Again, I would like to remind the Court that this is only meant as a sample argument, While I certainly intend to raise this argument (with even more details and evidence to boot) if granted leave to file the motion for reconsideration, it is not the only one I plan to argue. This is just to show the Court that I have a good chance of showing that I do indeed have a valid copyright to enforce, so unless the Court truly is throwing my cases out purely out of spite and personal dislike towards me, there is no good reason for the Court to deny me leave to file this motion for reconsideration. The only reason to deny leave is if the Court is actually afraid that I

might be able to show an entitlement to relief if leave were granted, but then the Court is admitting to holding a bias against me.

### Conclusion

25.	This Court has made it clear that it doesn't like me. It doesn't like the fact that I issued that voluntary dismissal, and now it seeks to punish me for doing it. It has already admitted to this on the record, so I don't even have to prove it. The Court needs to set aside the judgment, vacate Dkt. 158 (Order Dismissing Action) and then recuse, allowing a new judge to come in and issue his own ruling on the motion to intervene. It's the only way to protect my constitutional right to an impartial judge.

So requested on this, the 3rd day of August, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com