David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                    PLAINTIFF

VS.                                    Case 3:21-cv-04184-JSW

KARL POLANO, et al                                          DEFENDANTS

## MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Protective Order, ordering the intervenor defendants to cease and desist their baseless, uncorroborated accusations of bad faith against me, unless they can provide some objective evidence to support their claims.

### I: Preliminary Matters

#### I-1: Table of Contents

| Section | Page |
|---|---|
| **I: Preliminary Matters** | 1 |
| I-1: Table of Contents | 1 |
| I-2: Table of Authorities | 2 |
| **II: Legal Basis for the Motion** | 3 |
| **III: Logical Fallacies** | 4 |
| III-1: Invincible Ignorance | 4 |
| III-2: Appeal to the Stone | 4 |
| III-3: Proof by Assertion | 5 |
| III-4: Ad Hominem | 5 |
| **IV: Baseless Accusations** | 6 |

IV-1: Accusations that I am simply
attempting to silence criticism ..................... 6

IV-2: Accusations of me "abusing"
the court system ..................... 7

IV-3: The Intervenors' inflammatory remarks
were not even necessary to the motion to relate. ..................... 8

**V: Alleged "Frivolousness" of New Case** ..................... 9

V-1: "Obviously" Fair Use ..................... 9

V-2: The sufficiency of my claim has
already been decided in my favor
by not one, but two tribunals. ..................... 10

V-3: Intervenors' Contempt of Court ..................... 12

V-4: ATTA has spoiled the evidence, thereby
killing the intervenors' hopes of getting
the case thrown out on the pleadings. ..................... 14

V-5: ATTA's spoliation kills the
intervenors' only means of relating
that case to this one. ..................... 15

**VI: Sanctions** ..................... 16

**VII: Conclusion** ..................... 16

I-2: Table of Authorities

| Statutes & Rules | Page(s) |
| --- | --- |
| • § 1915 | 11,12,14 |
| • Civil Local Rule 3-12 | 15 |
| • Code of Conduct of U.S. Judges, Canon 3(2) | 3 |
| • Code of Conduct of U.S. Judges, Canon 3(3) | 3 |

| | | |
|---|---|---|
| • | Fed.R.Civ.P. 11(b) | 3 |
| • | Fed.R.Civ.P. 11(c) | 3,9 |

**Case Law**                                                         **Page(s)**

| | | |
|---|---|---|
| • | Bell Atlantic Corp. v. Twombly, 550 US 544, 1975 (2007) | 14 |
| • | Campbell v. Acuff-Rose Music, Inc., 510 US 569, 590 (1994) | 10,16 |
| • | Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F. 2d 1531, 1540 (9th Cir. 1986) | 4,16 |
| • | Haines v. Kerner, 404 US 519 (1972) | 4 |
| • | Leon v. IDX Systems Corp., 464 F. 3d 951 (9th Cir. 2006) | 15 |
| • | Rogers v. Koons, 960 F. 2d 301, 312 (2nd Cir. 1992) | 10 |

## II: Legal basis for motion

1.      A judge has a duty, not only to himself be dignified, respectful, and courteous to all persons in his court, but also to require same of all counsel, parties, and witnesses subject to his authority. See Canon 3(3) of the Code of Conduct of United States Judges. They also have a duty to maintain decorum in all judicial proceedings. See Canon 3(2) of same.

2.      These two requirements convey a duty of a judge to require all parties involved in a judicial proceeding to exercise good faith in all matters. As we are about to see, the intervenor defendants' repeated accusations of vexatiousness, abuse, and a desire on my end to use copyright litigation simply to evade criticism rather than protect my genuine legal rights, is the epitome of bad faith in litigation.

3.      Then, there is Rule 11(b) of the Federal Rules of Civil Procedure. This rule requires all pleadings filed with the court to be made in good faith, with evidence to support their factual contentions and nonfrivolous legal citations in support of their arguments of law. Factual

assertions with no evidence (or even the *attempt* at evidence) to support them are not allowed, and Rule 11(c) gives the Court the power to sanction conduct which violates this rule. Furthermore, when a violation occurs, "[s]anctions under Rule 11 are mandatory." See Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F. 2d 1531, 1540 (9th Cir. 1986).

4.      In addition to these requirements, I also ask the judge to take into consideration that I am pro se, and acknowledge any other relevant legal authorities that I may have overlooked. See Haines v. Kerner, 404 US 519 (1972).

### III: Logical fallacies: Invincible ignorance, appeal to the stone, proof by assertion, and ad hominem.

5.      The intervenor defendants have used these four logical fallacies multiple times in their smear campaign against me in this case. The use of these fallacies, especially to the extent that the intervenors rely on them, constitute bad faith per se.

#### III-1: Invincible Ignorance

6.      "Invincible ignorance" refers to when a party adamantly refuses to entertain even the possibility that he is in the wrong. This barely qualifies as a logical fallacy at all. Rather, it is a dogged and steadfast refusal to apply literally any logic whatsoever. See https://www.palomar.edu/users/bthompson/Invincible%20Ignorance.html.

7.      Example:

- Teacher: I saw you looking at Jessica's paper during the test.
- Student: No you didn't.

8.      A refusal to even entertain the opposing side's position, instead dismissing it out of hand, is bad faith per se.

#### III-2: Appeal to the Stone

9.      Appeal to the stone (also known as argument ad labitem) is similar to invincible ignorance, but it typically involves a passive laziness on the part of the one making the fallacy (aka a simple passive lack of interest in considering their position any deeper), whereas invincible ignorance is more of an active refusal to consider any counter arguments or logic. See https://cognitive-liberty.online/argumentum-ad-lapidem-appeal-to-the-stone/.

10.     Example:

- Speaker A: Infectious diseases are caused by microbes.

- Speaker B: What a ridiculous idea!

- Speaker A: How so?

- Speaker B: It's obviously ridiculous.

III-3: Proof by Assertion

11.     Proof by assertion is when the fallacious arguer attempts to convince people of something, without any evidence to support their claim, simply by repeating it over and over again. See https://springhole.net/logical-fallacies/proof-by-assertion.htm ("The simple art of repeating one's argument over and over regardless of whether one has any real evidence to back it up, and indeed, whether the argument has been completely demolished by evidence from the opposing side").

12.     This often overlaps with invincible ignorance and appeal to the stone. Whereas the previous two fallacies concerned the arguer's response at each individual verbal exchange, this fallacy focuses on the arguer's strategy on a macro level.

III-4: Ad Hominem

13.     Last but not least, the ad hominem is an attack on the opposing side's character, rather than on his argument or evidence.

14.     Example: After Sally presents an eloquent and compelling case for a more equitable taxation system, Sam asks the audience whether we should believe anything from a woman who isn't married, was once arrested, and smells a bit weird. See https://yourlogicalfallacyis.com/ad-hominem.

15.     Unlike the past three fallacies, this one is not necessarily bad faith per se. Sometimes, it is logically valid to use this. For example, if a witness in court has a perjury conviction to his record, or he is a medically-diagnosed pathological liar who has refused treatment for his condition[1], it is not bad faith to point these things out during cross examination in an attempt to

---

[1]   The refusal of treatment is essential, here, because his credibility may remain intact if he has three years worth of rigorous therapy and medications, and has shown vast improvement in his pathological lying. At that point, trying to use his years-old diagnosis, in spite of all his improvement, would still be bad faith.

discredit the witness's otherwise uncorroborated testimony. However, in order for this tactic to be made in good faith, (A) the attack on the opponent's character must be of astronomical magnitude, and (B) it must *directly* relate to the thing the arguer is attempting to discredit him on. For example, if a witness has a rape conviction on his record, that certainly is a truly reprehensible crime, but it does not mean he has no credibility to talk about the robbery he personally experienced at the convenience store where he now works. Attempting to introduce this prior conviction in order to discredit him would be grossly inadmissible, and would necessarily be bad faith.

### IV: Intervenor defendants' baseless accusations

16.    With that said, let us discuss the uncorroborated accusations of the intervenor defendants against me, and show how they are all made in bad faith.

<u>IV-1: Accusations that I am simply attempting to silence criticism</u>

17.    One recurring theme in the intervenors' motions is that I am issuing these DMCA Takedowns, and filing these copyright infringement lawsuits, just to silence online criticism about me. It is important to note that they are not simply accusing me of silencing criticism in the process of getting what I actually want. They are insisting that my sole, exclusive motive is not to stop people from harassing me, but instead JUST to silence criticism, and absolutely nothing else.

18.    Despite my repeated attempts to explain that all I want is an end to the harassment, that I would be much more receptive to criticism if there was no harassment, and even show ample proof that the harassment I have endured is absolutely massive, these pleas consistently fall on deaf ears (e.g. invincible ignorance and/or appeal to the stone). Instead, the intervenors just keep insisting, over and over again (proof by assertion) that I am simply looking to silence criticism, while offering precisely zero evidence to back up this outlandish claim.

19.    If they want to continue to make this assertion, they should be required to show some objective proof that it is being made in good faith. I have already provided mountains of evidence, documenting only a portion of the harassment that has been levied against me. Surely, they can't deny that the harassment *exists*, so do they have some objective evidence that this

harassment is merely pretextual, that I would actually be okay with the harassment if the criticism wasn't also part of it, rather than the other way around? If so, why haven't they shown it yet?

20.     Indeed, I have even shown evidence that proves that I am indeed willing to accept criticism with open arms, as long as it is not coupled with harassment. In the case of Stebbins v. SidAlpha, 4:23-cv-00321-DMR, Dkt. 1, ¶¶ 100(a) & 100(b), I provided links to two instances where people criticized my work, but I not only allowed the comments to stay up, but actively engaged with them in good faith. Only by blatantly ignoring the evidence presented (appeal to the stone as well as proof by assertion) can the intervenors still maintain their loudly-insisted-upon claim that I am simply looking to evade criticism under the thinly-veiled pretext of not wanting to be harassed.

21.     I ask that the Court order the intervenor defendants to stop making this baseless accusation against me, unless it stops being baseless. They should be required to show some actual proof of pretextual motive in order to continue making this claim.

<u>IV-2: Accusations of me "abusing" the court system</u>

22.     Once again, it only counts as "abuse," and my lawsuits only qualify as "frivolous," because they say they are.

23.     They attempt to justify these accusations by pointing out the fact that I have filed some cases *many many years ago* that were deemed vexatious. They completely ignore the fact that I actually spent several years not filing lawsuits like a compulsive idiot, and only recommenced filing with the start of *this very* lawsuit in the summer of 2021, after the harassment, doxxing, and dogpiling against me got too much to bear. This is on par with the aforementioned footnote example, where a medically-diagnosed compulsive liar spends several years without an outburst of pathological lying due to the intensive therapy and medication he received.

24.     Instead, the intervenors attempt to argue that, because I've done morally questionable things in the past, I am automatically and necessarily guilty of doing them now. This is a bad faith ad hominem and it should be admonished.

25.     They *claim* that my current lawsuits are a continuation of my past because the current

lawsuits are "clearly" frivolous. To that end, I defer you to the aforementioned arguments that they are merely using the "appeal to the stone" and "proof by assertion" fallacies.

26.     During their motion to relate, they point out the three petitions for writ of mandamus that I filed with the 9th Circuit Court of Appeals (one of which was over a decade ago), but they do not even *try* to explain how these petitions were frivolous. They literally just list the case numbers, and that's it. It's a blatant case of proof by assertion and appeal to the stone.

27.     The defamation lawsuit against SidAlpha is especially informative of the intervenors' bad faith. When this court issued its biased ruling against me, it conceded that I was aggrieved by the harassment, but that is not relevant to copyright. I disagree with that interpretation of the law and intend to appeal it, but for the time being, that is the judgment in this case.

28.     So, what did I do? I filed a new lawsuit, this time alleging defamation, a tort where the harassment, malice, and objectively false statements about me are indeed germane to the proceeding.

29.     In short, I corrected the stuff that the Court said was frivolous. So how is it still frivolous?! Jesus, I can't do anything right, can I?!

30.     No, it's frivolous because ***I*** (David Stebbins in particular) am considered frivolous. My name being listed as the Plaintiff is what makes it frivolous, to the exclusion of all other factors. No further consideration into the matter is necessary.

31.     It's like I said in the Opposition to the Motion for Administrative Relief: What they really want is not for me to stop filing *frivolous* lawsuits, but to stop filing lawsuits altogether. They want me to cease and desist my exercising of my constitutional right to court access, period.

32.     But that is, in itself, a patently frivolous request, and they should be sanctioned for it.

  IV-3: The Intervenors' inflammatory remarks were not even necessary to the motion to relate.

33.     Not only are the intervenors' accusations against me based on literally no facts whatsoever, but they weren't even necessary for their motion!

34.     All they had to do, for their motion, was point out the similarities between this case and that one. All they had to do was demonstrate how the same parties, property, transactions, and/or events were involved.

35.     Since they obviously couldn't draw similarities where none exist (see my Opposition to that Motion for more details), so they have to resort to inflammatory personal attacks to make their case seem less frivolous than it actually is. According to the intervenors, the cases are "related" because they involve the same *alleged* "pattern" of frivolous filings, but the lawsuits are only frivolous because they (the intervenors) say they are.

36.     I'm not sure what this logical fallacy is called, but it's definitely actionable under Fed.R.Civ.P. 11(c).

## V: Alleged Frivolousness of Stebbins v. Google LLC

### V-1: Accusations that I claim infringement over an "obviously" fair use

37.     The intervenors continue their campaign of baseless accusations against me by insisting that the infringing channel icon is "obviously" and "clearly" fair use. But at no point do they even *attempt* to show any evidence for any of their points.

38.     They insist that the icon's "entire purpose … is to criticize Plaintiff," but they make no effort to explain exactly what that criticism is. As I explained in the complaint in the case of Stebbins v. Google LLC, the icon is nothing more than a mish-mash of nebulous "stuff" slapped onto my face. There is no actual criticism or commentary. I even contrasted the icon with the channel art to demonstrate how the icon falls short of the legal threshold to be considered "transformative."

39.     So what do they offer in rebuttal to this argument? NOTHING! Absolutely nothing. It's entire purpose is to criticize me … because they say so. It is blatant invincible ignorance.

40.     Next, they insist that the underlying work is "minimally creative." How exactly they come to this conclusion is anyone's guess, because they certainly don't tell us. The underlying work consists of nearly four hours of exchanging opinions with my debate partner. How can a nearly-four-hour long video be "minimally" anything? Because the intervenors say so; that's how!

41.     Third, let us not forget that the third factor can still weigh against fair use if the infringer uses the "heart" of the work. Even if we accept that the 4-hour video was "minimally creative," that just means that the face that made it into ATTA's icon was the most interesting part of the

video, thereby making it the heart. So even in the best case scenario, either the second or third factors can weigh in favor of fair use, but not both.

42.     Finally, they make a blanket, and baseless, assertion that "the channel's use of that screenshot has no impact whatsoever on the market for Plaintiff's video." They offer absolutely evidence of this alleged lack of impact. They don't even *try* to. The mere fact that they claim it does not make it obvious.

43.     Bear in mind that, under fair use law, it is not necessary that the infringing use take views away from my video, specifically. Even if the infringing use cuts into a *derivative* market, that still counts as a market substitute. See Campbell v. Acuff-Rose Music, Inc., 510 US 569, 590 (1994) ("The enquiry must take account not only of harm to the original but also of harm to the market for derivative works") (quotations omitted). So if the use of this icon cuts into my legal right to charge licensing fees for the use of my copyrighted works as channel icons (or, perhaps, if someone wanted to put that image on a tee shirt or coffee mug, so on and so forth), that still counts as a market substitute. I don't even have to be actively involved in the market at the present moment for it to count. See Rogers v. Koons, 960 F. 2d 301, 312 (2nd Cir. 1992) (counting not only present markets, but also "any other derivative use he might plan").

44.     And yet, the intervenors claim that there is "absolutely no adverse effect" on the market for my video, despite the low threshold for what counts as a "market substitute," simply because they say so.

45.     All three of these claims are blatant examples of "proof by assertion." They say it, but they don't *prove* it. Their claims *are* the proof.

46.     This is blatant bad faith, designed solely to delay the litigation, and it should be stamped out.

<u>V-2: The sufficiency of my claim has already been decided</u>

<u>in my favor by not one, but two tribunals.</u>

47.     As I pointed out in the Opposition to Administrative Motion, the intervenors also ask the Court to stay their duty to respond in the case of Stebbins v. Google until it has had a chance to review the complaint under § 1915 for failure to state a claim. They aren't simply filing a motion

to dismiss (in fact, they explicitly state that they reserve the right to do that if the complaint passes § 1915 review). What they conveniently ignore is that my case has already been reviewed accordingly, no once but twice, by impartial tribunals.

48.     In her order granting my Application for Leave to Proceed In Forma Pauperis, she stated outright that she did so after "[h]aving considered the ... complaint." See 3:23-cv-00322-LJC, Dkt. 6, lines 1-2. Bear in mind that she only did this *after* I had uploaded a Corrected Complaint, because I received an "electronic filing error" notice telling me that the original complaint was missing a few pages! So Judge Cisneros certainly must have actually *read the Complaint* first. Otherwise, how could she possibly have known about those missing pages?

49.     Prior to that, I had filed this infringement claim with the newly-established Copyright Claims Board (or CCB, for short). In case the Court was not already aware, the CCB *always* reviews *every* claim brought before it before it authorizes the plaintiff to serve process on the defendant. Service is not even allowed under the CCB until they manually sign off on the claim, and since there is no "in forma pauperis" in the CCB, this pre-service screening applies to every claim brought before it.

50.     The CCB has been known to throw out claims sua sponte if they determine that the claims cannot proceed on their face. For example, in Case 22-CCB-0252 (Jaramillo v. YouTube), the CCB found that YouTube still had safe harbor. See https://dockets.ccb.gov/document/download/1856. Meanwhile, in Case 22-CCB-0224 (Boehm v. SportsTrust Advisors, LLC), they ordered an amended claim because the first claim does not adequately allege "substantial similarity." see https://dockets.ccb.gov/document/download/1224.

51.     In my case, I filed a claim that is almost entirely identical to the lawsuit I just filed that the intervenors seek to have "related" to this case. See https://dockets.ccb.gov/claim/view/368. Despite having access to the exact same information and evidence that Judge Cisneros had, the CCB handily approved my claim. See https://dockets.ccb.gov/document/download/741. The only reason that claim didn't proceed is because Google LLC chose to opt out of the proceeding, not because the CCB found my claim to be without merit. See https://dockets.ccb.gov/document/download/1731.

52.     In other words, both Judge Cisneros and the CCB had determined that I had stated a claim upon which relief can be granted.

53.     The intervenors want the complaint to be reviewed under § 1915? Well, they already got that *twice*! They simply are unhappy with the results. If the intervenors believe that the two tribunals had overlooked one or more important details that should have caused them to throw the case out sua sponte, that is something that should be appropriately raised on a motion to dismiss, not simply by requesting a *third* (not just second) sua sponte § 1915 review.

<u>V-3: The defendants' belief that I didn't consult with counsel before filing this new case borders on contempt of court in its own right.</u>

54.     When I asked for their consent to the Motion for Extension of Time in connection with the administrative motion (Dkt. 175), the intervenors made a rather bold statement when responding to me: "I have also urged you, many times, to consult with a lawyer <u>before</u> filing frivolous copyright lawsuits" (emphasis in original). See **Exhibit A**. The implication, here, seems to be that I must not have actually consulted with counsel before filing this case.

55.     However, par to the course for the intervenors at this point, they offer precisely zero evidence that I failed to consult with an attorney before filing this case. Instead, the implication seems to be that they believe, not just that the icon is fair use, but that it is so obviously fair use that it is inconceivable that I could have received any competent legal advice to the contrary. You could literally take every single copyright lawyer in America, put them all in a hat, and draw one at random, and there is literally a 100% chance that this lawyer would not only disagree with me on the fairness of the icon's use, but actively tell me in no uncertain terms that my case is frivolous.

56.     Furthermore, they apparently believe that no copyright lawyer would dare touch this case with a ten foot pole, no matter how much they were paid, because for an attorney to put their name on such a blatantly frivolous lawsuit would instantly make them liable to Google for malicious prosecution and even risk disbarment.

57.     To be clear, intervenor counsel did not *literally* say any of the things mentioned in the previous two paragraphs. But that's the only way his accusation against me makes any sense. It's

the only way he can justify saying I didn't consult with counsel before filing suit without any proof.

58.     I did indeed consult with legal counsel before filing suit, and I could show proof of same if I needed to. But I don't need to at the moment. Because this accusation was never made pursuant to a court pleading, it isn't subject to Rule 11 sanctions.

59.     Rather, I say that to say this: The fact that both Judge Cisneros and the CCB have agreed that I have adequately stated a claim upon which relief can be granted, despite being able to see the icons themselves, clearly shows that it isn't a 100% frivolous case. Clearly, these two tribunals have the exact same legal credentials as the lawyers who advised me on the validity of my claim before I filed suit. At least with Judge Cisneros, you could *possibly* make the argument that she is more of a jack of all trades on federal law, and lacks the specialized knowledge of copyright law needed to see this case for the frivolous one it truly is. But you can't say that about the CCB.

60.     This leads me to my next point (the point this subsection is named after): By implying that the icon is so obviously fair use that anyone who even *attempts* to argue otherwise is necessarily guilty of an ethics violation, the intervenors are, in effect, accusing those two tribunals of committing effectively the same ethics violation when they conducted effectively the same review.

61.     This is a very serious accusation, one that the intervenors should not make lightly (even if they only make the accusation indirectly). While they cannot sue Cisneros or the CCB for this alleged oversight (and I emphasize the word "alleged" here), the accusation itself is still no less damning. So they need to tread lightly.

62.     At least when I made my motion to recuse, I had specific statements that Judge White made *on the record* that support my claim that he has a personal grudge against me for the legitimate exercise of a perfectly valid legal right. Here, the Internvenors insist that the case is patently frivolous *just* because they really really really don't like the fact that they've been sued.

63.     Of course, even if the intervenors were to file their motion to dismiss, a new development in this case has made that motion even less likely to succeed than it already was:

<u>V-4: ATTA has despoiled the evidence, thereby killing the intervenors'</u>

<u>hopes of getting the case thrown out on the pleadings.</u>

64.     On or around January 26, 2023, ATTA (the direct infringer in the case of Stebbins v. Google LLC) deleted his YouTube channel, and with it the infringing icon (as well as the channel art which I conceded was fair use). While this does render moot the injunctive relief I requested in ¶ 54 of that Complaint, it doesn't render moot any other relief I am requesting (injunctive or otherwise), and it is actually quite devastating to Google's hopes of having the case thrown out on the pleadings.

65.     Remember that, whenever a court is reviewing a complaint for failure to state a claim (whether it be under § 1915 or a motion to dismiss), the Court "must accept as true all of the factual allegations contained in the complaint," except for those facts which the Court can take judicial notice of. See Bell Atlantic Corp. v. Twombly, 550 US 544, 1975 (2007). At the time I filed the complaint, ATTA's infringing icon was publicly visible, and I even provided a link to it. So at that point in time, the Court could have taken judicial notice of how supposedly "transformative" it was. Both the CCB and Judge Cisneros could see the icon, so they could have disagreed with my factual allegation that the additions to the icon amounted to nothing more than "a mish-mash of nebulous [and above all, nontransformative] 'stuff' simply slapped onto my face," yet they chose not to.

66.     But now, if this Court were to order the cases related and decide to make its own § 1915 review, it would not have that same luxury. The icon is no longer judicially noticeable, which means it must accept as true my factual allegation that the additions are not transformative.

67.     Nor could *any* judge (whether it be Judge White or Judge Cisneros) make any determination in Google's favor on a motion to dismiss. Again, it has to accept the facts in the complaint as true unless it can see otherwise with its own two eyes. So the Court cannot accept as true the defendants' allegations in the motion to dismiss. It has to take my word for it (at least for the time being) that the icon was not fair use.

68.     The only thing it can still see for itself is the intervenors' allegation that the original work is "minimally creative." Since that link still works, the Court can still see that video. However,

not only is that allegation patently absurd (for reasons I have already discussed), but even if the Court were to agree with the intervenors, that alone isn't enough to constitute fair use.

69.     So at this point, we're going to have to conduct discovery in the case of Stebbins v. Google LLC, and there's no two ways about it.

70.     By contrast, the intervenors have *admitted* to prima facie copyright infringement during their administrative motion. So I no longer even have to prove that. Even if I had to prove prima facie infringement, the spoliation would simply entitle me to a presumption to that effect. See Leon v. IDX Systems Corp., 464 F. 3d 951 (9th Cir. 2006).

71.     However, there's a reason I'm bringing this up here, instead of in that case …

        V-5: ATTA's spoliation kills the intervenors' only means of relating that case to this one.

72.     Bear in mind that the intervenors' sole grounds for claiming that the case of Stebbins v. Google is related to this one is by insisting that the new case is "continuing" with my "pattern" of filing "frivolous" lawsuits. Even in the best case scenario, this is a dubious connection for purposes of Local Rule 3-12, a connection made even more dubious when you realize that their only grounds for calling it frivolous was because they said so.

73.     But now, they have lost what little hope they may have already had of having it be declared frivolous. Without the ability to see the alleged infringement, this Court cannot make the determination that it is "clearly fair use" at the pleading stage, which means it cannot determine (at least not yet) that the case is clearly frivolous. This means that the one way the intervenors are attempting to connect the cases together (dubious as it already is) cannot be determined at the pleading stage. By the time we go through discovery, it will be too late to switch judges for anything other than mandatory recusal, so declaring the cases "related" at that stage would be a waste of time. And again, that's assuming that the lawsuit being "frivolous" is alone enough to constitute a relation under Local Rule 3-12, which it is not.

74.     This effectively kills the administrative motion in its tracks. There is literally no basis whatsoever for claiming the cases are related, assuming there ever was one to begin with.

75.     Then again, the fact that they have no evidence other than "because we say so" has never stopped the intervenors before.

## VI: Sanctions

76.     Just to be clear: These accusations do not violate Rule 11 because their reasons for them are illogical or based on scant evidence. They violate Rule 11 because there is no logic or evidence whatsoever. I can't point to any evidence and say "this proves nothing," because there is literally nothing for me to point to. *That* is what makes their allegations frivolous.

77.     Even if we give them the benefit of the doubt that, but for the spoliation, the transformative nature of the icon would become immediately apparent to any reasonable person upon even a cursory inspection of the icon[2], the fourth factor typically requires the defendant to come forth with "favorable evidence of relevant markets" (see Campbell, supra at 590), which they have not even attempted to do here.

78.     I therefore ask the Court to issue the intervenors an appropriate sanction, one that will force the intervenors to stop making these extraordinary claims about me without extraordinary proof, and to stop ignoring the rebuttal evidence I provide. If they want to continue making these extreme claims about my case, they should be required to tackle my rebuttal evidence head-on, not simply claim "that's absurd" and leave it at that. No more logical fallacies. No more invincible ignorance, appealing to the stone, or proof by mere assertion. They either back up their claims with facts and proof, and make surreplies to my rebuttal evidence, or they should not be allowed to make the claims at all. If they persist in making these blatant arguments ad labidem, they should be subject to continuing sanctions.

79.     Remember that sanctions under Rule 11 are mandatory. See Golden Eagle, supra. Let us also not forget that invincible ignorance, appeals to the stone, and proof by assertion are precisely the sort of bad faith per se behaviors that Rule 11(b)(3)-(4) was designed to stamp out.

80.     I also ask for a protective order, ordering the intervenors to cease and desist their baseless accusations against me.

## VII: Conclusion

81.     Wherefore, premises considered, I respectfully pray that the intervenors be sanctioned for their bad faith arguments, that costs incurred for the delay in litigation be awarded, and for any

---

2   Even then, one must keep in mind the arguments contained in sections V-2 and V-3 of this motion when making that bold claim.

other relief to which I may be entitled.

So requested on this, the 7th day of February, 2023.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
